USDC SCAN INDEX SHEET

















CAG   7/31/00   14:58

3:00-CV-01518   MAHDI V. BFI COMMUNICATION

*1*

*CMP.*

1

2

Dr. A Muhammad Mahdi In Pro Per

3

7111 Waite Dr. # 27

4

La Mesa, Ca 91941

5
619-647-1523

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                              '00 CV   1518

11  Dr. A. Muhammad Mahdi,                )  Case No.: No.

12              Plaintiff,                 )

13        Vs.                             )  Complaint for damages Conspiracy Malicious

14                                           Prosecution, Violation of 42 USC 1985, Violation
    BFI Communication, Inc Ex-board Members;)
15                                           Rico Act 1962 (a) and (d), Violation Racketeering
    MCI-WorldCom and Bernie Ebbers and Robert)
16                                           Activity under 1961 (1) (b) 1341 Mail Fraud, 1343
    Brejcha as Individuals; GTE Long Distance and)
17                                           Wire Fraud, 1503 Obstruction of Justice, 1956
    Charles Lee, Bob Taylor and Dan Glavin as)
18                                           Money Laundering, Violation 18 USC 371 and 1st,
    Individuals; IXC Communication, Inc Ralph Sweat)
19                                           8th and 14th Amendment of Constitution.
    as Individual; IXC Long Distance Jim Fleming and)
20
    Jeff Bender as an Individuals; Switch Services)
21
    Communication LLC and Kenneth Trout and Jim)
22
    Fleming as Individuals; US Billing Company and)
23
    Patty Meznarich as an Individual; Bank of)
24
    America Pat Bromely as Individuals; Bank of)
25
    Oklahoma and Cindy Wilkerson as an Individual;)
26

27

28

                                                    1

1

2

Union Bank of California and Greg Farnsworth as)

3

an Individual; Chase Bank of Texas Jim Patterson)

4

as an Individual; City National Bank; Muhammad)

5

Islamic Corporation and Jabir Muhammad and)

6

Akmed Darwish as an Individual; Bayview Baptist)

7

Church and Timothy Winters, Dee Richmond,

8

Maxine  Bracey  and  Lillian  Blackmon  as

9

Individual; St Stephen COGIC and Bishop George

10

McKinney, Ed Taylor and Martha Taylor as

11

Individuals; Masjid Tarqwa and Wali Fardan,

12

William Jenkins and Jameel Mahdi as Individuals;

13

Bethel AME Church and Dennis William, Douglas

14

Odem, Cynthia Bowen and William Davison as

15

Individuals; Levi Ray Shoup and Rodney Fickas as

16

an Individual; J&J Properties and Ralph and Dean

17

Burni as and Individual; 701 LLC and Steve

18

Considine as an Individual; Channel Six News

19

XETV; Channel 10 KGTV; and 60 Minutes.

20

Individuals; San Diego District Attorney Office

21

and Deputy District Attorney Anne Marie Urrutia

22

as Individual, San Diego Probation Department

23

and Lisa Forbes, Michael Wise and Allan Crogan

24

as  Individual;  San  Diego  Superior  Court  of

25

26

27

2

28

California; American Arbitration Association and
Randall Duke, Randall Hand and Mark Calhoun as
Individuals; Linda Mahdi, Talib Mahdi, Nazeah
Aladray, Dr. Katherine DiFranseca as Individuals
an Does 1 through 158, inclusive,

        Defendants

Complaint [Code Civ. Proc. 425.10] for Compensatory [Civ. Code 3333] and Punitive or Exemplary   [Civ. Code 3294] Damages for Injury Based on Conspiracy- General Form

Plaintiff alleges:

1. Plaintiff is informed and believes and upon such information and belief alleges that Building Futures In Communication, Inc. also known as B.F.I.C. (hereinafter referred to as Building Futures In Communication, Inc or B.F.I.C.) is not a legal entity organized to do business in the State of California or anywhere.

Plaintiff alleges and believes BFI Communication, Inc also as known BFIC, Inc (hereinafter referred to as BFIC or BFIC, Inc) is herein mention and at all times was a Corporation organized and existing under the laws of the State of California and is authorized to do business in State of California and its principle place of business is San Diego, California. Plaintiff is further informed and believes and upon such information and belief alleges that defendants Adib Mahdi, Muhammad Usman, Jabir Muhammad, Agin Muqtasid, Nicholas Oliva, David Valladolid, Vincent Albanese, Joseph Manno, Frank Semmo and Joel San Juan and Bishop

3

1
2
3
George McKinney mention in this complaint, are, and at all times herein mentioned were Board Members of
4
BFIC (herein referred to as BFIC Ex-Board Members) of said corporation and are, and at all times herein
5
mentioned were, residents of San Diego County except for Jabir Muhammad whose is a resident of Chicago,
6
Illinois.
7
<h2 style="text-align:center">BFIC NETWORK OF CARRIERS</h2>
8
Plaintiff alleges and believes that Defendants BFI Communication Network of Carriers individual are MCI-
9
WorldCom, IXC Long Distance, IXC Communication, Inc, Switch Services Communication LLC, GTE long
10
Distance. Plaintiff alleges and believe Defendant MCI-WorldCom, also known as LDDS-WorldCom, Wiltel,
11
DCA and WorldCom Network Services, Inc (hereinafter referred to as MCI-WorldCom, MCI-WorldCom-
12
Wiltel, MCI-WorldCom-DCA) is and at all times herein mention was a Corporation organized and existing
13
under the laws of the of Delaware and is authorized to do business in the State of California. Plaintiff is
14
further informed and believes and upon such information and belief alleges that defendants Bernie Ebbers and
15
Robert Brejcha mention in this complaint, are, and at all times herein mentioned were members of said
16
corporation and are, and at all times herein mentioned were, residents of Tulsa, Oklahoma and Jackson
17
Mississippi. Plaintiff alleges and believes Defendant IXC Long Distance also known as IXCLD (hereinafter
18
referred to as IXCLD) is, and at all times mention Delaware Corporation based in Austin, Texas authorized to
19
do business in State of California. Plaintiff is further informed and believes and upon such information and
20
belief alleges that defendants Jim Fleming and Jeff Bender mention in this complaint, are, and at all times
21
herein mentioned were members of said corporation and are, and at all times herein mentioned were, residents
22
of Austin, Texas and Mission Viejo, California. Plaintiff alleges and believe Defendant IXC Communication,
23
Inc, also known as IXC (hereinafter referred to as IXC) is, at all times mention Texas Corporation base in
24
Austin, Texas an was not at all times authorized to do business in the State of California. Plaintiff is further
25
informed and believes and upon such information and belief alleges that defendants Ralph Sweat mention in
26
27
28

4

1

2

this complaint, are, and at all times herein mentioned is member of said corporation and are, and at all times

3

herein mentioned is, residents of Austin, Texas. Plaintiff alleges and believes Switch Services

4

Communication also known as SSC (hereinafter referred to as SSC) is, and all times mention was Texas LLC

5

base in Austin, Texas and at all times was not authorized to do business in the State of California. Plaintiff is

6

further informed and believes and upon such information and belief alleges that defendants Jim Fleming and

7

Kenneth Trout mention in this complaint, are, and at all times herein mentioned were members of said LLC

8

and are, and at all times herein mentioned were, residents of Austin, Texas and Houston, Texas. Plaintiff

9

alleges and believe GTE Long Distance also known as GTE and GTE Billing (hereinafter referred to as GTE

10

and GTE Billing) is, and at all times mention was Delaware Corporation base in Connecticut during business

11

in Irving, Texas and was authorized to do business in the State of California. Plaintiff is further informed and

12

believes and upon such information and belief alleges that defendants Charles Lee, Bob Taylor and Dan

13

Glavin mention in this complaint, are, and at all times herein mentioned were members of said corporation

14

and are, and at all times herein mentioned were, residents of Irving, Texas. Plaintiff alleges and believe U S

15

Billing Inc also known as USBI, Zero Plus Dialing Inc (ZPDI) and Billing Information Concepts (hereinafter

16

referred to as USBI) is, and at all times mention was corporation based in San Antonio, Texas authorized to

17

do business in the State of California. Plaintiff is further informed and believes and upon such information

18

and belief alleges that defendants Patty Meznarich mention in this complaint, are, and at all times herein

19

mentioned is member of said corporation and are, and at all times herein mentioned is, residents of San

20

Antonio, Texas. Defendants GTE, IXC, BFIC, IXCLD and SSC are all Resellers and referencing all together

21

are hereinafter referred as Defendants resellers.

22

23

### BFIC NETWORK ORGANIZATIONS

24

Plaintiff alleges and believe Defendants BFIC Networks Organization Individually are Muhammad Islamic

25

Corporation, City of East St. Louis, Bayview Baptist Church of San Diego, St Stephen Church of GOD IN

26

27

5

28

1

2

3   CHRIST San Diego, Bethel AME of San Diego and Masjid Tarqwa of San Diego. Plaintiff alleges and

4   believes Muhammad Islamic Corporation (hereinafter referred to a Muhammad Corporation) is, and at all

5   times mention was non-profit corporation based Chicago, Illinois and authorized to do business in the State of

6   California. Plaintiff is further informed and believes and upon such information and belief alleges that

7   defendants Jabir Muhammad and Akmed Darwish mention in this complaint, are, and at all times herein

8   mentioned is members of said non profit corporation and are, and at all times herein mentioned is, residents of

9   Chicago, Illinois.   Plaintiff alleges and believes East St. Louis, Illinois  (hereinafter referred to as East St.

10  Louis) is, and at all times mention was corporation based East St. Louis authorized to do business in the State

11  of Illinois. Plaintiff is further informed and believes and upon such information and belief alleges that

12  defendants Ishaq Shafiq mention in this complaint, are, and at all times herein mentioned was a member of

13  said corporation and are, and at all times herein mentioned is, residents of Bellevue, Illinois.

14  Plaintiff alleges and believes Bayview Baptist Church (hereinafter referred to as Bayview Baptist) is, and at

15  all times mention was non-profit corporation based San Diego authorized to do business in the State of

16  California. Plaintiff is further informed and believes and upon such information and belief alleges that

17  defendants Pastor Timothy Winters, Dee Richmond, Lillian Blackman, Maxine Bracey mention in this

18  complaint, are, and at all times herein mention are members of said non profit corporation and are, and at all

19  times herein mentioned is, residents of San Diego County. .   Plaintiff alleges and believes Bethel AME

20  Baptist Church (hereinafter referred to as Bethel AME) is, and at all times mention was non-profit corporation

21  based San Diego authorized to do business in the State of California. Plaintiff is further informed and believes

22  and upon such information and belief alleges that defendants Dennis William, Cynthia Bowen, Douglas

23  Odem and William Davidson, mention in this complaint and at all times herein mentioned are members of

24  said non profit corporation and are, and at all times herein mentioned is, residents of San Diego County.

25  Plaintiff alleges and believes Masjid Tarqwa (hereinafter referred to as Tarqwa) is, and at all times mention

26

27                                                              6

28

1

2

was non-profit corporation based San Diego authorized to do business in the State of California. Plaintiff is

3

further informed and believes and upon such information and belief alleges that defendants Wali Fardan,

4

William Jenkins and Jameel Mahdi mention in this complaint, are, and at all times herein mentioned are

5

6

members of said non profit corporation and are, and at all times herein mentioned is, residents of San Diego

7

County.

8

## BFIC NETWORK OF BANKS

9

Plaintiff alleges and believes Defendants BFIC Network of Banks individually are: Plaintiff alleges and

10

believes Bank of America (hereinafter referred to as Bank of America) is and at all times a corporation base

11

in North Carolina authorized to do business in the State of California. Plaintiff is further inform and believes

12

and upon such information that at all times herein mention in this complaint Pat Bromely was a member of

13

said corporation and resident of San Diego County.  Plaintiff alleges Bank of Oklahoma (hereinafter referred

14

to as Bank of Oklahoma) is, and at all times corporation base in Oklahoma authorized to do business in the

15

State of California. Plaintiff is further inform and believes and upon such information that at all times herein

16

mention in this complaint Cindy Wilkerson was a member of said corporation and resident of Tulsa,

17

Oklahoma. Plaintiff alleges and believes Chase Bank of Texas and Chase Bank of La Jolla (hereinafter is

18

referred to as Chase Bank) is, and at all times corporation base in Austin, Texas authorized to do business in

19

the State of California. Plaintiff is further inform and believes and upon such information that at all times

20

herein mention in this complaint Jim Patterson was a member of said corporation and resident of Austin,

21

Texas. Plaintiff alleges and believes Union Bank of California (hereinafter is referred to as Union Bank) is

22

and at all times base in California and authorized to do business in the State of California. Plaintiff is further

23

inform and believes and upon such information that at all times herein mention in this complaint Greg

24

Farnsworth was a member of said corporation and resident of San Diego County. Plaintiff alleges and

25

believes City National Bank (hereinafter is referred to as City Bank) is at all times base in California and

26

27

28

7

authorized to do business in the state of California. Plaintiff is further inform and believes and upon such information that at all times herein mention in this complaint Andrew Crew was a member of said corporation and resident of San Diego County.

## BFIC NETWORK OF COMPANIES

Plaintiff alleges believes Defendants BFIC Network of Companies individually are Levi Ray Shoup (hereinafter referred to as Levi Ray Shoup) is and at all times a Corporation base in Springfield, Ill authorized to do business in the State Illinois. Plaintiff is further inform and believes and upon such information that at all times herein mention in this complaint Rodney Fickas was a member of said corporation and resident of ST Louis, Missouri. Plaintiff alleges and believes J&J Properties (hereinafter referred to as J&J Properties) is, and at all times a LLC base in San Diego authorized to do business in the State of California. Plaintiff is further inform and believes and upon such information that at all times herein mention in this complaint Dean Burni and Ralph was a member of said LLC and resident of San Diego County. Plaintiff alleges and believes 701 LLC (hereinafter referred to as 701) is, and. at all times a LLC base in San Diego authorized to do business in State of California.  Plaintiff is further inform and believes and upon such information that at all times herein mention in this complaint Steve Considine was a member of said LLC and resident of San Diego County.

## BFIC Network of News Stations

Plaintiff alleges and believe Defendant Channel Six News XETV (herein referred to as (Six News) is and at all times Corporation organized and existing under the laws of State California and is authorized to do business in the State of California.

Plaintiff alleges and believes Defendant Channel 10 KGTV (herein referred to as (10 News) is and at all times Corporation organized and existing under the laws of State California and is authorized to do business in the State of California. Plaintiff alleges and believe Defendants 60 Minutes (herein referred to as 60 Minutes is

8

1

2

3   and at all times New York Corporation organized and existing under the laws of State of New York and is

4   authorized to do business in the State of California.

5   **Organization of Justice**

6   Plaintiff alleges and believes San Diego Probation Department (hereinafter referred to as SDPD) is, and at all

7   times part of the County of San Diego in authorized to do business in the State of California. Plaintiff is

8   further inform and believes and upon such information that at all times herein mention in this complaint Lisa

9   Forbes, Allan Crogan and Michael Wise was employed by the County of San Diego and resident of San

10  Diego County. Plaintiff alleges and believes San County District Attorney Office (hereinafter referred to as

11  DA Office) is, and at times part of the County of San Diego authorized to do business in the State of

12  California. Plaintiff is further inform and believes and upon such information that at all times herein mention

13  in this complaint Annie Marie Urrutia was employed by the County of San Diego and resident of San Diego

14  County. Plaintiff alleges and believes The San Diego Superior Court (hereinafter referred to San Superior

15  Court) is at all times under the State of California and authorized to do business in the State of California.

16  Plaintiff is further inform and believes and upon such information that at all times herein mention in this

17  complaint Judge William Davidson was a employed by the State of California and resident of San Diego

18  County. Plaintiff alleges and believes American Arbitration Association (hereinafter referred to as Arbitration

19  Association) is, and at all times Delaware Corporation base in New York authorized to do business in the

20  State of Texas. Plaintiff is further inform and believes and upon such information that at all times herein

21  mention in this complaint Randall Duke, Mark Alan Calhoun and Randall E. Hand was a employed by the

22  American Arbitration Association of Texas and residents of Dallas Texas.

23

24  **BFIC NETWORK OF INDIVIDUALS**

25  Plaintiff alleges and believe BFIC Network of Individuals mention in heading of this Complaint are the

26  following Individuals Linda Mahdi, Talib Mahdi, Nazeah Aladray and Dr. Katherine DiFranseca. Plaintiff

27

28

9

1

2

alleges Hereinafter when these Organization, Association, and Corporation are mention the individuals

3

employed or members are included by the above reference. If the individuals are not mention Plaintiff alleges

4

memory of names he is yet to recall.

5

2. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein, as DOES 1 through

6

150, inclusive and therefore sue these Defendants by such fictious names. Plaintiff will amend this complaint

7

to allege their true names and capacities when ascertained. (Plaintiff is informed and believes and thereon

8

alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrence's

9

herein alleged and that plaintiff's injuries were proximately caused thereby.)

10

3. Plaintiff is informed and believes and thereon alleges that at all times herein mention each of the

11

defendants was the agent and employee of each of the remaining Defendants, and in doing the things

12

hereinafter alleged, was acting within the course and scope of such agency.

13

14

15

" **Courts should endeavor to construe Pro Se Complaint for protection of Civil Rights with utmost**

16

**liberality and without regard to technicalities but rules do not require an unreasonable constriction or**

17

**gross assumption. Mahuria V. Moss D.C. MO 1970 313 F. Supp 1263. "**

18

19

20

" **Pro Se Complaints must be held to a less stringent standard that formal pleading drafted by**

21

**Attorney. Back v. Scott D.C. Ill 1973."**

22

23

" **Civil liabilities of Parties advantage gained in charging a Civil Conspiracy is that the Act of one**

24

**during the conspiracy is the Act of all if done during the conspiracy is the act of all if done in the**

25

**furtherance thereof and thus Defendants may be held liable who in fact committed no Acts whatsoever**

26

**and gained no benefit. "**

27

10

28

1
2
3   **Agnew v, Cronin 148 Cal App 2d 117, 129[306 P2d 527]**
4
5                            ***Venue and Jurisdiction***
6   Defendants are in 4 States, in Conspiracy of Violation Federal Laws and Statue 42 USC 1985, 18 USCS 371,
7   18 USCA 1343 Wire Fraud, 18 USCA 1956 relating to Money Laundering, 8th and 14th Amendment of the
8   *Constitution of United States.*
9                                  **Outline**
10   Plaintiff alleges Conspiracy Pleading includes Malicious Prosecution by IXCLD, Linda Mahdi and San
11   Diego District Attorney Office (part-one, two and three). Plaintiff alleges Malicious Prosecution was in
12   furtherance of the Conspiracy of Concealment Rico Violation 18 USC 1962 (a) and (d) shown in part-4.
13   Plaintiff alleges Part-5 is Conspiracy Pleading Plaintiff Attorneys and Defendants Attorneys in collusion and
14   fraud of Conspiracy of Malicious Prosecution and Conspiracy Rico Violation.
15                       **Conspiracy of Malicious Prosecution**
16   On or about February 1997 IXC Long Distance filed a $40 million dollars complaint with the American
17   Arbitration Association against Building Futures In Communication, Inc. and A. Muhammad Mahdi for
18   breach of contract for default payment of $256,363 invoice for the five-month relationship with IXCLD (Case
19   Re: 71 181 0004897). Plaintiff filed a counter claim against IXCLD for $128 million dollars and on
20   November 23, 1998 the American Arbitration Association awarded IXCLD a $5 million dollar claim against
21   Building Futures In Communication and all claims against A. Muhammad Mahdi, Individually were Denied.
22   (See Exhibit-1B). Plaintiff A. Muhammad Mahdi is alleging Conspiracy Malicious Prosecution by IXCLD
23   and Defendants in furtherance of the Conspiracy of forgery, embezzlement, Mail Fraud, Wire Fraud, Money
24   Laundering and the Conspiracy to defraud the United States.
25
26
27
28                                        11

1

2

**Conspiracy of Malicious Prosecution and Fraud (part-two)**

3

4   Plaintiff alleges on or about March 5, 1999 Linda Mahdi on behalf of Defendants in Furtherance of

5   Conspiracy of Malicious Prosecution and Fraud brought false charges of Attempted Murder against Plaintiff

6   and Plaintiff was incarnated for a year before Jury found Plaintiff innocent.

7   **Conspiracy of Malicious Prosecution and fraud (part-3)**

8   Plaintiff alleges in furtherance of Conspiracy of Malicious Prosecution and Fraud on February 17, 2000 after

9   being held for one year in San Diego Jail, Plaintiff was release from custody and in less than 12 hours

10   Plaintiff was falsely arrested for probation violation. Plaintiff alleges after 33 days of was Malicious

11   Prosecution Plaintiff was found innocent of false charges. Plaintiff has suffered harassment every day since

12   being release by Defendants.

13   **Conspiracy of Malicious Prosecution by IXCLD (part-1)**

14   **Formation and Operation (4 thru 4z)**

15

16   (4) Plaintiff alleges on or about March of 1996 Defendants IXCLD, USBI, MCI-WorldCom, GTE and U S

17   Billing Company (USBI) knowingly and willingly conspired and agreed with BFIC Ex-board Members not to

18   disclose to Plaintiff upon entering into a contractual relationship with BFIC that BFIC Ex-board Members had

19   already forged Plaintiff name to Contractual relationships with Defendants. Example is shown in Exhibit-53

20   BFIC and MCI-WorldCom Bank of Oklahoma Escrow agreement dated June 1, 1996 whereas MCI-

21   WorldCom/LDDS WorldCom and BFIC Ex-board Members secretly have open two fraudulent unauthorized

22   Bank Accounts shown in Exhibit-2 and Exhibit-3 two months earlier on March 18 and 19, 1996.

23   Plaintiff had no knowledge of contractual relationship with IXC Communication, Inc shown in Exhibit-12

24   through 12C and Switch Services Communication, LLC verified in PricewaterhouseCoopers Consultant

25   Report Exhibit-46 page 2 section d) showing 88,219 BFIC customers long distance being switched to SSC

26   Carrier ID Code (CIC) '0948 and Exhibit-48 SSC letter stating that there is a contractual relationship with

27

28

1
2
BFIC as a reseller for SSC.
3
Plaintiff alleges the cornerstone of the conspiracy is MCI-WorldCom based upon contractual relationships as
4
underline wholesale switch carriers for Defendants Switchless Resellers IXC, GTE, SSC, IXCLD and BFIC.
5
Plaintiff alleges USBI was the billing company with contractual relationships and Tri-Party agreements with
6
MCI-WorldCom and Defendants Resellers to bill and collect monthly long distance payments for BFIC
7
diverted customers. Plaintiff alleges the Tri-Party Agreement and Escrow Agreement was established for
8
security payments of MCI-WorldCom monthly wholesale invoices to Defendants Resellers. MCI-WorldCom
9
was the financier for the Defendants resellers with the advancement wholesale cost every month for Minutes
10
at approximately .08 cents and Defendant resellers would resale to customers for .16 cents. Plaintiff alleges as
11
an example every month according to PricewaterhouseCoopers Report Exhibit-46 UBSI would bill and
12
collects $469,869 dollars per month on behalf of BFIC and Escrow agreement instructs USBI to wire transfer
13
MCI-WorldCom monthly advance wholesale cost of $230,000 to MCI-WorldCom first and wire transfer the
14
remaining balance after customers late payments or non payments of approximately $225,000 to BFIC.
15
Plaintiff alleges MCI-WorldCom advances credit every month for wholesale cost with USBI securing the
16
MCI-WorldCom invoice payments every month from the resellers such as BFIC, IXCLD, GTE and IXC and
17
SSC.
18
(4a) Plaintiff Alleges the discovery in January 1999 of fraudulent name B.F.I.C. **illegal entity** used for the
19
concealment of the diversion of BFIC customers and revenues established by BFIC Ex-Board Members,
20
BFIC Attorneys and BFIC Accountants. The Primary purpose of Fraudulent Name B.F.I.C. was to conceal
21
BFIC, Inc Corporate Bank Accounts, invoices and Records from Plaintiff who is the Founder, Chairman,
22
President and 70% majority stockholder of BFI Communication, Inc a.k.a. BFIC, Inc referred to in this
23
complaint as BFIC (See Exhibit-D verifying corporate name BFI Communication, Inc with Corporate
24
documents from the State of California). Plaintiff alleges USBI summary retail billing Report Exhibit-II
25
26
27
28

13

submitted to Plaintiff in Fraudulent name B.F.I.C. is showing **USBI billing and collecting a total of $477,824 dollars on behalf of BFIC and IXCLD for the five-month billing relationship**. Plaintiff alleges PricewaterhouseCoopers Exhibit-46 and four independent consultant report on USBI data submitted to American Arbitration Association by USBI in reference to all BFIC customers is **showing UBSI billing and collecting $965,863 per month totaling $4.8 million dollars for the five month billing relationship**. Plaintiff alleges Exhibit-II fraudulent invoices in the name of B.I.F.C. was a front and diversion concealing the real BFIC invoices of $965,863 per month from USBI to BFIC Ex-board Members and IXCLD. Plaintiff alleges Defendant's MCI-WorldCom, IXCLD, BFIC Ex-board Members, Defendant's Attorneys and Plaintiff's Attorneys in collusion conspired in the Abuse of Legal Process and Malicious Prosecution by suing **illegal entity Building Futures In Communication (B.F.I.C.) and Plaintiff** while Defendant's IXCLD and MCI-WorldCom maintain an on going business relationship with BFIC through BFIC Ex-board Members. These are the names of the conspiring individuals calling themselves Attorneys of Law: MCI-WorldCom's Attorney Mark Saxon of Saxon, Berry, Gardner and Kincannon in La Jolla, California, MCI-WorldCom's Attorneys Charles Saulisberry, Dean Franklin, Tom Greene and Fernando Bermudez of Thompson Coburn Law Firm in St. Louis, Missouri, IXCLD Attorney Thomas George of Thomas George Law Firm in Austin Texas, IXCLD's Attorneys Patricia Nice, Douglas Petit and Kurt Campbell of Klinedinst, Filehman and Mckillop of San Diego. BFIC Ex-board Members Muhammad Usman's Attorneys Scully Miles and Deborah Thistle-Kincannon of Gordon Rees Law Firm in San Diego, Muhammad Usman's Attorneys Deborah Thistle-Kincannon-Ben-Caan and Attorney Sheen of Procopio Cory, Hargeaves and Salvitch Law Firm in San Diego. Plaintiff's Attorneys Douglas Odem, Harold Murray and Gene Thomas of Odem, Greene, Murray and Thomas Law Firm in San Diego, Joseph Rosati of Joseph Rosati Law Firm in San Diego and Plaintiff retain and hired the same MCI-WorldCom Attorneys from the Law Firm Thompson Coburn for nine months before discovering that MCI-WorldCom was a current client of Thompson Coburn. Defendants and Attorneys

14

1

2

3   conspired with the promotion and substitution fraudulent name B.F.I.C. invoices and bank records as a front

4   or diversion concealing BFIC Ex-board Members fraud of diverting BFIC customers and revenues through

5   fraudulent conceal BFIC Corporate Bank Accounts. Plaintiff alleges and incorporates by reference

6   Attachment Z Attorney- client Conspiracy Pleading as part of this complaint.

7

8   **Fraudulent name B.F.I.C. on Bank Accounts as a front for Plaintiff usage only concealing the real**

9   **BFIC Corporate Bank Account for the usage of BFIC Ex-board Members diversion of BFIC revenues:**

10  (4b) Plaintiff alleges receiving Exhibit-C letter dated January 13, 1999 from Bank of America indicating that

11  BFIC Ex-board Members forged Plaintiff name of 350 checks totaling $450,000 dollars. Plaintiff alleges

12  Bank of America failed to inform Plaintiff that BFIC Ex-board Member Muhammad Usman and Bank of

13  America Branch Manager Pat Bromely open Personal Bank Account #1704-13181 in Plaintiff name without

14  Plaintiff knowledge shown in Exhibit-AB (bank statement in the name of Abuwi Mahdi) and Printed

15  fraudulent name B.F.I. Communication on the checks shown in Exhibit-A, inducing Plaintiff to believe the

16  account to be a business Account whereas the account is a personal Account in Plaintiff name. Muhammad

17  Usman deceive Plaintiff by stating the periods on B.F.I.C. was only a typing error. Plaintiff alleges B.F.I.C.

18  (personal Account) was front or diversion concealing BFIC, Inc Corporate Bank Account that Plaintiff and

19  Muhammad Usman open in the present of Pat Bromely branch manager Bank of America with corporate

20  documentation and corporate seal from the Secretary State of California. Plaintiff alleges Exhibit-21B is

21  Muhammad Usman testimony from court transcripts verifying the opening of BFIC Corporate Bank Account.

22  Exhibit-FF is BFIC financial Statements prepare by BFIC Ex-board Member and Corporate Account Nick

23  Oliva verifying $21,543 in BFIC corporate Bank Account with Bank of America in December 1996 whereas

24  Exhibit-AB is showing B.F.I.C. fraudulent Bank Account was closed September 1996 (four months earlier).

25  **According to Defendants in this complaint Plaintiff supposedly is suffering from a delusional disorder**

26

27

28                                                          15

**by stating that a close Bank account with zero balance closing in September 1996 cannot be same Open Bank Account four months later in December 1996 with balance of $21,543 dollars.** Bank of America Law Firm Procopio Cory, Hargeaves and Salvitch who is also representing Muhammad Usman advised Bank of America to commit another fraudulent Act in the mailing fraudulent Letter Exhibit-21 dated September 27, 1999 to the San Diego Superior Court denying the existence of BFIC corporate Bank Account ever being opened by Plaintiff chairman of BFIC and Muhammad Usman Secretary of BFIC. The Law Firm of Procopio, Cory, Hargeaves and Salvitch are locked in a trap of lies whereas client Muhammad Usman is saying in court transcript "yes to opening of BFIC Corporate Bank Account" and client Bank of America is saying in letter "no to the opening of BFIC corporate Bank account". Plaintiff alleges and incorporates by reference Cause of Action Account-30, 31, 32, and 33 for verification of BFIC Ex-board Members and Bank of America Conspiracy to conceal BFIC corporate Bank Accounts. For an example Cause of Action Account-30 showing BFIC 1996 financial Statement (Exhibit-FF) and BFIC 1996 Tax Returns (Exhibit-J) verification of 513,307 dollars Telephone Carrier Cost expense plus $486,693 dollars in other business expenses totaling $1 million dollars for 1996. Plaintiff alleges the accountability of only $486, 693 dollars in expenses from the only two Bank Accounts Plaintiff had knowledge of shown in B.F.I.C. fraudulent 1996 Bank of America statements and BFIC 1996 Union Bank Statements with the combine total of $486,693 dollars in total deposits whereas 513,307 dollars telephone carrier cost expense in Exhibit-FF and Exhibit-J was withdrawn from conceal BFIC Bank of America Bank Account. (See Cause of Action Account-31, 32, and 33 for further verification of revenues coming from conceal BFIC Bank of America Bank Accounts).

Plaintiff alleges 17 Accounts of forgery and fraud by Bank of America and BFIC Ex-board Members in this complaint and Bank of America law firm is representing BFIC Ex-board Members. For conspiracy by Bank of America and BFIC Ex-board Members See Cause of Action Account-29 and San Diego District Attorney conspiring with Bank of America Law firm giving BFIC Ex-board Member Muhammad Usman immunity for

the forgery of Plaintiff name on 300 checks in Cause of Action-36.

**USBI, IXCLD and BFIC Ex-board Members submission of invoices in fraudulent name B.F.I.C. concealing the real BFIC Corporate invoices and diverted revenues:**

(4c) Plaintiff alleges Exhibit-47 is Tri-party agreement between IXCLD, USBI and Fraudulent illegal entity B.F.I.C. instructing USBI to collect BFIC/IXCLD customers monthly telephone bills payments and to wire transfer BFIC/IXCLD monthly invoice payments to IXCLD before wiring any moneys to B.F.I.C. PricewaterhouseCoopers and four consultants verified USBI data submitted to American Arbitration Association by USBI that USBI invoiced BFIC for 8,520 BFIC/IXCLD customers and collected $965,863 per month for the five month billing period on behalf of BFIC and IXCLD totaling approximately $4.8 million dollars. USBI Exhibit-II summary invoice to Plaintiff in fraudulent name B.F.I.C. is showing 978 BFIC/IXCLD Customers billed every month and USBI collecting on an average of $95,000 per month for the five month billing period totaling $477,824 dollars. **USBI is invoicing B.F.I.C. and Plaintiff for $477,824 and USBI invoicing BFIC through BFIC Ex-board Members $4.8 million dollars.** IXCLD is invoicing Plaintiff in **fraudulent Name Building Future In Communication** for an average of $95,000 per month for five Months billing relationship totaling $477,179 dollars shown in Exhibit-45 and 45A. Plaintiff alleges Exhibit-45 IXCLD total wholesale cost is $477,179 and Exhibit-II USBU/B.F.I.C. total retail cost is $477,824 dollars and B.F.I.C. receiving according to Exhibit-II under " Funded Amount " $334,317 dollars which averaging a **lost** of approximately $22,500 dollars **(no profit) per month** while BFIC Ex-Board Members are collecting $965,863 per month. **Plaintiff wholesale cost is .08 cents a minute and Plaintiff retail cost is supposed be at .16 cents a minute (see Exhibit-62 BFIC customers phone bill verifying calls being billed at .16 cents per minute (See Exhibit-I IXCLD wholesale cost sheet for calls within the state (intrastate) and (interstate) calls outside the state). Plaintiff alleges IXCLD, USBI and BFIC Ex-board Members intentional bankrupting fraudulent name B.F.I.C.and Plaintiff by having B.F.I.C. retail below**

17

wholesale cost at the same price yet all of USBI BFIC customers phone bills are showing .16 cents a minute retail cost. Plaintiff alleges Exhibit-II fraudulent invoices to illegal entity B.I.F.C. was a front and diversion of 8,520 BFIC customers and revenues of $965,893 dollars per month by IXCLD and USBI established through BFIC Ex-board Members.

(4c-A) Plaintiff alleges for further verification of fraudulent invoices and PricewaterhouseCoopers and four consultants report verifying IXCLD data that IXCLD received default payments of $256,363 for five month relationship is Exhibit-FF BFIC Financial Statement and Exhibit-J BFIC 1996 Corporate Tax returns. **Plaintiff alleges Exhibit-FF and Exhibit-J is showing $513,363 dollars telephone carriers cost as a paid expense of 1996 which includes MCI-WorldCom 1996 invoices $167,000, IXCLD 1996 invoices for $256,363 and GTE 1996 invoices for $91,000 with the combine total equivalence of the paid 1996 Telephone Carriers Cost of $513,363 dollars. Plaintiff alleges Bank statements in Plaintiff possession are not showing $513,363 dollars invoice payments. Can we assume that the $513,363 dollars was withdrawn from a concealed Bank Account?** Plaintiff alleges MCI-WorldCom Abuse of Legal Process in Exhibit-M Complaint for default payments of $167,000 and IXCLD Malicious Prosecution for default payment of $256,363 against Fraudulent Illegal Entity Build Future In Communication and Plaintiff as an Individual was without probable cause. Plaintiff alleges suing illegal entity while IXCLD and MCI-WorldCom maintain on –going business relationship with BFIC Ex-board Members.

(4c-B) Plaintiff alleges IXCLD August 1996 fraudulent invoice in name of Building Future In Communication   to Plaintiff for 30 customers totaling $3,309 dollars for August 1996. Yet according to PricewaterhouseCoopers and Four Independent Consultants report on USBI data submitted to American Arbitration Association, USBI for the month of August 1996 rebated in credits for overcharges $24,000 dollars to 1,600 BFIC customers. Plaintiff alleges only IXCLD, USBI, BFIC Ex-board Members and The American Arbitration Panel Judges in their lying and corruption can get 1,600 BFIC customers out of 30

18

1

2

BFIC customers for the month of August and $24,000 being rebated for overcharges in August out of $3,309

3

dollars total BFIC /IXCLD invoice for the month of August 1996. **B.F.I.C. Fraudulent invoices to Plaintiff**

4

**concealing BFIC invoices to BFIC Ex-board Members.**

5

**(4c-C)** Plaintiff alleges Exhibit-18C IXCLD discovery document # 004311 and 004312 dated September 25,

6

1996 is showing 41,000 BFIC customers verifying PricewaterhouseCoopers Exhibit-46 page 2 section d) 3)

7

and four Consultant report **on IXCLD data showing 41,000 BFIC customers being processed in the**

8

**month of September 1996, which is approximately $5 million dollars in revenues per month being**

9

**invoice through BFIC Ex-board Members.** Plaintiff alleges Exhibit-45 is IXCLD September invoice to

10

Plaintiff in **fraudulent Name Building Future In Communication (B.F.I.C.) for 979 BFIC customers**

11

**totaling $141,000 dollars.** IXCLD data verified by PricewaterhouseCoopers and four independent consultant

12

and IXCLD documents are clearly showing the diversion of BFIC Customers.

13

**(4c-D)** Plaintiff alleges for additional verification documentation of separate invoices is Exhibit-40A IXCLD

14

December 1996 detail invoice document **#000064 to Plaintiff in fraudulent name Building Futures in**

15

**Communication** showing a total of 65,000 calls for month of December 1996 whereas Exhibit-40 IXCLD

16

discovery document **# 002246 invoice calls to BFIC Ex-board Members** which is one page of 8,322 pages

17

submitted in discovery by IXCLD is showing BFIC customers calls totaling 282,812 calls at 46 calls per page

18

for only ten days of December 1996. Plaintiff alleges based on Exhibit-40 there were approximately 848,436

19

calls within 30 days of December 1996 (December has the highest volume of calls for the year).

20

**(4c-E)** Plaintiff alleges IXCLD is claiming Exhibit-7 as an IXCLD document dated December 17, 1996

21

22

showing 46,244 BFIC Customers averaging approximately $5.5 million per month being process four days

23

after BFIC and IXCLD contract has been Cancel whereas Exhibit-40A IXCLD invoice to Plaintiff in

24

fraudulent Name Building Future in Communication for 978 BFIC customers with a total billing of $65,000

25

dollars. Plaintiff alleges the documents of evidence speak for themselves and Defendants are claiming

26

27

28

19

**Plaintiff is suffering from a delusional disorder in his claim of fraud.**

### USBI, MCI-WorldCom-Wiltel and BFIC Ex-board Members

**(4d)** Plaintiff alleges MCI-WorldCom as the underline carrier, BFIC as the Reseller and USBI as the Billing Company billing BFIC diverted customers through BFIC Ex-board Members committed the same fraudulent pattern with IXCLD by invoicing Plaintiff in fraudulent name B.F.I.C. for 350 BFIC customers averaging approximately $40,000 per month **totaling   $198,000 for five-month billing period** shown in USBI summary billing report Exhibit-III.  Plaintiff alleges PricewaterhouseCoopers Report Exhibit-46 is showing USBI invoicing 5,046 BFIC/IXCLD and collecting $469,869 per month **totaling $2.3 million dollars for five month billing period** on behalf of MCI-WorldCom and BFIC Ex-board Members. Plaintiff alleges consultant reports for USBI combine billing for IXCLD and MCI-WorldCom on behalf of BFIC five-month billing period **is showing a total of $7,178,660** dollars whereas USBI fraudulent invoices to Plaintiff in Name B.F.I.C. in Exhibit-I and II is **showing a total of $675,824** dollars which is a $6.5 million dollars different in the invoices.

**(4d-A)** Plaintiff alleges for further verification of MCI-WorldCom receiving default invoice payments of $167,000 dollars is Exhibit-17L MCI-WorldCom fraudulent invoices to Plaintiff in fraudulent name Building *Future In Communication* showing $101,000 in check payments with a $126,000 balance as of November 1996 totaling $227,000 wholesale invoice cost for B.F.I.C. (Clearly showing Plaintiff five month wholesale invoice cost of $227,000 is more than Plaintiff USBI retail cost of $198,000 (a lost of $28,000) which is showing Conspiracy by BFIC Ex-board Members trying to bankrupt Plaintiff in the name B.F.I.C. with negative $4,600 per month for five month billing period (no profit) whereas BFIC Ex-board Members are receiving $469,896 dollars per month totaling $2.3 million dollars for the five month billing relationship *according to four consultants report on USBI subpoena data.*).

**(4d-B)** Plaintiff was sued by MCI-WorldCom for default payment of $167,000 for the five month

20

1

2

3

4

Relationship and **Plaintiff alleges Exhibit-17A USBI wire transfers to Bank of Oklahoma to MCI-WorldCom/LDDS-WorldCom on behalf of BFIC for three months totaling $74,000 and Exhibit-17L Wiltel invoices to Plaintiff in fraudulent name B.F.I.C. for 3 months showing BFIC checks payments of $101,000 dollars which is showing Exhibit-17A and Exhibit-17L combine total invoice payments of $175,000 dollars for clear arguments of MCI-WorldCom/Wiltel receiving invoice payments from BFIC Ex-board Members and the Abuse of Legal Process and Conspiracy of Malicious Prosecution of Plaintiff and illegal entity in the fraudulent name of Building Future In Communication. Plaintiff is alleging Exhibit-17A and Exhibit-17L** verifies PricewaterhouseCoopers Exhibit-46 Report and four consultants report of MCI-WorldCom receiving invoice payments form the $469,869 dollars per month. **Plaintiff alleges quotation from MCI-WorldCom Complaint First Cause of Action number (9) "Defendants are in breach of the Telecommunication Agreement by failing to pay all invoices submitted to them by Plaintiff".**

**(4d-C)** Plaintiff alleges the Mailing of Fraudulent invoice every month for five months by USBI and MCI-WorldCom establishes a pattern of racketeering Activity 18 USC 1961 (1) (b) 1341 and a pattern of Racketeering Activity 18 USC 1961 (1) (b) 1343 in the wire transfer of $469,896 every month from August 1996 to present verified by PricewaterhouseCoopers Report. Plaintiff alleges the submission of 480 of the 7,000 phone bills of BFIC customers to the American Arbitration Association and Exhibit-62 is three of those BFIC customers phone bills being billed in March 1997 verifying Consultants reports that USBI was billing BFIC customers and collecting $1.4 million dollars per month on behalf of IXCLD, MCI-WorldCom and BFIC Ex-board Members in 1997 after contracts with IXCLD and MCI-WorldCom was cancel in October and December of 1996 and while Plaintiff is being sued by both Defendants.   Plaintiff alleges violation 18 USC 1962 (a) in the receipt of $469,000 dollars per month by MCI-WorldCom and $965,863 per month by IXCLD and BFIC Ex-board Members. Plaintiff alleges MCI-WorldCom, IXCLD, USBI and BFIC Ex-board

21

1

2

Members in violation of 18 USC 1962 (d) in billing of 5,046 MCI-WorldCom customers from BFIC/IXCLD
3
August 1996 Order_1s database of 39,000 BFIC customers processed in the Month of August 1996 by
4
IXCLD according to PricewaterhouseCoopers Exhibit-46 page 2 section d) 2) and four independent
5
consultants reports.
6

7 **(4c-D)** Plaintiff alleges the Mailing of Fraudulent telephone bills with overcharges; extra minutes and extra

8 calls throughout 1997 established a pattern of Racketeering Activity 18 USC 1961 (1) (b) 1341 relating to

9 mail fraud.

10    **Fraudulent Name Building Futures In Communication in MCI-WorldCom Lawsuit**

11       **and MCI-WorldCom/DCA, IXCLD and BFIC (BFIC Ex-board Members)**

12 (4e) Plaintiff alleges American Arbitration Association document Exhibit-1B is showing IXCLD sued

13 fraudulent illegal entity Building Future In Communication and Plaintiff for $40 million dollars. Plaintiff

14 alleges Exhibit-M is MCI-WorldCom/Wiltel complaint against illegal entity Building Future In

15 Communication as an unincorporated entity and Plaintiff as an individual for $167,000 default payments of

16 three months BFIC/Wiltel invoices, shielding BFIC Ex-board and MCI-WorldCom on –going fraudulent

17 business relationship.

18
(4f) Plaintiff alleges PricewaterhouseCoopers report of IXCLD subpoena data submitted to the American
19
Arbitration Association verified on page two section d) 217,413 BFIC customers processed by IXCLD
20
whereas USBI data is showing a total of 8,520 customers being billed on behalf of BFIC and IXCLD.
21
22 **Plaintiff is alleging MCI-WorldCom-DCA billed the remaining 208,893 BFIC customers shown in**

23 **Exhibit-15 MCI-WorldCom-DCA, IXCLD and BFIC fraudulent unauthorized billing relationship with**

24 **BFIC Ex-board Members that all Defendants are claming does not exist. Exhibit-51 letter from**

25 **Plaintiff Attorneys Thompson Coburn is revealing to Plaintiff that MCI-WorldCom-Wiltel is a current**

26 **client of Thompson Coburn and Plaintiff thought that IXCLD was billing BFIC customers through**

27

28

1

2

**DCA. Plaintiff alleges Thompson Coburn working on behalf of MCI-WorldCom-Wiltel is trying to create an illusion of the non-existence of Exhibit-15 IXCLD/DCA/BFIC Ex-board Members fraudulent billing relationship whereas** Exhibit-30 IXC document #004490 and Exhibit-5, 13, 13A and 3A is verifying the existence Exhibit-15 fraudulent billing relationship. Plaintiff alleges Exhibit-13A is BFIC Ex-board Members creation of computer program for DCA, IXCLD and BFIC customer database. Exhibit-5 is DCA fax to Ex-board Members Adib Mahdi approving BFIC/IXCLD customer's monthly long distance bill layout and Exhibit-13 is one of the 208,893 actual BFIC customer monthly long distance bills. Exhibit-30 is a IXCLD internal memo discovery document with IXCLD document number 004490 verifying that this is a IXCLD document whereas XCLD employees indicating BFIC is having some sort of problem DCA. Note that Exhibit-15 is IXCLD discovery document with document #000638. Plaintiff alleges BFIC customers' monthly long distance bill average approximately $115 dollars per month per customers base on USBI Billing of 8,520 BFIC customers billing at $965,863 per month whereas 208,893 BFIC customers' monthly long distance bills would generate approximately $25 million dollars per month in revenues. Plaintiff alleges the mailing of 208,893 telephone bills per month from August 1996 to Present establishes a pattern of Racketeering Activity under 18 USC 1961 (1) (b) 1341 relating to mail fraud. Plaintiff alleges the wire transfer of $25 million dollars per month from August 1996 to present establishes a pattern of Racketeering Activity under 18 USC 1961 (1) (b) 1343 relating Wire fraud. Plaintiff alleges MCI-WorldCom as underline carrier (enterprises) receipt of wire transfers for wholesale monthly invoice cost, IXCLD (enterprise) as reseller receipt of wire transfer, and BFIC Ex-board Members receipt of wire transfers every month shown in Cause of Action Account-68 paragraph (148) is violation of 18 USC 1962 (a) and (d). Plaintiff alleges Racketeering activity of $25 million dollars a month is a good motive for the **Abuse of Legal Process by MCI-WorldCom to sue Plaintiff and fraudulent Illegal Entity Building Future In Communication and**

26

27

28

23

at same time concealing and protecting on-going Underline carrier and DCA Billing relationship IXCLD, BFIC and BFIC Ex-board Members.

**MCI-WorldCom Knowledge of BFIC being a Corporation:**

(4g) Plaintiff alleges MCI-WorldCom Complaint on page six against Plaintiff mentions the security agreement but failed to disclose to the court MCI-WorldCom requirement of BFIC Board of Directors Resolution for approval of Contact signing and signature of Muhammad Usman as Secretary of BFIC Corporation shown in Exhibit-17B (BFIC Corporate Resolution to MCI-WorldCom-Wiltel). Clearly showing MCI-WorldCom had knowledge of BFIC being California Corporation. Plaintiff alleges MCI-WorldCom, BFIC and Bank of Oklahoma Escrow Agreement Exhibit-53 page one of the agreements refers to BFIC as California Corporation and Plaintiff and MCI-WorldCom sign agreement with BFIC as California Corporation. Clearly showing fraud and Abuse of the Legal Process by MCI-WorldCom.

**Conspiracy of Malicious Prosecution (part-2)**

Plaintiff alleges and incorporates by Reference Cause of Action Account-47 through 60

**Judge Davidson San Diego Superior Court Department-22**

(4h) Plaintiff alleges while in Pro Per Status on June 11, 1999 the Attorneys for Defendants Bank of America, MCI-WorldCom, IXCLD, SSC, IXC, Union Bank, Chase Bank, Bethel AME Church, Bayview Baptist, St. Stephen Church of COGIC, Muhammad Usman, Nick Oliva Accounting Firm, and Deputy District Attorney Anne Marie Urrutia in the San Diego Superior Court met privately in Judge Kenneth So chambers and in furtherance Conspiracy of Fraud and Malicious Prosecution selected Judge Davidson as Plaintiff all purpose Judge for criminal trial proceeding of The State of California vs. Abuwi Mahdi CD14355.

(4i) Plaintiff alleges Judge Davidson fail to inform Plaintiff on June 11, 1999 after conveniently squashing subpoena duces tecum of records on behalf all Defendants mention in paragraph (4h) including Bethel AME records whereas Judge Davidson had a conflict of interest being a member of Bethel AME Church with

24

Plaintiff's Ex-Public Defender Cynthia Bowen being a Minister of Bethel AME Church. Plaintiff was claiming Furtherance Conspiracy Malicious Prosecution and fraud by MCI-WorldCom, IXCLD and BFIC Ex-board Members and San Diego Public Defender Office in the assignment of Attorney Cynthia Bowen as Plaintiff Public Defender. Plaintiff alleges subpoena duces tecum of records would have reveal Attorney Cynthia Bowen had lied to the court when she stated that her home telephone number was never switched to BFIC network whereas her monthly long distance bill was diverted to fraudulent concealed bank accounts every month. Plaintiff alleges Subpoena **duces tecum of records would have reveal fraud by Defendants mention in paragraph (4h)** impeaching Victim witness Linda Mahdi testimony and witness BFIC Ex-board Members testimony. Plaintiff alleges the records would have reveal Attorney Cynthia Bowen, Plaintiff Public Defender and Minister of Bethel AME Church, Plaintiff Ex-Attorney Douglas Odem on a Civil Matter with IXCLD and MCI-WorldCom and Member of Bethel AME, BFIC Ex-board Members and Linda Mahdi Plaintiff wife conspired with MCI-WorldCom and IXCLD Conspiracy of Mail fraud, wire fraud, money laundering, embezzlement and conspiracy to defraud the United States of approximately $25 million dollars per month which included the approximate $50,000 per month of Bethel AME Church members Congregation monthly long distance telephone bills payments which were diverted through fraudulent conceal Bank accounts at Bank of America, Union Bank and Bank of Oklahoma.

(4j) Plaintiff alleges Judge Davidson deceived the courts by stating that he was not a member of Bethel AME when Judge Davidson was a Member of Bethel AME church in San Diego whereas Judge Davidson failed to disclose to court his conflict of interest with Attorney Cynthia Bowen as his Minster at Bethel AME Church (see Cause of Action Account-49). Judge Davidson Conflict of Interest in quashing Subpoena Duces tecum Bank records whereas Bethel AME congregation long distance payments of approximately $50,000 per month are being diverted through fraudulent Bank Accounts.

25

1

2

(4k) Judge Davidson failed to disclose to the court his conflict of interest in Relationship with Plaintiff Ex-

3

Attorney Douglas Odem (member of Bethel AME) whom Plaintiff fired for collusion with IXC Long

4

Distance, MCI-WorldCom and BFIC Ex-board Members in IXCLD lawsuit of $40 million dollars against

5

Plaintiff and Plaintiff counter-claim of $128 million dollars against IXCLD. See Cause of Action 16 and

6

Exhibit-36 showing collusion and paragraph (4e) whereas Attorney Douglas Odem is allowing Plaintiff to be

7

sued in Fraudulent Name Building Future In Communication.

8

Plaintiff alleges Judge Davidson was in a conflict of interest by not allowing Plaintiff to fire or removed Ray

9

Dobbs court appointed Private investigator whereas Ray Dobbs was in the past and currently being retain by

10

Attorney Douglas Odem of Odem, Greene, Murray and Thomas and Ray Dobbs had also been retain a year

11

prior by witness Talib Mahdi. Plaintiff alleges Judge Davidson refuse to allow Plaintiff fired Ray Dobbs even

12

after Ray Dobbs failed to Comply with Court Order to delivery Plaintiff documents of evidence verifying that

13

Attorney Cynthia Bowen had lied to court in stating that she was never a BFIC customer and BFIC cancel

14

checks cash of conceal BFIC corporate Bank accounts Judge Davidson still would not allow Plaintiff remove

15

Ray Dobbs.

16

(4L) Judge Davidson in conflict of interest with Anthony Saulisberry as a Member of Bethel AME. Plaintiff

17

alleges after firing Attorney Douglas Odem and from a recommendation of Deputy Mayor of East St. Louis

18

Ishaq Shafiq (Ex-board member) Plaintiff hired Lead Attorney Charles Saulisberry of Thompson Coburn of

19

St. Louis, Missouri. Plaintiff alleges 9 months later Thompson and Coburn was fired for collusion and

20

Conflict of interest with IXCLD, MCI-WorldCom and BFIC Ex-board Members. Plaintiff alleges the

21

discovery that Attorney Charles Saulisberry as the blood Brother of Anthony Saulisberry who is also a

22

member of Bethel AME in San Diego. Exhibit-51A is showing Anthony Saulisberry as one of 208,000 BFIC

23

customers being billed through Exhibit-15 BFIC/IXCLD/MCI-WorldCom-DCA fraudulent billing

24

relationship whereas BFIC customers' long distance bill payments are being diverted every month to

25

26

27

28

1

2

3   fraudulent Bank accounts at Bank of America, Union Bank and Bank of Oklahoma. (See Cause of Action

4   Account 14, 15, 16 and 17 Charles Saulisberry of Thompson Coburn revealing to Plaintiff that MCI-

5   WorldCom is their client, which is conflict of interest by Defendants Attorneys).

6   Plaintiff alleges Bank of America Exhibit-21 and Bank of Oklahoma Exhibit-22 in zone of comfort mailed

7   fraudulent letters to Judge Davidson of San Diego Superior Court denying the existence of BFIC Bank

8   Records whereas Plaintiff is showing documentation of 8 fraudulent Bank Accounts open in BFIC Name

9   without Plaintiff knowledge which would impeach witness and exposed the Racketeering activity mail fraud,

10  Tax Fraud, Forgery, Wire Fraud and Money Laundering by all Defendants.

11  (4m) Plaintiff alleges clear example of Judge Davidson concealment of the fraud in the acceptance Exhibit-21

12  and Exhibit-22 letters to the San Diego Superior Court dated September 27, 1999 from Bank of America and

13  Bank of Oklahoma knowing that the documents were fraudulent and not allowing Plaintiff to expose the

14  documents as fraud with the compliance of Subpoena duces tecum of Bank records. Plaintiff alleges Exhibit-

15  22 Bank of Oklahoma letter is stating that Bank of Oklahoma has no records to indicate that an account was

16  ever open in the name of BFIC, Inc whereas Plaintiff is alleging BFIC Ex-board Members and Linda Mahdi

17  forged Plaintiff signature on the opening of 5 fraudulent BFIC Bank Accounts at Bank of Oklahoma. Plaintiff

18  alleges the submission of same documents to Judge Davidson and Deputy District Attorney Ann Marie

19  Urrutia shown in Cause of Action Account-26 referencing Bank of Oklahoma documents showing the

20  opening of five fraudulent BFIC bank accounts shown in Exhibits-6, 17A, 20, 21A, and Exhibit-53 (on page-

21  1 of Exhibit-53 is opening of a BFIC account with Bank of Oklahoma, page 3 is BFIC bank Account number

22  and last page is BFIC and Bank of Oklahoma signing agreement). Documentation clearly showing Bank of

23  Oklahoma conspiring with BFIC Ex-board Members, Linda Mahdi and defendants in concealing BFIC Bank

24  Accounts.

25

26

27                                                        27

28

1

2

(4n) Plaintiff alleges for additional verification of BFIC Bank Accounts at Bank of Oklahoma Plaintiff

3

submitted to Judge Davidson and Deputy District Attorney Urrutia a USBI document from Plaintiff 's Law

4

Firm Thompson Coburn verifying eight wire transfers from USBI to a BFIC bank account at Bank of

5

Oklahoma. Plaintiff inform Judge Davidson that American Arbitration Association and Plaintiff's Ex-

6

Attorney Charles Saulisberry of Thompson Coburn had a copy of this USBI document as well as a separate

7

Bank of Oklahoma invoice document to BFIC verifying Bank of Oklahoma receipt of only four wire transfers

8

for $83,700 dollars from USBI on behalf of BFIC shown the Exhibit-17A BFIC Bank Statement from Bank

9

of Oklahoma. Plaintiff alleged informing Judge Davidson that Exhibit-17A verifies Bank of Oklahoma

10

separate document or invoice to BFIC, which shows the acceptance of only four wire transfers from USBI.

11

(4o) Plaintiffs alleges in addition he inform Judge Davidson of Linda Mahdi false charge of domestic

12

violence against Plaintiff was the same day of Plaintiff discovery of Exhibit-21A Bank of Oklahoma letter

13

dated January 13, 1999 to Adib Mahdi Vice President of BFIC, Inc informing Adib Mahdi of the closing of

14

BFIC Bank Account on December 7, 1998 whereas Exhibit 17A Bank of Oklahoma Statement is showing

15

Wiltel/ BFIC/DCA/ZPDI Escrow Account closing July of 1997. Clearly showing Exhibit-21A and Exhibit-

16

17A are two separate BFIC Bank of Oklahoma Bank Accounts. See Cause of Action Account-26 referencing

17

Bank of Oklahoma.

18

(4p) Plaintiff alleges Cause of Action Account-34 and 37 referencing Judge Davidson working of behalf of

19

Defendants by not making Bank of America Comply to Subpoena duces tecum of bank records. Plaintiff

20

alleges by reference Cause of Action Accounts 28 through 38 for forgery and bank fraud submitted to Judge

21

Davidson and San Diego District Attorney office showing a history of Fraud by Bank of America. Plaintiff

22

alleges Judge Davidson denied request to subpoena Attorney Bill Nimo and Attorney Nimo Associate Civil

23

Attorney Bob Gaglione who verify four Bank accounts at Bank of America with Plaintiff as signor on the

24

Accounts from BFIC cancel checks with one account having over $875,000 deposit and a BFIC Tax Account

25

26

27

28

28

1

2

with over $3 million dollars deposit. Plaintiff was going to hire Attorney Nimo from the moneys obtained in

3

Conceal bank accounts and Bank of America lied to Attorney Gaglione stating that the accounts were red flag

4

accounts and no information can be release on the Accounts (red flag meaning FBI or Treasure Office is

5

investigating the accounts).

6

7   (4q) Plaintiff alleges just as Thompson Coburn working on behalf of MCI-WorldCom was looking at 13

8   Exhibits of documented evidence of IXCLD, DCA and BFIC Ex-board Members fraudulent relationship and

9   tried to create the illusion to Plaintiff of the non-existence of fraudulent relationship, Judge William Davidson

10   working on behalf of Defendants after reviewing or weighing Plaintiff documents of evidence of BFIC Bank

11   accounts at Bank of Oklahoma against Bank of Oklahoma letter Exhibit-22 and the forgery and fraud by Bank

12   of America letter Exhibit-21 Judge Davidson in Furtherance the Conspiracy Malicious Prosecution and Fraud

13   issue a Court Order stating that Plaintiff is suffering from Delusional Disorder in his claim of forgery and

14   fraud of conceal Bank Accounts at Bank of America, Bank of Oklahoma and Chase Bank of Texas

15   established by BFIC Ex-board Members and Linda Mahdi (See Cause Action Account 58). Plaintiff's

16   Delusional Disorder according to Dr. DiFranseca is severe therefore Judge Davidson of San Diego Superior

17   Court, Deputy District Attorney Anne Marie Urrutia and Lisa Forbes, Allan Crogan and Michael Wise of San

18   Diego Probation Office order Plaintiff as part of his probation to see specialists Dr. Bruce Hubbard for

19   therapy treatments and medication every week for this severe deep Delusional Disorder and if Plaintiff did

20   not see Dr. Hubbard Plaintiff will be in Violation of probation and will go to prison for five years. Plaintiff

21   alleges Judge Davidson had sworn to oath to uphold and serve the constitution of the United States and

22   dishonor every American that has died upholding the principles of this constitution to become slave servant of

23   MCI-WorldCom Corporation.

24

25   **San Diego Superior Court Department 22 and Fraudulent Name B.F.I.C. On Court Records:**

26   (4r) Plaintiff alleges the discovery of the use of fraudulent name B.F.I.C. was in July 1999 during the court

27

28

29

1

2

proceeding of the furtherance of the conspiracy Malicious Prosecution of false charges of Attempted murder

3

against Plaintiff by Linda Mahdi (Plaintiff wife) whereas San Diego District Attorney Office failed to

4

prosecute BFIC Ex-board Members and Linda Mahdi for fraud and is now bringing BFIC Ex-board Members

5

as witnesses against Plaintiff.

6

Plaintiff alleges after receiving court transcripts showing fraudulent name B.F.I.C. being inserted every time

7

BFIC name was mention and the San Diego Superior Court extent of not recording BFIC on the record was

8

enough for Plaintiff to investigate. Plaintiff alleges Exhibit-92 is court transcripts of Plaintiff In Pro Per Status

9

questioning BFIC Ex-board Member Muhammad Usman and Plaintiff is actually saying B.F.I.C. the

10

transcript is reflecting ' B ' Dot ' F ' Dot ' I ' Dot Communication. Muhammad Usman is getting upset with the

11

line of questioning and states " Why don't you just say BFIC"? (The transcripts reflect B.F.I.C. when Usman

12

actually said BFIC not B.F.I.C.). Muhammad Usman in Exhibit-92 continues saying BFIC and the court is

13

transcribing B.F.I.C. The Defendants Attorneys are using their influence in the San Diego Superior Court in

14

concealing BFIC, Inc the legal entity from court records. Plaintiff alleges motive and reason of fraudulent

15

name B.F.I.C. on San Diego Superior Court records by reference of Judge Davidson in this complaint and

16

Cause of Action Account 50 and 58.

17

18

**Malicious Prosecution Part-3**

19

**(4s)** Plaintiff alleges and incorporates all allegations in Cause of Action Account-62 **Conspiracy of**

20

**Malicious Prosecution by Deborah Kincannon or Ben-Caan San Diego District Attorney Office and San**

21

**Diego Probation Department.**

22

23

**Formation and Operation of Conspiracy Violation Rico Act 18 USC 1962 (a) and (d) Racketeering**

24

**Activity of Mail Fraud, Wire Fraud and Money laundering. (4t through 4y)**

25

(4t) Plaintiff alleges approximately December 1998 of BFIC Ex-board Members forgery Plaintiff name on

26

27

30

28

1

2

3   approximately 33 cancel checks dated from January 1996 through December 1997 to San Diego Post office

4   totaling approximately $125, 000 dollars for bulk mailing of approximately 700, 000 Muslims from BFIC five

5   Muslim names, address and telephone number database. Plaintiff alleges BFIC letters with Plaintiff

6   background was bulk mail requesting Muslims to switch their long distance to BFIC and the

7   Misrepresentation of 10% of every long distance call being rebated every month to the community for social

8   and economical development. Plaintiff alleges customers would send signed authorization forms for their

9   long distance to be switched to designated carrier of BFIC (BFIC was contracted with one Carriers MCI-

10  WorldCom and two switchless carrier GTE and IXCLD).   BFIC would submit customer's name and

11  telephone numbers to MCI-WorldCom and upon receipt submit BFIC customers to Local bells (PacBell) for

12  customers' long distance to be switched from AT&T or Sprint long distance network to MCI-WorldCom

13  network. Plaintiff alleges BFIC Ex-board, MCI-WorldCom, Bayview Baptist Church and St. Stephen COGIC

14  induced Plaintiff through reliance to believe MCI- WorldCom was not processing BFIC Customers in a

15  timely fashion and with the threat of not providing proper service to BFIC customers Plaintiff was forced to

16  sign Contract with IXCLD and GTE who were contracted as Resellers with MCI-WorldCom (Plaintiff alleges

17  that there was no problem with the customers being process by MCI-WorldCom whereas BFIC customers

18  were being processed in a timely fashion and being diverted by MCI-WorldCom and signing contracts with

19  GTE and IXCLD open avenues for more diversion of BFIC customers). Plaintiff alleges BFIC customers

20  were submitted through IXCLD and GTE who would submit customers to MCI-WorldCom to be process and

21  customers switched by the Local Bells to MCI-WorldCom Network. MCI-WorldCom was the underline

22  carrier for all resellers who diverted BFIC customers.   Plaintiff alleges fraudulent authorized contractual

23  relationship with IXC referencing Exhibit-7 IXC document dated December 17,1996 showing 46,242 BFIC

24  diverted customers being submitted in preparation of Local Bells switching customers to MCI-WorldCom

25  Network (top left of documents are the list of local Bells nationally for process and switching of BFIC

26

27                                                     31

28

diverted customers. Plaintiff alleges Exhibit-56 is IXC document with response files from the Local Bells of the status of BFIC customers processed and the dates BFIC customers were switched from September 17 through October 1, 1996 by the Local Bells nationally whereas IXC is reporting same Reponses files to BFIC. Plaintiff alleges the moment the local bells switched BFIC customers to MCI-WorldCom Network is the moment BFIC begin receiving revenues from long distance calls. Plaintiff alleges MCI-WorldCom provide the Resellers daily revenue reports of customer long distance calling shown in IXC report to BFIC referencing IXC document Exhibit-52 which is two days of long distance calls for 31, 280 BFIC diverted customers generating $215,721 wholesale cost which would be approximately $400,000 retail for BFIC. Plaintiff receives Monthly invoice calls of CD-Rom read only disk from IXC with monthly documented invoices. Plaintiff alleges BFIC format retail cost to wholesale cost and sends monthly call data to USBI to Billed BFIC customers through the Local Bells and Collect monthly long distance payments on behalf BFIC. USBI collected Monthly payment in September 1996 of approximately $11 million dollars and based of MCI-WorldCom, IXC and BFIC Tri-party security agreement USBI wire transferred approximately $3.9 million first to MCI-WorldCom for September 1996 wholesale invoice cost to IXC. Plaintiff alleges USBI wire transferred IXC approximately $2 million dollars for IXC wholesale invoice cost to BFIC and USBI wired transferred BFIC approximately $5 million dollars for September retail cost profit to BFIC.  USBI was the billing agent (enterprise) for all of MCI-WorldCom resellers such as GTE, IXC, BFIC, IXCLD, Quest Communication, LD communication, and Vartec Telecom.

## Enterprises

(4u) Plaintiff alleges MCI-WorldCom (enterprise as the underline wholesale carrier shown in paragraph (149), SSC as switchless reseller (enterprise) for the diversion of BFIC customers from BFIC Ex-board Members and USBI (as enterprise) for the billing and collecting of BFIC customer's monthly long distance bills, Bank of Oklahoma, Bank of America, and Texas Commerce Bank are enterprises for receiving moneys

32

every month from USBI (Exhibit 17A Bank of Oklahoma receiving four wire transfers from USBI on behalf of BFIC and MCI-WorldCom (underline Carrier) and Bank of Oklahoma Letter dated September 27, 1999 is stating BFIC never open a bank account at Bank of Oklahoma (see Exhibit-20, 21A and 53 three additional BFIC Bank of Oklahoma Bank Accounts.

(A) Plaintiff alleges PricewaterhouseCoopers Report Exhibit-46 on page two section (d) of IXCLD data submitted to American Arbitration Association is showing 88,219 BFIC customers being process under SSC carrier code ID "0948" at approximately $115 per month per customer monthly long distance bill averaging approximately $10 million dollars per month in revenues from August 1996 to present. (See Cause of Action Account-21, 20 and 22 the diversion of BFIC customers and BFIC Ex-board Members, IXC, and IXCLD alleged ownership of SSC). Plaintiff had no knowledge of contractual relationship with SSC whereas BFIC Ex-board Members have ownership interest in SSC. Plaintiff alleges all of SSC customers and revenues were generated from BFIC's diverted customers. Plaintiff alleges USBI billed 88,219 customers on behalf of SSC and collected approximately $10 million per month from August 1996 to present totaling $460 million dollars.

(B) Plaintiff alleges mail fraud in fraudulent mailing to each BFIC customers stating that SSC was BFIC underline Carrier and mailing of those customers every month establishes a pattern racketeering Activity under 18 USC 1961 (1) (b) 1341 relating to mail fraud.

(C) Plaintiff alleges and incorporates by reference Cause of Action-68 paragraph (149) USBI pattern of racketeering activity 18 USC 1343 wire fraud and Bank of Oklahoma, Bank of America and Texas Commerce Bank in Violation of 18 1962 (a) in receiving funds every month from USBI (enterprise). Bank of Oklahoma, Chase Bank of Texas, Bank of America are enterprises in Violation of 18 USC 1961 (1) (b) 1956 (a) (1) (b) (i) referencing Bank of America letter in Exhibit-21, Bank of Oklahoma letter in Exhibit-22 and Texas Commerce Bank a.k.a. Chase Bank of Texas Cause of Action

33

*Account-23 in the concealment of BFIC lockbox bank accounts and BFIC corporate Bank account at Bank of America. Plaintiff alleges in the concealment of Bank Accounts Defendants Banks were promoting carrying on of specific unlawful activity of mail fraud and wire fraud of USBI which is in violation of 18 USC 1956 (a) (1) (A) (i). Plaintiff alleges concealment of bank accounts Defendants Banks was also violation of 18 USC (a) (1) (b) (ii) to avoid transaction reporting requirements by state and Federal Law and Plaintiff alleges violation State and Federal reporting requirements led Defendants into the violation of 18 USC 1956 (a) (1) (A) (ii) with intent to engage in conduct constituting a violation of section 7210 or 7206 of the Internal Revenue Code of 1986(invade or defeat taxes). Defendant Banks concealment of BFIC Bank Accounts is in the conspiracy violation 18 USC 1962 (d) with MCI-WorldCom, USBI, and SSC. Plaintiff alleges BFIC Ex-board receiving moneys every month was in Violation 18 USC 1962 (a) and Plaintiff alleges Defendants Organizations and Individuals are in violation 18 USC 1962 (a) for receiving moneys every month from BFIC Ex-board Members. Plaintiff alleges the intentional concealment of revenues by all Defendants is in the Conspiracy violation of 18 USC 1962 (d). Plaintiff alleges the intentional concealment of revenues by SSC, MCI-WorldCom, USBI, BFIC Ex-board members and Defendants organization and individual Linda Mahdi, Ralph Burni, Martha Taylor, Jameel Mahdi is violation of the same four Accounts of Money laundering as Defendants Banks under 18 USC 1956 (a) (1) (A) (i) and (ii) and (a) (1) (b) (i) and (ii). Money laundering Plaintiff alleges damages of $400 million dollars and Plaintiff is seeking treble damages of $1.2 billion dollars.*

**(4v)** Plaintiff alleges MCI-WorldCom as enterprise is the wholesale carrier shown in paragraph (150) with IXC as switchless reseller (enterprise) for the diversion of BFIC customers through BFIC Ex-board Members and USBI (as enterprise) for the billing and collecting of BFIC customer's monthly long distance bills and Bank of Oklahoma, Bank of America, and Texas Commerce Bank are enterprises in receiving moneys every

34

month from USBI. Plaintiff alleges IXC document dated September 12, 1999 Exhibits-52 is showing 31, 244 BFIC customer's long distance calls for two days generating wholesale revenues of $215,721 dollars, Exhibit-56 IXC document dated September 17, 1996 is showing an additional 73, 569 BFIC customer's being processed and switched to BFIC/IXC network and Exhibit-7 IXC document dated December 17, 1996 is showing additional 46,242 BFIC customers being processed with the combine total of 151,055 BFIC customers process by IXC and billed by USBI at approximately $115 per month per customers' monthly long distance, which is approximately $17 million dollars per month in revenues being diverted by IXC and USBI through BFIC Ex-board Members base on these three documented Exhibits verified by all defendants. The document represents only two months of BFIC Ex-board member's relationship with IXC whereas Plaintiff had no knowledge of contractual relationship with IXC. Plaintiff alleges Exhibit 12, 12B and 12C is showing IXC processing BFIC in 1997 and September 25, 1998 which is 2 years of processing BFIC customers after IXC documents showing 103,000 BFIC customers processed in one month September 1996 and 46,344 processed in one day December 17, 1996. (One month and one day is 151,055 BFIC customers). (See Cause of Action Account-12 and 22, 21 and 20 in this order). Plaintiff alleges prior to April 1996 IXC did not have any customers and Plaintiff is alleging all of IXC Communication customers and revenues were generated from BFIC diverted customers.

(A) Plaintiff alleges and incorporates by reference paragraph (150) IXC pattern of Racketeering Activity wire fraud and incorporates allegation and the same pattern of Racketeering activity and Rico Act violation with the same Defendants in paragraph (4u) (C) other than SSC. Plaintiff is alleging damages of $700 million dollars and Plaintiff is seeking treble damages under Rico Act of $2.1 billion dollars.

(4w) Plaintiff alleges MCI-WorldCom (enterprise) as wholesale carriers, IXCLD as Reseller (enterprise) for the diversion of BFIC customers, MCI-WorldCom/DCA and MCI-WorldCom/Oan Plus Billing Companies (enterprises) for the billing of BFIC diverted customers and Bank of Oklahoma, and Texas Commerce Bank

35

(as enterprises) for the collection of BFIC diverted Customers monthly long distance payments every month. PricewaterhouseCoopers Report Exhibit-46 page two section d) on IXCLD data submitted to American Arbitration Association verified 41,000 BFIC customers being process in September 1996 which verifies IXCLD discovery document #004311 and 004312 Exhibit-18C which is showing 39,000 BFIC customers process in the Month of September 1996, which is approximately $5 million dollars per month in revenues received by IXCLD and BFIC Ex Board Members and Plaintiff was invoice in fraudulent Name Building Futures In Communication for 979 BFIC Customers' for $141,000 dollars. Plaintiff alleges PricewaterhouseCoopers Exhibit-46 (page two section 2 a) and four independent consultants' reports verified during BFIC/IXCLD five month relationship IXCLD processed 217,413 BFIC customers generating approximately $25 million dollars per month, which is approximately $1 billion dollars in revenues from August 1996 to present.

    (A) Plaintiff alleges the mailing of fraudulent invoices by IXCLD and USBI shown paragraph (153) and MCI-WorldCom mailing of 208,893 BFIC customers shown paragraph (156) establishes a pattern of racketeering activity under 18 USC 1961(1) (b) 1341 relating to mail fraud.

    (B) Plaintiff alleges and incorporates by reference paragraph (148) (147) and (152) IXCLD pattern of racketeering Activity wire fraud and incorporates allegation and the same pattern of racketeering activity and Rio Act Violation with same defendants in paragraph (4u) (C) other than SSC. Plaintiff is alleging damages of $5 billion dollars and Plaintiff is seeking treble damages of $15 billion dollars. Plaintiff had included damages from the damages from paragraph (152) referencing USBI billing of IXCLD customers in paragraph (4x).

**(4x)** Plaintiff alleges Subpoena Customers data of USBI customers billed on behalf of IXCLD submitted by USBI to the American Arbitration Association showed 427,000 customers that Plaintiff alleged was all BFIC customers with 8 Muslims last names (Muhammad, Ali, Ahmed, Ahmad, Abdullah, Al-, Abdul-, and Khan

from BFIC customers database from New York, Illinois, Michigan, Washington DC, Texas and California). Thompson Coburn Plaintiff's Attorney working on behalf MCI-WorldCom lied to Plaintiff by stating that 427,000 IXCLD customers submitted by USBI match only 2,000 customers from BFIC customers database of 5 million Muslim names. When Plaintiff requested USBI/IXCLD 427,000 customers data file to compare the data himself, Thompson Coburn sent Plaintiff a corrupt file whereas Plaintiff could not open file for comparison. Thompson Coburn and USBI refuse to send Plaintiff an uncorrupted file. Plaintiff was unable to get the American Arbitration Association Panel Members to make Defendants Comply to sending Plaintiff the IXCLD customer file. Plaintiff alleges Levi, Ray & Shoup would not send Plaintiff customers data file nor give their results Levi, Ray $ Shoup data analysis based on instruction from Thompson Coburn. Plaintiff alleges USBI/IXCLD 427,000 BFIC diverted customers were generating approximately $50 million dollars per month in revenues totaling $1.8 billion dollars from August 1996 to present. Plaintiff alleges damages are included in paragraph (4w) damages.

(4y) Plaintiff alleges GTE and USBI invoice Plaintiff in fraudulent name B.F.I.C. shown in Exhibit-I. USBI data is showing 27,389 BFIC customers monthly long distance bills averaging $4 per month per customers in long distance. Plaintiff alleges GTE invoice Plaintiff in fraudulent Name B.F.I.C. for 100,000 calls for one month with 95,000 of those calls were below .25 cents. Plaintiff alleges GTE and BFIC Ex-board Members without reason will make-up fraudulent invoice to Plaintiff. Plaintiff alleges GTE diverted over 200,000 BFIC Customers billing at approximately $25 million dollars per month from August 1996 to present.

    (A) Plaintiff alleges Bank of Oklahoma, Bank of America, Texas Commerce Bank, GTE, USBI, BFIC Ex-board Members, Defendants Organization and Individual mention in paragraph (4u) (C) are Violation of the same racketeering violation referencing the receipt of approximately $25 million dollars per month in wire transfers in paragraph (151) Plaintiff alleges and incorporate by reference paragraph (157) establish a pattern of racketeering activity under 18 USC 1961 (1) (b) 1341 relating

to mail fraud.). Plaintiff alleges damages of approximately $860 million dollars and Plaintiff is seeking treble damages $2.5 billion dollars.

**(B)** Plaintiff alleges IXC, SSC, GTE and IXCLD did not have any customers prior to the BFIC and IXCLD relationship April 19, 1996. IXCLD, SSC, GTE, IXC all generated over $200 million dollars by year ending 1996 with a combine total of over $800 million dollars in revenues. Plaintiff alleges verification of five Consultants and documents showing of 1 million BFIC customers processed by IXCLD, IXC, GTE, and GTE and **BFIC Corporate Tax Return and BFIC Financial Statement and invoices are showing 979 BFIC customers processed in 1996 with revenues of $1 million dollars whereas IXCLD, SSC, GTE, IXCLD processing BFIC customers each individual Defendants generated over $200 million dollars by year ending 1996 and did not have a single customers prior to BFIC and IXCLD contract signing in April 1996.**

## RICO CASE STATEMENT

1. Violation of 18 U.S.C. 1962 (a) and (d)

2. Plaintiff alleges and incorporates by reference allegation in paragraph (4u) Defendant SSC. Plaintiff alleges and incorporates by reference allegation in paragraph (4v) for Defendant IXC. Plaintiff alleges and incorporates by reference allegation in paragraph (4w) and (4x) Defendant IXCLD. Plaintiff alleges and incorporates by reference allegation in paragraph (4Y) for Defendant GTE all enterprises for the diversion of BFIC Customer. Plaintiff alleges UBSI as enterprise contracted for the billing and collection of monthly long distance payments of BFIC diverted Customers. Plaintiff alleges Bank of Oklahoma concealment of BFIC Bank Accounts shown in Cause of Action Account-26, Texas Commerce Bank concealment BFIC lockbox bank account shown in Cause of Action Account-23, Union Bank of California concealment on Bank

1

2

3   Account shown in Cause of Action Account-27, City National Bank Cause of Action Account-70 and Bank of

4   America Concealment of bank account shown in Cause of Action Account-28.

5   3. Plaintiff alleges Defendant Organizations and Individual listed in the heading of this complaint intentional

6   concealment of revenues and bank accounts revenues was withdrawn.  Plaintiff alleges misconduct San Diego

7   Superior Court, District Attorney Office and San Diego Probation Department and Dr. Katherine DiFranseca

8   (See Cause of Action Account-58) Defendants in Cause of Action-27, 33 through 57 and Cause of Action –

9   62.

10  4. Plaintiff alleges Cause of Action Accounts- 1 through 69 Malicious Prosecution, false imprison, attempted

11  murder, defrauded, slander, and emotion stress.

12  5. Plaintiff alleges and incorporates by reference all allegations in paragraph (4u) (4v) (4w) (4x) (4y), Cause

13  of Action Account-68 and 69 and Cause of Action Account-64 through 67.

14      5d. None

15      5e. No

16      5f. MCI-WorldCom (enterprise) as the underline carrier for enterprises SSC, IXCLD, GTE, IXC diversion of

17  customers and revenues. USBI was the billing enterprise for the billing and collecting of BFIC diverted

18  Customers monthly long distance bills with Tri-party agreement shown in paragraph (148) and wire transfers

19  of funds every month to Defendant Banks on behalf of MCI-WorldCom as wholesaler and GTE, SSC, IXC,

20  and IXCLD as resellers and balance of funds to BFIC Ex-board Members on behalf BFIC.

21      Plaintiff IXCLD, MCI-WorldCom and GTE all wholesale invoice Plaintiff in fraudulent Name Building

22  Future in Communication for total of 2,000 BFIC customers billing a total of  $1.5 million dollars for the total

23  billing period and USBI retail Plaintiff in fraudulent Name B.F.I.C. $1.5 million dollars showing no-profit for

24  B.F.I.C. and Plaintiff. UBSI and invoice BFIC Ex-board Members for 40,955 BFIC customers and collected

25  $25 million dollars on behalf of IXCLD, GTE and MCI-WorldCom for the same billing period month

26

27

28
                                        39

according to five consultants report on USBI/BFIC customer data. IXC, SSC, IXCLD and BFIC Ex-board Members Merge as one 21 days after corrupts ruling of American Arbitration Association. Plaintiff alleges Cause of Action Account-14, 15, 16, 17, 19, and 20 shows Defendants IXCLD, MCI-WorldCom, BFIC Ex-board Members, IXC and SSC working together as one.

(5fa) Plaintiff alleges billing through any other billing Company other than USBI, MCI-WorldCom and resellers lose the luxury and security of Local Bells (PacBell and others) disconnecting BFIC customers local phone bill for non-payment of monthly long distance bill. Plaintiff alleges in Exhibit-15 MCI-WorldCom fraudulent billing relationship IXCLD and BFIC Ex-board Members are independent of USBI and the Local Bells. Plaintiff MCI-WorldCom- DCA and Oan Plus (own by MCI-WorldCom) were enterprises billing BFIC customers every month  requesting BFIC customers to send monthly payments to Lock-box bank accounts at Bank of Oklahoma and Texas Commerce Bank whereas Banks are collecting monthly payments for the security of MCI-WorldCom monthly wholesale invoice cost. Clearly showing MCI-WorldCom financing resellers. (Bank of Oklahoma and MCI-WorldCom-Wiltel are based in Tulsa Oklahoma see cause of Action Account-26 showing six fraudulent BFIC accounts)  (GTE, IXCLD, IXC, and USBI are based in Texas. See Cause of Action Account-23 for conceals lockbox bank Account). See paragraph (4u) SCC for pattern of Racketeering activity for all enterprises.

6. (a) MCI-WorldCom a corporation (b) wholesale carrier for IXC, SSC, GTE, IXCLD and BFIC for processing of over 1 million BFIC customers through the Local Bells to be switch over to MCI-WorldCom switch network for long distance calling nationally and international. MCI-WorldCom was also the Billing Company for portion of BFIC diverted Customers (See Exhibit-15 and 13) (c) Bernie Ebbers Chairman and CEO, Robert Brejcha Vice President and Regional Director, Gary Fry account manager. (d)? (d) MCI-WorldCom is the enterprise. (f) MCI-WorldCom are perpetrators.

6. (a) USBI a corporation (b) USBI was the billing company for BFIC diverted customers on behalf IXC,

40

SSC, GTE, MCI-WorldCom, BFIC for approximately $ 80 million dollars per month for 40 months. (c) Alan Saltzman (President) Patty Meznarich Vice President (d)? (e) USBI is enterprise as billing agent. (f) USBI perpetrators.

6. (a) IXC is corporation, IXCLD is corporation and SCC is LLC, and GTE corporation (b) Switchless resellers market and obtain customers and process those customers through MCI-WorldCom network and to bill customers through USBI. Defendants diverted BFIC customers. (c) BFIC Ex-board Members are directors, Jim Fleming and Ralph Sweat officer and directors of IXC, IXCLD and SSC. (d) BFIC Ex-board Members are directors of IXC, IXCLD and SSC. (e) Defendants are enterprise. (f) Defendants are perpetrators.

6. Bank of Oklahoma, Chase bank of Texas, Bank of America, Union bank of California and City Nation Bank are all corporation (b) Financial Institution (c) McCall CEO of Bank of America and Pat Bromely Branch manager. Bank of Oklahoma employees Alan Aaron, Andrea Martin. Union Bank Branch manager Greg Farnsworth. Chase bank of Texas Jim Patterson employee. (d) Defendants Banks are the enterprise. (f) Defendants banks Perpetrators.

7.Plaintiff is alleges the racketeering activities are separate for the enterprise. MCI-WorldCom and USBI billing and collecting of Mail fraud scheme BFIC customers every month and the wire transfer of the moneys every month for 40 months.  Defendants mailing of fraudulent invoices and bank statements. The Defendants banks in receipt of monthly payments from Lockbox Bank accounts and bank accounts accepting wire transferred and BFIC Ex-board members, IXCLD, IXC, GTE and SSC and Defendants banks concealment of bank accounts and revenues. Mail fraud, Wire fraud and Money laundering is separate from enterprise.

8. Racketeering activity mailing fraudulent invoices, mailing fraudulent telephone bills, wire transfer of fraudulent moneys and concealing bank accounts may be the daily activities of Defendants.

9. Plaintiff alleges enterprises receive approximately $100 million dollars per month.

41

10. Enterprises have not paid taxes of approximately $100 million dollars per month in taxable revenues for the last 40 months.

11. See paragraph (4u) and (4v)

12.

13.

14. See Cause of Action Account- (4u) and (4v)

15. SSC, IXC, IXCLD and GTE according to consultants report process approximately 980,000 BFI customers from April 1996 to December 1996. Plaintiff alleges Defendant resellers all generated over $200 million dollars individually by December year ending 1996. Plaintiff alleges the records will show none of Defendants resellers had any customers prior to April 1996. B.F.I.C. is Bankrupt while BFIC Ex-board Members are operating BFIC within IXC Network Services Inc established December 19, 1998 and MCI-WorldCom as underline carriers with Defendants banks concealing BFIC corporate bank accounts.

16. See paragraph (12)

17. See damages Cause of Action Account-68 and (10) through (10d)

18. See Cause of Action Accounts-1 through 7 Cause of Action Account-14 through 20, Cause of Action Account-49 through 54.

19. None

20.

42

Formation and Operation of the conspiracy is established by specifically alleging facts showing the conspirators knowing entered an agreement to do wrongful acts. It does not matter at what time each defendants joined the conspiracy, each is party to every act previous or subsequently done by any of the others pursuant to the Conspiracy [De Vries v. Brumback (1960 53 Cal. 2d 643, 648, 2 Cal. Rptr. 764, 349 P. 2d 532]. Plaintiff alleges the end of Formation and Operation of Conspiracy with Rico Violations, as part the agreement to do wrongful acts in Conspiracy.

### Attorneys Knowledge of Malicious Prosecution

(4z) Plaintiff alleges Attorneys willfully knowledge of Malicious Prosecution and fraud shown Attachment Z.

### Torts and Civil wrong

(5) Plaintiff alleges Cause of Action Accounts 1, 3, 5, 7, 9, 10, 23 thru 38 alleges the facts constituting the tort and other civil wrong committed by defendants and the injury caused thereby Plaintiff.

### Acts Pursuant Conspiracy

(6) Plaintiff alleges Defendants did the acts and things herein alleged pursuant and furtherance of the Conspiracy and above alleged agreement Referencing Cause of Action Accounts 1 thru 9, 14 through 17 thru 26.

### Defendants Aiding in Conspiracy

(7) Plaintiff alleges Defendants furthered the Conspiracy by cooperation with or lent aid and encouragement to ratified and adopted the acts of IXCLD referencing Cause of Action Accounts 33 thru 63.

### LAST Overt Act of Conspiracy Violation Rico Act

Plaintiff alleges Bank of Oklahoma Exhibit-22 and Bank of America Exhibit-21 letter dated September 27, 1999 was the Last Overt Act in the Conspiracy Rico Act Violation by Bank of America and Bank of Oklahoma in furtherance of the Conspiracy Mail Fraud, Wire Fraud and Money Laundering in Violation of

43

18 USC 1962 (a) and (d). (See Cause of Action Account-64 through 67 money laundering and violation of 18 USC 1962 (a) and (d)).

### Last Overt Act Malicious Prosecution and fraud

(8) Plaintiff is informed and Believes and thereon alleges that the Last Overt Act in pursuance of the above described conspiracy of Malicious Prosecution and Fraud occurred on about February 17, 2000 on which date San Diego Superior Judge Davidson, San District Attorney Office, San Probation Office and Dr. Katherine DiFranseca declare that Plaintiff was suffering from a Delusional Disorder in his claim of Conspiracy forgery and fraud of conceal Bank Account with Bank of America shown in Exhibit-21and Bank of Oklahoma Exhibit-22 letters to San Diego Superior Court denying the existence of BFIC corporate Bank Accounts whereas Plaintiff is alleging approximately $75 million dollars per month for 42 months were diverted by BFIC Ex-board Members. (See Cause of Action Accounts- 58)

(9) The Violation 8, 14, and 16 Amendment of the Constitution and 42 USCS 1895 (See Cause of Action Account-52 for 8 Amendment, for 14 Amendment Accounts-14 through 19, 49, 50, 51, 56 and for 42 USCS 1895 Accounts 2, 4, 6, 7, and 9. Violation of 18 USCS 371-80 Cause of Action Accounts 1, 3 and 5.

### Statue of Limitation on All Charges (9a – 9e)

(9a) Plaintiff alleges the statue of Limitation on Malicious Prosecution In Cause of Action Accounts 1 through 70 are within the two year statue limitations filing period. Plaintiff was sued maliciously by IXCLD for $40 million dollars and Claim against Plaintiff was denied November 23, 1998 in which Plaintiff is within statue.

(9b) Plaintiff alleges the Malicious Prosecution of Plaintiff by Linda Mahdi in criminal matter was in furtherance the Malicious Prosecution IXCLD, MCI-WorldCom and BFIC Ex-board Members whereas Plaintiff was found not guilty of Attempted murder Charge October 17, 1999 and release from custody February 16, 2000. In furtherance of Malicious Prosecution the Next day February 17, 2000 Plaintiff was

1

2

falsely arrested for violation of 5 year Probation and after 40 days in jail Plaintiff was found not guilty.

3

Plaintiff alleges the Malicious Prosecution by Linda Mahdi false imprisonment Plaintiff for year causing a

4

delay in Plaintiff filing this complaint. See Cause Action Account 48 through 62.

5

(9e) Plaintiff alleges the Violation of 8, 14 and 16 Amendment of the Constitution were in July 1998 and

6

1999 within is within three years after of last Overt Act.

7

8                                                    **Damages**

9     (10) Plaintiff alleges according to PricewaterhouseCoopers data analysis of 217,413 BFIC customers average

10    monthly long distance telephone bill of $115 per month which total to be approximately $25 million dollars

11    per month for 40 months = $1 billion dollars in damages. Plaintiff alleges USBI Verification of 427,000

12    IXCLD customers that Plaintiff alleges are BFIC Customers averaging approximately $50 million dollars per

13    month in revenues totaling $2 billion dollars. Plaintiff alleges damages $3 billion dollars.

14    (10a) Plaintiff is alleging IXC Communication, Inc Exhibits 7, 52, and 56 showing 150,055 BFIC diverted

15    customers generating $17.3 million dollars per month for 40 months is approximately $700 million dollars in

16    loss revenues from August 1996 to present.

17

18    (10b) Plaintiff alleges Switch Services Communication 88,219 BFIC customers verified by four Consultants

19    report generating approximately $10 million dollars per month for August 1996 to present totaling

20    approximately $400 million dollars in damages.

21    (10c) Plaintiff alleges GTE bill approximately 200,000 BFIC customers generating $22 million dollars a

22    month from August 1996 to present totaling approximately $860 million in damages.

23    (10d) As approximate result of the wrongful acts herein alleged Plaintiff has been generally damages loss of

24    revenues approximately $5 billion dollars financially from IXCLD, SSC, IXC, and GTE, total damages

25    combine.

26

27
                                                      45
28

(11) Plaintiffs here and in subsequent paragraphs specifically set forth on which Plaintiff's claim for special damages is base. Cause of Action Accounts 1 through 63.

(12) In doing the things herein alleged, Defendants acted out of hatred rooted in evil invoicing Plaintiff for a total of $477,874 whereas Plaintiff receive only $334,317 dollars (see funded amount in USBI Exhibit-II summary billing report). IXCLD invoice to Plaintiff total $447,179 Plaintiff only received $334,317 from USBI which means Plaintiff was minus $22,600 per month. IXCLD processed over 217,000 BFIC customers and Plaintiff loss $22,600 per month with a total billing of $447,824 for five billing period. Plaintiff was Maliciously sued by IXCLD, Linda Mahdi and Defendants. Also See Cause of Action Account 48 referencing motives of Malice.

Defendants willfully and with the intent to cause injury to Plaintiff are therefore guilty of Malicious Prosecution and fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

WHEREFORE, Plaintiff prays judgment against defendants and each of them as follows:

1. For general damages $5 billion dollars

2. Treble Damages of $15 billon dollars

3. For punitive damages

4. For cost of suit herein incurred; and

5. For such other and further relief as the Court may deem proper.

46

By: _[signature]_

_____

Plaintiff in Pro Per


VERIFICATION


I, Abuwi Mahdi, am the Plaintiff in the above-entitled action, I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are therein alleged on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.


_[date]_ Date


_[signature]_

47

1

2

3                              Cause of Action Account 1

4    MCI-World-Com, IXCLD, Bank of America and BFIC Ex-board Members In Violation 18 USCS 371-80

5    Corrupting IRS Agents

6

7    (13) Plaintiff alleges MCI-WorldCom, IXCLD, Bank of America and BFIC Ex-board Members deprive

8    United States of its lawful governmental function by corrupting Internal Revenue Service Agents Connie

9    Adams, Elissa Emil and Jerry O'Grady of West Coast Taxpayer Advocate Office of their performance of

10   duties which is defrauding within predecessor to 18 USCS 371 making it a criminal offense to conspire to

11   defraud United States in any manner or for any purpose. Plaintiff alleges Defendants corrupted IRS agents in

12   an attempt to invade paying taxes on revenues that all Defendants have conspired in concealing. Plaintiff

13   alleges IRS audit of BFIC would reveal a Conspiracy of Malicious Prosecution, mail fraud, wire fraud, money

14   laundering and Conspiracy to defraud United States of $4.7 billion dollars.

15   (14) Plaintiff alleges on or about June 1999 the submission to Taxpayer Advocate Office Exhibit-J and

16   Exhibit-FF whereas both documents were prepared Nick Oliva of Nick Oliva and Associates Accounting

17   Firm who was a BFIC Ex-board Member and BFIC Corporate Accountant. Plaintiff alleges Exhibit-J and

18   Exhibit-FF is showing $513,317 dollars as a paid expense for 1996 Telephone Carrier Cost representing the

19   wholesale cost for BFIC'S only three carriers for 1996, shown in the following Exhibits; Exhibit-19A IXCLD

20   1996 invoice cost of  $256,363, dollars Exhibit-17C MCI-WorldCom-Wiltel carrier invoice cost of $167,000

21   dollars and Exhibit-19, GTE carrier cost of $91,000 dollars.  All three invoices combined total is $514,000

22   dollars verifying the $513,307 Telephone Carrier Cost paid expense in Exhibit-FF and Exhibit-J. **Clear**

23   **argument showing that BFIC's 1996 invoices for IXCLD and MCI-WorldCom were paid and IXCLD**

24   **sued fraudulent illegal entity B.F.I.C. and Plaintiff for $40 million dollars for non-payments of $256,363**

25   **shown in Exhibit-19A was "without probable cause".**  Plaintiff alleges IXCLD suing for $40 million

26

27                                          48

28

without probable cause is reasonable motive corrupted IRS Agents. Plaintiff alleges Abuse of Legal Process by MCI-WorldCom in suing Plaintiff for $167,000 dollars for default payment without probable cause is good motive to corrupt IRS Agents. Plaintiff alleges Exhibit-17A three MCI-WorldCom invoice payments of $74,000 by wire transfers and Exhibit-17L $101,000 BFIC invoice checks payments to MCI-WorldCom from BFIC conceal bank accounts verifies MCI-WorldCom received invoice payments of $167,000 dollars shown in Exhibit-FF and Exhibit-J Telephone Carriers Cost paid expense for 1996. Plaintiff alleges PricewaterhouseCoopers and four Independent Consultants verification of USBI/BFIC customer billed data is showing USBI billing 13,566 BFIC customers and collecting $1.4 million dollars per month on behalf BFIC, IXCLD and MCI-WorldCom from August 1996 to December 1996 totaling $7 million dollars for 1996. Plaintiff alleges clear argument that IXCLD and MCI-WorldCom received invoice payments shown in Exhibit-FF and Exhibit-J and the $7 million dollars in revenues collected by USBI is verification to IRS agents that BFIC Ex-board Members filed fraudulent tax returns of one million dollars for 1996.

(15) Plaintiff alleges Exhibit-FF and Exhibit-J is showing an approximate $1 million dollars in total revenues for 1996. Plaintiff submitted the only two BFIC 1996 bank accounts to the Taxpayer Advocate Office, Exhibit-85 B.F.I. Communication Bank of America's bank statements for 1996 and Exhibit-86 BFIC, Inc Union Bank Statements for 1996 showing both accounts combined total deposits were only $450,000 dollars. **The $513,307 Telephone Carrier cost was not withdrawn from Exhibit-85 and Exhibit-86 Bank Accounts, which clearly indicates $513,307 dollars for IXCLD and MCI-WorldCom invoice payments were withdrawn from a concealed BFIC corporate Bank Account.**

(16) Plaintiff alleges and incorporates by reference paragraph (4b) of this Complaint showing Bank of America concealed BFIC corporate Bank Account and $750,000 in taxable revenues from a Personal Bank Account open in Plaintiff name without Plaintiff knowledge. Plaintiff alleges the intentional concealment of tax fraud is a motive for Bank of America's corruption of IRS agents.

49

1

2

3
(17) Plaintiff alleges the submission to Taxpayer Advocate Office PricewaterhouseCoopers Exhibit-46 and

4
four independent Consultant reports showing 208,893 customers **generating $25 million dollars per month**

5
**from August 1996 to present** based on USBI billing 8,520 customers at $965,863 per month averaging

6
approximately $115 per month per customers. **Plaintiff alleges in addition the submission of IXC**

7
**Communication, Inc documents Exhibits 7, 52 and 56 showing IXC processing 151,055 BFIC customers**

8
**generating approximately $17 million dollars per month from September 1996 to present.**

9
(18) Plaintiff alleges **PricewaterhouseCoopers the largest and most creditable Accounting Firm in the**

10
**world and four independent consultant verifying approximately 32 million dollars per month in**

11
**revenues and IRS Agents under the influence of MCI-WorldCom and looking at Exhibit-J BFIC 1996**

12
**tax returns showing $1 million dollars in revenues and states BFIC owes no taxes for 1996, 1997 or**

13
**1998.**

14
(19) Plaintiff alleges BFIC customers monthly revenues were diverted and wired transferred every month

15
through 8 Fraudulent unauthorized conceal Bank Accounts establish by BFIC Ex-board Members shown in

16
Cause of Action Account 23 through 28. Plaintiff alleges Cause of Action Account-68 wire transfers with

17
documentation just ignored and Plaintiff alleges conceal bank accounts and Account numbers were submitted

18
to Taxpayer Office and IRS Agents claim BFIC do not owe any taxes. Plaintiff submitted to taxpayer

19
Advocate Office BFIC Ex-board Members and Linda Mahdi Social security numbers and IRS agents is

20

21
claiming no tax fraud.

22
(20) **Plaintiff did not file Personal income taxes from 1993 to present. The Taxpayer office to keep from**

23
**during an audit which will reveal Defendants fraud, stated neither Plaintiff nor BFIC, Inc owe any**

24
**taxes.** Plaintiff alleges corruption of IRS Agents was violation of 18 USCS 371-80 in furtherance of

25
Malicious Prosecution by Linda Mahdi in furtherance Malicious Prosecution by IXCLD concealing the

26
Conspiracy violation of 18 USCA 1956 (a) (1) (b) (i) and (ii) money laundering in receiving moneys by

27

50

28

1

2

fraudulent wire transfers and the concealment or disguise the nature, location of the source and to avoid

3

transaction reporting requirements under State and Federal Law of BFIC Bank Accounts, violation 18 USCS

4

1956 (a) (1) (A) (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the

5

internal Revenue Code of 1986. Clearly showing the Conspiracy to defraud United States in the corruption of

6

IRS Agents has Cause damages to Plaintiff of approximately $5 billion dollars.

7

8

9                              Cause of Action Account 2

10

11         BFIC Ex-board Members, MCI-WorldCom, IXCLD, and Bank of

12         America violation (3) 42 USCS 1985 (3)

13

14   (21) Plaintiff alleges Conspiracy to Interfere with Civil Rights (3) If two or more persons for the purpose of

15   depriving, either directly or indirectly in violation of the Equal Protection of the Laws or for the purpose of

16   depriving or hindering the constituted Authorities of any State or territory from giving or securing to any

17   person within such state or territory the Equal Protection of the Laws.

18   Plaintiff alleges This Cause of Action Account incorporates by reference all allegation of the Cause of Action

19   Account 1 whereas BFIC Ex-board Members, MCI-WorldCom, IXCLD and Bank of America corruption of

20   IRS Agents violated Plaintiff civil rights under 42 USC 1985 (3) Equal Protection under the Law causing

21

22   damages to Plaintiff of approximately $5 billion dollars.

23

24

25

26

27
                                               51
28

1

2

Cause of Action Account 3

3

MCI-WorldCom, IXCLD, Bank of America and BFIC Ex-board Members in Violation 18 USC 371-80

4

Corrupting US Treasurer Officers.

5

6

7    (22) Plaintiff alleges and incorporates by reference all allegation of Cause of Action Account-1, Cause

8    Action Account 64 through 66 relating to Money laundering and Account 29 and 35 relating to Tax fraud

9    were submitted to Agent Lysek of the San US Treasury Office in January 1999. Plaintiff submitted Exhibit-93

10   Rico Statements and Agent Lysek made reference to the fact that if Defendants did pay taxes on the revenues

11   it still will be tax fraud because moneys were obtain fraudulently. Either way the Defendants would be

12   prosecuted. Plaintiff submitted BFIC Ex-board Members Social Security Numbers referencing their income

13   for 1995 and 1996 whereas Agent Lysek could obtain records immediately. Agent Lysek inform Plaintiff that

14   the matter was under investigation and he could not discuss or give Plaintiff a status report. One year and two

15   months later Plaintiff discover in his submission of documents again to US Treasurer Office in April of 2000

16   to another Agent inform Plaintiff that there was never an investigation open on BFIC Complaint. Plaintiff

17   alleges that Plaintiff family (Linda Mahdi (wife), Niamah and Talib Mahdi (children's) and Defendants are

18   the only American who do not have to pay taxes. Plaintiff alleges US Treasurer Officers are under the

19   influence and corruption of MCI-WorldCom, IXCLD and Bank of America BFIC Ex-board Members causing

20   damages of approximately $5 billion dollars.

21

22

23

24

25

26

27

28

52

1

2

<center>Cause of Action Account 4</center>

3

4

BFIC Ex-board Members, MCI-WorldCom, IXCLD, and Bank of America violation 42 USC 1985

5

6

7  (23) Plaintiff alleges This Cause of Action Account incorporates by reference all allegation referencing of the

8  Cause of Action Account 3 whereas BFIC Ex-board Members, MCI-WorldCom, IXCLD and Bank of

9  America corruption of US Treasurer Agents violated Plaintiff civil rights under 42 USC 1985 (3) Equal

10  Protection under the Law causing damages to Plaintiff of approximately $5 billion dollars.

11

12  <center>Cause of Action Account 5</center>

13

14

MCI-WorldCom, IXCLD, Bank of America and BFIC Ex-board Members

15

in Violation 18 USCS 371-80 Corrupting of FBI Agents

16

17

18  (24) Plaintiff alleges and incorporates by reference all allegations referencing Cause of Action Account 67

19  relating Wire Fraud was in submission of documents to the San Diego FBI Office. Plaintiff submitted

20  additional evidence of Forgery and fraud with Bank Officials incorporated by reference in all Allegations in

21  Cause of Action Account 23 through 38. Plaintiff alleges December 1997 The FBI Agent induced Plaintiff

22  through reliance to believe that they would investigate but after a one year fail in their duty to investigate.

23  Plaintiff alleges December 1998 submitting documentation of fraud and submitting additional documents by

24  Mail to Agent Owens in April 1999 whereas Agent Owens set appointment with Plaintiff but failed to keep

25  appointment. Plaintiff alleges March of 1999 the submission of document evidence FBI Office of Mail Fraud,

26  wire fraud, Money laundering in the concealment of Bank accounts, which is a serious crimes. Exhibit-93

27

<center>53</center>

28

Rico Statements showing Money laundering is 18 USCS 1956 (a) (1)(A)(i) or (ii) or (B)(i) or (ii) relating to Money Laundering states that it is criminal offense Promoting Carrying on of Specific unlawful Activity or the intent to engage in Constituting violation section 7201 or 7202 Internal Revenue Code or to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of unlawful activity of a Bank Account or avoid reporting transaction requirement under State and Federal Law. Money Laundering is a serious crime whereas each month that moneys are received constitutes separate account and the penalty range up to 20 years imprisonment. Plaintiff made a statement to San Diego FBI Office that their Office should remove FB and should be called MCI. Plaintiff alleges in furtherance of the Conspiracy Malicious Prosecution and Fraud San Diego FBI agents created Exhibit-26 fraudulent criminal history of Plaintiff based of Plaintiff finger prints on first page dated 5-3-76 when Plaintiff receive Real Estate License California whereas Finger printing was a requirement. The FBI files indicating all the arrest records without asterisk (*) are verified by Plaintiff a fingerprint, which includes 29 arrest records with Plaintiff using alias names.

Plaintiff alleges FBI officers were corrupted under the influence MCI-WorldCom, BFIC Ex-board Members, IXCLD and Bank of America causing damages of approximately $5 billion dollars.

<center>Cause of Action Account 6</center>

<center>BFIC Ex-board Members, MCI-WorldCom, IXCLD, and Bank of
America violation 42 USC 1985</center>

(25) Plaintiff alleges This Cause of Action Account incorporates by reference all allegation referencing of the Cause of Action Account 5 whereas BFIC Ex-board Members, MCI-WorldCom, IXCLD and Bank of America corruption of FBI Agents violated Plaintiff civil rights under 42 USC 1985 (3) Equal Protection

<center>54</center>

1

2

under the Law causing damages to Plaintiff of approximately $5 billion dollars.

3

4

5                          Cause of Action Account-7

6

7   BFIC Ex-board Members, Linda Mahdi, Talib Mahdi, Jameel Mahdi and Deputy District Attorney Peter

8   Longbauch in Violation of 42 USC 1985

9

10   (26) Plaintiff alleges and incorporates by reference Cause of Action Account-58 and District Attorney Office

11   Statement in paragraph (130) whereas Deputy District Attorney Peter Longbauch failure to Prosecute BFIC

12   Ex-Board Member, Linda Mahdi, Talib Mahdi and Jameel Mahdi for conspiracy of forgery and fraud was a

13   violation of Plaintiff civil rights under 42 USC 1985 Equal Protection under the Law causing damages to

14   Plaintiff of approximately $5 billion.

15

16

17                          Cause of Action Account-8

18        MCI-WorldCom, IXCLD, BFIC Ex-board Members Violation 42 USC 1985

19   (27) Plaintiff alleges and incorporates by reference Cause of Action Account-18 Defendants corruption of

20   American Arbitration Association three panel Judges was a violation of Plaintiff civil rights under 42 USC

21   1985 Equal Protection under the Law causing damages to Plaintiff of approximately $5 billion.

22

23

24

25

26

27

28

1

2

Cause of Action Account-9

3

4

BFIC Ex-board Members, City National Bank and San Diego Police Department violation of 42 USC 1985

5

6

7  (28) Plaintiff alleges on June 25, 2000 reporting fraudulent BFIC Corporate Bank Account at City National

8  Bank to San Diego Police Department, which is approximately 3 blocks from City National Bank in La Jolla.

9  The Police officers took the report and inform Plaintiff that a warrant from the courts for the bank records

10 would have to be obtained. San Diego Police Department contacted Plaintiff indicating that there was no

11 crime. Plaintiff alleges the corruption of San Diego Police officers investigation by BFIC Ex-board Members

12 and City National Bank was a violation of Plaintiff civil rights under 42 USC 1985 Equal Protection Under

13 the law causing damages to Plaintiff of Approximately $5 billion dollars.

14

15

Cause of Action Account 10

16

17

Conspiracy of Malicious Prosecution by BFIC Ex-board Members, IXCLD, and MCI-WorldCom

18

19

20 (29) Plaintiff alleges Exhibit-46 PricewaterhouseCoopers report on page 2 section 2 (a) of IXCD/BFIC

21 customer data submitted by IXCLD to the American Arbitration Association showing 217,413 BFIC

22 customers being process and long distance being switched to BFIC/IXCLD network. Plaintiff alleges and

23 incorporates Paragraph (4f) showing $25 million per month being generated form the diversion BFIC

24 customers.

25 (30) Plaintiff alleges for verification of Consultant Reports showing USBI billing BFIC customers on behalf

26 IXCLD and BFIC Ex-board Members after contract was cancel in December 1996 is Exhibits-62 USBI/

27

28

56

IXCLD/BFIC customers being billed in March 1997 while Plaintiff is being sued by IXCLD. IXCLD sued *Building Future In Communication* and Plaintiff in fraudulent name for $40 million dollars for default payment of $256,363 shown in Fraudulent invoices Exhibit-II and Exhibit-45A. Plaintiff was sued without probable cause. Plaintiff alleges and incorporates by reference paragraph (10) damages of approximately $5 billion dollars.

Cause of Action Account 11

IXCLD, USBI and BFIC Ex-board Members Conspiracy of Malicious Prosecution

(31) Plaintiff alleges Exhibit-46 page 3 PricewaterhouseCoopers and four Independent Consultant report on USBI/BFIC customers data submitted to the American Arbitration Association by USBI which is showing 8,520 BFIC/IXCLD customers' total billing of $965,863 per month totaling $4,829,315 dollars by year ending December 1996. Plaintiff alleges Exhibit-47 is BFIC, IXCLD and USBI Tri-party agreement clearly stating all moneys collected by USBI under BFIC/IXCLD billing code 'MD' is to be wire to IXCLD which pays for BFIC monthly invoices from IXCLD and balance of funds to be wire to BFIC. The Tri-party agreement is security agreements that cannot be amended are modified without the consent of all three parties (see Exhibit-47 page 2 section 5). Plaintiff alleges the agreement was never changed or modified by either party. Plaintiff alleges Patty Meznarich of USBI and Jeff Bender and Jim Fleming of IXCLD conceal BFIC customer's generating $965,863 per month through BFIC Ex-board Members in which IXCLD invoice of $256,363 was paid and Plaintiff was sued Maliciously without probable cause. Plaintiff is alleging damages of approximately $5 billion dollars.

57

1

2

Cause of Action Account 12

3

4

Conspiracy of Malicious Prosecution by IXCLD, IXC Communication and BFIC Ex-board Members

5

6

7   (32) Plaintiff alleges and incorporates by reference paragraph (4s) IXC documents Exhibit-7, 52 and 56

8   showing a total of 151,055 BFIC customers generating approximately $17 million dollars per month and

9   IXCLD, IXC Communication and BFIC Ex-board Members intentional Concealment revenues was in

10   furtherance of the Conspiracy of Malicious Prosecution of Plaintiff.

11   (33) Plaintiff alleges Exhibit-12C IXC Communication, Inc fax dated September 25, 1998 to BFIC Ex-board

12   Members showing a conceal relationship and IXC. Attorney Thomas George lying without thinking trying to

13   conceal IXC and BFIC Ex-board Members fraudulent relationship tell the American Arbitration Association

14   Panel Judges that exhibit-12C is an IXCLD document when IXCLD document Exhibit-H clearly shows

15   IXCLD Online services for processing customer was Disconnected when contract was cancel December 13,

16   1996 therefore how are you able to Process 46,244 customers in Exhibit-7 dated December 17, 1996 four

17   days after disconnection and processing the 800 numbers in Exhibit -12C dated September 25, 1998

18   approximately 2 years after disconnection.   Clear argument of IXCLD furtherance of the Conspiracy of

19   Malicious Prosecution causing damages to Plaintiff of approximately $5 billion dollars.

20

21

22

23

24

25

26

27

28

58

1

2

Cause of Action Account 13

3

4

Conspiracy of Malicious Prosecution by GTE Long Distance, BFIC Ex-board Members,

5

IXCLD and USBI.

6

7

8   (34) Plaintiff alleges USBI/BFIC/GTE billings period begin when IXCLD disconnected BFIC customers and

9   cancel Contract December 13, 1996 and all of the 5,355 BFIC/IXCLD customers were transfer to GTE

10   Network. Plaintiff alleges according to PricewaterhouseCoopers data analysis of USBI 40,955 BFIC

11   customers when match with IXC/BFIC call records in August 1996 there is a total billing $1,089,803 dollars.

12   Plaintiff alleges IXCLD received $909,470 dollars, MCI-WorldCom received $72,151 dollars and GTE

13   received $99,202 for the month of August1996. Plaintiff alleges USBI Exhibit-23 verifying GTE billing with

14   BFIC begin in December 1996 with the cancellation of IXCD and BFIC contract verifying BFIC Ex-board

15   Members fraudulent contractual relationship GTE.

16

17   (34) Plaintiff alleges GTE Executive Rod Davis, Bob Stewart and Dan Glavin and BFIC Ex-board member's

18   diverted approximately 200,000 BFIC customers. Plaintiff alleges GTE return the favor for IXCLD by

19   concealing throughout 1997 IXCLD customers in GTE/BFIC customer's database whereas USBI billing

20   approximately $400,000 per month of revenues on behalf of IXCLD and BFIC Ex-board Members through

21   GTE. Plaintiff alleges Exhibit-I USBI and GTE fraudulent invoice in the name of B.F.I.C. showing GTE

22   invoicing Plaintiff at approximately $5 a month per customer long Distance whereas UBSI is billing 27,389

23   BFIC customers and collecting approximately $4 million dollars per month and GTE is invoicing Plaintiff for

24   $95,000 per month. Plaintiff is alleging GTE furtherance of the Conspiracy causing damages of

25   approximately of $5 billion dollars.

26

27

28

Cause of Action Account 14

MCI-WorldCom, IXCLD and BFIC Ex-board Members in Violation of Conspiracy Due Process of Law under 14 Amendment Constitution and Conspiracy Malicious Prosecution.

(35) Plaintiff alleges firing Attorney Douglas Odem for conspiring with MCI-WorldCom, IXCLD and BFIC Ex-board Members whereas Attorney Odem failed to subpoena any records including the Bank Records and Records from MCI-WorldCom- DCA billing Company (See Exhibit-36 Attorney Odem collusion). Attorney Odem, in eight months did not get any discovery from MCI-WorldCom and never filed counter-claim MCI-WorldCom and Plaintiff paid Attorney Odem $60,000 dollars. Plaintiff replaced Attorney Douglas Odem with Attorney Joseph Rosati of Rosati Law Firm for MCI-WorldCom/Wiltel complaint of $167,000 dollars against BFIC and Attorney Rosati in furtherance of the conspiracy failed to subpoena DCA and Bank records. Plaintiff without knowing hired MCI-WorldCom Attorney Charles Saulisberry, Dean Franklin, Tom Greene and Fernando Bermudez of Thompson Coburn Law Firm out of St. Louis, Mo. to defend Plaintiff against IXCLD $40 million dollars claim and Plaintiff counter- claim of $128 million dollars against IXCLD.

(36) Plaintiff alleges Thompson Coburn working on behalf on MCI-WorldCom with intentional concealment and failure to disclose to Plaintiff that MCI-WorldCom/Wiltel/DCA was a current client of Thompson Coburn as shown in Exhibit-51 letter dated July 28, 1998 (page one). Plaintiff alleges in Exhibit-50 letter from Thompson Coburn dated few months earlier April 6,1997 Thompson Coburn states on page 2 paragraph one last sentence "all records from DCA need to subpoena in Oklahoma City ". Thompson Coburn having knowledge that DCA Billing Company was own by MCI-WorldCom shown Exhibit-3A dated in January 1998 in Thompson Coburn deposition of IXC Executive who was a former Executive at DCA verifying LDDS-WorldCom/ MCI-WorldCom ownership of DCA. Plaintiff as of April 1998 according to Exhibit-50

letter had no knowledge of MCI-WorldCom/DCA as a current client of Thompson Coburn. Clearly showing Plaintiff was induced through reliance to believe that records from DCA were going to be subpoena.

(37) Plaintiff alleges Thompson Coburn working on behalf of MCI-WorldCom states in their letter Exhibit-51 to Plaintiff dated July 28, 1998 "Plaintiff you however thought that IXC may have been billing your end users (BFIC customers) through DCA Billing Company. Exhibit-15 IXCLD discovery document #000639 is clearly showing DCA, IXCLD, and BFIC Ex-board Members fraudulent billing relationship. Plaintiff alleging that the 208,000 BFIC/IXCLD customers according to PricewaterhouseCoopers Exhibit-46 page 2 section 2 a) and four consultants reports was billed through this fraudulent unauthorized billing relationship shown in Exhibit-15. Exhibi-13 is one of 208,000 DCA/IXCLD/BFIC bills mail to BFIC customers and Exhibit-30 IXCLD document #004490 verifying billing problem DCA, IXCLD and BFIC. Exhibit-13A is BFIC Ex-board Members creating a computer program for BFIC and IXCLD customers database. Plaintiff alleges according to USBI 8,520 BFIC/IXCLD customers average long distance bill per month is approximately $115 per month 208,893 customers from BFIC/IXCLD 217,413 customers would average approximately $25 million dollars per month. Thompson Coburn in Exhibit-51 letter is stating Plaintiff however thought that there was a billing relationship with DCA/IXCLD/BFIC.

(38) Plaintiff alleges Thompson Coburn working of behalf of MCI-WorldCom through Inducement by reliance according to Exhibit-50 page 2 led Plaintiff to believe Thompson Coburn would subpoena the Local Bells records for BFIC customers being billed by USBI for accurate accounting. Thompson Coburn failed to inform Plaintiff that they could not subpoena records from their own client Southwestern Bell and PacBell.

(39) Plaintiff alleges MCI-WorldCom was in violation of Plaintiff's due process of law, under the 14th Amendment of the Constitution and in furthering the Conspiracy of Malicious Prosecution. Plaintiff alleges causing damage of $5 billion dollars.

1
2
3
              Cause of Action Account 15
4
5
  Conspiracy of Malicious Prosecution and Violation Due Process of Law under the 14 Amendment of
6
Constitution, by MCI-WorldCom, IXCLD and BFIC Ex-board Members
7
8  (40) Plaintiff alleges Thompson Coburn working on behalf of MCI-WorldCom, IXC long Distance and BFIC
9  Ex-board Members states in Exhibit-50 letter dated April 6, 1998, on page one, that records would be
10 subpoenaed from Texas Commerce Bank whereas Muhammad Usman, BFIC Secretary and BFIC Ex-board
11 Members established a fraudulent lockbox Bank account shown in Exhibit-8C, which is part of BFIC and
12 IXC Long Distance Telecommunication Contract. Three months after the date of Exhibit-50 letter Plaintiff
13 discovers Thompson Coburn has reversed their position by conspiring with IXCLD Attorney Thomas George,
14 IXCLD and BFIC Ex-board Members in submitting IXCLD fraudulent BFIC/IXCLD contract to the
15 American Arbitration Association shown in Exhibit-1. Plaintiff alleges IXCLD fraudulent contract Exhibit-1
16 on page four (IXCLD #0042640) has waived written next to the $50,000 security deposit for Texas
17 Commerce lockbox Bank account, whereas Plaintiff copy of page four of BFIC/IXCLD contract does not
18 have waived written next to the $50,000 security deposit (see Exhibit-8 page four and 8A without waived
19 written on contract). Plaintiff is alleges MCI-WorldCom and IXCLD also are conspiring of behalf of BFIC
20 Ex-board Members in the Concealing BFIC corporate bank whereas the $50,000 was withdrawn from by
21
22 erasing $50,000 security lockbox bank account deposit.
23 (41) Plaintiff alleges Muhammad Usman as Secretary of BFIC signature appears on Plaintiff copy of Texas
24 Commerce Bank Third Party Lockbox Bank Account Agreement as shown in Exhibit-8C whereas Thompson
25 Coburn and Attorney Thomas George fraudulent IXCLD contract Exhibit-1 document #004293 submitted to
26 American Arbitration is showing Third Party Lockbox Agreement without Muhammad Usman signature.
27
                                    62
28

1

2

Plaintiff alleges Exhibit-14 letter dated April 4, 1996 from IXCLD to Plaintiff stating that $50,000 security

3

deposit for lockbox bank account is needed before counter execution of BFIC and IXCLD contract. The

4

contract was counter-executed on April 19, 1996 and the Lockbox Bank account shown in Exhibit-8C sign by

5

Muhammad Usman was part of the contract. Exhibit-41A is IXC fax documented #004256 dated May 7, 1996

6

making reference to Exhibit-8C, Muhammad Usman signed Lockbox Bank Agreement and IXCLD verified

7

the forwarding of document to TCB (Texas Commerce Bank). Exhibit 41 is an IXCLD document #009586

8

dated October 21, 1996 making reference to BFIC Ex-board Members instruction for USBI to wire funds to

9

existence lockbox Bank account. Thompson Coburn submission of Exhibit-1 was an attempt by MCI-

10

WorldCom to conceal lockbox Bank account established from MCI-WorldCom, IXCLD and BFIC Ex-board

11

Members fraudulent billing relationship shown in Exhibit-15. Plaintiff alleges Attorney Douglas Odem and

12

(A) Plaintiff alleges meeting with Vice President of Texas commerce Bank Jim Patterson who upon meeting

13

Plaintiff was describing the various activity of the Lock-bank and after talking by phone with IXCLD

14

financial Department in the present of Plaintiff and Attorney Douglas Odem, inform Plaintiff that there was

15

not very much activity and account was closed February 1997. Plaintiff informs Jim Patterson at that point

16

that was a liar and records would be subpoena as soon as Plaintiff arrived back in San Diego. Plaintiff alleges

17

Attorney Douglas was to subpoena the Bank records but instead showed Plaintiff a fraudulent letter from Jim

18

Patterson stating the account was not very active and was closed in February 1997.  Plaintiff alleges one of

19

the reasons for firing Attorney Odem was because of trying to convince Plaintiff the letter from Texas

20

Commerce Bank would be the same response as the subpoena. Plaintiff alleges Texas Commerce Bank

21

verifying by letter and Texas Commerce Bank Statement to BFIC of the existence of lock-box bank account,

22

Thomas George and Thompson Coburn denying the existence of BFIC/IXCLD lockbox bank account and

23

Chase Bank of La Jolla a.k.a. Texas Commerce Bank response to Subpoena Tecum of Records denying the

24

existence of BFIC/IXCLD Account. Plaintiff alleges $5 billion dollars damages on each Account.

25

26

27

28

63

1

2

3

4                                   Cause of Action Account 16

5

6   Conspiracy Due Process of Law under 14 Amendment Constitution and Conspiracy of Malicious Prosecution

7   by MCI-WorldCom, IXCLD and BFIC Ex-board Members

8

9   (42) Plaintiff alleges without his knowledge Thompson Coburn working on behalf of MCI-WorldCom along

10  with IXCLD Attorney George and BFIC Ex-board Members submitted fraudulent subpoena Duces Tecum by

11  Mail for Adib Mahdi BFIC Ex-board Member and Ex-treasurer of BFIC (see Exhibit-4 fraudulent subpoena).

12  Plaintiff alleges due process of Law was denied by Adib Mahdi being subpoena without Plaintiff knowledge

13  on February 3, 1998 as a representative of BFIC whereas Adib Mahdi was no longer working at BFIC. The

14  subpoena states Adib Mahdi and BFIC is being represented by through their Attorney of Record Thomas

15  Greene of Thompson Coburn (Plaintiff and Ex-board Members now have the same Attorney).   IXCLD is

16  requesting Adib Mahdi to bring in BFIC documents (conceal invoices and bank records) to deposition being

17  held at Ex-Attorney Douglas Odem office who was fired by Plaintiff for collusion with IXCLD and Ex-board

18  Members (see Exhibit-36). Plaintiff has discovered same parties having deposition with BFIC Ex-board

19  Members, Muhammad Usman and Jim Stickney without Plaintiff knowledge. Plaintiff alleges Conspiracy

20  Malicious Prosecution by MCI-WorldCom, IXCLD and BFIC Ex-board Members and Plaintiff denial the

21  Due Process of Law Plaintiff alleges damages of $4.7 billion on each Account.

22

23

24

25

26

27

28

1
2
                         Cause of Action Account 17
3
4
5     Conspiracy of Violation of Due Process Of Law and Malicious Prosecution by
6     *MCI-WorldCom* and *Levi Ray &Shoup*
7

8 (43) Plaintiff alleges MCI-WorldCom furthering the Conspiracy of Malicious Prosecution by getting

9 Thompson Coburn attorneys to intentional conceal IXCLD data analysis shown in Exhibit-75 invoices from

10 Levi, Ray & Shoup. Plaintiff alleges according to four monthly invoices from April to July of 1998 Levi, Ray

11 & Shoup did approximately $20,000 worth of data analysis showing IXCLD generating approximately $25

12 million dollars per month in revenues, Thompson Coburn did not submit any of the IXCLD data Analysis to

13 the American Arbitration Association. Plaintiff had no knowledge of these invoices until after Plaintiff fired

14 Thompson Coburn for collusion and fraud. Rodney Flickes of Levi, Ray & Shoup stated Thompson Coburn

15 had given strict instruction for him not to give Plaintiff any of the data analysis and when Plaintiff requested

16 copies of data analysis Plaintiff was refused. Yet Plaintiff was requested Thompson Coburn to pay for

17 invoices shown in Exhibit-75.  Plaintiff alleges and incorporates by reference allegation in paragraph (4x)

18 Levi, Ray & Shoup ran data analysis of IXCLD customers' data of 427,000 customers against BFIC

19 customers' database 500,000 last names and addresses and refuse to give Plaintiff data analysis. Plaintiff

20 alleges intentional concealment of IXCLD data analysis by MCI-WorldCom Attorneys was in violation of

21 Plaintiff Due Process of Law concealment and Conspiracy of Malicious Prosecution cause damages to

22 Plaintiff of approximately $5 billion dollars on each individual account.

23
24
25
26
27
28
                         65

Cause of Action Account 18

Conspiracy of Malicious Prosecution, Violation 18 USC 1961 (1) (b) 1341 relating Mail fraud,
1503 Obstruction of Justice and Due Process of Law under 14 Amendment of Constitution
by the American Arbitration Association of Texas.

(44) Plaintiff alleges the American Arbitration in furtherance of the Conspiracy Malicious Prosecution by Tracy Hedgemen Case Manager of BFIC/IXCLD Arbitration dispute was conspiring with IXCLD Attorney Thomas George, in her intentional suppression and exclusion of 56 Exhibits of evidence submitted by Plaintiff to the American Arbitration Association Panel Judges shown in Tracy Hedgemen letter Exhibit-9B dated October 23, 1998. Tracy Hedgemen's letter also identifies 9 Exhibit numbers of evidence that was never submitted by Plaintiff whereas Exhibit-9C in Plaintiff letter to Texas American Arbitration Association is indicating Exhibits of evidence that was omitted.

(60) Plaintiff alleges Texas Arbitration corrupt Panel Judges Randall Duke, Mark Calhoun and Mark Hand submitted fraudulent letter to Plaintiff stating that all Exhibits in Tracy Hedgemen's letter dated October 23, 1998 was received through Tracy Hedgemen by three Panel Judges whereas 9 Exhibits submitted by Tracy Hedgemen do not exist, not unless Tracy Hedgemen and Attorney Thomas George submitted fraudulent Exhibits of evidence on Behalf of BFIC. Plaintiff alleges making reference to Exhibit-46 PricewaterhouseCoopers Report on IXCLD data in telephone conference with the Three Panel Judges and the Panel Judges failed to disclose to Plaintiff that Tracy Hedgemen had omitted the submission to the Panel of the Exhibit-46.

(45) Plaintiff alleges how can IXC Long Distance (IXCLD) Claim that Exhibit-7 dated December 17, 1996 an IXC document is an IXCLD document which is showing 46,244 BFIC customers being processed four days

after IXCLD has disconnected BFIC customers, Canceled BFIC contract and canceling the Online services for processing BFIC customers shown in IXCLD Exhibit-H Cancellation document dated December 13, 1996. Exhibit-7 represent approximately $5 million dollars per month in revenues whereas days revenues pays for IXCLD fraudulent $256,363 default payment for BFIC five month billing relationship with IXCLD. Plaintiff alleges how can IXCLD claim that Exhibit- 12, 12A, 12B and 12C as being IXCLD documents showing BFIC processing customers and generating revenues in April and May of 1997 and September 25, 1998 and Plaintiff is faxing the three Panel Judges Exhibit 12C fax dated September 25, 1998. American Arbitration Association Panel Judges had convened and are in the process of rendering their decision on IXCLD  $40 million dollars complaint against BFIC and Plaintiff. How can BFIC process customers on the IXC Online service shown in Exhibit-12C in September of 1998 when the Online Services has been disconnected on December 13, 1996 according to IXCLD documents Exhibit-H. Plaintiff alleges Corruption by IXCLD and MCI-WorldCom of Texas Arbitration Panel Judges blatant disregard evidence in Cause of Action Account –10, 11, and 12 and Attorney's Collusion in Cause of Action Account-14, 15, 16 and 17 with IXCLD documents and IXCLD data which is showing clear argument of fraud by IXCLD, MCI-WorldCom and BFIC Ex-board members.

(46) Plaintiff alleges The American Arbitration Association ruling in the favor of IXCLD against BFIC clearly states in Exhibit-9D an American Arbitration document dated November 11, 1998 showing the total combine cost of Arbitration fees for both parties (IXCLD/BFIC) of $32, 380.17 which shall be borne by BFIC as the loser of Arbitration dispute. IXCLD fees according Exhibit-9D were $17,580.17 leaving a balance of $14,800 dollars for BFIC Cost. Plaintiff alleges according Exhibit-9h which is showing Check # 4120, 3632 and 2372 totaling $14,000 dollars being received by American Arbitration Association in July 1997 form BFIC with scatter payments throughout the invoice clearly showing Plaintiff Arbitration fees being paid in July 1997. Check number 4277 of $8,000 received October 17, 1997 brings the total payments to $22,000

dollars.

(47) Plaintiff alleges ignoring Exhibit-9e American Arbitration invoice to BFIC dated June 4, 1998 a year later for $9,400 dollars. Plaintiff alleges Tracy Hedgemen's letter two months later Exhibit-9i to Plaintiff dated August 13, 1998 is extorting Plaintiff for the $9,400 dollars in Arbitration fees by stating if Plaintiff doesn't pay the $9,400 dollars for fees, his Exhibits of evidence would not be submitted to the Panel Judges. Plaintiff corresponding documents in Exhibit-9G is verification of Plaintiff telephone conversation with Tracy Hedgemen whereas Plaintiff is accusing the Texas Arbitration Association of extorting BFIC to pay for IXCLD Arbitration fees and Tracy Hedgemen is stating that BFIC was not paying for IXCLD Arbitration fees and the American Arbitration Association had only received $16,750 dollars as of June 4, 1998 in Arbitration fees from Plaintiff and Plaintiff total cost would be $26,500 dollars therefore $9,400 was needed before Plaintiff Exhibits of evidence would be given to Panel Judges. Plaintiff alleged and inform Tracy Hedgemen that between paying Arbitration fees to Thompson Coburn and Attorney Douglas Odem BFIC had already paid approximately $47,000 dollars in fees and produced Exhibit-9F showing five of nine cancel checks and produced a Personal check from Plaintiff of $5,000 dollars written to American Arbitration Association showing total of $34,500 in cancel checks which did not include Check number 2372 of $5,000 shown in American Arbitration invoice to Plaintiff in Exhibit-9h. Plaintiff cancel checks in Exhibit-9F $29,500 dollars and cancel check #2372 of $5,000 in American Arbitration invoice 9h and Plaintiff personal cancel check of $5,000 dollars to American Arbitration was a combine total of $39,500 in canceled checks to Arbitration Association. Plaintiff alleged BFIC Ex-board Members had misplaced the other three-canceled checks written to American Arbitration Association (see Exhibit-9F). After receiving Exhibit-9G letter and Exhibit-9F cancel checks from Plaintiff the American Arbitration mail Plaintiff fraudulent invoices showing $32,250 paid by Plaintiff and the $9,400 outstanding balance was still needed from BFIC. The cost had increased from $16,750 being paid (see Exhibit-9J) with a outstanding balance of $9,400 totaling $26,150 to the total cost

68

$32,250 for BFIC Arbitration fees being paid and still showing an outstanding balance of $9,400 totaling $41,900 total cost for BFIC Arbitration fees (see Exhibit-9H invoice of 41,900). Plaintiff having enough of the open corruption an injustice told Tracy Hedgemen that its obvious that Arbitration Association is going rule in the favor of IXCLD because loser pays for the winner Arbitration fees. Plaintiff alleges the Panel Judges knew in July of 1997 before any evidence was submitted that Plaintiff was the loser. Plaintiff fired Attorney Douglas Odem in November 1997 for not having any evidence to submit one day before BFIC dead line of submission of evidence hired Thompson Coburn and received an extension from Arbitration Panel. Plaintiff alleges American Arbitration Association invoices are showing $32,000 in payment in November 1997 before the extension BFIC paying IXCLD arbitration fees. Plaintiff records are showing $39,000 being paid to American Arbitration before November deadline and with three checks unaccountable. Plaintiff was still claiming BFIC had paid $47,000 in fees but was not able locate the three cancel checks from his office or Union Bank.

(48) Plaintiff alleges Ehibit-9K American Arbitration Association invoice to Attorney Douglas Odem dated June 19, 1997 showing $16, 750 dollars total per party totaling $33,500 dollars was correct invoice whereas American Arbitration Association judgment dated November 1998 against B.F.I.C. is showing the total fees for both parties were $32,380.17 dollars, which would have been $16,190.85 per party. Clearly showing Plaintiff $32,000 invoice payment November 1997 was paying IXCLD fees a year before the Decision was made by American Arbitration Panel Judges. Plaintiff alleges cause of damages on each individual account. Plaintiff alleges Violation of 14th Amendment of Constitution Due Process of Law causing damages of $128 million dollars. Plaintiff alleges furtherance of Malicious Prosecution by American Arbitration Association and IXCLD causing damages to Plaintiff of approximately $128 million dollars. Plaintiff alleges Violation of USC 1961 (1) (b) 1341 relating mail fraud of fraudulent invoices and 1503 Obstruction of Justice in concealments of Exhibits of evidence. Plaintiff is seeking treble damages of $384 million dollar.

1

2

Cause of Action Account-19

3

4

Conspiracy of Malicious Prosecution and Due Process of Law under the 14th Amendment of the Constitution

5

by Ralph Burni, Jameel Mahdi, Adib Mahdi, Talib Mahdi, Linda Mahdi and Nazeah Aladray

6

7

8    (49) Plaintiff alleges on or about January 1998 Nazeah Aladray friend of Plaintiff for 25 years and Brother of

9    Adnan Aladray BFIC Ex-board Members enter into an agreement to Lease commercial Rental space from

10   Ralph Burni a friend of Plaintiff for 25 years but fail to inform Plaintiff that Ralph Burni was a diversion just

11   as fraudulent name B.F.I.C.  Plaintiff alleges Ralph Burni and son Dean Burni manages approximately $18

12   million dollars in commercial properties for J&J Properties LLC which is own by Jameel Mahdi, Adib Mahdi,

13   Talib Mahdi and Linda Mahdi. Plaintiff Ex-Corrupt Attorney Douglas Odem referred Attorney Andrew

14   Griffin to the Mahdi's whom Ralph Burni Claim was his new Attorney.  Plaintiff alleges a dispute over the

15   lease between Ralph Burni and Nazeah Aladray led civil complaint but the dispute was between Nazeah

16   Aladray and Jameel Mahdi. Plaintiff alleges after firing Attorney Douglas Odem for collusion with MCI-

17   WorldCom, Nazeah Aladray recommended to Plaintiff to hire his Attorney Joseph Rosati whose handling the

18   dispute against Ralph Burni.

19

20   (50) Plaintiff hired Attorney Rosati for civil dispute with MCI-WorldCom and Muhammad Usman and Rosati

21   never disclosed to Plaintiff that Plaintiff family members who had taken moneys from BFIC diverted

22   customers and revenues and purchased eight commercial properties value at approximately $18 million

23   dollars through Ralph Burni and J&J Properties. Attorney Rosati after 7 months and being paid $30,000

24   dollars never subpoena Bank records or any records, never requested any discovery from MCI-WorldCom

25   and conceal evidence from Plaintiff in Muhammad Usman $400,000 complaint against Plaintiff.  Plaintiff

26   alleges intentional concealment of revenues and fraudulent relationships was in furtherance of Malicious

27

28

1

2

Prosecution by IXCLD and Linda Mahdi against Plaintiff causing damages of approximately $5 billion

3

dollars.

4

Cause of Action Account 20

5

6

7      Conspiracy of Malicious Prosecution and Violation of Due Process of Law under the 14th

8      Amendment Of the Constitution by BFIC Ex-board Members, IXCLD and MCI- WorldCom

9

10     (51) Plaintiff alleges conspiracy of Malicious Prosecution by BFIC Ex-board Members and MCI-WorldCom

11     in the intentional concealment of IXCLD contract with MCI-WorldCom sign by BFIC Ex-board Members,

12     clearly showing BFIC Ex-board Members ownership in IXCLD. Plaintiff alleges Malicious Prosecution of

13     Plaintiff and fraudulent illegal entity Building Futures In Communication and the concealment of IXC

14     Communication contract with BFIC by Defendants Attorneys Patrice Nice and Douglas Petit of the law Firm

15     of Klinedinst, Filehman and Mckillop. Plaintiff alleges IXCLD Attorneys did not represent IXC

16     Communication when contract was sign between IXC and BFIC.

17

18     (52) Plaintiff alleges the intentional concealment of IXCLD Law firm Klinedinst, Filehman and Mckillop in

19     San Diego handling contract negotiation for BFIC Ex-board Members on behalf of IXCLD. Plaintiff alleges

20     Attorney Thomas George; one man/one secretary Law Firm for IXCLD in Austin, Texas was not the law firm

21     for IXC Communication Inc based in Austin, Texas. Plaintiff alleges intentional concealment by all parties

22     IXCLD office located at 4275 Executive Square in La Jolla, Ca whereas BFIC Ex-board Members and

23     employees secretly operated daily. Plaintiff alleges Exhibit-12E IXC fax document dated June 24, 1997  to

24     BFIC ex-employees at conceal IXCLD office on Executive Square. IXC Attorney Thomas George is  making

25     a claim to Arbitration Panel Judges that document to belong to IXCLD whereas IXCLD contract with BFIC

26     was cancel December 1996. Attorney George is making fraudulent statement on behalf of Plaintiff to induce

27

28                                              71

Plaintiff to believe IXC is doing business as IXCLD concealing the fact that they are separate entity and BFIC Ex-board members ownership in IXCLD. Plaintiff alleges IXC document Exhibit-21E is showing BFIC customers billing date starting December 17, 1996 which is verifying IXC document Exhibit-7 showing 46,244 BFIC customers being processed in December 17, 1996 and is still being billed by USBI June 24, 1997 six months later of generating revenues. Plaintiff alleges BFIC and IXCLD contract was cancel December 13, 1996 four days after Exhibit-7 and 6 months after Exhibit-12E and IXCLD is suing Plaintiff for $40 million dollars and Plaintiff is counter-suing IXCLD for $128 million dollars and IXCLD Attorney Thomas George claiming Exhibit- 7, 12, 12A, and 12E is a IXCLD documents generating approximately $5 million dollars per month. Plaintiff alleges Attorney Thomas is more concern about concealments of IXC and IXCLD ownership not being the same from Plaintiff than his concern about the Arbitration Panel Judges decision in the favor of Plaintiff.

(53) Plaintiff alleges according to MCI-WorldCom complaint against Plaintiff by MCI-WorldCom Attorney Mark Saxon of Saxon, Berry, Kincannon and Gardener office was located in the same address as IXCLD, 4275 Executive Square La Jolla, California (see Exhibit-17M MCI-WorldCom/Wiltel Complaint using same conceal IXCLD address).

(54) Plaintiff alleges Building where IXCLD and MCI-WorldCom Attorney Mark Saxon office is located was eventually purchase for $27 million dollars by ASAP LLC in which Plaintiff alleges BFIC Ex-board Members have ownership interest.

(55) Plaintiff alleges according to the American Arbitration Association letter to Plaintiff in August 1998 disclosing to Plaintiff that MCI-WorldCom Ex-Attorney who is now the Attorney for IXCLD had a past relationship with one of the Arbitration Panel Judges Mr. Calhoun. Plaintiff did not know at the time the following;

a) That IXCLD law Firm was base in San Diego.

b) MCI-WorldCom law firm was located at IXCLD conceal Office address 4275 Executive Dr. in La Jolla

c) MCI-WorldCom was the heart of this Conspiracy and corruption. Plaintiff alleges Charles Saulisberry of MCI-WorldCom Law Firm Thompson Coburn in St. Louis, Missouri was the leader in this corruption American Arbitration Panel and four Law firms. Mark Saxon of Saxon Berry Gardener and Kincannon MCI-WorldCom Law firm in San Diego, Patricia Nice, Doug Petit and Kurt Campbell of IXCLD Law Firm Klinedinst Filehman and Mckillop in San Diego and Thomas George of Thomas George Law firm in Austin, Texas and Doug Odem of the law firm Odem, Greene, Murray and Thompson and Joseph Rosati of Rosati law firm in San Diego were all working together on behalf of BFIC Ex-board Members in the furtherance of the conspiracy of Malicious Prosecution causing Damages of $5 billion dollars.

Cause of Action Account 21

Conspiracy of Malicious Prosecution by Switch Services Communication LLC, Jim Fleming, Kenneth Trout and BFIC Ex-board Members

(56) Plaintiff alleges SSC, as an LLC is own Excel Communication and BFIC Ex-board Members and IXCLD. Plaintiff alleges Jim Fleming, Kenneth Trout and BFIC Ex-board Members intentional concealment of BFIC contract with SSC shown in Exhibit-48 SSC letter to BFIC customers indicating that BFIC is resellers of Long Distance for SSC. Plaintiff alleges according to PricewaterhouseCoopers Report (page 2 section (d) and four independent consultants report verified 88,259 BFIC customers being processed and switched to SSC carrier ID code (cic) 0948. Plaintiff alleges when the Local Bell Company switched the customers to the Carrier ID code, at that point the revenues from customers long distance calls goes to that carrier. Plaintiff alleges USBI/BFIC customers' was averaging approximately $115 per month per BFIC

customer monthly long distance bill whereas BFIC/SSC 88,259 customers would bill approximately $10 million dollars per month in revenues. Plaintiff alleges Exhibit 1B is showing SSC total assets of $3,069 at the time Plaintiff sign contract with IXCLD. Plaintiff sign BFIC/IXCLD contract April 19,1996 and by year ending December 1996 IXCLD and SSC had independently generated over $150 million dollars in revenues for 1996. Plaintiff alleges BFIC Ex-board Members diverted over 88,259 of BFIC customers through SSC.

(57) Plaintiff alleges Switch Services Communication claim be underline carrier for IXC Long Distance yet Exhibit-1A is showing Switch Services Communication receiving license to do business in State of California May 17, 1996 which approximately 30 days after BFIC sign contract with IXCLD.  April 19,1996 IXCLD was not license to do business at the time of the signing of Contract which makes BFIC/IXCLD contract fraudulent. IXCLD Attorney Thomas George response to Panel Judges on Plaintiff claim SSC not being license and BFIC/IXCLD contract being fraudulent was that 'The month of May Comes before the month of April'.  Plaintiff alleges the Three Blind narrow minded ignorant Texas Panel Judges thought that was a good answer. Plaintiff is alleging IXCLD and SSC did not have any customers or Network at contract signing and BFIC customers were process by IXCLD and SSC with MCI-WorldCom as the underline carrier.

Plaintiff alleges the intentional Concealment of contract, revenues and SSC relationship with BFIC Ex-board Members was in furtherance the Conspiracy of Malicious Prosecution causing damages to Plaintiff of approximately $5 billion dollars.

Cause of Action Account 22

Conspiracy of Malicious Prosecution by IXC Communication, Inc

USBI, MCI-WorldCom and BFIC Ex-board Members

74

(58) Plaintiff alleges MCI-WorldCom as the Underline wholesale Carriers for SSC and USBI billed BFIC diverted customers through BFIC Ex-board Members. Plaintiff alleges the submission of Exhibit-12, 12A and 12B to Ralph Sweat office at IXC with any response. Plaintiff alleges IXC Communication Inc, BFIC Ex-board Members and IXCLD furtherance of conspiracy of Malicious Prosecution referencing Exhibit-12A IXC Communication fax dated April 25, 1997 to Martha Taylor Plaintiff administrative Secretary for BFIC who was no longer employed at BFIC at the time of this fax. The document was fax to 619-5517738, which is a BFIC fax number not located at BFIC Office address on Miramar Road. Plaintiff alleges the fax contains confidential BFIC customers call records for April 1996 and Plaintiff alleges BFIC fax number is located at IXCLD conceal Office at 4275 Executive Square in La Jolla, California. **(PacBell who represented by MCI-WorldCom and Plaintiff Ex-Attorneys the Law firm Thompson Coburn refused to give Plaintiff the address of fax location).** Plaintiff alleges IXCLD is claiming Exhibit-12A fax dated in April of 1997 to be IXCLD document whereas BFIC/IXCLD contract was cancel in December 1996 and Plaintiff is being sued by IXCLD in April 1997. IXCLD and Attorneys are Inducing Plaintiff to believe that IXC Communication Inc is doing business as IXC Long Distance and concealing the fact that they are separate Independent Corporation whereas BFIC Ex-board Members have some ownership in IXCLD. Plaintiff has no knowledge of BFIC and IXC contractual business relationship. IXC Communication, Inc and IXC Long Distance merged as one corporation December 19, 1998 forming IXC Network Services, which was less than 30 days after Texas American Arbitration Association, corrupt ruling in the Favor of IXCLD against BFIC. Plaintiff alleges the concealment of IXC revenues in 1997 was in the furtherance of the Conspiracy of Malicious Prosecution causing damages to Plaintiff of approximately $700 million dollars in furtherance of the Conspiracy of $5 billion dollars.

75

1

2

3                        Cause of Action Account 23

4

5          Conspiracy of Malicious Prosecution by Texas Commerce Bank a.k.a. Chase Bank of Texas

6

7    (59) Plaintiff alleges Jim Patterson of Texas Commercial Bank, a.k.a. Chase Bank of Texas in Furtherance

8    Conspiracy of the intentional concealment of BFIC Corporate lockbox Bank Account in July 1999. Plaintiff

9    alleges Exhibit-14 is letter from IXCLD dated April 4, 1996 is requesting $50,000 security deposit for the

10   establishment of Lockbox Bank Account before IXCLD counter execute BFIC Contract.

11   (60) Plaintiff alleges BFIC and IXCLD counter Executed Telecommunication on April 19, 1996 with $50,000

12   security deposit shown in Exhibit-8A page 4 of BFIC/IXCLD contract. Exhibit-8C is Texas Commercial

13   Bank Third Party Lockbox-Bank Account sign by Muhammad Usman.

14
     (61) Plaintiff alleges Exhibit-41A is IXCLD fax documented #004256 dated May 7, 1996 making reference to
15
     Exhibit-8C Muhammad Usman signed Lockbox Bank Agreement IXCLD verifying the forwarding of
16
     document to TCB (Texas Commerce Bank). Exhibit 41 is an IXCLD document #009586 dated October 21,
17
     1996 making reference to BFIC Ex-board Members instruction for USBI to wire funds to existence lockbox
18
     Bank account.
19
     (62) Plaintiff alleges in 402 hearing in San Diego Superior Court August 1999 Muhammad Usman trying not
20
21   to be impeached verifies the existence of lockbox bank accounts by stating Plaintiff was present with him in

22   the opening Texas Commerce Bank and MCI-WorldCom lockbox bank accounts in Exhibit- 8C, 2 and 3.

23   Muhammad Usman claims that Bank statements from lockbox Bank Accounts were maintained by Plaintiff

24   (See Exhibit-21C transcript of Usman Testimony).   All Defendants are denying the existence of lockbox

25   Bank Accounts. Plaintiff alleges concealment Bank account cause damages of $5 billion dollars.

26

27

28

1

2

3
Cause of Action Account 24

4

5
Conspiracy of Malicious Prosecution and Money laundering by BFIC Ex-board Members

6
MCI-WorldCom-DCA, IXCLD and USBI

7

8
(63) Plaintiff alleges the intentional concealment of Lockbox Bank Account Shown in Exhibit-13 BFIC, DCA

9
IXCLD customer's monthly long distance telephone bill whereas customer is requested to mail monthly

10
telephone payments to USBI lockbox bank address in San Antonio, Texas.  Plaintiff alleges Exhibit-5C is a

11
BFIC fax dated July 19, 1996 signed by Adib Mahdi to Patty Meznarich of USBI for verification of the

12
address for BFIC customer's to send monthly payments. Plaintiff alleges the intentional concealments

13
monthly payments from August 1996 to present were in Furtherance of Conspiracy of Malicious Prosecution

14
and Money Laundering causing damages to Plaintiff of approximately $5 billion dollars.

15

16

17
Cause of Action Account 25

18

19
Conspiracy of Malicious Prosecution and Violation 18 USC 1961 (1) (b) 1956 Money Laundering by

20
MCI- WorldCom and BFIC Ex-board Members

21

22
(64) Plaintiff alleges on about August 4, 1999 MCI-WorldCom Attorney Mark Saxon in the Present of Judge

23
Davison denied the Existence of ever establishing Lockbox bank accounts with BFIC which was in

24
furtherance of the Conspiracy of Malicious Prosecution by intentional concealment of LDDS-

25
WorldCom/MCI-WorldCom fraudulent unauthorized lockbox bank accounts established on March 15, 1996

26
and March 18, 1996 by Muhammad Usman. Plaintiff alleges on or about August 1998 the submission of

27

28

77

Exhibit-2 and Exhibit-3 are MCI-WorldCom notarized lockbox Bank instruction sign by Muhammad Usman as Secretary of BFIC Bernie Ebbers CEO MCI-WorldCom. Plaintiff alleges BFIC/IXCLD customers were asked to mail monthly telephone bill payments to lockbox Bank account addresses. Plaintiff alleges the intentional concealment of BFIC customer's monthly revenues to lockbox bank accounts cause damages to Plaintiff of approximately $5 billion dollars.

Cause of Action Account 26

Conspiracy of Malicious Prosecution by Bank of Oklahoma

(65) Plaintiff alleges Bank of Oklahoma Letter Exhibit-22 dated September 27, 1999 to San Diego Superior Court is Bank of Oklahoma Last Overt Act in furtherance of the Conspiracy of Malicious Prosecution in the intentional concealment of BFIC Bank accounts whereas revenues are being generated from BFIC diverted Customers shown in Exhibit-15 MCI-WorldCom-DCA, IXCLD and BFIC Ex-board Members fraudulent billing relationship. Bank of Oklahoma is claiming that there are BFIC Bank Accounts that have ever existed at Bank of Oklahoma.

(66) Plaintiff alleges Exhibit-53 Bank of Oklahoma/BFIC/Wiltel/DCA escrow agreement Bank account showing on Page 3 BFIC Bank account #600024642 being establish June 1, 1996. All Defendants claim that there is no BFIC Bank Account at Bank of Oklahoma.

(67) Plaintiff alleges Exhibit-20 Bank of Oklahoma letter dated September 23, 1996 from bank of Oklahoma treasury services Alan Aaron opening unauthorized fraudulent Bank account #208310590 in the name of BFIC, Inc whereas BFIC Ex-board Members are requesting BFIC customers established from Mail Fraud Scheme to mail their monthly telephone bill payments to Bank of Oklahoma fraudulent lockbox Bank

Account address;

BFIC, Inc

Department 1195

Tulsa, Ok  74182. All Defendants claim that there is no BFIC Bank Account at Bank of Oklahoma.

(68) Plaintiff alleges Exhibit-17A is BFIC Bank of Oklahoma monthly statement for BFIC account #10988 opening October 10, 1996 and closing July 30, 1997. All Defendants claim that there is no BFIC Bank Account at Bank of Oklahoma.

(69) Plaintiff alleges Exhibit-6 is fax from MCI-WorldCom-DCA to Adib Mahdi Ex-board Member showing Bank of Oklahoma lockbox Bank account address for BFIC customers to mail their monthly telephone bill payments which is a different lockbox Bank account address from Exhibit-20; BFIC, Inc

P.O. Box 2300

Tulsa, Ok 74172

(70) Plaintiff alleges Exhibit-21A is letter from Bank of Oklahoma Vice President Cyndi Wilkinson dated January 11, 1999 referencing BFIC Bank account closing December 7, 1998 and thanking Adib Mahdi for giving Bank Of Oklahoma the privilege of serving BFIC, Inc. Plaintiff has no knowledge of Bank account and Adib Mahdi and BFIC Ex-board Members has been fired approximately two years prior to the date of Exhibit-21A letter. Bank of Oklahoma and All Defendants claim that there is no BFIC Bank Account at Bank of Oklahoma.

(71) Plaintiff alleges according to Bank of Oklahoma documentation BFIC Ex-board members open five fraudulent Bank accounts in the Name of BFIC and forged Plaintiff name on four of those Bank Accounts. Bank of Oklahoma letter Exhibit-22 dated September 27, 1999 to San Diego Superior Court states "Bank of Oklahoma has no records to indicate that an account was ever opened in the name of BFIC, Inc". Plaintiff alleges a blind man can see with the light of intelligence that Bank of Oklahoma and BFIC Ex-board

1

2

Members are lying in their denial of BFIC bank account.

3

(72) Plaintiff is alleging in order to cover their corruption of fraud BFIC Ex-board Members, IXCLD, USBI,

4

MCI-WorldCom, San Diego District Attorney Office, Judge Davidson of the San Diego Superior Court and

5

Dr. Katherine DiFranseca Ph.D. states that Plaintiff is suffering from a delusional Disorder in his Claim that

6

Bank of Oklahoma is concealing BFIC Bank accounts.

7

8 Plaintiff alleges Bank of Oklahoma furtherance of the conspiracy of Malicious Prosecution in the intentional

9 concealment BFIC Bank accounts causing damages of approximately $5 billion dollars.

10

11                          Cause of Action Account 27

12

13

    Conspiracy of Malicious Prosecution and forgery and fraud by Union Bank of California

14
      and Greg Farnsworth

15

16

    (73) Plaintiff alleges Union Bank and Greg Farnsworth furtherance of the conspiracy of Malicious

17
    Prosecution by the intentional concealment of four BFIC cancel checks to American Arbitration Association

18
    which would shown BFIC paying over $50,000 in Arbitration Fees including IXCLD Arbitration Fees.

19

20 (74) Plaintiff alleges Greg Farnsworth is very good friend of BFIC Ex-board Members Frank Semmo.

21 Plaintiff alleges Exhibit-76 is approximately 8 checks of 135 checks showing Frank Semmo forging Plaintiff

22 name on BFIC checks and Greg Farnsworth allowing checks to be cash. Exhibit-76 is showing BFIC check

23 for $5,000 dollars made out to Slivergate Software (company own by BFIC Ex-board Member Tom

24 Considine) being cash with no date on the check and without the two signature requirements. Plaintiff alleges

25 approximately 25 checks totaling approximately $34,000 was cash without Plaintiff required signature.

26
    (75) Plaintiff alleges Union Bank intentional concealment of Sister Clara Muhammad School Bank Account

27
                                        80

28

establish at Union Bank at 1101 Market St. San Diego Calif. with routing number 122000496 and Account number 0120008927 whereas Linda Mahdi was Director of School and signer on Bank Account (See Exhibit-78). Plaintiff alleges the account was use by BFIC Ex-board Member's to divert moneys to Linda Mahdi. Plaintiff alleges Greg Farnsworth in the present of two witness inform Plaintiff that Union Bank employee Sally Doyle should have never told Plaintiff about BFIC trust account since Plaintiff was not a signor on the account. Plaintiff alleges Greg Farnsworth and Union Bank non-compliance to Subpoena duces Tecum of Bank Records, Union Bank Employee Sally Doyle failure to appear in court proceeding and Union bank concealments bank accounts was in furtherance of the conspiracy of Malicious Prosecution causing damages of approximately $5 billion dollars.

Cause of Action Account 28

Conspiracy of Malicious Prosecution by Bank of America and Pat Bromely

(76) Plaintiff alleges Bank of America under the guidance of their Law Firm Procopio, Cory Hargeaves and Savitch wrote fraudulent Letter to San Diego Superior Court Exhibit-21 stating BFIC, Inc does not have corporate Bank Account at Bank of America whereas BFIC Ex-board Member, Corporate Secretary, and Financial officer and also client of Bank of America Law Firm has testified that He and Plaintiff in the present of Branch Manager Pat Bromely open BFIC, Inc Corporate Bank account (see Exhibit-21B). See cause of Action Accounts 29, 30, 31, 32 and 33.

(77) Plaintiff alleges law firm of Procopio, Cory, Hargeaves and Salvitch the law firm for Bank of America is now representing BFIC Ex-board Members Muhammad Usman in the furtherance of Conspiracy of Malicious Prosecution in the concealment of BFIC Bank account whereas according to PricewaterhouseCoopers

81

1

2

accounting firm BFIC Ex-board Members diverted $25 million dollars per month. Plaintiff alleges damages
3
of approximately $5 billion dollars.
4

5

<center>Cause of Action Account 29</center>
6

7

8   Conspiracy of Malicious Prosecution and Forgery & Fraud by BFIC Ex-board Members Bank of America

9

10   (78) Plaintiff alleges Defendants BFIC Ex-board Member with the aid of Bank America forged Plaintiff name

11   on 350 B.F.I. Communication checks totaling approximately $450,000 and Plaintiff is in January 1999

12   discovered that the Account was a Personal Account in Plaintiff Name (see Exhibit-C Bank of America Letter

13   stating that the checks were forged). Plaintiff alleges Muhammad Usman and Pat Bromely Branch Manager

14   of bank of America opened Personal Bank account in Plaintiff Name without Plaintiff knowledge whereas

15   approximately $750,000 was expended through the fraudulent account. Exhibit-A is few of the 850 checks

16   written on the fraudulent account showing fraudulent Name B.F.I. Communication printed on checks on the

17   account #01704-13181 inducing Plaintiff through reliance to believe the account 01704-13181 to be a

18   business account whereas Exhibit-AB Bank of America Bank Statement shows the same account #1704-

19   13181 as a Personal Bank account in Plaintiff Name. **Plaintiff is liable for approximately $750,000 taxable**

20   **revenue that was expended through the account, which is another reason why defendants Violation of**

21   **26 USCS 7210 and 7206 to invade or defeat taxes in defrauding United States is Cause of Action for**

22   **damages to Plaintiff.** Plaintiff alleges the opening of Personal bank Account at Bank of America with his

23   name Abuwi Mahdi printed on the checks under Personal Bank Account # 01704- 02031. Clearly indicating

24   Plaintiff had no Knowledge of B.F.I.C. being a Personal Bank Account in his name.

25   (79) Plaintiff alleges as stated in Formation of Conspiracy B.F.I. Communication is fraudulent concealing the
26

27

28

BFIC corporate records and this particular concealment it is BFIC Corporate Bank Records at Bank of America showing the diversion of BFIC revenues of approximately $25 million dollars per month by IXCLD, MCI-WorldCom and BFIC Ex-board Members. Dr. Katherine DiFranseca, San Diego District Attorney Office, San Diego County Probation Office, Defendants and Defendants Attorneys in furtherance of Conspiracy of Malicious Prosecution by stating Plaintiff is suffering from delusional disorders in claim of forgery and fraud. Plaintiff alleges establishment of Fraudulent Bank Account was in furtherance of the Conspiracy of Malicious Prosecution causing damages of approximately $5 billion dollars.

Cause of Action Account 30

Conspiracy of Malicious Prosecution by Bank of America and BFIC Ex-board Members

(80) Plaintiff alleges Exhibit-FF is BFIC Financial Statement for 1996 and Exhibit-JJ BFIC Corporate tax Returns is showing $1million dollars being expended for the year 1996 whereas the only two Bank Accounts that Plaintiff had knowledge of is showing a combine total of $430,000 being expended through the two Bank Accounts for the year of 1996. See Exhibit-85 B.F.I. Communication Bank of America account #1704-13181 closing in September 1996 with a total of 120,000 in Deposit Exhibit-86 Union Bank account opening in June showing approximately 370,000 total deposits for 1996. What Bank Account was the remaining $510,000 withdrawn? Note in Exhibit-FF, BFIC Financial Statement on page 2 showing $21,543 in BFIC Corporate Bank Account at Bank of America. "What was hidden becomes seen".

(81) Plaintiff alleges the unaccountable $510,000 Telephone Carrier cost represent paid invoice $256,363 of IXCLD in 1996 shown in Exhibit-19A and $167,000 paid invoice of MCI-WorldCom in 1996 shown in Exhibit-17C and GTE 91,000 paid invoice in 1996 with combined total of $513,000 According to Exhibit-J

83

1

2

BFIC 1996 Corporate and Exhibit-FF, BFIC Financial Statement for 1996. Clearly showing IXCLD, MCI-

3

WorldCom, and Muhammad Usman sued Plaintiff without probable Cause. Dr. Katherine DiFranseca, San

4

Diego District Attorney Office, San Diego County Probation Office, Defendants and Defendants Attorneys

5

furtherance of Conspiracy of Malicious Prosecution by stating Plaintiff is suffering from delusional disorders

6

in claim of forgery and fraud. Concealment of BFIC corporate Bank Account was in Furtherance of

7

Conspiracy of Malicious Prosecution Causing damages to Plaintiff of approximately $5 billion dollars.

8

9

10                           Cause of Action Account 31

11

12        Conspiracy of Malicious Prosecution by Bank of America and BFIC Ex-board Members

13

14     (82) Plaintiff alleges Exhibit-17L, Wiltel invoices to Building Future In Communication for the month of

15

August, September and October of 1996 is showing Muhammad Usman and BFIC Ex-board Members

16

making 6 check payments from conceal Bank Account totaling approximately $113,000 dollars to Wiltel

17

outside Plaintiff Escrow Agreement. The Check payments were not withdrawn from Union Bank Account

18

#605000905, the only authorized Bank account shown in Exhibit-85. Fraudulent Bank of America B.F.I.

19

Communication was closed in September 1996 according to Bank of America Exhibit-AB. Plaintiff alleges

20

Wiltel invoice payments in Exhibit-17L were made by Muhammad Usman from conceal BFIC Corporate

21

Bank account at Bank of America shown in Exhibit-FF, BFIC Financial Statement. Plaintiff alleges conceal

22

bank account is showing additional revenues of approximately $25 million dollars per month clearly showing

23

IXCLD, MCI-WorldCom and Muhammad Usman sued Plaintiff without probable cause. Dr. Katherine

24

DiFranseca, San Diego District Attorney Office, San Diego County Probation Office, Defendants and

25

Defendants Attorneys furtherance of Conspiracy of Malicious Prosecution by stating Plaintiff is suffering

26

27                                    84

28

from delusional disorders in claim of forgery and fraud.

(83) Plaintiff alleges the intentional Concealment of BFIC Corporate bank account at bank of America was in furtherance of Conspiracy of Malicious Prosecution Causing damages of approximately $5 billion dollars.

Cause of Action Account 32

Conspiracy of Malicious Prosecution by Bank of America and BFIC Ex-board Members

(84) Plaintiff alleges Exhibit-8A is page four of BFIC/IXCLD Telecommunication contract sign April 19, 1996 is showing $50,000 security deposit for unauthorized fraudulent Texas Commerce lockbox bank account sign by Muhammad Usman in Exhibit-8C. Exhibit-85 Bank of America B.I.F. Communication bank statements from is indicating the $50,000 dollars was not withdrawn from B.F.I. Communication Account. Exhibit-8A page 4 of the contract, Exhibit-8C Muhammad Usman signature on Lockbox agreement, and Exhibit-41A IXCLD fax to BFIC Ex-board Members verifying Lockbox is clear argument of fraudulent lockbox being established. Plaintiff alleges the $50,000 security deposit for lockbox was withdrawn from Bank of America concealed bank account. Dr. Katherine DiFranseca, San Diego District Attorney Office, San Diego County Probation Office, Defendants and Defendants Attorneys furtherance of Conspiracy of Malicious Prosecution by stating Plaintiff is suffering from delusional disorders in claim of forgery and fraud. Plaintiff alleges the intentional concealment BFIC Corporate Bank account verifying the $50,000 withdrawal was in furtherance of Conspiracy of Malicious Prosecution causing damages of approximately $5 billion dollars.

85

1

2

Cause of Action Account 33

3

4

5  Conspiracy of Malicious Prosecution, Nicholas Oliva and Associates Accounting Firm

6  and BFIC Ex-board Members.

7

8  (85) Plaintiff alleges May of 1997 a bank of America employee showed Plaintiff a BFIC Corporate Bank

9  Account signature card with Nick Oliva BFIC corporate Accountant and Board Member as a signor on BFIC

10  corporate bank account at Bank of America. Pat Bromely Branch Manager and conspirator intervene and

11  refuse to give Plaintiff a copy of the signature. Stating to Plaintiff that the signature card was Bank property

12  and the only way Plaintiff can get a copy is by subpoena. Plaintiff alleges Pat Bromely new Attorney Douglas

13  Odem was in collusion with IXCLD and BFIC Ex-board Members because Bank Records were not

14  subpoenaed. Bank records were not subpoena by next set of Attorneys Plaintiff hire.

15  (86) Plaintiff alleges Nick Oliva Letter to Plaintiff Exhibit-82 is trying to conceal BFIC corporate bank

16  account at Bank of America by stating he was a signor on fraudulent unauthorized Personal Bank Account in

17  Plaintiff name with B.F.I. Communication on checks. Bank of America Letter to the San Diego Superior

18  Court Exhibit-21 is stating only two signature were required on Bank account 1704-13181 B.F.I.

19  Communication which were Plaintiff and Muhammad Usman showing Nick Oliva lying in his letter Exhibit-

20  82 about being a signor on B.F.I. Communication Account. Plaintiff alleges Nick Oliva was a signor on BFIC

21  Corporate Bank Account at Bank of America open by Plaintiff and Muhammad Usman in the present of Pat

22  Bromely Branch Manager at Bank of America La Jolla.  Bank of America Letter Exhibit-21 is concealing

23  approximately $25 million dollars per month was concealed in BFIC corporate Bank Account at Bank of

24  America in furtherance of the Conspiracy of Malicious Prosecution causing damages of approximately $5

25  billion dollars.

26

27

28                                        86

1

2

3                          Cause of Action Account 34

4

5       Conspiracy of Malicious Prosecution by San Diego Superior Court, Bank of America and BFIC Ex-board

6       Members

7

8       (87) Plaintiff alleges Exhibit-21 Bank of America Letter to the San Diego Superior Court dated September

9       30,1999 stating that Plaintiff name was not an authorized signor on Copy Cove La Jolla Bank of America,

10      Account #1703-05559 yet Exhibit-E copies of Copy Cove cancel checks whereas Muhammad Usman has

11      forged Plaintiff name Abuwi Mahdi on checks and Bank of America has cash fraudulent checks. Exhibit-E-1

12      is Bank of America transfer slip showing Pat Bromely Branch Manager approving a $30,000 transferred from

13      B.F.I. Communication account #1704-13181 to Copy Cove account without Plaintiff signature on the two-

14      signature requirement Account. Note Exhibit-C letter from Bank of America dated January 11, 1999

15      indicating Checks were forged on fraudulent bank account B.F.I. Communication and District Attorney gave

16      Muhammad Usman Immunity for forging Plaintiff name of approximately 350 checks totaling approximately

17      $350,000 dollars. Clearly showing Muhammad Usman does not have a problem forging Plaintiff name.

18      (88) Plaintiff has no knowledge of how many checks were forged in Plaintiff name by Muhammad Usman.

19      Checks could have been forged to IXCLD and MCI-WorldCom. Plaintiff discovers in January 1999

20      Muhammad Usman and Branch manager Pat Bromely the opening of personal bank account in his name

21      without Plaintiff knowledge or Authority with B.F.I. Communication printed on the checks. Plaintiff

22      discovers in August 1999 that he is signor on Copy Cove bank accounts in which he has no knowledge.

23      Exhibit-M is Copy Bank of America Bank Statements sent to San Diego Downtown Central Jail in September

24      1999 while Plaintiff was incarcerated. Plaintiff had 7 witness including Plaintiff Attorney and Plaintiff Private

25      Investigator to call Bank of America Customer Service whereas it was verified that Plaintiff was an

26

27

28                                      87

authorized signor on Copy Cove Account. Dr. Katherine DiFranseca, San Diego District Attorney Office, San Diego County Probation Office, Defendants and Defendants Attorneys furtherance of Conspiracy of Malicious Prosecution by stating Plaintiff is suffering from delusional disorders in claim of forgery and fraud.

(89) Plaintiff alleges the Subpoena duces tecum of Copy Cove Bank records included all cancel checks from January 1995 to August 1999. Plaintiff alleges Cancel checks from Copy Cove would have reveal checks cash on BFIC conceal Bank Accounts, Bethel AME Church and Minister Cynthia Bowen and others organization receiving rebate checks every month and Linda Mahdi and BFIC Ex-board Members receiving fraudulent moneys. Plaintiff alleges Bank of America after receiving subpoena requesting cancel checks states in Exhibit-21 production of these checks will commence upon further order of the court. Judge Davidson working on behalf of Bank of America and protecting the interest of his Church Bethel AME, his Minister and friend Public Defender Cynthia Bowen, fellow member of Bethel AME and friend Attorney Douglas and fellow Members Anthony Saulisberry as a Judge abuse his position and would not order Bank of America to comply with Subpoena Duces Tecum of Cancel checks on Copy Cove Bank Accounts. Plaintiff alleges in furtherance of Malicious Prosecution cause damage to Plaintiff of approximately $5 billion dollars.

Cause of Action Account 35

Conspiracy of Malicious Prosecution and Violation 26 USCS 7201 Invade or defeat Tax by Linda Mahdi, Martha Taylor Bank of America and BFIC Ex-board Members

(90) Plaintiff alleges Linda Mahdi, Martha Taylor, BFIC Ex-board Members and Bank of America cash B.F.I. Communication checks in Plaintiff name using their own ID totaling approximately $ 50,000 dollars. Plaintiff alleges Exhibit-79 B.F.I. Communication check #449 made out to M A Mahdi and is being Cash by

88

Muhammad Usman (see Muhammad Usman driver license # A0287061 imprinted on front of check by Bank of America). Exhibit-79 is showing another check from Union Bank check # 3372 made out to Muhammad Usman being cash by the person the check is made out to in this **case it is Muhammad Usman**. Turn over and look at the back of Union Bank check # 3372 made out to Muhammad Usman which showing the same California driver license # A0287061 cashing B.F.I. Communication Bank of America check # 449 verifying the same person cashing both checks. Muhammad Usman after receiving Immunity for forging Plaintiff name on $350,000 dollars in Exhibit -90-court transcript when asked did you cash Check 449 Muhammad Usman lied stating "No. Why would I? It was in your name. Plaintiff alleges Martha Taylor cash several checks made out in Plaintiff name one of the Checks were value at $2,000 dollars and Linda Mahdi cash checks in Plaintiff name value at approximately $3,000 dollars. Plaintiff alleges the San Superior Courts never received those cancel checks from Bank of America. Bank of America in response to subpoena dues Tecum of Bank records of cancel checks for B.F.I. Communication only sent checks with numbers from 1 through 310 knowing Judge Davidson had a conflict of interest and was not going to allow Plaintiff to have the court to make Bank of America comply to the subpoena order of all cancel checks. Exhibit-A is showing check # 719 and Exhibit-85 Bank Statement is showing last check written on the account was in August 1996 Check # 832 (522 cancel checks missing).

(91) **Plaintiff allege checks worth approximately $50,000 dollars in taxable revenue was cash that was never received by Plaintiff which is valid reason why Defendants violation of 26 USCS 7201 and 7206 is a Cause of Action Damages to Plaintiff as well.** Plaintiff alleges the cashing checks in Plaintiff name and Bank of America the intentional concealment of cancel checks was in furtherance of the Conspiracy of Malicious Prosecution causing damages of approximately $5 billion dollars.

1

2
                              Cause of Action Account 36
3

4

5
Conspiracy of Malicious Prosecution by Bank of America, BFIC Ex-board Members and San Diego District
6
Attorney Office.

7

8
(92) Plaintiff alleges San Deputy Attorney Ann Marie Urrutia corruption was worst than the Texas
9
Arbitration Three Panel Judges. Plaintiff alleges the submission of documentation of forgery and fraud of
10
BFIC Ex-board Members and wife Linda Mahdi to the District Attorney Office before Plaintiff was falsely
11
arrested in January 1999. The San Diego District Office Under the influence of MCI-WorldCom fails to
12
Prosecute BFIC Ex-board Members and Linda Mahdi. The District Attorney Office is now bringing BFIC Ex-
13
board Members as witness against Plaintiff and arrogantly making false statement to the Court shown in
14
Exhibit-87 whereas Deputy District Attorney Ann Marie Urrutia states that the documentation of forgery,
15
fraud, money laundering, mail fraud and wire fraud submitted by Plaintiff to District Attorney Office was a
16
civil matter and there wasn't any basis for District Attorney Office to file criminal action against BFIC Ex-
17
board Members and Linda Mahdi. Two weeks later Plaintiff, an unskilled layman in Pro Per Status is
18
impeaching Muhammad Usman testimony and this skilled Professional District Attorney Office who didn't
19
see any thing criminal in documentation is now giving Muhammad Usman Use Immunity on what was
20
supposedly a civil matter. Plaintiff alleges Deputy Ann Marie Urrutia Intentional concealment of fraud by
21
stating that their was nothing criminal in the documentation forgery and fraud and later in 402 hearing states
22
that the 300 checks forged at approximately $350,000 dollars was a misdemeanor opposed to a felony.
23
Plaintiff alleges Deputy District Attorney reverts in her position again by giving USE Immunity to
24
Muhammad Usman for the forgery of Plaintiff name on 300 checks totaling approximately $350,000. Plaintiff
25
alleges from a civil Matter to giving Immunity clearly showing the District attorney Concealing a crime and
26

27
28

now abusing the Power of the District Attorney Office in giving the crime Immunity.  Plaintiff alleges the District Attorney office did not allowed Plaintiff to informed the Jury that Muhammad Usman was given immunity for him testimony because the Deputy District Attorney Urrutia stated to Judge Davidson it would be an embarrassment to the District Attorney Office. The District Attorney Office negotiated Immunity for Muhammad Usman with the Law Firm of Procopio, Hargeaves, Cory and Savitch and failed to inform Plaintiff and the Court doing questioning of the Jurors that a new law firm is representing Muhammad Usman when Judge Davidson asked Jurors of their Association with Muhammad Usman old law firm Gordon Rees.

(93) Plaintiff alleges the subpoena of Muhammad Usman Attorney Deborah Ben-Caan in her appearance as witness in trial proceeding was sent to the Law Firm of Gordon Rees. Attorney Ben-Caan and Deputy District Attorney Ann Marie nondisclosure deception Muhammad Usman being represented by Bank of America Law Firm Procopio, Cory, Hargeaves and Salvitch was in furtherance of Conspiracy of Juror tampering. Plaintiff did not ask the Jurors their association referencing Bank of America and Muhammad Usman Law Firm Procopio, Hargeaves, Cory and Savitch.

(94) Plaintiff is alleges Members of the Plaintiff Jurors were in a conflict of interest with Bank of America Law Firm. Plaintiff alleges this Concealment of forgery and fraud by giving Muhammad Usman immunity and not informing Plaintiff of Muhammad Usman new law firm being the same as Bank of America was in furtherance of the Conspiracy of Malicious Prosecution causing damages of approximately $5 billion dollars.

                    Cause of Action Account 37

Conspiracy of Malicious Prosecution By San Diego Superior Court, Bank of America, Linda Mahdi and BFIC Ex-board members

1

2

(95) Plaintiff alleges Linda Mahdi (wife) did not work for BFIC yet every two weeks Linda Mahdi will come

3

by the Office to pick-up a check ranging from $300 to $1000 dollars. Plaintiff alleges Linda Mahdi testified in

4

402 hearing to a Pattern of Plaintiff names being forged on B.F.I. Communication whereas Muhammad

5

Usman was forging Plaintiff at will but each time a check was to be issue to Linda Mahdi, Muhammad

6

Usman would stop forging Plaintiff name and allow Plaintiff brother Adib Mahdi or Agin Muqtasid (COO of

7

BFIC) to take turns forging Plaintiff name on the checks to Linda Mahdi. Plaintiff alleges after Linda Mahdi

8

received checks, Muhammad Usman would resume in forging Plaintiff name clearly showing and ungodly

9

relationship between Linda Mahdi and both men. Plaintiff alleges not including the checks for Linda Mahdi

10

that Muhammad Usman had allowed Adib Mahdi and Agin Muqtasid to forged but rather additional checks

11

that Linda Mahdi attempted to conceal the forgery of Plaintiff signatures by Adib Mahdi and Agin Muqtasid

12

(the fathers of two of Linda Mahdi sons) by claiming that she forged Plaintiff names on those checks whereas

13

handwriting expert verified that the signatures were Adib Mahdi and Agin Muqtasid and not Linda Mahdi

14

signature.

15

16

(96) Plaintiff alleges subpoena Duces Tecum of B.F.I. Communication cancel checks from Bank of America

17

submitted to San Diego Superior Court did not include any of approximately 20 checks showing the pattern of

18

Adib Mahdi and Agin Muqtasid being married to Linda Mahdi and the provider of Plaintiff family.  Bank of

19

America submitted only 310-cancel check to Superior Court whereas Exhibit-A is showing check number 719

20

and Exhibit- 85 B.F.I. Bank statement is clearly showing 832 checks written on the account. Bank of America

21

knowing that Judge Davidson working on behalf of Defendants was not going to allow Plaintiff to compel the

22

court to make the Bank of America comply with the subpoena dues tecum of the remaining 522 conceal

23

cancel checks. Plaintiff allege within the 522 cancel checks would reveal checks cash against conceal BFIC

24

Corporate Bank Account, Cancel checks to Bethel AME Church revealing fraud and Corruption of Attorney

25

Cynthia Bowen as Public Defender and Minister of Bethel AME Church. The Fraud and Corruption of

26

27

28

92

1

2

Attorney Douglas Odem, BFIC Ex-board Members, MCI-WorldCom and IXCLD. Plaintiff alleges

3

Defendants wants the courts to believe that Judge Davidson being a member of Bethel AME Church had

4

nothing to do with him looking at Exhibit-A clearly showing Bank of America check numbers 1 through 719

5

6

and Bank of America fraudulent response to subpoena in the mailing of cancel checks with check numbers

7

from 1 through 310 and Judge Davidson indicating that Bank of America has comply to Plaintiff subpoena

8

duces tecum of all cancel checks.  Plaintiff alleges the intentional concealment checks were in furtherance of

9

the Conspiracy of Malicious Prosecution causing damages to Plaintiff of approximately $5 billion dollars.

10

Plaintiff alleges.

11

12

Cause of Action Account 38

13

14

Conspiracy of Malicious Prosecution by Linda Mahdi, Bank of America and BFIC Ex-board Members.

15

16

(97) Plaintiff alleges Bank of America refused to Comply with submission of two Subpoena Duces Tecum of

17

Bank Records from Plaintiff not recognizing Plaintiff constitution right to represent himself in Pro Per Status.

18

After twisting Judge Davidson arm Plaintiff's Advisor Counselor Thomas Ochs finally sign the subpoena

19

dues tecum to Bank of America for BFIC bank records.  Plaintiff alleges three weeks later the Court received

20

a sealed envelope supposedly from Bank of America subpoena department without any Cancel Checks and

21

with fraudulent BFIC Bank Statements that was not from Bank of America. Plaintiffs alleged to the Court that

22

the Bank Statements was fraudulent and Plaintiff had verification from Bank of America Subpoena

23

Department that statements did not come from Bank of America. Clearly showing Bank of America

24

Subpoena department never received Plaintiff Advisor Counselor Attorney Thomas Ochs Subpoena dues

25

tecum.  Plaintiff alleges after Judge Davidson reviewed the Bank Statements which was clearly fraud, he

26

27

93

28

reluctantly admitted that the bank statements appear to be Fraudulent and order a special hearing to determine whether the Documents were fraudulent. Plaintiff had five witnesses to verify by telephone conversation with Bank of America Subpoena Department that Bank of America never received Attorney Thomas Ochs Subpoena Dues tecum. Plaintiff alleged that Attorney Thomas Ochs never sent the subpoena to Bank of America rather he conferred with BFIC Ex-board Members Attorneys whereas Muhammad Usman being the owner Copy Cove Printing printed the fraudulent Bank statements and express Mail them to the Court. Plaintiff alleges digging a deeper hole for Bank of America overt corruption and fraud Bank of America law firm **Procopio, Hargeaves, Cory and Salvitch** at that point in furtherance of the conspiracy invites Deborah Ben-Caan (Muhammad Usman Attorney) to leave Gordon Rees to join Bank of America Law Firm as a partner in crime (Plaintiff alleges by reference Cause of Account-62 which reveals the grafted inhuman (low-life) lying character of Deborah Ben-Caan in her participation of last Overt Act of Malicious Prosecution of Plaintiff). Plaintiff alleges the fraudulent Bank statements submitted to the Court was in furtherance of Conspiracy of Malicious Prosecution causing Damages of approximately $5 billion dollars. Plaintiff alleges Violation 18 USCS 1503 obstruction Justice causing damages of $5 billion dollars.

<center>Cause of Action Account 39</center>

Conspiracy of Malicious Prosecution by BFIC Ex-board Members, J & J properties A LLC, Ralph Burni, Dean Burni, and 701 LLC, Steve Considine.

(98) Plaintiff alleges January 1997 to present Defendants knowingly and willingly that the financial transaction of real estate investment was designed in part to conceal revenues from the diversion of BFIC customers. Plaintiff alleges from December 1996 to present BFIC Ex-board members has diverted BFIC

<center>94</center>

1

2

revenues through J & J properties with aid of Ralph Burni and Dean Burni in the investment of 7 commercial

3

properties value at approximately $20 million dollars.   Plaintiff alleges BFIC Ex-board Members from

4

December 1996 to present has diverted BFIC revenues through 701 LLC with the aid of Steve Considine in

5

the investment of Properties value at approximately $40 million dollars. Plaintiff alleges BFIC Office was

6

located 701 Broadway San Diego owned by 701 LLC and Plaintiff was evicted from Office during false

7

imprisonment and **all BFIC records were destroyed** by BFIC Ex-board Members. Steve Considine is the

8

brother of Tom Considine BFIC Ex-board Members and Head of BFIC Billing Department.  Plaintiff alleges

9

the intentional concealment of revenues was in furtherance of Malicious Prosecution causing damages of $5

10

billion dollars.

11

                              Cause of Action Account -40

12

13

14

Conspiracy of Malicious Prosecution by St. Stephen Church of GOD IN CHRIST in San Diego, Bishop

15

George McKinney, Deacon Ed Taylor and Martha Taylor

16

17

(99) Plaintiff alleges March of 1996 St Stephen COGIC, individual Defendants in this Complaint conspired

18

with BFIC Ex-board Members and induced Plaintiff through reliance to believe that St. Stephen Congregation

19

long distance telephone numbers had not been switched by MCI-WorldCom forcing Plaintiff to sign Contract

20

with IXCLD. Plaintiff later discovered in January 1999 this was untrue. The customers were processed and

21

revenues were being diverted and St. Stephen receiving rebate on revenues before and after every month.

22

Plaintiff alleges St. Stephen Church of GOD IN CHRIST, Bishop George McKinney, Ed Taylor and Martha

23

Taylor furtherance of the Conspiracy of Malicious Prosecution with the intentional of St. Stephen Church of

24

GOD IN CHRIST congregation monthly long distance bills payment being diverted every month for four

25

years through fraudulent billing relationship establish by BFIC Ex-board Members. Plaintiff alleges Bishop

26

27

28

McKinney was an BFIC Ex-board Member; Martha Taylor was administrative Secretary for BFIC and Member of St. Stephen Church and Ed Taylor father of Martha Taylor and member of St. Stephen Church. Plaintiff alleges all parties' intentional concealment of St. Stephen Congregation monthly telephone payments being diverted to fraudulent bank accounts and the intentional concealment of BFIC monthly revenue rebate checks to St. Stephen COGIC received every month from conceal bank accounts through BFIC Ex-board Members. Plaintiff alleges damages of $5 billion dollars.

                              Cause of Action Account 41

Conspiracy of Malicious Prosecution National Association of AME Churches and

Bethel AME Church of San Diego, and Pastor Dennis William, Minister Cynthia Bowen, Douglas Odem

   and William Davidson.

(100) Plaintiff alleges Bethel AME Church and Pastor Dennis William, Minister Cynthia Bowen and Members Douglas Odem and William Davidson was in furtherance of the Conspiracy of Malicious Prosecution by the intentional concealment of BFIC contract with Bethel AME church generating revenues from Bethel AME Members long distance telephone bills every month from 1996 to present. Plaintiff alleges Ex-Attorney Douglas Odem a member of Bethel AME Church was fired by Plaintiff for collusion with IXCLD, MCI-WorldCom and BFIC Ex-board Members (see Exhibit-36 and Exhibit-4 referencing Cause of Action Account-20). Plaintiff alleges in 1999 Cynthia Bowen Minister of Bethel AME church and Public Defender was assign by San Diego Superior to represent Plaintiff in false charges of Attempted Murder by wife Linda Mahdi and BFIC Ex-board Members whereas Attorney Cynthia Bowen was fired by Plaintiff fro conflict of interest for conspiracy of fraud with Linda Mahdi, BFIC Ex-board Members and Attorney Douglas

1

2

3

4

Odem. San Diego Superior Court, San Public Defender Office Director and Attorney Cynthia Bowen denied the existence of any potential Conflict of interest (See Cause of Action Account-49). Plaintiff alleges Anthony Saulisberry BFIC customers shown in Exhibit-51A is a member of Bethel AME Church and his blood brother Attorney Charles Saulisberry employed by the Law Firm Thompson Coburn was fired by Plaintiff for conflict of Interest whereas Thompson Coburn was representing MCI-WorldCom and Plaintiff at the same time (see Cause of Action Account 15, 16 and 17 in this complaint). Plaintiff alleges on June 11, 1999 when trying to subpoena Records to impeach BFIC Ex-board Members Testimony the Attorneys for MCI-WorldCom, IXCLD, IXC Communication Inc, Bank of America, Union Bank, Muhammad Usman, Attorney Douglas Odem, Attorney Cynthia Bowen and Deputy District Attorney Ann Maria Errata met in Judge Kenneth So private chambers without Plaintiff knowledge and selected Judge Davidson as Plaintiff all purpose Judge for Linda Mahdi false charge of Attempted murder against Plaintiff. **Judge William Davidson as a present Member of Bethel AME Church in San Diego when asked while presiding of Plaintiff criminal proceeding was he a member of Bethel AME Church in San Diego, Judge Davidson openly lied by stating that he was not a member of Bethel AME.**

(101) Plaintiff alleges on or about April 1996 in St. Louis, Missouri signing contract with National Secretary Hercules Miles of the National Association of AME Churches and revenues from contract was diverted by BFIC Ex-board Members and Hercules Miles. Plaintiff is alleging from April 1996 to present the intentional concealment of BFIC revenue rebate checks from conceal BFIC corporate Bank Accounts every month from AME Members Monthly telephone bills cause damages to Plaintiff of approximately $5 billion dollars.

97

1

2

Cause of Action Account- 42

3

4

Conspiracy of Malicious Prosecution by Bayview Baptist Church,

5

Pastor Timothy Winters, Dee Richmond, Lillian Blackman and Maxine Bracey

6

7

8   (102) Plaintiff alleges on or about March of 1996 Bayview Baptist Church, individual Defendants in this

9   Cause of Action Account complaint conspired with BFIC Ex-board Members and induced Plaintiff through

10  reliance to believe that Bayview Baptist Congregation long distance telephone numbers had not been

11  switched by MCI-WorldCom forcing Plaintiff to sign Contract with IXCLD. Plaintiff later discovered in

12  January 1999 Bayview Customers were switch and revenues were being diverted through fraudulent bank

13  accounts. Plaintiff alleges the furtherance of Malicious Prosecution by Bayview Baptist Church Pastor

14  Timothy Winters and members Dee Richmond, Lillian Blackman and Maxine Bracey by the intentional

15  concealment of Bayview Baptist Church Congregation monthly long distance telephone bills being billed

16  through fraudulent billing relationship of MCI-WorldCom/DCA, IXCLD and BFIC Ex-board Members

17  shown in Exhibit-15.  Plaintiff alleges hiring Dee Richmond as consultant for BFIC and from Dee Richmond

18  recommendation hired Bayview Baptist member Lillian Blackman as personal secretary in January 1998.

19  Plaintiff has since discover Lillian Blackman was member of Bayview Baptist Church and was BFIC

20  customer in January 1996 being billed by MCI-WorldCom/DCA and telephone payments being made to

21  fraudulent lockbox Bank account. Plaintiff alleges intentional concealment by all parties of BFIC Ex-board

22  Members paying monthly revenue checks from fraudulent conceal Bank accounts to Bayview Baptist church

23  every month from 1996 to present. Plaintiff alleges damages of approximately $5 billion dollars.

24

25

26

27

28

1

2

Cause of Action Account 43

3

4

Conspiracy of Malicious Prosecution Muhammad Islamic Foundation, Muhammad Ali

5

Foundation, Ahmed Darwish and Jabir Muhammad

6

7

8   (103) Plaintiff alleges Muhammad Islamic Foundation, Muhammad Ali Foundation and Jabir Muhammad

9   furtherance Conspiracy of Malicious Prosecution by intentional concealment of BFIC Ex-board Members

10  paying revenues Muhammad Islamic Foundation from BFIC diverted customers every month from May 1996

11  to present. Plaintiff alleges Ahmed Darwish was a computer consultant from Muhammad Islamic Foundation

12  who was instrumental in setting of the Program for the diversion of BFIC Customers. Defendants and all

13  Attorneys deny the existence IXC, DCA and BFIC Relationship. Plaintiff alleges not only do we have

14  Exhibit-15 the billing relation and Exhibit-13 the actual bill sent to customers, we also have BFIC/ DCA/

15  IXCLD computer program that was written Ahmed Darwish for the diversion of those Customers (see

16  Exhibit-13A). Jabir Muhammad was one of BFIC Ex-board Members and is chairman and CEO Muhammad

17  Islamic Foundation and Muhammad Ali Foundation in Chicago. Plaintiff alleges defendant concealment of

18  monthly rebate checks from fraudulent bank accounts has cause damages to Plaintiff of approximately $5

19

20  billion dollars.

21              Cause of Action Account 44

22

23  Conspiracy of Malicious Prosecution and Violation Plaintiff Due Process of Law under the 14 Amendment of

24  the Constitution by MCI-WorldCom, the City East St. Louis, Illinois and Ishaq Shafiq.

25

26  (104) Plaintiff alleges the City of East St. Louis and Ishaq Shafiq furtherance of the Conspiracy of malicious

27

28

1

2

Prosecution by the intentional concealment of City of East St. Louis monthly telephone bill being billed
3
through fraudulent Billing relationship with DCA/IXCLD and Monthly telephone bill payments being
4
diverted through fraudulent bank accounts establish by BFIC Ex-board Members. Plaintiff alleges Ishaq
5
Shafiq was Deputy Mayor of East St. Louis when Plaintiff signed contract in April 1996 and introduce
6
Attorney Charles Saulisberry of Thompson Coburn to Plaintiff in October 1997. BFIC switched entire 240
7
City telephone lines, calling cards as well as Pay Phones on city property and the revenues of approximately
8
$30,000 per month were diverted through fraudulent bank accounts from April 1996 to present. MCI-
9
WorldCom Attorneys in the St. Louis area (most likely from Thompson Coburn Law firm) did a deposition
10
with the City Manager and City Employees in November 1997 and Plaintiff alleges in that deposition
11
revealed to what lockbox Bank Accounts the City of East St. Louis made monthly telephone payments.
12

13
None of Plaintiff Attorneys, MCI-WorldCom Attorneys or the City of East St. Louis has allowed Plaintiff to
14
review depositional testimony. Ishaq Shafiq and the City of St. Louis have concealed the Lockbox Bank
15
Address used by DCA, IXCLD and BFIC Ex-board Members in fraudulent billing relationship. Plaintiff
16
alleges the concealment of the City phone bill payments and to Lock-box bank accounts and rebate checks
17
from conceal bank accounts by Ishaq Shafiq and present City Administration have cause damages to Plaintiff
18
of approximately $5 billion dollars. Plaintiff alleges intentional concealment of MCI-WorldCom Depositions
19
of City Employees was a Violation of Plaintiff due Process of Law causing damages to Plaintiff of $5 billion
20
dollars.
21

22

23

24

25

26

27
28

1

2

3

Cause of Action Account 45

4

5  Conspiracy of Malicious Prosecution by Masjid Tarqwa, and Members Wali Fardan, Jameel Mahdi, and

6  William Jenkins.

7

8  (105) Plaintiff alleges Masjid Tarqwa and Defendants in this Cause of Action Account was furtherance of

9  Conspiracy of Malicious Prosecution by the intentional Concealment of revenues by BFIC Ex-board

10  Members from BFIC diverted Customers to Masjid Tarqwa from 1996 to present.

11  Plaintiff alleges William Jenkins and Lee Mallory Ex-employees in BFIC customers department was aiding in

12  Conspiracy of diverting BFIC customers. Plaintiff alleges Aqueel El-Amin Agent of BFIC and Ex- Director

13  of Masjid Tarqwa School and Linda Mahdi the Principle of the School had conspired with Agin Muqtasid

14  (COO of BFIC and Linda Mahdi lover) prior to the existence of BFIC in the embezzlement of funds from

15  Masjid Tarqwa School (Sister Clara Muhammad School) shown in Exhibit-78 fraudulent letter requesting

16  international donation for the School whereas Agin Muqtasid has forged Plaintiff name. Plaintiff had no

17  knowledge of this fraud and Plaintiff have discovered July 1999 that his wife and Aqueel El-Amin were

18  removed from their position at Sister Clara Muhammad School because of the embezzlement, fraud and

19  Plaintiff wife ungodly relationship Aqueel El-Amin and Agin Muqtasid. Plaintiff alleges and incorporated

20  Cause of Action Account-37 whereas Agin Muqtasid and Adib Mahdi are the impersonators that are taking

21  turns establishing a pattern forging Plaintiff names on checks only for Linda Mahdi (signature verified by

22  handwriting Expert).   Plaintiff alleges a history of Masjid Tarqwa hypocrisy in concealment of fraud and

23  ungodly relationship.

24

25  (106) Plaintiff alleges Aqueel El-Amin as BFIC Agent and Linda Mahdi invites Plaintiff to hire Waheedah

26  El-Amin daughter of Aqueel El-Amin as BFIC bookkeeper who conceal the forgery of Plaintiff name on

27

28

1

2

3   Checks and Waheedah issuing the five unaccountable checks to American Arbitration Association clearly

4   showing BFIC paying for IXC Arbitration fees. Ishmael El-Amin son Aqueel El-Amin whom Plaintiff hired

5   as head of BFIC Computer Department and Mustafa El-Amin following the corrupt example of father joins

6   the conspiracy. William Jenkins a BFIC Ex-employee whom Plaintiff hired immediately after he had gotten

7   out of prison and who join the in Conspiracy of fraud of BFIC is now Corporate Secretary for Masjid Tarqwa.

8   Plaintiff brothers Jameel and Adib Mahdi in twenty years never participated in the development of Masjid

9   Tarqwa are now committee Members at Masjid Tarqwa.

10  (107) Plaintiff alleges the discovery in May of 2000 that Muhammad Ali Hassan members San Diego Police

11  Department for 28 years and friend of Plaintiff and member of Masjid Tarqwa for 30 years signed his name as

12  Police Officer fraudulent validation of Restrainer order claim by Adib Mahdi against of Plaintiff. The

13  fraudulent violation of Restraining Order took place in 1998 whereas Plaintiff have no knowledge of and was

14  never was informed. Plaintiff alleges coming in contact with Officer Hassan on several occasion and still was

15  never informed about the alleged violation.

16  (108) Plaintiff alleges Masjid Tarqwa is claiming none of their members was part of any conspiracy against

17  Plaintiff. Plaintiff alleges the intentional concealment of revenues of rebate checks drawn from conceal

18  fraudulent Bank accounts received by Masjid Tarqwa from BFIC Ex-board members cause damages to

19  Plaintiff of approximately $5 billion dollars.

20

21

22                    Cause of Action Account 46

23   Conspiracy of Malicious Prosecution by the National Association of NAACP

24

25  (109) Plaintiff alleges on about July 1999 seeking the assistance from NAACP to Expose the fraud and the

26  deceit of the Conspiracy of Malicious Prosecution by IXCLD, MCI-WorldCom, all of the Attorneys and

27

28

American Arbitration Association the NAACP informed Plaintiff of there inability to help. Plaintiff alleges on or about July of 1999 Plaintiff sought the aid of NAACP in the Malicious Prosecution of Plaintiff by Linda Mahdi, BFIC Ex-board Members and San Diego District Attorney Office in requesting a letter from the Honorable US Congressman Kweis Mfume Head of NAACP informing the Court that Plaintiff and Muhammad Ali was with the Congressman at the times Plaintiff criminal History was showing Plaintiff being Arrested for drugs and Burglary. Plaintiff alleges the NAACP did not respond because of Attorney Douglas Odem, Harold Murray, Gene Thomas of Odem, Greene, Murray and Thomas Law Firm and Public Defender Attorney Cynthia Bowen are all Board of Directors of the San Diego Local NAACP. (See Cause of Action Account 16, 41, and Cause of Action Account-49 on Interest at hand).  Plaintiff alleges NAACP support of their local Board of Directors fraud and deceit was in furtherance of Conspiracy of Malicious Prosecution causing damages to Plaintiff of approximately $5 billion dollars.

Cause of Action Account 47

Conspiracy of Malicious Prosecution by Rochelle Johnson

(110) Plaintiff Alleges on or About January 26, 1999 Linda Mahdi sister Rochelle Johnson knowing and willingly forged Linda Mahdi name on Restrainer Order charging Plaintiff with spousal abuse of Linda Mahdi. Linda Mahdi has testified in preliminary hearing that while she was at work and without her knowledge or authority Rochelle Johnson appear in person at South Bay Court Clerk Office and answered the questions on Restrainer Order and forged Linda Mahdi name on the documents. Rochelle Johnson under the penalty of perjury under the Laws of the State of California forged Linda Mahdi name on Restrainer Order stating false statements she created within her own mind of fraudulent abused of Linda Mahdi by Plaintiff.

104

1

2

3  Plaintiff alleges San Diego Superior Court and San District Attorney Office $400,000 dollars bail; Plaintiff

4  history of Violence and strict probation was based on Fraudulent Restrainer Order.  Linda Mahdi never had

5  any reason to have a restrainer order place on Plaintiff and indicated in the preliminary of only one restrainer

6  order ever on Plaintiff. Plaintiff alleges and incorporates by reference Cause of Action Account 54 whereas

7  Linda Mahdi is going along with four additional fraudulent Restraining Orders that she supposedly brought

8  against Plaintiff and the District Attorney Office never was able to produce documents to the court but openly

9  lied to the Jury stating that the four restrainer orders were valid. Plaintiff alleges Rochelle Johnson fraudulent

10  Restraining Order was in furtherance of the Conspiracy causing Damages of $5 billion dollars.

11

12                        Cause of Action Account 48

13             Conspiracy of Malicious Prosecution by Linda Mahdi

14

15

16  (111) Plaintiff alleges Linda Mahdi in furtherance of Conspiracy of Fraud brought false charges of domestic

17  Violence on January 24,1999 against Plaintiff upon Plaintiff discovery of Bank of Oklahoma Exhibit-21A

18  letter dated January 13, 1999 showing the closing of fraudulent unauthorized BFIC Bank Account at Bank of

19  Oklahoma. Plaintiff alleges another motive for Linda Mahdi false charges was Exhibit-C Letter dated January

20  11, 1999 from Bank of America indicating Plaintiff name was forged Bank of America checks. Plaintiff

21  alleges the Head of San Diego District Attorney Fraud Division Deputy District Attorney Peter Longbauch

22  requested Plaintiff to secured Exhibit-C letter dated January 11, 1999 from Bank of America which Peter

23  Longbauch stated was all he needed in order to Prosecute Plaintiff Wife and BFIC Board Members for

24  forgery and Fraud. Plaintiff alleges awareness in January 1999 that his wife had forged his name on checks

25  and documents base on her relationship with BFIC Ex-board Members Adib Mahdi, Agin Muqtasid, Jameel

26  Mahdi and Muhammad Usman. Plaintiff alleges Linda Mahdi forged Plaintiff name on checks shown in

27
                                    105
28

Exhibit-91 Superior Court transcripts and in January 18, 1999 Plaintiff discovered Linda Mahdi was trying to shield Agin Muqtasid and Adib Mahdi crime of forging Plaintiff name on checks by stating to Plaintiff that she forged Plaintiff name on certain checks. Plaintiff alleges BFIC Ex-board Members inform Linda Mahdi that San Diego District Attorney office would not prosecute her being the wife of Plaintiff.

(112) Plaintiff alleges another good motive of false charges by Linda Mahdi whereas on March 5, 1999 the day Plaintiff was arrested for Attempted Murder was the same day Plaintiff was to have blood test on Plaintiff son Faheem Mahdi. Plaintiff alleges the discovery of three of the Conspirators as being the father of three of four children. Plaintiff that Brothers Adib Mahdi and Zayid Mahdi is the father of Plaintiff two older sons and Agin Muqtasid BFIC chief operating is the father of Plaintiff youngest son. Plaintiff alleges Cause of Action Account 55 showing Judge Davidson and San Diego District Attorney Office impediment of Blood test. See Cause of Action Account-37 paragraph (95) and Cause of Action Account-45 paragraph (105) showing relationship with Agin Muqtasid and Adib Mahdi.

(113) Plaintiff alleges **Cause of Action Account 54, 56, and 57** -evidence showing Linda Mahdi being abused by someone other than Plaintiff even while Plaintiff is in jail. Plaintiff alleges older brother Jameel Mahdi in the beginning was extorting Linda Mahdi for money and Sex for keeping the ungodly relationships secret from Plaintiff.

(114) Plaintiff three brothers and BFIC Ex-board Members conspired in the false imprisonment trying to give Plaintiff life in prison without possible parole. Plaintiff has work on his brother's behalf all of his life. Plaintiff alleges older brother Jameel Mahdi was serving three life terms in Arkansas Prison and Plaintiff with Muhammad Ali boxing Champion requested and received Pardon on his Behalf from Governor Clinton 1986 for his release and re-located him in to San Diego. **Plaintiff alleges Jameel Mahdi is now giving false testimony to imprison Plaintiff for life without possibly parole.**

Plaintiff alleges Defendants in the concealment of their fraud conspired in the attempted murder of Plaintiff

106

life while Plaintiff was in jail.  Plaintiff was stabbed in the side near his kidney. Plaintiff alleges Exhibit-58 is Expert Witness on hand-knife wounds who have testify on behalf the San Diego District Attorney Office over 100 times and is now Expert witness for Plaintiff testifying the knife was not being trust at Linda Mahdi when she injured her hand. Clearly Linda Mahdi was not Attack by Plaintiff.  Plaintiff alleges the Furtherance of Maliciously prosecution by Linda Mahdi and BFIC Ex-board members whereas Jury in San Diego Superior Court found Plaintiff innocent of Attempted murder on October 17, 1999. Plaintiff is alleging Malicious Prosecution causing Damages of approximately $5 billion dollars.

Cause of Action Account 49

Linda Mahdi and BFIC Ex-board Members in Violation of 14 Amendment of

The Constitution Due Process of Law

(115) Plaintiff alleges on about March 1999 BFIC Ex-board Members through MCI-WorldCom, IXCLD, Bank of America, Union Bank and GTE Long Distance Law firms influence the San Public Defenders Office Director Mr. Sterling to assign Public Defender Cynthia Bowen as Plaintiff's Attorney. Attorney Bowen is Minister of Bethel AME who played a key role in the Conspiracy against Plaintiff (see Cause of Action Account 41 in this Complaint. Plaintiff alleges Bethel AME church Leadership with BFIC Ex-board Members and Linda Mahdi diverted Bethel AME congregation /BFIC Customers long distance monthly telephone bills every month for four years totaling approximately $1.6 million dollars. Attorney Cynthia Bowen deceive the court by stating she was never a BFIC customer. Attorney Bowen is a good friend of Plaintiff Ex-Attorney Douglas Odem and Attorney Bowen fail to mention that Attorney Douglas Odem is also Members of Bethel AME, Anthony Saulisberry the Brother of MCI-WorldCom Lead Attorney Charles Saulisberry who was

107

1

2

Plaintiff Attorney at the same time MCI-WorldCom, IXCLD and BFIC Ex-board Members are suing

3

Plaintiff. Plaintiff was forced to go Pro Per in representing himself in order to have Attorney Bowen removed

4

as Public Defender. Plaintiff alleges the assignment of Public Defender Attorney Cynthia Bowen was in

5

furtherance of the Conspiracy Malicious Prosecution and Violated Plaintiff rights under the 14 Amendment

6

Due Process of the Constitution causing damages of approximately $5 billion dollars.

7

8

9                               Cause of Action Account 50

10

11          BFIC Ex-board Members in Violation of the 14 Amendment of the Constitution Due Process

12

13      (116) Plaintiff alleges after Attorney Cynthia Bowen from Public Defender Office failed to convince Plaintiff

14      that he was having nervous breakdown in Conspiracy Claims and to plead guilty and accept 12 years in

15      prison. The attorneys for MCI-WorldCom, IXCLD, Bank of America, Union Bank, Bethel AME church,

16      BFIC Ex-board Members met privately with Judge Kenneth So without Plaintiff who is Pro Per and selected

17      Judge William Davidson as Plaintiff all purpose Judge. Plaintiff alleges Judge Davidson for protection of the

18      Defendants quashes all subpoena duce tecum on records of Defendants that would have impeached Plaintiff

19      wife and BFIC Ex-board Member's testimony against Plaintiff. Plaintiff alleges Judge Davidson trial

20      proceeding did admit that his grandmother was a member of Bethel AME Church and he attended the church

21      when he was a little boy and he was a member of an Associated church up north in the Bay area. Plaintiff has

22

23      discovered that Judge Davidson is presently is a member of Bethel AME (see Cause of Action Account-41).

24      Plaintiff alleges Judges Davidson after receiving a favorable Psychological Evaluation on Plaintiff was not

25      satisfied with results and order another Evaluation inducing Dr. DiFranseca into stating in her Evaluation that

26      Plaintiff is suffering delusional Disorder in claim of forgery, fraud and Conceal bank accounts referencing

27

28                                          10 ⸉

Cause of Action Account-58.  Plaintiff alleges Judge Davidson was in direct conflict with Plaintiff violating 14th Amendment of the Constitution due process causing damages of approximately $5 billion dollars.

Cause of Action Account 51

San Diego District Attorney Deputy District Attorney office Violation 42 USC 1985 Equal Protection of the law and Violation Due process of law under the 14th Amendment

(117) Plaintiff alleges Deputy District Attorney Ann- Marie Urrutia out-right lied to San Diego Superior Court by stating that San Diego District Attorney office fraud Division review Documentation by Plaintiff and inform Plaintiff by letter that there wasn't any basis to file criminal action against BFIC Ex-board Members and it was Civil Matter (See Exhibit-87 court transcripts of the false statement). Two weeks later in 402 hearing Plaintiff an unskilled layman is Impeaching BFIC Ex-board Members Muhammad Usman testimony and now the District Attorney office on what was supposedly a Civil matter Deputy District Attorney Ann- Marie giving Muhammad Usman Immunity for forging Plaintiff name on approximately 200 of 300 checks totaling approximately $350,000 dollars. Plaintiff alleges DA Office failed to inform Plaintiff and the Court of DA office negotiating Immunity with Muhammad Usman new law firm Procopio, Cory, Hargeaves and Salvitch who also represents Bank of America who participated in fraud and forgery. Plaintiff alleges San Diego District Attorney Office reversal of positions deny Plaintiff his Equal Protection of the Law causing damages of Approximately $5 billion dollars and violation Due Process of Law causing damages of $5 billion dollars.

109

Cause of Action Account 52

San Diego District Attorney Office in Violation of Eighth Amendment the Constitution

(118) Plaintiff alleges his 8th Amendment under the Constitution was violated by San Diego District Attorney office Deputy District Attorney Anne Marie Urrutia and **San Diego FBI Office** creating fraudulent criminal history on Plaintiff showing arrest of robbery, burglary, drugs and car theft while being married to Linda Mahdi establishing a $400,000 dollars bail base on fraudulent criminal history. Plaintiff's wife Linda Mahdi, Brothers Adib Mahdi, Jameel Mahdi and BFIC Ex-board Members supported these fraudulent charges knowing Plaintiff has never been arrested for any crimes (see Exhibit-26 false criminal history of 43 arrest record and 29 arrest while marry to Linda Mahdi. First page fraudulent criminal history is showing 5-13-76 Richard Higgins (Plaintiff name before Islam) receiving Real estate license and having to be fingerprinted and these fingerprints records are Plaintiff. The bottom of the page states entries indicated by asterisk (*) are not verified by fingerprints in **CII files (FBI files)** meaning all of the arrest records under alias a.k.a. without asterisk (*) is Richard Higgins Plaintiff name before changing Abuwi Muhammad Mahdi. Plaintiff alleges Exhibit-25 Plaintiff Bio is true history, which is just the opposite Exhibit-26). Plaintiff alleges San Diego District Attorney, Linda Mahdi and BFIC Ex-board Members in furtherance of the Conspiracy of Malicious prosecution was in violation of Eight Amendment of the Constitution causing Damages to Plaintiff of Approximately $4.7 billion.

/10

1

2

Cause of Action Account 53

3

4

5   San Diego Superior Court, San Diego District Attorney Office, San Diego Probation Department and All

6   Defendants are in Conspiracy of violation of First Amendment to the Constitution of the United States.

7

8   (119) Plaintiff alleges Judge William Davidson in San Diego Superior Court Department 22, Deputy District

9   Attorney Ann Marie Urrutia, Lisa Forbes San Diego Probation Department issue Plaintiff a court order of no

10   contact directly or indirectly for five years with Plaintiff four children, wife, BFIC Ex-board Members,

11   Attorneys and witness totaling approximately 67 people. If Plaintiff has any contact directly or indirectly

12   Plaintiff will be in violation of his Probation and goes to Prison for five years. Plaintiff is in violation of his

13   Probation if he ever goes into the city of Chula Vista or Bonita where his family resides and if Plaintiff goes

14   into certain building in San Diego he is in violation of Probation. Plaintiff was denied Probation in Africa

15   outside America for ten years; Plaintiff was denied Probation outside the State of California and outside the

16   City of San Diego. Judge Davidson in violent lust in betrayal of Constitution in protecting the Conspiracy of

17   Malicious Prosecution and fraud of the Defendants denied Plaintiff the right to go the Mosque to worship

18   GOD. This means Plaintiff cannot go every Friday to Prayer Services at any of the Eight Mosques (places of

19   worship) in the county of San Diego and won't allow Plaintiff to go LA on Friday to worship. Judge

20   Davidson being a good slave in protecting the corrupt interest MCI-WorldCom in his arrogance is going to

21   deny MAN GOD GIVEN RIGHT TO WORSHIP.  Plaintiff alleges Judge Davidson has no respect for GOD,

22   which shows his outright disrespect of the First Amendment to the Constitution giving every man in America

23   freedom of WORSHIP.

24

25   Plaintiff alleges this unconstitutional court order was born out false and Malicious Prosecution. Plaintiff was

26   falsely accused of the willful Violation of four Restraining Orders that Linda Mahdi establish against Plaintiff

27

28                                                    / 11

and Judge Davidson, Deputy District Attorney Ann Marie, Lisa Forbes concealed these fraudulent restraining orders from the courts. Plaintiff alleges that Linda Mahdi has never signed any restraining orders against Plaintiff. These false claims have justified the Parties ordering Plaintiff to this strict unconstitutional no Contact order. Plaintiff alleges this UNGODLY Act shows any GOD Fearing Man depth of evil and malice of Defendants. Plaintiff alleges the furthering the Conspiracy Malicious Prosecution the Defendants violated Plaintiff First Amendment Right to Practice his religion causing damages of $5 billion dollars.

                              Cause of Action Account 54

Conspiracy of Malicious Prosecution by San Diego District Attorney Office and San Diego Probation Department

(120) Plaintiff alleges Intentional concealment of fraudulent San Diego Police Report from March of 1999 to present stating Plaintiff in violation of four restraining orders establish by Linda Mahdi whereas Plaintiff is alleging the restraining orders are against Plaintiff two brothers and Agin Muqtasid which would Impeach Linda Mahdi testimony of Plaintiff abusing his wife during their Marriage. Plaintiff alleges Linda Mahdi has never signed any restraining Orders against Plaintiff. Plaintiff alleges the restraining orders were against other men-impersonating Plaintiff while Plaintiff is traveling on Extensive Business trips with Muhammad Ali. Plaintiff alleges fraudulent criminal history report page seven, date 9-17-89 is showing Impersonator being arrested for a 528 which is impersonating a man by saying you are married to a woman who you are not. Plaintiff alleges this man is arrested in Plaintiff Home while Plaintiff is traveling. San Diego District Attorney has stated that those records have been destroyed (see Exhibit-9 fraudulent letter stating that records have been destroyed). Plaintiff alleges concealment of four violation of restraining Orders was furtherance the

                                    112

1

2

Conspiracy of Malicious Prosecution and Violation of Obstruction Justice causing damages of $5 billion
3
dollars on each Account.
4

5

Cause of Action Account 55
6

7

8      San Diego District Attorney office in Violation 18 USCS 1503- Obstruction of Justice

9      27 relating to specific intent to impede Administration of Justice

10

11   (121) Plaintiff alleges After Judge Davidson refuse to allow Blood test evidence of Plaintiff three boys which

12   Plaintiff alleges that Plaintiff two Brothers and BFIC Ex-board Member and COO Agin Muqtasid are real

13   Fathers. Plaintiff wife Linda Mahdi two weeks after their separation made fraudulent Welfare claim and San

14   Diego District Attorney Office Child Support Division inform Plaintiff they will pay for Blood test if Plaintiff

15   contest the paternity of the child. Plaintiff was falsely arrested the day he was to have the Blood testing which

16   would have taken approximately 5 weeks. Plaintiff orders the blood test in March of 1999.  Plaintiff indicated

17   to Judge Davidson his Courtroom denial of blood test had nothing to with District Attorney office child

18   support Division order for blood testing. Judge Davidson said that there would be no order of blood testing

19   period. The child support division orders the Blood test in March 1999. Plaintiff alleges calling every week

20   for 9 months requesting when are they going to do blood test and finally they came to San Diego Jail in

21   January 2000. Plaintiff alleges the February 16, 2000 Plaintiff was sentence and on February 17, blood was

22   taken from Linda Mahdi and youngest son. Plaintiffs to this day have not received a copy of the results.

23   Plaintiff alleges the San District Office with malice denied Plaintiff rights to blood test which would have

24   impeach Linda Mahdi Testimony showing Linda Mahdi conspiracy of forgery and fraud with same three men

25   that are the father of Plaintiff three boys. Plaintiff alleges it would show that it was not Plaintiff who was

26

27                                        113

28

1

2

abusing Linda Mahdi establishing the motive why these men were abusing Plaintiff wife every time Plaintiff

3

left town. Plaintiff alleges the impediment of Blood tests was in furtherance of Malicious Prosecution causing

4

damages of approximately $5 billion dollars.

5

6

7                          Cause of Action Account 56

8

9     Conspiracy of Malicious Prosecution Violation of Plaintiff Due Process of Law by Linda Mahdi

10    and San Diego District Attorney Office

11

12    (122) Plaintiff alleges District Attorney office Private Investigated interview Nobel Sandoval shown in

13    Exhibit -77 whereas Mr. Sandoval Plaintiff wife Linda Mahdi is being abuse by some man. She crying out

14    'Don't hit me' don't hit me'. Linda Mahdi according the report is trying to stop her son from going after this

15    man and she has a bandage on hand from grabbing the knife she claims when she was attack by Plaintiff.

16    Plaintiff turn himself in less than 30 minutes after Linda Mahdi cut her hand was in jail every single day for

17    14 months. Plaintiff alleges this incident clearly shows Plaintiff was in jail at all times while Linda Mahdi was

18    being abused when her hand was bandage. Plaintiff alleges Exhibit-63, 63A and 63B are court transcripts

19    showing Deputy District Attorney Ann Marie Urrutia lying on three separate hearing stating that this is the

20    same domestic violence incident in South bay when Plaintiff was arrested. District Attorney reported **clearly**

21

22    **states that the police came after everyone left and there was no arrest.** Plaintiff was arrested which is

23    clear argument it was not the same domestic violence event. **Mr. Sandoval states it was quiet for about a**

24    **month before another domestic Violence event occurred**. Clearly showing separate events. District

25    Attorney claims that it was the same police reports and that why District Attorney does not have the police

26    reports.  The concealment of Police report is Conspiracy Malicious Prosecution and Violation of Plaintiff Due

27

28                                    114

1

2

Process of Law causing Damages of approximately $5 billion dollars on each account.

3

4

<center>Cause of Action Account 57</center>

5

6

<center>Conspiracy of Malicious Prosecution BFIC Ex-board Members and Linda Mahdi</center>

7

8

9  (123) Plaintiff has discovered ten years after dramatic event in June of 1999 that his 13 year old daughter was

10  in the hospital for 7 days from abuse and rape while Plaintiff alleges while traveling own a three week

11  business trip. Plaintiff 13-year-old daughter was hospitalized for seven days from 9-15-89 to 9-22-89. All of

12  these years Plaintiff wife, children, and two brothers concealed this information from Plaintiff by telling

13  Plaintiff his daughter was in a hit an run car accident and released from hospital the same day of the accident.

14  (124) Plaintiffs alleges the medical records are showing that Plaintiff daughter inform the hospital that she

15  was not in a car accident and their was Police Report of hit run accident on 13 year old girl being hospitalized

16  for 7 seven days. The Medical records are showing a pat smear test was done on Plaintiff 13-year-old

17  daughter. Plaintiff alleges that these records was obtain after the trial by Plaintiff because of a corruption of

18  Judge Davidson and Deputy District Attorney Urrutia in their unwillingness to allow Plaintiff to review the

19  Medical Records. Judge Davidson review records in camera and informs Plaintiff that there was nothing in

20  the records that were relevant to the case whereas District Attorney Office is claiming Plaintiff was abusing

21  his wife and children for the last ten years, which included the year 1989. Yet Judge Davidson allowed the

22

23  District Attorney to go back and bring up ten years fraudulent domestic violence abuse by Plaintiff wife and

24  Ex-board Members.

25  (125) Plaintiff alleges two days after Plaintiff daughter was hospitalized Exhibit-26 page 7 of fraudulent

26  criminal history report is showing an impersonated of Plaintiff being arrested 9-17 89 on the charge of 528.

27

<center>11 5</center>

28

Plaintiff alleges according to California penal code a 528 is when a man is claiming to be married to a woman that he is not. **Plaintiff is alleging this impersonator in Plaintiff home abusing Plaintiff wife and abused and raped Plaintiff 13-year-old daughter.** The medical records are showing that the daughter father and mother were there at the Hospital with daughter and Plaintiff was traveling out of the state with Muhammad Ali. Plaintiff daughter cannot seek the love and protection of her father because it would expose her mother relationship with this individual. Plaintiff alleges Judge Davidson conceals the Medical Records and Deputy District Attorney Urrutia conceals police report on the 528 and burglary. This impersonated goes to prison for burglary and violation of 528 for 14 months and Deputy District Attorney Urrutia with all of the humanity grated out of her lied again by stating that prison records were destroyed. Plaintiff alleges the $5 billion dollars is this complaint means nothing compared Justice of Plaintiff daughter rape. All defendants are befitting from Plaintiff children's extortion for not standing with their fathers against this Malicious Prosecution and fraud. Plaintiff wife has conspired with the same man Plaintiff 's brother and Ex-board Members and to defrauded Plaintiff. Judge Davidson and Deputy District Attorney Anne Marie Urrutia concealing this crime by denying that crime never happen.  Plaintiff alleges the furtherance of Malicious Prosecution causing damages of approximately $5 billion dollars.

Cause of Action Account 58

Katherine DiFranseca Ph.D., San Diego Superior Court Department 22, Deputy District Attorney Ann Marie Urrutia of San Diego District Attorney and Lisa Forbes, Allan Crogan and Michael Wise of San Diego Probation Department Last Overt Act in Furtherance of Conspiracy of Malicious Prosecution and fraud.

(126) Plaintiff alleges on or about November 1999 Judge Davidson of San Diego Superior Court, Deputy

116

1

2

District Attorney Ann Marie Urrutia of San District Attorney Office and San Diego Probation Department

3

Lisa Forbes, Allan Crogan and Michael Wise concluded that Plaintiff was suffering from delusional disorder

4

with his conspiracy theory of forgery and fraud by wife and Ex-board Members. Plaintiff alleges after

5

receiving Psychological Evaluation on from the County San Diego determination stating Plaintiff was not

6

suffering from Delusional Disorder and should be released on Probation. Plaintiffs alleges Judge Davidson

7

and Deputy District Attorney Anne Marie Urrutia were not happy with the County of San Diego Evaluation

8

and ordered another Psychological Evaluation to be done by someone else who would support Defendants

9

and their position and submit a fraudulent Evaluation and that someone else was Dr. Katherine DiFranseca.

10

(127) Plaintiff alleges when being interview Dr. DiFranseca who is not an Handwriting Expert stated that the

11

signatures on Bank of America checks was similar to Plaintiff signature indicating checks were not forged.

12

Plaintiff submitted the following Exhibits of evidence of forgery and fraud to Dr. DiFranseca;

13

Plaintiff Alleges the submission Handwriting Expert Dr. Richard Whalley letter verifying that Plaintiff

14

signature was forged Bank of America checks shown in Exhibit-A (few of 350 forged Checks submitted to

15

Court totaling about $450,000) and BFIC Union Bank checks in Exhibit-76 (240 checks totaling $160,000

16

dollars)

17

a). Plaintiff showed Dr. DiFranseca Bank of America letter Exhibit-C verifying that Plaintiff name was forged

18

on the checks.

19

b) Exhibit-91 Linda Mahdi testimony saying she signed Plaintiff name of checks. Defendants Muhammad

20

Usman and Linda Mahdi testimony stating that there was no written authority from Plaintiff with Bank of

21

America for Defendants to sign Plaintiff name to checks.

22

c) Court transcript of District Attorney Office giving Muhammad Usman Use Immunity for forging Plaintiff

23

name on 300 checks totaling approximately $350,000 dollars.

24

d) Without Plaintiff knowledge Exhibit-E-1 is Bank of America transfer slip showing Pat Bromely Branch

25

26

27

117

28

1

2

Manager approving Muhammad Usman signature on a $30,000 transferred from B.F.I. Communication

3

account #1704-13181 to Copy Cove account without Plaintiff requirement signature on the two-signature

4

requirement Account.

5

e) Exhibit 76 showing BFIC Ex-board Member Tom Considine cashing an incomplete $5,000 check made

6

out to his company Slivergate without a date written on check and without Plaintiff signature on a two

7

signature requirement on BFIC Corporate Bank Account.

8

f) Exhibit-A and Exhibit-AB showing Muhammad Usman and Bank of America Branch Manager Pat

9

Bromely opening a personal bank account in Plaintiff name without Plaintiff knowledge with B.F.I.

10

Communication printed on checks.

11

g) Hand writing Expert Dr. Richard Whalley verified Muhammad Usman forging Plaintiff name on copy

12

Cove checks shown in Exhibit-E Copy Cove canceled checks from Bank of America. Plaintiff had no

13

knowledge of signature requirement on Muhammad Usman business Account.

14

h) Exhibit-79 shows Check # 449 whereas Muhammad Usman is using his own California Drivers License

15

(#A0287061) to cash a $400 B.F.I. Communication Check made out in Plaintiff name (see Muhammad

16

Usman license # printed of front of Check). Plaintiff alleges the same drivers License number used to Cash

17

BFIC Union Bank check #3372 made out to Muhammad Usman is the same License # used to cash #449.

18

(See signature and license number endorsed of the back of Check). Plaintiff submitted $2,000 check made out

19

in Plaintiff name being cash by Martha Taylor using her own California Driver license. Plaintiff alleges

20

checks totaling approximately $50,000 made out in Plaintiff name and cash by BFIC Ex-board Members

21

using their own ID's.

22

i) Exhibits 2, 3, 8C, 17A, 20, 21A, 53, and Exhibit-FF showing BFIC Corporate Bank Accounts at Bank of

23

America and Washington Mutual. Plaintiff alleges documentation showing ten fraudulent bank accounts open

24

without Plaintiff knowledge.

25

26

27

28

118

j) Exhibit-26 fraudulent criminal history Plaintiff showing 43 arrests whereas Plaintiff had never been arrested for any crime. Plaintiff showed documentation of being with Muhammad Ali and Senator Orrin Hatch at the Senators' home in Salt Lake City, own National Television with Senator Hatch and with Senator Hatch and Muhammad Ali in Senator Dole Office in D.C. at time of three of the fraudulent arrest.

k) Exhibit-77 showing another man abusing plaintiff wife while Plaintiff was in jail and Plaintiff being falsely accused and Cause Action Account-54 showing 4 restraining orders Linda Mahdi has issue against men other than her husband.

l) Plaintiff asked Dr, DiFranseca referencing Cause of Action Account-1 paragraph (15), did she believe in the Big Bang Theory referencing Plaintiff stating did the $513,307 telephone Carrier cost pop-up out of nowhere because it surely did not come out of the only two Bank accounts Plaintiff had knowledge of. Plaintiff asked Dr. DiFranseca where did the $513,307 carrier cost expense come from?

(128) Plaintiff Alleges submission documented evidence of forgery and fraud shown in the Cause of action Accounts 28 through 38 with Bank of America, Account 27 referencing Union Bank, Account 26 referencing Bank of Oklahoma, Account- 14, 15, 16, 17, 19 and 20 conspiracy by Attorneys collusion and conflict of interest.

(129) Plaintiff alleges PricewaterhouseCoopers and four Consultant Reports showing 8,520 BFIC customers generated $965,863 dollars per month averaging approximately $115 per month per customers. All four consultant's reports verification of IXCLD processing 217,413 BFIC customers whereas Plaintiff was invoice for 979 customers. Plaintiff alleges 217,413 BFIC customers monthly long distance bill averaging approximately $115 per month per customer is approximately $25 million dollars per month in revenues.

(130) Plaintiff alleges Deputy District Attorney Peter Longbauch informed Plaintiff in December 1998 that the District Attorney office would prosecute Defendants for forgery once Plaintiff obtained a letter from Bank of America shown in Exhibit-C letter from Bank of America dated January 11, 1999 stating checks were

119

forged. **San Diego District Attorney Office reverse their position once again in Exhibit-87 courts transcripts stating that none of the documentation mention in this Cause of Action Account represents any thing that criminal.**

(131) Plaintiff alleges after reviewing documents of evidence a decision was issued on or about February 2000 by Dr. Katherine DiFranseca, Deputy District Attorney Ann Marie of San Diego District Attorney Office, Lisa Forbes, Allan Crogan ands Michael Wise of San Diego County Probation Office and Judge William Davidson of San Diego Superior Court Department 22 that Plaintiff is suffering from delusional disorders in claim conspiracy of forgery and fraud. Plaintiff alleges in furtherance of the conspiracy Malicious Prosecution Defendants cause Damages of approximately $5 billion dollars.

Cause Of Action Account 59

Linda Mahdi and BFIC Ex-board Members Conspiracy of False Imprisonment - 18 USCA Sec. 241

(132) Plaintiff alleges referencing Cause of Action Account 52, 54, 56 and Cause of Action Account 62 all parties in this Account are in violation Conspiracy of False imprisonment Plaintiff from March of 1999 through March of 2000.Plaintiff alleges Defendants and BFIC Network of Banks denial of BFIC bank Accounts depriving Plaintiff of the ability make bail. Plaintiff is alleging damages on each account of approximately $5 billion dollars.

120

1

2
              Cause of Action Account 60
3

4

5
    All parties this Mention in all Cause of Action Account in this Complaint is in
6
Violation of Conspiracy of Attempted Murder

7

8
(133) All parties in this Complaint are in Violation Conspiracy of Attempted Murder in false imprisonment of

9
Plaintiff. According to the Religion Islam oppression is worst than slaughter. Plaintiff alleges his life was in

10
jeopardy every single day the high profiles cell block whereas the worst of the criminals in San Diego County

11
are housed. Plaintiff had an attempted murder of his life whereas Plaintiff was stab while in cellblock 5C with

12
ice pick. Plaintiff was told that ice pick was design especially for him. Plaintiff alleges defendants have stolen

13
approximately $5 billion dollars and Plaintiff is the only threat of exposure all Defendants was in hope of

14
Plaintiff being murdered while incarcerated for permanent concealment the Malicious Prosecution and Fraud.

15
The murderous Greed and Malice of all defendants in the attempted Murder of Plaintiff causing damages to of

16
approximately $5 billion dollars.
17

18
              Cause of Action Account 61
19

20

21
Dr. Katherine DiFranseca and San Diego District Attorney Office Slander and defamation of character.

22

23
(134) Plaintiff alleges Cause of Action Account 52 referencing fraudulent criminal history of Plaintiff and

24
Cause of Action Account 58 referencing Plaintiff suffering from a delusional Disorder a falsified with malice

25
to destroy Plaintiff Name and reputation and good will. In Furtherance of the Conspiracy Malicious

26
Prosecution through Slander causing damages to Plaintiff of approximately $5 billion dollars.
27

28
                                            121

1

2

3

4                        Cause of Action Account 62

5

6    Conspiracy of Malicious Prosecution by Bank of America, San Diego District Attorney office, San Diego

7    Probation Department and BFIC Ex-board Members

8

9    (135) Plaintiff alleges after being in Jailed for approximately one year, Plaintiff was release on February 16,

10   2000 on five year probation whereas Plaintiff is not to have any contact with his wife, children, BFIC Ex-

11   board Members, any of the alleged Corporation that defrauded Plaintiff or any their Attorneys. On February

12   17, 2000 the next day while in the building on business was referred to Law Offices of Procopio, Cory,

13   Hargeaves, and Salvitch seeking a civil Attorney. While Plaintiff was waiting in the reception area Attorney

14   Deborah Ben-Caan walk through the reception area saw Plaintiff. Plaintiff did not speak to Attorney Ben-

15   Caan and got up and explain to the Receptionist that there is a court order for him not to have any contact

16   with Attorney Ben-Caan. Plaintiffs at that point cancel any future appointment and left the building. Plaintiff

17   immediately walked to Probation office while downtown and reported to his Probation Officer about the

18   accidentally meeting. The next day Plaintiff was arrested for violation of Probation because Attorney Ben-

19   Caan and San District Attorney Office stated that Attorney Ben-Caan inform Plaintiff and the Court in 402

20   hearing in August 1996 that she worked at the law firm of Procopio, Cory, Hargeaves and Salvitch and

21   Plaintiff knowing had gone to the Law Office to do great bodily harm to Attorney Deborah Ben-Caan. When

22   the District Attorney and Probation Department review court transcripts it was clear that Attorney Ben-Caan

23   was lying in her statement of informing the court and Plaintiff that she was working at Procopio, Cory,

24   Hargeaves, and Salvitch.

25   (136) Plaintiff alleges Judge Kenneth So sign Probation violation order February 17, 2000 knowing that on

26

27                                         122

28

June 11, 1999 in his privately meeting in his chambers with Defendants attorneys, Miles Scully of Gordon Rees represented Muhammad Usman and on the same day IXCLD Attorney Patrice Nice Represented Muhammad Usman in Judge Davidson Courtroom because Miles Scully had another schedule appointment and had to leave Department 22 courtroom early. Judge Kenneth So should have been the last Judge to sign that Probation Violation order. The Records Speak for themselves.

(137) Plaintiff alleges Judge Davidson in furtherance of the conspiracy refuse to preside over Plaintiff probation hearing knowing that court records of Plaintiff Jury selection was showing Judge Davidson asking the potential Jurors the question "do you know Attorney Deborah Ben-Caan and Miles Scully of Gordon Rees Law Firm"? The Jury selection and questionnaire was two months after Deborah Ben-Caan 402 hearing whereas she fell to inform Plaintiff and the Court that she was employed at Bank of America Law Firm.

(138) Plaintiff alleges Deputy District Attorney Ann Marie Urrutia negotiating Immunity for Muhammad Usman for the forgery of Plaintiff name on 300 checks totaling $450,000 dollars on fraudulent Personal bank account open by Muhammad Usman and Bank of America Branch Manager Pat Bromely without Plaintiff knowledge and printing B.F.I. Communication on the checks inducing Plaintiff to believe the Account to be a Business Account was well aware of Attorney Ben-Caan Employment at Bank of America Law Firm. Plaintiff alleges Deputy District Attorney Urrutia having a history of fraud and deceit fail in her duty to inform Plaintiff, Jurors and Court that Attorney Ben-Caan was no longer employed at Gordon Rees allowing Jurors to be in conflict with Bank of America law firm Procopio, Hargeaves, Cory and Salvitch. Plaintiff was charge with Mayhem without malicious intent. Plaintiff was innocent on Attempted Murder and found guilty on Mayhem charge that did not come from Linda Mahdi testimony or Plaintiff Testimony. Were any of the Jurors in conflict?

(139) Plaintiff had discovered while in jail Procopio, Cory, Hargeaves and Salvitch was Bank of America Law Firm. Plaintiff alleges Attorney Deborah Ben-Caan promotion, as partner to Bank of America Law Firm

1

2

was her reward for representing Muhammad Usman in her Abused of the Legal Process and Malicious

3

Prosecution of Plaintiff.  In furtherance of Maliciously Prosecution Deputy District Attorney Anna Marie

4

Urrutia and Probation officer Lisa Forbes after realizing Attorney Ben-Caan had lied still maintain Plaintiff

5

was in violation of probation because Plaintiff did not leave office in a timely fashion (Plaintiff shouldn't

6

have taken the time to inform the reception why he had to leave). Plaintiff was in jail for 30 days with the risk

7

of a 5-year prison term if he was found guilty of violation of his Probation.  Plaintiff alleges furtherance of the

8

Conspiracy of Malicious Prosecution causing Damages of approximately $5 billion dollars.

9

10

11                          Cause of Action Account-63

12

13

    Conspiracy of Malicious Prosecution and Fraud by 60 Minutes, Channel 10 News KGTV

14

    and Channel Six News XETV.

15

16

(140) Plaintiff alleges the submission of documents to 60 minutes on or about November 1998, August 1999

17

and again February 2000 with submission of documents to Channel 10 and Channel Six.

18

Plaintiff alleges and believes being a Blackman in America was a comfort zone for the Defendant News

19

Carriers failure to report MCI-WorldCom and Defendants fraud and corruption, which was in furtherance of

20

the Conspiracy of Malicious Prosecution to cover MCI-WorldCom Racketeering Activity and Conspiracy to

21

Defraud United States of $5 billion dollars.

22

(141) Plaintiff alleges MCI-WorldCom motive of operation is the corruption through the legal system and

23

legal department of Corporations. Plaintiff alleges and incorporates by reference Defendants News Carriers

24

suppression of MCI-WorldCom fraud and corruption of three IRS Agents Cause of Action Account-1, The

25

San Diego Treasurer Office in Cause of Action Account-3, the San Diego FBI Office in Cause of Action

26

27

28                                   124

1

2

Account-5 and 52, Three Panel Judges Texas Arbitration Association in Cause of Action Account-18, San

3

Diego District Attorney Office in Cause of Action Account-51, 52, 53, 54, 55, 56, and 58, the San Diego

4

Public Defenders Office, San Diego Probation Office and Judge Davidson of San Diego Superior Court

5

referencing Cause of Action Account-49, 50, 54, 58 and paragraph (4h) through (4o) in the furtherance of

6

Conspiracy to defraud the United States of approximately $5 billion dollars referencing damages in paragraph

7

(10d). MCI-WorldCom corruption Plaintiff Attorneys Charles Saulisberry of Thompson Coburn, Attorney

8

Douglas Odem of Odem, Greene, Murray and Thomas, Attorney Joseph Rosati of Rosati Law firm (Cause of

9

Action Account-14, 15, 16, 17, and 19). The corruption of IXCLD's Attorneys Thomas George of Thomas

10

George Law Firm and Patrice Nice, Douglas Pettit, Kurt Campbell of Klinedinst Filchman and Mckillop in

11

San Diego (se Cause of Action-20). Last but not least MCI-WorldCom Attorney Mark Saxon of Saxon,

12

Berry, Gardener and Kincannon (See Cause of Action Account-20 and paragraph 4(e) through 4(g) Plaintiff

13

being sued in Fraudulent name B.F.I.C. Communication). They surely can't claim Plaintiff did not submit

14

enough evidence.

15

16

(142) Plaintiff alleges MCI-WorldCom with the aid of Defendants knowing and willingly with no regard

17

Federal Law Enforcement Agency corrupted Federal, State, Local Agents and Attorneys oath and duty to

18

Constitution of the United States. Plaintiffs allege Defendant of News Carriers was corrupted by MCI-

19

WorldCom in their failure to disclose to the Public the largest tax fraud in American history. Plaintiff alleges

20

damages of $5 billion dollars by each individual News Carrier.

21

22

23                          Cause of Action Account 64

24

25  Conspiracy by BFIC Ex-board Members, Bank of America, Bank of Oklahoma, Chase Bank of Texas, Union

26  Bank of California and City National Bank 18 USCA 1956(a) (1) (b) (ii) relating to Money laundering.

27

28

(143) Plaintiff alleges from August 1996 to present and incorporates by reference Cause of Action Account-27 referencing Chase Bank of Texas, Cause of Action Account-30 referencing Bank of Oklahoma, Cause Action Account- 32 Referencing Bank of America, Cause of Action Account- 31 referencing Union Bank and Cause of Action Account-70 referencing City National Bank whereas all Defendants intentional concealment of BFIC Bank Accounts is Violation of 18 USCA 1956 (a) (1) (b) (ii) to avoid a transaction reporting requirement under state and Federal Law from 1996 to present. Plaintiff alleges and incorporates by reference paragraph 10d damages of $5 billion dollars for each individual Defendant.

Cause of Action Account 65

Conspiracy by BFIC Ex-board Members, Bank of America, Bank of Oklahoma, Chase Bank of Texas, Union Bank of California and City National Bank in Violation 18 USCA 1956 (a)(1) A (i) Money Laundering

(144) Plaintiff alleges and incorporates by reference the Cause of Action Account-67 Defendants are in violation promoting and carrying on specific unlawful activity of wire fraud from August 1996 to present through fraudulent BFIC Bank Accounts. Plaintiff alleges referencing paragraph (10d) damages of approximately $5 billion dollars by each individual Defendant.

Cause of Action Account 66

Conspiracy by BFIC Ex-board Members Bank of America, Bank of Oklahoma, Chase Bank of Texas, Chase Bank of La Jolla and Union Bank of California in Violation 18 USCA 1956(a) (1) (b) (i) Money Laundering

126

1

2

3

4   (145) Plaintiff alleges from August 1996 to present and incorporates by reference Cause of Action Account-

5   23 referencing Chase Bank of Texas, Cause of Action Account-26 referencing Bank of Oklahoma, Cause

6   Action Account- 28 Referencing Bank of America and Cause of Action Account- 27 referencing Union Bank

7   whereas all Defendants intentional concealment and disguise of Bank Accounts is a Violation of 18 USCA

8   1956 (a) (1) (b) (i).  Plaintiff alleges referencing paragraph (10d) damages of approximately $5 billion dollars

9   by each individual Defendant.

10

11                   Cause of Action Account 67

12

13   Conspiracy by BFIC Ex-board Members, Bank of America, Bank of Oklahoma, Chase Bank of Texas, Chase

14   Bank of La Jolla, Union Bank of California, City National Bank, BFIC Ex-board Members and MCI-

15   WorldCom in Violation of 18 USCA 1956 (a) (1) (A) (ii) Money Laundering

16

17   (146) Plaintiff alleges and incorporates by reference allegation of Chase Bank of Texas in Cause of Action

18   Account-23, Bank of Oklahoma in Cause of Action Account 26, Bank of America referencing Cause Action

19   Account 28, Union Bank Cause of Action Account- 27, City National Bank in Cause Action Account-70,

20   MCI-WorldCom referencing Cause of Action-23 and USBI referencing Cause of Action Account-24 are in

21   violation from August 1996 to present with the intent to engage in conduct constituting a violation of section

22   7201 0r 7206 of the internal Revenue Code of [26 USCS 7201 or 7206]. Plaintiff alleges the concealment of

23   BFIC Bank Accounts and revenues of approximately 100 million dollars per month by Defendants and BFIC

24   Ex-board Members from 1996 to present and the Mailing of fraudulent tax returns for each year from 1996 to

25   present. Plaintiff alleges and incorporates by reference Cause of Action Account–1 the Corruption by

26   Defendants of IRS agent's failure to investigate Conspiracy of tax fraud is Cause of Action for damages to

27

28                   127

1

2

Plaintiff.  Plaintiff alleges and incorporates by referencing Cause of Action Account-29 paragraph (78)

3

Conspiracy tax fraud as Cause of Action for damages to Plaintiff.  Plaintiff alleges and incorporates by

4

reference Cause of Action Account-35 paragraph (91) conspiracy of Tax fraud as Cause of Action for damage

5

to Plaintiff.  Plaintiff alleges total damages mention in paragraph (10d) of approximately $5 billion dollars by

6

each individual Defendant.

7

8

9                                   Cause of Action Account-68

10

11   Conspiracy Violation of 18 USC 1962 (a) and (d) and 18 USC 1961 (1) (b) 1343 relating to Wire fraud,

12   USBI, MCI-WorldCom, GTE, IXCLD, SCC, IXC, BFIC Ex-board Members, Bank of Oklahoma and Texas

13   Commerce Bank.

14   (147) Plaintiff alleges and incorporates by reference paragraph (4c) USBI fraudulent wire transfers of

15   $965,863 dollars per month (MCI-WorldCom receiving approximately $350, 000 per month for wholesale

16   invoice cost to IXCLD, approximately $150,000 dollars per month to IXCLD and the remaining balance after

17   late payments and non-payments or bad debt $425,000 to BFIC Ex-board Members from fraudulent Tri-party

18   Agreement sign by all parties. Plaintiff alleges wire transfers every month from August 1996 to present to

19   MCI-WorldCom Bank account at Bank of Oklahoma, IXCLD bank account at Texas Commerce Bank and

20   BFIC ex-board members bank account at bank of America. Plaintiff alleges Exhibit-47 is fraudulent Tri-party

21   agreement with fraudulent Name B.F.I.C. concealing BFIC corporate Tri-party.  Defendants follow same

22   pattern with MCI-WorldCom-Wiltel referencing paragraph (4d) USBI wire transfers of $469,896 per month

23   from August 1996 to present. Plaintiff alleges damages by IXCLD approximately $44 million dollars and

24   MCI-WorldCom damages of approximately $20 million dollars. Plaintiff alleges treble damages from IXCLD

25   under Rico Act $132 million dollars and treble damages of $60 million dollars from MCI-WorldCom.

26

27

28                                           128

(148) Plaintiff alleges and incorporates by reference paragraph (4f) and (4w) Bank of Oklahoma, Bank of Texas Commerce bank fraudulent Wire Transfers of approximately $25 million dollars per month (MCI-WorldCom as wholesale carrier $9 million dollars per month, IXCLD approximately $4.2 million dollars per month and BFIC Ex-board Members $11.5 million dollars per month from August 1996. Plaintiff alleges Bank of Oklahoma received wire transfers Texas Commerce Bank on behalf of MCI-WorldCom, Texas Commerce Bank wire transfers from Bank Oklahoma on Behalf of IXCLD and Bank of America wire transfers form Bank of Oklahoma and Texas Commerce Bank on behalf of BFIC Ex-board Members. Plaintiff alleges damages of approximately $1 billion dollars. Plaintiff alleges treble damages of $3 billion dollars.

(149) Plaintiff alleges and incorporates by reference paragraph (4u) USBI fraudulent wire transfer of approximately $10 million dollars per month (MCI-WorldCom $3.5 million dollars per month for wholesale invoice cost, SSC approximately $1.5 million dollars per month and BFIC Ex-board Members approximately $4.3 million dollars per month) from August 1996 to present to same Banks mention in paragraph (148). Plaintiff alleges damages of $400 million dollars and treble damages under Rico Act $1.2 billion dollars.

(150) Plaintiff alleges and incorporates by reference paragraph (4v) USBI fraudulent wire transfers of approximately $17 million dollars per month (MCI-WorldCom $6 million dollars per month, IXC $2.6 million dollars per month and BFIC Ex-board Members $7.6 million dollars per month) from August 1996 to present to the same Banks in paragraph (147) and City National and Union Bank in San Diego.  Plaintiff alleges damages of $700 million dollars. Plaintiff alleges treble damages under the Rico Act for $2.1 billion dollars.

(151) Plaintiff alleges and incorporates by reference paragraph (4y) GTE fraudulent wire transfers from August 1996 to present for approximately $25 million dollars per month to MCI-WorldCom, BFIC ex-board Members (same percentage breakdown mention in paragraph (147) to same Banks mention in (149). Plaintiff

129

1

2

alleges damages of approximately $1 billion dollars. Plaintiff alleges treble damages of $3 billion dollars.

3

(152) Plaintiff alleges and incorporates by reference paragraph (4x) USBI fraudulent wire transfers of

4

approximately $48 million dollars per month (MCI-WorldCom $16.8 million dollars per month, IXCLD $7.2

5

million dollars per month and BFIC Ex-board Members $21 million dollars per month) from August 1996 to

6

present to same Banks mention in paragraph (149). Plaintiff alleges all banks in this Cause of Action Account

7

receipt of wire transfers are in Violation of 18 USC 1962 (a) and Plaintiff alleges all banks denial of the

8

existence of BFIC bank accounts are in Conspiracy violation of 18 USC 1962 (d). Plaintiff alleges damages

9

of $3 billion. Plaintiff alleges treble damages under Rico Act of $9 billion dollars.

10

11

12                          Cause of Action Account-69

13

14

Conspiracy Violation of 18 USC 1962 (a) and (d) and 18 USC 1961 (1) (b) 1341 relating to Mail Fraud by

15

IXCLD, MCI-WorldCom, GTE, BFIC Ex-board Members and USBI.

16

17

(153) Plaintiff alleges and incorporates by reference paragraph (4c) of UBSI Exhibit-II and IXCLD Exhibit-

18

45A mailing of five fraudulent invoices of approximately $95,000 per month in fraudulent Name Building

19

Future In Communication concealing the real BFIC invoices generating approximately $965,863 dollars per

20

month. Plaintiff alleges paragraph (4c) (A), (B), (C), (D) is further verification of fraudulent invoices by

21

IXCLD. Plaintiff alleges Defendants IXCLD, USBI and BFIC Ex-board member's receipt of $965,863 per

22

month from a pattern Racketeering Activity of Mail fraud and pattern of Racketeering activity wire fraud

23

shown in paragraph (147) is violation of 18 USC 1962 (a) and in Conspiracy IXCLD, USBI and BFIC Ex-

24

board Members and defendants intentional concealment of fraud furtherance of the conspiracy shown in

25

paragraph (4c) which is violation 18 USC 1962(d). Plaintiff is seeking treble damages of $9 billion dollars. r.

26

27

28                                 130

(154) Plaintiff alleges and incorporates by reference paragraph (4d) of UBSI Exhibit-III mailing of five fraudulent invoices to Plaintiff in fraudulent Name Building Future In Communication and MCI-WorldCom mailing of nine fraudulent invoices and Exhibit-17L is the mailing of three of the those fraudulent invoices averaging approximately $75,000 per month whereas USBI invoicing of 5,046 BFIC and collecting 469,869 dollars per month from August 1996 to present on behalf of BFIC Ex-board Members and MCI-WorldCom

(155) Plaintiff alleges Defendants MCI-WorldCom, USBI and BFIC Ex-board member's receipt of $469,869 dollars per month from a pattern Racketeering Activity of Mail fraud and pattern of Racketeering activity wire fraud shown in paragraph (147) is violation of 18 USC 1962 (a) and in Conspiracy MCI-WorldCom, USBI and BFIC Ex-board Members shown in paragraph (4d) is violation 18 USC 1962(d). Plaintiff alleges damages of approximately $20 million dollars and Plaintiff is seeking treble damages of $60 million dollars.

(156) Plaintiff alleges and incorporates by reference paragraph (4F) MCI-WorldCom, IXCLD and BFIC Ex-board Members fraudulent billing of 208,893 BFIC diverted customer from August 1996 to present establishes a pattern of Racketeering Activity under 18 USC 1961(1) (b) 1341 relating to mail fraud. Plaintiff alleges over charges and fraudulent addition of extra minutes and extra calls on BFIC customers monthly long distance. Plaintiff alleges damages of approximately $1 billion dollars. Plaintiff alleges treble damages of $3 billion dollars.

(157) Plaintiff alleges Exhibit-I USBI summary retail billing report in fraudulent name Building Futures in Communication and GTE invoices to Plaintiff are showing $1.1 million dollars in wholesale cost and $1.1 million dollars in retail cost for the 14 month relationship with BFIC from August 1996 through October 1997. Plaintiff alleges UBSI is showing 27,389 GTE customers being billed which should be approximately $3.1 million dollars per base on USBI/BFIC customers average monthly long distance bill of $115 per month. Plaintiff alleges the mailing of 9 fraudulent invoices establishes a pattern of Racketeering activity under 1961 (1) (b) 1341 relating to mail fraud. Plaintiff alleges and incorporates paragraph (4y) GTE billing of 200,000

131

1

2

3      BFIC customers.  Plaintiff alleges damages of $25 million dollars per month from August 1996 to present.

4      Plaintiff alleges treble damages under Rico Act of $75 million dollars.

5

6                              Cause of Action Account-70

7                    Conspiracy of Malicious Prosecution City National Bank

8

9      (158) Plaintiff alleges on or about June 22, 2000 Plaintiff discovers BFIC Corporate bank account and two

10       BFIC Loans at City National Bank and after showing documentation to City National Bank that Accounts

11      were Fraudulent open, City National Bank refuse to identify fraudulent signors on the account. Plaintiff

12      Alleges City National Bank in furtherance of Conspiracy of Malicious Prosecution, fraud and Money

13       Laundering allowed fraudulent Bank Account to remain open on behalf of BFIC Ex-board Members.

14      Plaintiff alleges submitting Exhibit-BB letter to City National Bank referencing BFIC Ex-Attorneys

15       Thompson Coburn, Joseph Rosati as verification corporate documentation showing that Plaintiff was

16       Chairman and no one had authority open or close BFIC Bank Accounts without Plaintiff knowledge Plaintiff

17      Reference IRS Agents, San Treasury Office, San Diego District Attorney Office, Judge Davidson of San

18      Diego Superior Court Department 22 and San Diego Probation Office for verification that Plaintiff was

19      Chairman and no one had the authority to open or close BFIC Bank Accounts without Plaintiff

20      Knowledge. Plaintiff delivery copy of Exhibit-BB Letter to all law enforcement agencies that was reference

21      And informed them that BFIC corporate Bank account at City National Bank was not mention in Plaintiff

22      Original submission of Documents of evidence of fraud to their office. Plaintiff alleges City National Bank

23      intentional concealment bank records on BFIC Corporate bank Account was in furtherance of Conspiracy of

24      Money laundering and causing damages to Plaintiff of approximately $5 billion dollars.

25

26

27

28                                            132

**Attachment - Z**

Proceeding for order allowing Plaintiff to file Pleading based on Attorney-Client Conspiracy-Petition [Civ. Code 1714.10 (a) and supporting Declaration [code Civ. Pro. 2015.5]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Petition for Order Allowing Plaintiff to File Complaint against Attorney based on Attorney –Client Conspiracy and Supporting Declaration of Plaintiff A. Muhammad Mahdi.

1.Plaintiff Abuwi Muhammad Mahdi alleges and incorporates by reference all Attorneys mention Cause of Action Account-18 (American Arbitration Attorneys Panel Judges Attorneys), Attorneys for San District Attorney Office Cause Action Account-51 through 62, Public Defender Office Attorney in Cause of Action Account-49 and Attorneys mention in paragraph (4a) Conspiracy of Malicious Prosecution in the promotion of fraudulent name B.F.I.C. And related Cause of Action-14, 15, 16, 17, 18, 19, 20 in furtherance of the Conspiracy of Malicious Prosecution, mail fraud, wire fraud, Money laundering, Obstruction of Justice, to defraud United States, false imprisonment, forgery and fraud. Plaintiff alleges Misrepresentation, failure to disclose, conflict of interest, collusion and fraud by Attorneys are mention in this complaint Plaintiff alleges this complaint contains Cause of Action Accounts against MCI-WorldCom, IXC, BFIC Ex-board Members and IXCLD for the corruption of the conspiracy and fraud by the Attorneys shown in Cause of Action Account-14, 15, 16, 17,19, and 20. Plaintiff alleges since Attorneys names were mention in the Complaint for conspiracy and fraud Plaintiff was not sure whether 1714.10 was a necessary element in this Conspiracy Pleading whereas Plaintiff for assurance is including Pleading in Complaint.

2. A copy of the proposed of Conspiracy-Client Conspiracy is attached hereto as Exhibit-Z and made a part hereof.

**Plaintiff and MCI-WorldCom Law Firm of Thompson Coburn, IXCLD Law Firm of Thomas George in Austin Texas, Plaintiff San Diego Attorney Douglas Odem for IXCLD and MCI-WorldCom the Law Odem, Greene, Murray and Thomas, IXCLD San Diego Law Firm Klinedinst, Filehman and Mckillop, MCI-WorldCom San Diego Law Firm Saxon Berry Kincannon and Gardner and Plaintiff San Diego Attorney Joseph Rosati for MCI-WorldCom of Rosati Law Firm.**

(3) Plaintiff alleges Conspiracy by Attorney Charles Saulisberry, Dean Franklin, Tom Greene, Fernando Bermudez of Thompson Coburn, Attorney Thomas George, Attorneys Douglas Odem of Odem, Greene Murray and Thomas are in Conspiracy Fraud and Collusion Referencing Cause of Action Account-15 and 16.

(4) Plaintiff alleges Conflict of Interest, failure to disclose, Misrepresentation and Collusion by Thompson Coburn and incorporates by reference Cause of Action Account-14 in furtherance Conspiracy of Malicious Prosecution, Mail fraud, Wire fraud, Money Laundering Racketeering Activity by the intentional concealment Exhibit-15 BFIC fraudulent billing relationship with DCA and IXCLD.

(5) Plaintiff alleges Thompson Coburn Attorneys, Attorney Douglas Odem, Attorney Mark Saxon of Saxon, Berry, Kincannon and Gardner (MCI-WorldCom Law Firm in San Diego) and Plaintiff Attorney Joseph Rosati intentional Concealment of East St. Louis Official and Employees Deposition by MCI-WorldCom whereas DCA fraudulent bill the City of East St. Louis monthly long distance on behalf of BFIC and IXCLD instead of BFIC/MCI-WorldCom. Plaintiff alleges The City of East St. Louis mail monthly payments to fraudulent Lockbox Bank accounts. (Plaintiff alleges Thompson Coburn were the MCI-WorldCom who did the East St. Louis deposition at the same time Thompson Coburn was representing Plaintiff.

(6) Plaintiff alleges Thompson Coburn, Attorney Thomas George and Attorney Douglas Odem conspired with Tracy Hedgemen and three Panel Judges for Plaintiff to pay for IXCLD Arbitration Fees a year in advance knowing that Corrupt Panel was going to rule against Plaintiff shown in Cause of Action Account-18.nting Plaintiff).



**MCI-WorldCom San Diego Attorney Mark Saxon and IXCLD Attorney Thomas George**

(7) Plaintiff alleges submission of Exhibit-17A and Exhibit-17L referencing paragraph (4d) To MCI-WorldCom San Diego Attorney Mark Saxon verifying MCI-WorldCom receipt of default payments. Plaintiff alleges submitting to Attorney Mark Saxon office USBI Data submitted to the American Arbitration Association and PricewaterhouseCoopers Exhibit-46 and four Independent Consultants Reports verifying USBI billing 13,566 BFIC customers and collecting $1.4 million dollars per month of behalf of MCI-WorldCom as underline wholesale Carrier, IXCLD and BFIC. Plaintiff alleges submitting Exhibit-53 and Exhibit-47 Escrow Agreement and Tri-party agreement by BFIC, IXCLD and MCI-WorldCom securing MCI-WorldCom Wholesale Monthly invoices of $approximately $600,000 dollars per month totaling $3 million dollars for the five month billing period. Plaintiff alleges USBI has collected approximately $750,000 dollars for IXCLD and $3.3 million dollars for BFIC. Plaintiff in form Attorney Mark Saxon according to Escrow and Tri-party Agreement USBI must pay MCI-WorldCom first before paying BFIC. Plaintiff alleges MCI-WorldCom, IXCLD, BFIC Ex-board members or Defendants attorney was interested in talking with USBI about $1.4 million dollars being collected in 1997 and 1998 according to consultant reports. Plaintiff alleges clear argument of corruption of Attorneys.

**IXCLD San Diego Attorneys Patricia, and Douglas Petit of Klinedinst, Filehman and Mckillop**

(8) Plaintiff alleges IXCLD Law Firm Klinedinst, Filehman and Mckillop and IXCLD Office in La Jolla were concealed from Plaintiff because of BFIC Ex-board Members fraudulent relationship with both offices (See Cause of Action Account-20. Plaintiff alleges Klinedinst, Filehman, and Mckillop representation of IXCLD did not include IXC communication prior to IXC and IXCLD merger December 1998 which clearly shows that Patricia Nice, Douglas Petit and Kurt Campbell knowledge of IXC and IXCLD separate corporation and was part of the conspiracy and fraud.

(9) Plaintiff alleges IXCLD San Diego Law Firm, MCI-WorldCom San Diego Law Firm and Attorney Douglas Odem Stated in San Diego Superior Court August 1999 that their clients were not involved in any conspiracy or fraud against Plaintiff in the furtherance of the Conspiracy fraud and forgery. Plaintiff alleges the same day June 11, 1999 IXCLD Attorney Patricia Nice represented Muhammad Usman in Judge Davidson court room whereas IXCLD Attorney have Judge Davidson squash Plaintiff subpoena



1   duces tecum of Muhammad Usman Bank records.

2   **Plaintiff alleged corruption by Attorneys in court of Law**

3   (10) Plaintiff alleges Defendants Attorney only defense is their hope for a corrupt Federal Judge similar to

4   the alleged three Arbitration Panel Judges. Plaintiff alleges IXCLD Attorney Thomas George can't tell a

5   Federal Judge what he told his buddies, the Three Arbitration Panel Judges stating that IXCLD/BFIC

6   contract signing April 19,1996 was valid even though SSC/IXCLD received License to do business in

7   State of California May 17,1996 because May comes before April therefore the BFIC and IXCLD

8   contract is valid. Plaintiff alleges Exhibit-14 IXC letter dated May 7, 1996 is showing IXCLD returning

9   1,000 BFIC customers because IXCLD is unable to process BFIC Customers. Plaintiff alleges IXCLD

10  was unable process BFIC customers because IXCLD was not license to do business in the state of

11  *California until May 17, 1996.*

12  (11) Plaintiff alleges a Federal Judge is not going to accept creation of a fraudulent IXCLD employee

13  Chuck Farley and the creation of fraudulent IXCLD document without IXCLD name, address, telephone

14  number anywhere (without IXCLD letterhead) and calling the document the Chuck Farley all purpose

15  document in response to counter PricewaterhouseCoopers and four independent consultant data analysis

16  Reports on IXCLD data submitted to American Arbitration Association (See Exhibit-F Charles Farley

17  document with forged signature). Plaintiff alleges all consultants verified in one IXCLD/BFIC database

18  28,000 unique Billing Numbers (BTN) generating approximately $3.2 million dollars per month whereas

19  IXCLD Attorney Thomas referencing Chuck Farley all purpose document stated in writing that Billing

20  telephone numbers have nothing to do with Billing or generating revenues and the 28,000 BTN only

21  represent 2,000 working telephone numbers (wtn) in which IXCLD invoices the revenues for Plaintiff.

22  Plaintiff inform Panel Judges of the fraudulent response by IXCLD Attorney George Fraudulent stating

23  that 28,000 unique Billing telephone Numbers (btn) represent approximately 58,000 working telephone

24  numbers (wtn). Plaintiff submitted the Example of telephone set-up in each of the three Panel Judges Law

25  Offices showing Randal Duke Office one billing number (btn) with 11 lines or working telephone

26  numbers (wtn), Mark Hand with one billing number with 18 lines or working numbers (wtn), Mark

27  Calhoun office with one billing number (btn) in the office with 24 lines or wtn and American Arbitration

28  Office with one billing number for 48 lines or working Numbers (wtn). Plaintiff stated that the Billing

telephone was like the collection agency for working Numbers (wtn) and Plaintiff submitted PacBell and Southwestern Bell definition of Billing telephone numbers (btn) with the submission of BFIC customers business phone bills defining billing numbers for verification IXCLD Attorney George fraudulent statements. Plaintiff alleging a Federal Judge will not allow Attorney Thomas George to redefine industry definition of billing number.

**Bank of America and Attorney Deborah Kincannon or Ben –Caan and Attorney Spencer Sheen of Procopio, Cory, Hargeaves and Salvitch.**

(12) Plaintiff alleges Bank of America will not be unable to used Procopio, Cory, Hargeaves and Salvitch influence on a Federal Judge to accept and respect Bank of America fraudulent letter Exhibt-21. Plaintiff alleges Exhibit-21 response to Subpoena duces tecum from Bank of America indicates the submission to San Diego Superior Court of signature cards for fraudulent bank account 1704-13181 and fraudulent account 1703-05559 in which was never received by Plaintiff. Plaintiff alleges the following;

   (a) No Federal Judge is going to take Bank accounts B.F.I.C. and Copy Cove signature cards from Bank of America subpoena of records concealing signature cards, which shows that Plaintiff name was forged on signature cards.

   (b) No Federal Judge will order Plaintiff not to send another subpoena requesting Copy Cove and B.F.I.C. signature cards.

   (c) No Federal Judge is going to allow Bank of America response of 310 cancel checks only from subpoena duce tecum requesting copies of all 824 cancel checks shown in Exhibit-A. Plaintiff is alleging in the remaining 514 concealed cancel checks was the discoverer of racketeering activity of wire fraud, Money laundering, forgery and fraud by BFIC Ex-board Members and Bank of America.

   (d) No Federal Judge would prevent Plaintiff from the subpoena duces of cancel checks from Copy Cove Printing after Exhibit-E discoverers of the forging of Plaintiff name with BFIC Ex-board Member and Bank of America cashing checks and Plaintiff having no knowledge that Plaintiff is signor on Copy Cove Account. Plaintiff alleges Bank of America received a subpoena duces tecum from the San Diego Superior court requesting the submission of all Copy Cove Printing cancel checks and Judge Davidson allowed Bank of America to respond by stating the Production

of these checks will commence upon further order of the Court ignoring subpoena duces tecum of all cancel checks. Plaintiff is alleging Bank of America beforehand knowing that Judge Davidson was not going to have Bank of America comply with the subpoena that would reveal the cancel checks from Judge Davidson Bethel AME Church showing Minister of Bethel AME, Public Defender and friend of Judge Davidson as a fraud and Plaintiff Ex Attorney Douglas Odem/ Members of Bethel AME as a fraud. Plaintiff alleges the Federal Judge is going make Bank America Comply with subpoena duces tecum of cancel checks.

(e) Plaintiff alleges no Federal Judge is to issue court order to stop Plaintiff from subpoena Branch manager Pat Bromely to testify on how can a personal Bank Account be open in Plaintiff name without Plaintiff knowledge, how can Bank of America cash checks with Plaintiff signature forge of Exhibit-E Copy Cove Printing checks and Plaintiff has no knowledge of being a signor on Bank account. Pat Bromely will have to explain how can he as Branch manager of Bank of America sign his signature authorizing Muhammad Usman signature only for the transfer $30,000 dollars form B.F.I.C. Bank Account to Copy Cove Printing Account without Plaintiff signature on a two signature requirement for transfer of Monies from the Account. Pat Bromely and Bank of America would have to explain to Federal Judge how can Bank of America cash over $50,000 dollars worth of fraudulent checks made out to Plaintiff and five different individual using their own California driving license cash these checks only at Bank of America La Jolla where Pat Bromely branch manager and all of the checks cash with Plaintiff forged signature.

(f) How can Bank of America cash over 400 checks totaling approximately $450,000 dollars with Plaintiff signature forged by seven different individual not by imitating Plaintiff signature but by forging Plaintiff name in their on handwriting style. Plaintiff alleges Bank of America law firm is not going to be able to influence a Federal Judge after reviewing testimony and documents to issue a court order stating Plaintiff is suffering from a delusional Disorder in his Claim of Conspiracy fraud by Bank of America and BFIC Ex-board Members.

(13) Plaintiff alleges Bank of Oklahoma number one client MCI-WorldCom's Attorney Mark Saxon of Saxon, Gardener, Berry and Kincannon won't be able to corrupt a Federal Judge to Accept Ex-hibit-22 fraudulent letter after reviewing Cause of Action Asccount-26 five Exhibits showing BFIC establishing

five bank accounts at Bank of Oklahoma Bank and No Federal Judge is going to tell Plaintiff there is not enough evidence to warrant a subpoena of Bank of Oklahoma records.

(14) Plaintiff is alleging No Federal Judge is going to review Cause of Action Account –14, 15, 17 and 18 and agree that there wasn't conflict of interest and collusion with Thompson Coburn, Attorney Thomas George and Attorney Douglas Odem.

(15) No Federal Judge is going review (4d) through (4g) and agree that default payments on invoices were not paid to MCI-WorldCom and IXCLD on behalf of BFIC and Plaintiff.

(16) No Federal Judge will squash subpoena duces tecum of records, which will prove that Attorney Cynthia Bowen was BFIC customer and received fraudulent monthly rebates on behalf of Bethel AME as minister.

### Deborah Kincannon/Ben-Caan and Miles Scully of Law Firm of Gordon Rees

(17) Plaintiff alleges Deborah Kincannon /Ben-Caan, and Sculley Miles of Gordon Rees intentional concealment Bank of America BFIC corporate bank accounts and Deborah Kincannon/Ben-Caan joining Bank of America Law firm in furtherance of the conspiracy of fraud.

(18) Plaintiff alleges for his defense against MCI-WorldCom submitted to Attorney Deborah Kincannon/Ben-Caan and Miles Scully of Gordon Rees MCI-WorldCom Exhibit-2 and Exhibit-3 showing Muhammad Usman in the present of 2 notaries opening 2 BFIC/MCI-WorldCom lockbox bank accounts without Plaintiff knowledge. Attorney Deborah Kincannon/Ben-Caan inform Plaintiff lockbox Bank instruction made reference to Plaintiff as contact person at BFIC. Plaintiff only has the notary page of 25 pages Lockbox Bank instruction package and Plaintiff requested Attorney Kincannon/Ben-Caan to send complete Lockbox instruction documents for Plaintiff to Review which give the Name of the Banks, lockbox Bank account address and account numbers. Clearly indicating Attorney Kincannon/Ben-Caan and Attorney Miles suppression of evidence key evidence from discovery motion requesting Muhammad Usman turnover all BFIC documents. Muhammad under oath in criminal complaint against Plaintiff states that Plaintiff was aware of the opening of Exhibit-2 and 3 Lockbox bank Accounts shown in court transcripts Exhibit-21C whereas MCI-WorldCom, Defendants and all Attorneys are denying the Existence of any lockbox bank accounts.

(19) Plaintiff alleges Attorneys Miles Scully refused to allow Muhammad Usman to speak on behalf of

BFIC referencing Cause of Action Account-15 whereas Muhammad Usman open fraudulent lockbox Bank account Exhibit- 8C with Muhammad Usman signature and IXCLD lockbox agreement is unsigned and waived written not to $50,000 security deposit submitted by Muhammad Usman. Plaintiff is being sued by IXCLD for $40 million dollars and Plaintiff is counter-suing for $128 million dollars and Muhammad Usman is suing Plaintiff for $400,000 and supporting IXCLD claim against Plaintiff.

(20) Plaintiff alleges Attorney Deborah Kincannon/Ben-Caan displaying her grafted inhuman mentally by lying again to the court in the furtherance of Malicious Prosecution and false imprison of Plaintiff in Cause of Action Account-62.

(21) Plaintiff alleges Bank of America Law Firm Procopio, Cory, Hargeaves and Salvitch after forgery and fraud of Muhammad Usman shown in Cause of Action Account-28 through 38 is now representing Muhammad Usman and Plaintiff 402 hearing August 1999 Attorney Deborah Kincannon/Ben-Caan a partner at Procopio, Cory, Hargeaves and Salvitch is being represented by the Law firm.

(22) Plaintiff alleges and incorporates by reference Cause of Action Account-20 referencing Joseph Rosati of Rosati Law Firm.

(23) Plaintiff alleges MCI-WorldCom's Attorney Mark Saxon of Saxon, Berry, Gardner and Kincannon in La Jolla, California, MCI-WorldCom's Attorneys Charles Saulisberry, Dean Franklin, Tom Greene and Fernando Bermudez of Thompson Coburn Law Firm in St. Louis, Missouri, IXCLD Attorney Thomas George of Thomas George Law Firm in Austin Texas, IXCLD's Attorneys Patricia Nice, Douglas Petit and Kurt Campbell of Klinedinst, Filehman and Mckillop of San Diego. Muhammad Usman's Attorneys Scully Miles and Deborah Kincannon/Ben-Caan of Gordon Rees Law Firm in San Diego, Muhammad Usman's Attorneys Deborah Thistle-Kincannon-Ben-Caan and Attorney Spencer Sheen of Procopio Cory, Hargeaves and Salvitch Law Firm in San Diego.  Plaintiff's Attorneys Douglas Odem, Harold Murray and Gene Thomas of Odem, Greene, Murray and Thomas Law Firm in San Diego, Joseph Rosati of Joseph Rosati Law Firm in San Diego are violation of Conspiracy of Malicious Prosecution, abuse of Legal Process, mail fraud, wire fraud and Money Laundering. Plaintiff alleges the 15 Attorneys participated  in Conspiracy causing damages of approximately $300 million dollars per Attorneys.

WHEREFORE Plaintiff prays for an order allowing Plaintiff to file the proposed Attorney-Client Conspiracy Pleading Exhibit-Z attached hereto.

Petitioner In Pro Per _Dr. A. Muhammad Mahdi_

VERIFICATION AND SUPPORTING DECLARATION of Dr. A. Muhammad Mahdi as Pro Per

I Abuwi Muhammad Mahdi am the petitioner in the above entitled proceeding, I have read the foregoing petition and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_8-08-20_  Date

_Dr. A. Muhammad Mahdi_

Petitioner

Exhibits

A.   Forged signature of Plaintiff on Checks from Bank of America
  **AB.** Bank of America Statement showing B.F.I. Communication #01704-
    13181 as Personal Bank account in *Plaintiff Abuwi Mahdi name.*
B.  Letter to City National Bank Referencing BFIC conceal Bank Account.
C.   Letter from Bank of America indicating Plaintiff name was forged.
D.  Articles of Incorporation *showing corporate name as BFI Communication*
E.  Copy Cove of La Jolla Cancel checks showing Plaintiff name being
    Forged.
  **E-1.** Bank of America and Muhammad Usman transferring $30,000 from B.F.I.
    Account to Copy cove without Plaintiff require signature.
F.   IXCLD Attorney George submission of fraudulent Chuck Farley report
FF. Nick Oliva and Associates BFIC Financial statement dated June 6, 1997
    Showing Telephone carriers cost for all carriers being paid year ending
    1996 as well as conceal BFIC Corporate Bank Account at Bank of
    America showing $21,543 in the Account
H.  IXC memo showing customers being disconnected December 13, 1996.
I.   BFIC and GTE retail summary billing report from USBI in fraudulent
    name B.F.I.C.
  **II.** BFIC and IXCLD summary billing report in fraudulent name B.F.I.C.
  **III.** BFIC and Wiltel summary billing report in fraudulent name B.F.I.C.
J.   BFIC 1996 corporate Tax Returns showing telephone carrier cost of
    $513,307 as paid expense for 1996. IXCLD, Wiltel and GTE invoices
    is as paid expense.
M. Copy Cove La Jolla Bank Statement mail to Plaintiff in September 1999
    Indicating Plaintiff name appears as signor on the account

1.  IXCLD/BFIC wholesale contract cost sheet showing cost at 8.5 cents a minute

  **1A.** Switch Services Communication receiving license in Calif. May 1999
  **1B.** American Arbitration Association Award showing found innocent
  **1C.** Switch Services Communication operation for 1995 showing $3,256
2.   Fraudulent Lockbox Bank Account being open by Muhammad Usman
3.   Fraudulent unauthorized MCI-WorldCom/LDDS lockbox Bank account
  3A. Verifying DCA being own by LDDS- (now MCI-WorldCom)
4.   Subpoena duces tecum for Adib Mahdi requesting BFIC records
    To be brought to deposition whereas Adib Mahdi is no longer working for BFIC. Plaintiff has no
    knowledge of deposition showing collusion by all Attorneys.
5.   Adib Mahdi faxing approval of fraudulent lockbox account remittance
    Address for USBI Texas Commerce Bank
6.   Fraudulent lockbox Bank account remittance address at Bank of
    Oklahoma being fax to MCI-WorldCom-DCA to be printed on BFIC customers telephone bills.
7.   IXC Morning Report showing 46,244 BFIC customers being process 4
    Days after BFIC and IXCLD contract has been cancel.
8.   Plaintiff Copy of first 4 pages of BFIC/IXCLD contract whereas waived
    is not written next to $50,000 security deposit on page 4.
  **8b.** Fraudulent copy of page 4 of BFIC/IXCLD contract submitted to the
    American Arbitration Association by MCI-WorldCom attorneys
    Thompson Coburn showing waived written next to the $50,000

1

Lockbox security deposit.

**8C.** Muhammad Usman signature on third party Texas Commerce Lockbox Bank Account that was part of BFIC/IXCLD contract

9.   USBI billing a BFIC Customer on behalf of Quest Communication

   **9A.** Fraudulent letter from the San Diego Sheriff stating fraudulent Criminal history records have been destroyed. This fraudulent letter Was produced by Deputy District Attorney Anne Marie Urrutia.

   **9B.** Letter from Tracy Hedgemen to Plaintiff that is verifying Suppression of Plaintiff Exhibits of evidence being submitted to American Arbitration Panel.

   **9C.** Letter from Plaintiff to the American Arbitration Association Identifying 56 Exhibits of evidence Tracy Hedgemen suppress

   **9D.** American Arbitration Award decision stating arbitration fees total cost of $32,360.17.

   **9E.** American Arbitration invoices to Plaintiff dated June 6, 1997 indicating the total fees of $16,750 showing neutral compensation/expenses at $15,000 dollars.

   **9F.** Plaintiff 5 cancel checks to American Arbitration showing $29,500 paid with four outstanding cancel checks.

   **9G.** Plaintiff Letter to American Arbitration verifying conversation of 16,750 dollars being paid with a balance due of $9,400.

   **9H.** American Arbitration invoice showing Plaintiff paying for Party Arbitration fees as of November 21, 1997 totaling 32,250. Clearly showing BFIC paying for IXCLD fees as of November 21, 1997 according to Panel Judges ruling of total cost being $32,360 dollars on November 23, 1998 one year later shown in Exhibit-9D.

   **9i.** Letter from Tracy Hedgemen of American Arbitration dated August 13, 1998 extorting Plaintiff for $9,400 dollars.

12. IXC Communication, Inc fax to BFIC dated July 7, 1997 to BFIC ex- employee working out of IXC conceal office established by BFIC Exboard Members

   **12A.** IXC Communication fax to Martha Taylor of BFIC dated April 25, 1997 to BFIC fax numbers 619-5517738 at IXCLD office at 4275 ExecutiveDr. in La Jolla. Martha Taylor was not working for BFIC in April1997. BFIC revenue report for April 1997.

   **12B.** IXC Communication fax to Martha Taylor dated May 13, 1997 to BFIC fax 619-6936428 at BFIC office whereas Martha Taylor has come back to work for BFIC in May of 1997. Fax is Revenue report.

   **12C.** IXC Communication fax to BFIC Exboard Members on BFIC Customers being process dated September 25, 1998.

   **12E.** IXC and USBI billing BFIC customer June 24, 1997

13. MCI-WorldCom-DCA, BFIC, IXCLD customers being billed from Exhibit-15 fraudulent billing relationship that Defendants and Attorneys Claim does not exist.

   **13A.** DCA/IXCLD computer program for the diversion of BFIC customers and revenues created 9-19-86 by BFIC Ex-board Members.

14. IXCLD letter dated April 4, 1996 clearly stating that a $50,000 security Deposit is needed before the counter execution of BFIC/IXCLD Contract which was sign April 19, 1996. Defendants and Attorney claim there was no lockbox bank accounts that were part of BFIC/IXCLD contract.

   **14A.** IXCLD letter dated May 3, 1996 indicating IXCLD in ability to Process BFIC Customers.

15. IXC discovery document #000638 of BFIC, IXCLD and MCI-WorldCom Fraudulent unauthorized Billing relationship.

17A.  Bank of Oklahoma BFIC bank statement for account #10988 opening
October 1, 1996 and closing July 1997. Bank of Oklahoma and
Defendants claim never existed.

17B.  BFIC Corporate Resolution to MCI-WorldCom referencing Wiltel contract.

17C.  MCI-WorldCom/Wiltel last invoice statement to Plaintiff showing
$167,000 in 1996.

17L.  MCI-WorldCom/Wiltel August, September and October invoices
showing checks payments of $113,000 from conceal BFIC bank
account.

17m.  MCI-WorldCom/Wiltel Complaint against Plaintiff and unincorporated
Entity

18. IXC Communication letter dated August 30, 1996 showing 10,000 BFIC
Customers process that Plaintiff and defendants' claims customers do not
exist.

   18A.  IXCLD letter September 6, 1996 showing 11,793 confirm BFIC
customers being Switch which are the same customers in Exhibit-18.

   18B.  IXCLD letter dated October 4, 1996 of BFIC summary of
Customers' process that does not include Exhibit-18 and Exhibit-
18A.

   18C.  IXCLD discovery document #004312 and 0004311 showing a total
of 39,658 BFIC customers process and 25,431 BFIC customers that
was switch and generated revenues.

   18D.  IXCLD customer report to BFIC showing 979 BFIC customers
Plaintiff was
invoice for only 979 customers in fraudulent name Building Futures
for the month of September 1996.

19.   GTE summary invoice to Plaintiff showing $91,000 dollars for 1996.

   19A.  IXCLD invoice dated December 9, 1996 showing total invoice
payment due for 1996 of $256,363 dollars.

20.   Bank of Oklahoma letter dated September 26, 1996 indicating the fraudulent unauthorized opening
of lockbox bank account # 2083105590
with remittance address showing BFIC, Inc. Bank of Oklahoma and
Defendants claim BFIC never open Bank account at Bank of Oklahoma.

21.   Fraudulent Letter from Bank of America to San Diego Superior Court
dated September 27, 1999 denying existence of BFIC corporate Bank
account and Plaintiff being a signor on Copy Cove bank account.

   21A. Letter dated January 11,1999 from Bank of Oklahoma to BFIC
closing BFIC bank account on December 7, 1998. Another bank
Account Bank of Oklahoma and defendants claim never existed.

   21B. 402 hearing in August 1999 of Muhammad Usman testimony of
opening BFIC corporate bank at Bank of America.

   21C. Usman testimony of existing lockbox bank accounts

22.   Bank of Oklahoma letter dated September 27, 1999 to San Diego
Superior Court denying the existence of BFIC ever opening an account at
Bank of Oklahoma.

25.  Plaintiff Bio

26.  Fraudulent criminal history of Plaintiff showing 43 arrests for various
crime.

27. US Long Distance invoice for July of 1997. Plaintiff cancel relationship
with US Long Distance in January of 1996.

30. IXCLD discovery # 004490 dated all 16, 1996 showing problems
in billing relationship with BFIC and DCA. All defendants and Attorneys
claim that there was no DCA/IXCLD/BFIC relationship.

36. Attorney Joseph Rosati Letter dated June 11, 1998 to Attorney Douglas
    Odem indicating collusion with BFIC Exboard Members.
    36A. IXCLD letter to Plaintiff dated November 14, 1996 indicating
        9,000 BFIC under the network.
41. IXCLD memo dated October 21, 1996 indicating USBI wiring Funds to
    Lockbox. All defendants claim the nonexistence of lockbox Bank account.
    41A. IXC fax to BFIC dated May 13,1996 verifying the opening of
        Lockbox Bank accounts.
45. IXCLD summary invoices to Plaintiff totaling $477,179.
    45A. IXCLD 5 Monthly invoices to Plaintiff in Fraudulent Name Building
        Futures In Communication is totaling $477,179 dollars.
46. PricewaterhouseCoppers Report of USBI data and IXCLD data submitted
    to the American Arbitration Association.
47. IXCLD/BFIC/USBI Tri-party Agreement in fraudulent name Building
    Futures In Communication (B.F.I.C.) dated October 30, 1996.
48. Switch Services Communication Letter dated November 20, 1996 to
    BFIC indicating BFIC is Reseller of SSC (unauthorized fraudulent
    contractual relationship with SSC).
50. Thompson Coburn letter to Plaintiff dated April 6, 1998 indicating that
    Thompson Coburn intention to subpoena DCA and PacBell (local bells) who
    conceal client of Thompson.
51. Thompson Coburn letter to Plaintiff dated July 28, 1998 is stating that
    there is no relationship with IXCLD and DCA billing BFIC customers.
    Denying the existence of Exhibit-15 and Exhibit 30. The letter also
    indicating MCI-WorldCom/Wiltel0DCA as Client whereas Exhibit-50
    they are going to subpoena Records from DCA.
    51A. BFIC customer Anthony Saulisberry, Members of Bethel AME
        Church, Brother of Charles Saulisberry lead Attorney and author of
        the letter in Exhibit-51. Anthony Saulisberry Monthly long distance
        phone payments were diverted every month through fraudulent bank
        accounts establish from Exhibit-15 IXCLD, MCI-WorldCom and
        BFIC fraudulent authorized Billing Relationship.
52. IXC document dated September 12, 1996 showing at the bottom of page
    31,244 BFIC customers generating $215,715 dollars wholesale cost for
    two days of calls from the 31, 244 customers.
53. BFIC/Bank of Oklahoma bank Account with bank account # 600024642
    shown on page 3 and Plaintiff signature on last page with Bank of
    Oklahoma JoHelen Wilson signature as well. Bank of Oklahoma and
    Defendant claims BFIC never open Bank Account at bank of Oklahoma.
56. IXC documents showing 73,000 BFIC customers process from September
    17 to October 1, 1996. IXC Communication not IXC Long Distance.
57. Newspaper article of the corruption on Deputy District Attorney Peter
    Longbauch
58. Forsenic Expert Dr. Richard Whalley report showing that it is impossible
    for Plaintiff wife Linda Mahdi to say she was attack by Plaintiff with 13
    inch sharp edge knife.
62. BFIC/IXCLD customer being billed by USBI in March of 1997 and USBI
    diverting those funds to fraudulent bank account on behalf of IXCLD and
    BFIC Exboard Members.
    62A. Another BFIC/IXCLD customer being billed in March of 1997
        when Contract cancel in December 1996.
    62B. USBI billing BFIC/Wiltel customer in March 1997 which is Plaintiff.
63. Courts in August 1999 where Deputy District Attorney Ann Marie Urrutia

knowing that another man is Abusing Plaintiff wife Linda Mahdi is claiming that Plaintiff was the man arrested for domestic Violence when witness report is showing there was no arrest. Plaintiff was in jail at the time of the event.

70. Best American Technology data Analysis of IXCLD and USBI data Submitted to the American Arbitration Association on behalf of BFIC.

72. Computer Safe data Analysis of IXCLD and USBI data submitted to the American Arbitration Association on behalf of BFIC.

75. Levi Ray & Shoup invoices for April, May, June of IXCLD and USBI data analysis submitted to Thompson Coburn that Plaintiff never seen and analysis was never submitted to American Arbitration Association.

76. Union Bank Checks showing forgery of Plaintiff signature by Frank Semmo a close friend of Union Bank branch manager Greg Fransworth.

77. District Attorney witness report of Linda Mahdi neighbor Norberto Sandoval testifying to domestic violence event a month after Plaintiff was arrested of someone abusing Linda Mahdi and Linda Mahdi is trying to stop her son from going after this man. Witness states Police came and made no arrest because both men were gone. Deputy District Attorney Ann Marie being MCI-WorldCom and Bank of America whore lies in a Court of law claiming the man abusing Linda Mahdi was Plaintiff.

78. Fraudulent letter with Agin Muqtasid forging Plaintiff Name requesting Plaintiff contacts to donated Money from overseas to Sister Clara Muhammad Union Bank Account whereas Plaintiff wife is the director of the School. Showing wife and Agin Muqtasid stealing from Plaintiff before the establishment of BFIC. Union bank is denying the existence of bank account #0120008927.

79. Bank of America check number 499 made out to M A Mahdi and Muhammad Usman cashing check using his own drivers license

80. Excel Communication billing BFIC customers

81. Telco and LD Wholesale billing BFIC customer on behalf of BFIC Ex-board Members.

   **81A.** Varlec and Vartec Telecom billing BFIC customer on behalf of BFIC Ex-board members

   **81B.** Oan plus billing BFIC customer on behalf of BFIC Ex-board Members

82. Nick Oliva letter to Plaintiff stating that Nick Oliva was a signor on B.F.I. Accountant trying to conceal himself as a signor on conceal BFIC corporate Account at Bank of America

87. Court transcripts of District Attorney Office stating that the submission of documentation of forgery and fraud to their office by Plaintiff was a Civil matter not a criminal matter. One month later they are giving Muhammad Usman immunity for forgery Plaintiff name of 300 checks totaling $350,000.

90. Muhammad Usman lying after receiving immunity claiming he did not cash Check # 449 shown in Exhibit-79.

91. Linda Mahdi court transcript in August 1999 testifying that Muhammad Usman asked her to sign Plaintiff name on checks.

92. San Diego Superior Court furtherance of the Conspiracy of Malicious Prosecutions by transcribing fraudulent B.F.I.C. on court records oppose to BFIC.

Exhibit A

**716**

B.F.I. COMMUNICATION
RAINIER AVE.
DIEGO, CA 92120

4-16 1996

Pay to the
Order of  Agin Mugtasid                    $ 200 00

Two Hundred —————————— Dollars

Bank of America
La Jolla Main Branch 0170
7680 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

14-0008-01.0-041196-0082013
11-01704-13181

2                                    CP

For _____      Alwi Mahdi

⑈122000661⑈0716⑈01704⑈13181⑈

---

**717**

N/D 3088204200

B.F.I. COMMUNICATION
4427 RAINIER AVE.
SAN DIEGO, CA 92120

4-15 1996

Pay to the
Order of  EAST SANT LOUIS YOUTH COMMISION   $ 20,000 00

TWENTY THOUSAND ————————— Dollars

Bank of America
La Jolla Main Branch 0170
7680 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

For CONTRIBUTION                Alwi Mahdi

⑈122000661⑈0717⑈01704⑈13181⑈

---

Banking On America

**718**

B.F.I. COMMUNICATION
4427 RAINIER AVE.
SAN DIEGO, CA 92120

4-15 1996

Pay to the
Order of  Bank Of America                  $ 1047 00

One thousand forty seven ———— Dollars

Bank of America
La Jolla Main Branch 0170
7680 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

517-0250016195010699

For 025-00161950106998          Alwi Mahdi

⑈122000661⑈0718⑈01704⑈13181⑈

---

Banking On America

**719**

B.F.I. COMMUNICATION
4427 RAINIER AVE.
SAN DIEGO, CA 92120

4-15 1996

Pay to the
Order of  Wayne Miller                     $ 500 00

FIVE HUNDRED ————————————— Dollars

Bank of America
La Jolla Main Branch 0170
7680 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

For Rose Systems                Alwi Mahdi

⑈122000661⑈0719⑈01704⑈13181⑈

Dr Mahdi
Signature

*One hundred and eight* ———————— Dollars

**Bank of America**
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

11-01764-13181
31 N2569015

CP

For _____

Abeni Mahdi

⑆122000661⑆0819⑈01704⑈1318⑈

---

**B.F.I. COMMUNICATION**
7487 DRAPER AVE
LA JOLLA, CA  92037                                    **820**
                                                        16-66/1220

$7-2-1996

Pay to the
Order of *The City of S.D. Water Utilities Dept.* $ 40 ²¹

*Forty dollars* ——————————————— 21/100 Dollars

**Bank of America**
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

For *Water Bill* _____        Abeni Mahdi

⑆122000661⑆0820⑈01704⑈1318⑈

---

**B.F.I. COMMUNICATION**
7487 DRAPER AVE
LA JOLLA, CA  92037                                    **821**
                                                        16-66/1220

7-2  19 96

Pay to the
Order of *COPY COVE* _____ $ 443 ³⁴

*Four hundred forty three* ——————— 34/100 Dollars

**Bank of America**
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

For *REIMBURST FOR TERCEL*        Abeni Mahdi

⑆122000661⑆0821⑈01704⑈1318⑈
*2 MONTHS BILL*

---

**B.F.I. COMMUNICATION**
7487 DRAPER AVE
LA JOLLA, CA  92037                                    **822**
                                                        16-66/1220

7-2  19 96

Pay to the
Order of *Carlson Wagonlit* _____ $ 528 ⁰⁰

*Five hundred twenty eight* ———————— 00/100 Dollars

**Bank of America**
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037   (619) 452-8400

For *Air tickets for Staff*        *Lila Mahdi*

⑆122000661⑆0822⑈01704⑈1318⑈

---

**B.F.I. COMMUNICATION**
7487 DRAPER AVE
LA JOLLA, CA  92037                                    **823**
                                                        16-66/1220

7-2  19 96

Pay to the
Order of *Cash* _____ $ 200 ⁰⁰

*Two hundred* ——————————————— 00/100 Dollars

**Bank of America**
La Jolla Main Branch 0170
7660 Girard Avenue



**Bank of America**

P. O. Box 30746
Los Angeles, CA  90030-0746

ABUWI MAHDI
7060 MIRAMAR RD STE 100
SAN DIEGO          CA  92121

## Your Bank of America Request for Duplicate Statement

Date of Notice:   February 03, 1998
Account Number:   01704-13181

**At Your Service**
Call the number listed on your statement, 24 hours a day, 7 days a week.

**Notice Reference Number:**
W0005055-033-201242-4CA

**Requesting Unit:**
01587

Dear Customer:

Enclosed is the information you recently requested.  If you have any questions, please contact our customer service representatives for assistance at the number listed on your statement.

Thank you for giving us the opportunity to serve your banking needs.

| ☐ Your Account Profile | ☐ Your Requested Statement Date(s) | | |
|---|---|---|---|
| Account Type:  DDA | | | |
| Item Type:  Y | 02/00/96 | 10/00/95 | 06/00/95 |
| Mail Priority:  1 | 01/00/96 | 09/00/95 | 05/00/95 |
| Account Number:  01704-13181 | 12/00/95 | 08/00/95 | 04/00/95 |
| Last Statement Date:  09/08/96 | 11/00/95 | 07/00/95 | 03/00/95 |

PRP-001 5-83
IPO S 0047

FEB 04 '98        502

*Exhibit - C* 



**Bank of America**
Investigative Services #4276
512 Fletcher Parkway
El Cajon, Ca 92020

January 13, 1999

BFIC
ATTN: Abuwi Mahdi
7060 Miramar Road, Suite 100
San Diego, Ca 92121

Dear Mr. Mahdi;

We have reviewed your claim regarding the forged checks posted to your account in 1995.

Under provisions of Uniform Commercial Code 4406 which limits the time you have in filing a claim regarding to one year from the posting of the first forged check we are denying your claim.

If you have any questions regarding this matter you may contact me at the above address.

Sincerely,

Steve Reed
Vice President and
Investigative Consultant

05/30/95    08:27    BLANCHARD KRASNER & FRENCH → 619 456 2978        Exhibit D        GES

## 1922003

ENDORSED
FILED
In the office of the Secretary of State
of the State of California

APR 2 6 1995

Bill Jones

BILL JONES, Secretary of State

### ARTICLES OF INCORPORATION
### OF
### BFI COMMUNICATION, INC.

#### I.

The name of this corporation is:

BFI COMMUNICATION, INC.

#### II.

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

#### III.

The name and address in the State of California of this corporation's initial agent for service of process is:

Adib K. Mahdi
4427 Rainier Street
San Diego, California 92120

#### IV.

This corporation is authorized to issue only one class of shares; and the total number of shares which this corporation is authorized to issue is one million (1,000,000).

#### V.

The liability of the directors of this corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

BFI301F0.001

Exhibit - E

---

COPY COVE OF LA JOLLA
701 PEARL ST (619) 456-2444
LA JOLLA, CA 92037

7273

5-17-96

PAY TO THE ORDER OF  Mellon Bank                 $ 150. —

One hundred, fifty dollars                DOLLARS

Bank of America
La Jolla Main Branch 0170
7880 Girard Avenue
La Jolla, CA 92037  (619) 462-8400

Customer Since 1989

M. H. USMAN

MEMO  5403-0400-4102-9950        SIGNATURE  Thomas M.H. Usman

⑆122000661⑆7273⑈01703⑈05559⑈     ⑈00000150000⑈

---

COPY COVE OF LA JOLLA
701 PEARL ST (619) 456-2444
LA JOLLA, CA 92037                    16-66/1220      7297

5-24-96

PAY TO THE ORDER OF  WAYNE MILLER               $ 500 00

FIVE HUNDRED                              00/100 DOLLARS

Bank of America
La Jolla Main Branch 0170
7880 Girard Avenue
La Jolla, CA 92037  (619) 462-8400

Customer Since 1989

M. H. USMAN

MEMO                     SIGNATURE  Alim Mahdi

⑆122000661⑆7297⑈01703⑈05559⑈

recad credit from BofA

---

COPY COVE OF LA JOLLA
701 PEARL ST (619) 456-2444
LA JOLLA, CA 92037                    16-66/1220      7298

5-24-96

PAY TO THE ORDER OF  Cash                       $ 750 00

One hundred fifty                         00 DOLLARS

Bank of America
La Jolla Main Branch 0170
7880 Girard Avenue
La Jolla, CA 92037  (619) 462-8400

Customer Since 1989          0170-052496-021(204)
05559

M. H. USMAN

MEMO  for M.A. Mahdi  ^2     SIGNATURE  Alim Mahdi

⑆122000661⑆7298⑈01703⑈05559⑈
recad credit from BofA

---

COPY COVE OF LA JOLLA
701 PEARL ST (619) 456-2444
LA JOLLA, CA 92037                    16-66/1220      7299

5-24-96

PAY TO THE ORDER OF  Cash  for B.A.             $ 2030 00

Two thousand and thirty                   00/100 DOLLARS

Bank of America
La Jolla Main Branch 0170
7880 Girard Avenue
La Jolla, CA 92037  (619) 462-8400

Customer Since 1989

M. H. USMAN

MEMO  TWT Transfer       SIGNATURE  Alim Mahdi

⑆122000661⑆7299⑈01703⑈05559⑈
recad credit from BofA

*E-1*

**CONTRA:**

01703-05559

MEMO BALANCE $ _____

Confidential

P.yor  774   (Reprint 8 94)

**Bank of America**   6/2/95

DATE

BRANCH

| BR. NO. | ACCOUNT NO. | Tran Code |
|---------|-------------|-----------|
| 0170 | 4-13181 | |

$ 30,000

Transfer to Coffy Cove

DEBIT  **CHECKING or MAXIMIZER™ ACCOUNT**

TO

| BRANCH | CJ Main | NO | 170 |

of X ~~mDWman~~

BFIC

⑃510010195⑃   0170④13181⑃   ⑃0003000000⑃

*Exhibit F*

Law Offices

# THOMAS GEORGE

*A Professional Corporation for the Practice of Law*

THOMAS GEORGE, J.D., LL.M.
BOARD CERTIFIED-CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

1210 WESTGATE BUILDING
1122 COLORADO
AUSTIN, TEXAS 78701-2184

Telephone
(512) 477-9851
Facsimile
(512) 477-4584

October 21, 1998

*Via Facsimile (972) 490-9008*
Randall Duke, Esq.
Mark Alan Calhoun, Esq.
Randall E. Hand, Esq.
Arbitration Panel

c/o Tracey Hageman, Case Manager
American Arbitration Association
Two Galleria Tower, Suite 1750
13455 Noel Road
Dallas, Texas 75240-6636

Re:  Case No. 71 181 00048 97; IXC Long Distance, Inc. and Building Futures In Communication, Inc.; Austin, Texas

Dear Mssrs. Duke, Calhoun and Hand:

Please find enclosed statement from Mr. Charles Farley, Manager, IT Applications Development, IXC Long Distance, Inc., once again responding to and explaining the data referenced by Price Waterhouse Coopers dated October 9, 1998, and recently received in this office from BFIC.

The Price Waterhouse data again provides nothing new to the baseless claims and charges of BFIC against IXC, and again is misinterpreted by BFIC.

Very truly yours,

Thomas George

TG:jlh
cc:    Mr. A. Muhammad Madhi

*Exhibit F*
*P. 03*

Mr. Thomas George

The attached pages(2) are IXC responses to exhibit 46 (independent
evaluation by Price Water House Coopers) dated October 9th, 1998 in regard
to litigation between IXC Communications and BFIC.

Charles Farley
Manager, IT Applications Development

Exhibit
FF

## NICHOLAS S. OLIVA & ASSOCIATES
### CERTIFIED PUBLIC ACCOUNTANTS

To The Stockholders
BFI Communication, Inc.
7060 Miramar Road, Suite 100
San Diego, CA  92121

### Accountant's Compilation Report

We have compiled the accompanying statement of assets,
liabilities, and equity - income tax basis  of BFI
Communication, Inc. as of December 31, 1996 and the related
statement of revenues and expenses - income tax basis for the
year then ended, in accordance with Statements on Standards for
Accounting and Review Services issued by the American Institute
of Certified Public Accountants.  The financial statements have
been prepared on the accounting basis used by the Company for
Federal income tax purposes, which is a comprehensive basis of
accounting other than generally accepted accounting principles.

A compilation is limited to presenting in the form of financial
statements information that is the representation of management.
We have not audited or reviewed the accompanying financial
statements and, accordingly, do not express an opinion or any
other form of assurance on them.

Management has elected to omit substantially all of the disclo-
sures ordinarily included in financial statments prepared on
the income tax basis of accounting. If the omitted disclosures
were included in the financial statements, they might influence
the user's conclusions about the Company's assets, liabilities,
revenues, and expenses.  Accordingly, these financial statements
are not designed for those who are not informed about such
matters.

We are not independent with respect to BFI Communication, Inc.

NICHOLAS S. OLIVA & ASSOCIATES
Certified Public Accountants

June 6, 1997

BFI COMMUNICATION, INC.
STATEMENT OF ASSETS, LIABILITIES, AND EQUITY
INCOME TAX BASIS
DECEMBER 31, 1996

## ASSETS

CURRENT ASSETS
Cash on Hand                              100,000
Cash in Bank - B of A                      21,543
Cash in Bank - Union                       12,990
Cash in Home Savings                        1,086
Loans Receivable (Note 2)                  20,600
                                         ----------
TOTAL CURRENT ASSETS                                      156,219

PROPERTY AND EQUIPMENT (Note 3)
Equipment                                   6,958
Computers                                  77,545
Tenant Improvements                         1,553
Accumulated Depreciation                  (18,885)
                                         ----------
TOTAL PROPERTY AND EQUIPMENT                              67,171

OTHER ASSETS
Organization Costs (Note 4)                   667
Start-up Costs (Note 5)                   291,698
                                         ----------
TOTAL OTHER ASSETS                                       292,365
                                                        ----------
TOTAL ASSETS                                            515,755
                                                        ==========

## LIABILITIES AND STOCKHOLDERS' EQUITY

CURRENT LIABILITIES
Accounts Payable                           59,741
Note Payable - M. Usman                   161,866
Note Payable - M. Madhi                   103,154
Note Payable - M. Amin                      9,000
Stockholders Loans                         27,550
                                         ----------
TOTAL LIABILITIES                                        361,311

STOCKHOLDERS' EQUITY
Capital Stock (Note 7)                    122,500
Paid in Capital                            43,200
Accumulated Deficit                        (3,796)
Net Loss                                   (7,460)
                                         ----------
TOTAL STOCKHOLDERS' EQUITY                               154,444
                                                        ----------
TOTAL LIABILITIES AND
  STOCKHOLDERS' EQUITY                                   515,755
                                                        ==========

See Accompanying Notes and
Accountant's Compilation Report

BFI COMMUNICATION, INC.
STATEMENT OF REVENUES AND EXPENSES - INCOME TAX BASIS
FOR THE YEAR ENDED DECEMBER 31, 1996

|  | 1996 | |
|---|---|---|
| **REVENUES** | | |
| Telephone Commissions | 1,025,631 | 100.0 |
| Interest Income | 7 | .0 |
| TOTAL REVENUES | 1,025,638 | 100.0 |
| **EXPENSES** | | |
| Advertising | 1,199 | .1 |
| Auto | 8,080 | .8 |
| Bank Charges | 485 | .1 |
| Business Expenses | 18,918 | 1.8 |
| Calling Cards | 10,424 | 1.0 |
| Computer Consulting | 32,673 | 3.2 |
| Commissions | 6,832 | .7 |
| Donations | 8,065 | .8 |
| Entertainment | 1,368 | .1 |
| Insurance | 763 | .1 |
| License & Fees | 3,977 | .4 |
| Office | 21,879 | 2.1 |
| Outside Services | 74,894 | 7.3 |
| Printing | 33,419 | 3.3 |
| Postage & Delivery | 12,616 | 1.2 |
| Professional Services | 28,481 | 2.8 |
| Rebates | 48,231 | 4.7 |
| Refunds | 10,862 | 1.1 |
| Rent | 21,154 | 2.1 |
| Repairs & Maintenance | 69 | .0 |
| Software | 2,167 | .2 |
| Supplies | 3,202 | .3 |
| Tax & Licenses | 25 | .0 |
| Telephone | 55,914 | 5.5 |
| Telephone Carrier Costs | 513,307 | 50.1 |
| Travel | 30,944 | 3.0 |
| Utilities | 3,010 | .3 |
| TOTAL EXPENSES | 952,958 | 92.9 |
| NET OPERATING INCOME | 72,680 | 7.1 |
| **OTHER EXPENSES** | | |
| Amortization | 61,186 | 6.0 |
| Depreciation | 17,983 | 1.8 |
| TOTAL OTHER EXPENSES | 79,169 | 7.7 |
| LOSS BEFORE INCOME TAXES | (6,489) | (.6) |
| INCOME TAX EXPENSE (Note 6) | 971 | .1 |
| NET LOSS | (7,460) | (.7) |

See Accompanying Notes and
Accountant's Compilation Report

BFI COMMUNICATION, INC.
NOTES TO THE FINANCIAL STATEMENTS
DECEMBER 31, 1996

3.) PROPERTY AND EQUIPMENT

Major categories of Property and Equipment and Accumulated
Depreciation are as follows:

| ASSET | METHOD | LIFE | 1996 |
|---|---|---|---|
| Equipment | MACRS | 5 | 6,958 |
| Computers | MACRS | 5 | 77,545 |
| Tenant Improvements | MACRS | 7 | 1,553 |
| TOTAL PROPERTY AND EQUIPMENT | | | 86,056 |
| Accumulated Depreciation | | | (18,885) |
| TOTAL PROPERTY AND EQUIPMENT | | | 67,171 |

4.) ORGANIZATION COSTS

Organization Costs are being amortized by the straight-
line method over 60 months and are shown net of accumulated
amortization of $333.

5.) START-UP COSTS

Start-up Costs are being amortized by the straight-line
method over 60 months and are shown net of accumulated
amortization of $61,233.

6.) INCOME TAX EXPENSE

The Federal Tax Expense represents actual taxes due on
taxable income.  The State tax represents actual taxes
paid or refunded during the year.  Income Tax Expense
is calculated as follows:

| | 1996 |
|---|---|
| LOSS BEFORE INCOME TAXES | (6,489) |
| State Taxes Paid | (971) |
| Net Tax Adjustments | 684 |
| Net Operating Loss | (3,496) |
| TAXABLE LOSS | (10,272) |
| TAX | |
| Federal | -0- |
| State | 971 |
| INCOME TAX EXPENSE | 971 |

See Accountant's Compilation Report

BFI COMMUNICATION, INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 1996

7.)   CAPITAL STOCK

BFIC, Inc. was incorporated under the laws of the State
of California on April 26, 1995.

See Accountant's Compilation Report



BFI COMMUNICATION, INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 1996

1.) SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

Nature of Business

BFI Communication, Inc. is a long distance telecommuni-
cations company based in San Diego, California.

Basis of Accounting

The financial statements are prepared on the income tax
basis of accounting. The Corporation's income tax basis
of accounting is the cash method which records revenues
when received and expenses when paid. Accordingly, the
accompanying financial statements are not intended to
be in conformity with generally accepted accounting
principles.

Property and Equipment

Property and Equipment are carried at cost. Depreciation
is computed using the MACRS method of depreciation
over the assets' estimated useful lives of five to seven
years (See Note 3). Maintenance and repairs are charged to
the expense as incurred; major renewals are capitalized.
When items of fixed assets are sold or retired, the related
cost and accumulated depreciation are removed from the
accounts, and any gain or loss is included in income.

2.) LOANS RECEIVABLE

Loans Receivable consist of the following:

| | |
|---|---:|
| V. Albanese | 18,600 |
| H. Shafiq | 2,000 |
| TOTAL LOANS RECEIVABLE | 20,600 |

See Accountant's Compilation Report



## Tom Browning

| | |
|---|---|
| **From:** | Tom Wolf |
| **Sent:** | Monday, December 16, 1996 2:42 PM |
| **To:** | John Summers; Evelyn Finch; Mike Edwards; Butch McCain; Doug Farrar |
| **Cc:** | Ted MacPherson; Maxine Moreau; Dan Merritt; Lynn McNeill; Tom Browning |
| **Subject:** | RE: Building Futures in Communications, Inc.  dba BFIC |

MIS will begin the disconnection process tonight.

| | |
|---|---|
| **From:** | Doug Farrar |
| **Sent:** | Monday, December 16, 1996 12:50 PM |
| **To:** | John Summers; Evelyn Finch; Mike Edwards; Butch McCain; Doug Farrar |
| **Cc:** | Ted MacPherson; Tom Wolf; Maxine Moreau; Dan Merritt; Lynn McNeill; Tom Browning |
| **Subject:** | RE: Building Futures in Communications, Inc. dba BFIC |

please start taking down the end-users

| | |
|---|---|
| **From:** | Doug Farrar |
| **Sent:** | Friday, December 13, 1996 9:37AM |
| **To:** | John Summers; Evelyn Finch; Mike Edwards; Butch McCain |
| **Cc:** | Ted MacPherson; Tom Wolf; Maxine Moreau; Dan Merritt; Lynn McNeill; Tom Browning |
| **Subject:** | Building Futures in Communications, Inc.  dba BFIC |

Disconnect all CDR delivery and On-Line capability immediately.

Disconnect any Dedicated Service immediately.

Customer has defaulted in payment.

This is an "LD" customer.

GTE

15/06/97
(16: N5

TAPE SUMMARY REPORT FOR TAPES 01/01/96 - 05/06/97

FOR INTERNAL USE ONLY

Page 1

Exhibit I

| TAPE | TRANS COUNT | TRANS AMOUNT | ACCEPTED AMOUNT | UNBILL AMOUNT | BAD DEBT ALLOWANCE | TRUE UP | 2101 FEES | INQUIRY FEES | LEC FEES | SALES TAX | CUSTOMER CREDIT | FUNDED AMOUNT | FINANCE CHARGE | NET PAYABLE | PAID AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

IXC

TAPE SUMMARY REPORT FOR TAPES 01/01/96 - 05/06/97   Page 1

FOR INTERNAL USE ONLY

| TYPE | TRANS COUNT | TRANS AMOUNT | ACCEPTED AMOUNT | UNBILL AMOUNT | BAD DEBT ALLOWANCE | TRUE UP | FCC FEES | INQUIRY FEES | IEC FEES | SALES TAX | CUSTOMER CREDIT | FUNDED AMOUNT | FINANCE CHARGE | NET PAYABLE | PAID AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals: | 196532 | 440716.94 | 407824.37 | -13401.68 | -25306.65 | 2.92 | -10752.18 | -9025.00 | -12407.07 | | -28178.55 | 334317.80 | -847.33 | 35437.10 | 35437.10 |



Handwritten annotations:
- Total Billing → US BS Subpoena Billing Data
- Procurement-base (appears Point Three)
- Section A shows #565,865
- DS Info. Billing, Defendants
- Billed Plaintiff invoices at cost.
- See ITC December and January invoices.
- Invoice amount $447,176.94. Plaintiff
- Total billing Plaintiff cost would average 26.10% discount
- at $477,834 Total 2 tail billing
- (This is what was received or wire to Bank Account. (70%))
- (of average 80 w 100%)
- (000,596.$) ≈
- Chipkap II

05/06/97
Lib: JX

*Willel*

## TAPE SUMMARY REPORT FOR TAPES 01/01/96 - 05/06/97

1* B.F.I.C.

Page 1

| TAPE | TRANS COUNT | TRANS AMOUNT | ACCEPTED AMOUNT | UNBILL AMOUNT | BAD DEBT ALLOWANCE | TRUE UP | 2PDI FEES | INQUIRY FEES | LEE FEES | SALES TAX | CUSTOMER CREDIT | FUNDED AMOUNT | FINANCE CHARGE | NET PAYABLE | PAID AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BLANK TAPE | | | | -5051.00 | | | | | | | | | | -10629.79 | -10629.79 |
| EC6903K0 | 1 | -7.41 | | | | | -0.11 | | | | -26.55 | | | -7.57 | -7.57 |
| EC6901/C5 | 1 | -119.91 | | | | | -0.05 | | | | -7.41 | | | -120.47 | -120.47 |
| EC6901/10 | 1 | -34.30 | | | | | -0.01 | | | | -119.91 | | | -35.22 | -35.22 |
| EC6A01F0 | 8 | -34.30 | | | | | -0.42 | | | | -34.30 | | | -126.62 | -126.62 |
| EC6ABC0 | 12 | -125.45 | | | | | -0.63 | | | | -125.45 | | | -135.29 | -135.29 |
| EC6A15E5 | 14 | -133.84 | | | | | -0.72 | | | | -133.84 | | | -53.57 | -53.57 |
| EC6A17C5 | 6 | -52.94 | | | | | -0.73 | | | | -52.94 | | | -20.33 | -20.33 |
| EC6A22C0 | 6 | -19.66 | | | | | -0.31 | | | | -19.66 | | | -153.24 | -153.24 |
| EC6A25C0 | 7 | -152.26 | | | | | -0.32 | | | | -152.26 | | | -384.61 | -384.61 |
| EC690SG0 | 7 | -384.61 | | | | | -0.37 | | | | -384.61 | | | -384.61 | -384.61 |
| EC6B1300 | 13 | -384.61 | | | | | -0.50 | | | | | | | | |
| EC6B19E5 | 20 | -1201.33 | | | | | -2.41 | | | | | | | -1206.90 | -1206.90 |
| C0M85 | 24 | -623.25 | | | | | -5.66 | | | | -623.25 | | | -629.51 | -629.51 |
| C0C1C0 | 19 | -126.64 | | | | | -2.28 | | | | -126.64 | | | -128.92 | -128.92 |
| C0C17C5 | 24 | -420.25 | | | | | -6.40 | | | | -420.25 | | | -425.60 | -425.60 |
| EC720E5 | 28 | -2110.49 | | | | | -6.78 | | | | -2110.49 | | | -2116.89 | -2116.89 |
| EC721U5 | 5 | -647.75 | | | | | -1.78 | | | | -647.75 | | | -656.53 | -656.53 |
| EC10B00 | 7 | -1407.46 | | | | | -1.53 | | | | -1407.46 | | | -1409.96 | -1409.96 |
| EC721BF0 | 6 | -418.43 | | | | | -1.38 | | | | -418.43 | | | -419.96 | -419.96 |
| EC725C0 | 1 | -0.33 | | | | | -0.36 | | | | -0.33 | | | -0.71 | -0.71 |
| EC730G5 | 13 | -319.31 | | | | | -2.70 | | | | -319.31 | | | -322.01 | -322.01 |
| EC731C5 | 1 | -57.72 | | | | | -0.38 | | | | -57.72 | | | -58.10 | -58.10 |
| EC6B1470 | 2 | -12.07 | | | | | -0.70 | | | | -12.07 | | | -12.77 | -12.77 |
| EC6B1/27 | 9 | -920.42 | | | | | -3.49 | | | | -920.42 | | | -923.91 | -923.91 |
| EC6A1783 | 8 | -93.95 | | | | | -2.02 | | | | -93.95 | | | -95.97 | -95.97 |
| | 8 | -511.45 | | | | | -2.73 | | | | -511.45 | | | -514.18 | -514.18 |
| | 3 | -129.55 | | | | | | | | | -129.55 | | | -129.55 | -129.55 |
| | | -89.50 | | | | | | | | | -89.50 | | | -89.50 | -89.50 |

| Totals: | 95408 | 18830/20 | 18859/.35 | | | | | | | | | | | | |
| | 13796 | 21084.27 | 21084.27 | -105.40 | -1183.09 | -724.33 | -486.93 | | | -14758.99 | | -250.75 | 3574.78 | 3574.78 |
| | 34814 | 77964.08 | 77964.08 | -389.81 | -3472.97 | -1827.76 | -1980.31 | | | -53811.31 | | -916.51 | 15565.41 | 15565.41 |
| | 45532 | 99545.00 | 99545.00 | -497.75 | -4656.75 | -2442.95 | -2370.71 | | | -69681.49 | | -1137.49 | 18777.86 | 18777.86 |
| Totals: | | 27661/83 | | -6043.96 | -9292.81 | -494.36 | -3027.50 | -4897.98 | | -10318.70 | -138251.79 | 2304.75 | 16932.79 | 16932.79 |

FOR INTERNAL USE ONLY

Michigan Department of Treasury
(Revised 10/96)

**SINGLE BUSINESS TAX**
**NOTICE of NO SBT RETURN REQUIRED**

This form is issued under authority of P.A. 228 of 1975.
See instruction booklet for filing guidelines.

C-8030
1996

**STOP!** Read the instructions before completing this form.

▶ 1   This return is for calendar year 1996 or for the following tax year

| Beginning Date | Ending Date |
|---|---|
| month     year 1996 | month     year 19 |

2   Name (including DBA), Address, City, State, ZIP

BFI COMMUNICATION, INC.

7060 MIRAMAR ROAD, SUITE 100
SAN DIEGO, CA  92121

▶ 3   Federal Employer ID No. (FEIN) or TR No.
33-0660229

4   Enter your gross receipts.
Tax periods less than 12 months must be annualized, see instructions.
If the business is taxable in another state, use apportioned gross receipts
and attach form C-8000H ........................................................................ 4 _____ 5,726

5   Enter your recapture of capital acquisition deduction, and attach form C-8000 ........ 5 _____

6   **Adjusted Gross Receipts.** Add lines 4 and 5 ........................................ ▶ 6 _____ 5,726

7   Enter your business income for the taxable year ...................................... ▶ 7 _____ <6,776

8   Check this box if your adjusted gross receipts (line 6) are less than $250,000 and you expect this situation to continue.
If you check this box, we will make your SBT account inactive. If your gross receipts plus recapture are $250,000 or more,
you must file an SBT Annual Return (form C-8000 or C-8044) even if you owe no tax. ........ ▶ 8 ☐

9   Check this box if someone else prepares your return and
you DO NOT need a book mailed to you next year ...................................... ▶ 9 ☒

**If the amount on line 6 is $250,000 or more,
you must file an annual return.**

---

**SIGNATURE AND PREPARER AUTHORIZATION**

**TAXPAYER'S DECLARATION**
I declare, under penalty of perjury, that this notice is true
and correct to the best of my knowledge.
☐ I authorize Treasury to discuss my return with my preparer.
☐ Do not discuss my return with my preparer.

| Taxpayer's Signature | Date |
|---|---|
| | |

Title

**PREPARER'S DECLARATION**
I declare, under penalty of perjury, that this notice is based on all information
of which I have any knowledge.

| Preparer's Signature | Date 11/20/97 |
|---|---|

Business Address, Phone and Identification Number
NICHOLAS S. OLIVA & ASSOCIATES, CPA'S
9191 TOWNE CENTRE DRIVE, SUITE 400
SAN DIEGO, CA 92122
(619)554-0800
33-0578542

**MAIL TO:**
Michigan Department of Treasury
P.O. Box 30059
Lansing, MI 48909

186
58621
2-30-98
18341120

**Corporations:** Attach a copy of your U.S. 1120, 1120A or 1120S
pages 1 and 2. S-Corporations also attach Schedule K.*
**Individuals &**
**Fiduciaries:** Attach Schedule C and E.
**Partnerships:** Attach U.S. 1065, pages 1 and 2 and Schedule K.*
*Do not send copies of Schedule K-1s. We will request them if needed.

| FORM 1120 | TAXES AND LICENSES | STATEMENT | 1 |
|---|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| LICENSES | 3,202. |
| CALIFORNIA TAXES – BASED ON INCOME | 1,771. |
| TOTAL TO FORM 1120, LINE 17 | 4,973. |

| FORM 1120 | OTHER DEDUCTIONS | STATEMENT | 2 |
|---|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| AMORTIZATION | 61,186. |
| AUTO | 8,080. |
| BANK CHARGES | 485. |
| BUSINESS EXPENSES | 18,918. |
| CALLING CARDS | 10,424. |
| COMPUTER CONSULTING | 32,673. |
| COMMISSIONS | 6,832. |
| INSURANCE | 763. |
| OFFICE | 21,879. |
| OUTSIDE SERVICES | 74,894. |
| PRINTING | 33,419. |
| POSTAGE & DELIVERY | 12,616. |
| PROFESSIONAL SERVICES | 28,481. |
| REBATES | 48,231. |
| REFUNDS | 10,862. |
| SOFTWARE | 2,167. |
| SUPPLIES | 3,202. |
| TELEPHONE | 55,914. |
| TELEPHONE CARRIER COSTS | 513,307. |
| TRAVEL | 30,944. |
| UTILITIES | 3,010. |
| MARKETING | 8,065. |
| MEALS AND ENTERTAINMENT | 684. |
| TOTAL TO FORM 1120, LINE 26 | 987,036. |

STATEMENT(S) 1, 2

J8341120        BFICOMMUNICA   070   BFI COMMUNICATION INC

*Exhibit 1A*

# GOODIN, MACBRIDE,
# SQUERI, SCHLOTZ & RITCHIE
### Attorneys at Law

505 Sansome Street
Suite 900
San Francisco
California 94111

Telephone
415/392-7900
Facsimile
415/398-4321

Thomas J MacBride, Jr

**May 16 , 1996**

Writer's Direct Line
415/765-8444

**HAND DELIVERED**

**Ms. Leticia Ramirez**
**Telecommunications Branch**
**California Public Utilities Commission**
**505 Van Ness Avenue, Area 3-D**
**San Francisco, CA.  94102**

> Re:  Advice Letter No. 1 of Switched Services
> Communications, L.L.C. (U-5620-C)

Dear Ms. Ramirez:

Switched Services Communications, L.L.C. ("SSC")
hereby transmits for filing an original and five copies of its
California tariff schedule for InterLATA and IntraLATA
Telecommunications Services pursuant to Decision No. 96-05-025.

Pursuant to Ordering Paragraph No. 3 of Decision No.
96-05-025, SSC requests that this tariff be effective one day
after the date of filing.  In compliance with General Order
96-A, a copy of this advice letter is being mailed to
potentially competing and adjacent utilities.

Anyone may protest this Advice Letter to the
California Public Utilities Commission.  The protest must set
forth the specific grounds on which it is based, including such
items as financial and service impact.  A protest must be made
in writing and received within twenty days of the date this
Advice Letter was filed with the California Public Utilities
Commission.  The address for mailing or delivering a protest to
the California Public Utilities Commission is: Chief, CACD
Telecommunications Branch, 505 Van Ness Avenue, Room 3203, San
Francisco, CA, 94102.  A copy of the protest must be mailed to
the undersigned on the same date it is mailed or delivered to
the California Public Utilities Commission.

If there are any questions regarding this filing,
please contact the undersigned.  Also, after filing these
sheets, please provide this office with a file-stamped copy of
the tariff in the envelope provided.

# GOODIN, MACBRIDE,
## SQUERI, SCHLOTZ & RITCHIE
### Attorneys at Law

505 Sansome Street
Suite 900
San Francisco
California 94111

Telephone
415/392-7900
Facsimile
415/398-4321

James D. Squeri

**May 17, 1996**

Thor Wilcox
1946-1979

Writer's Direct Line
415/765-8431

**HAND DELIVERED**

**Ms. Leticia Ramirez**
**Telecommunications Branch**
**California Public Utilities Commission**
**505 Van Ness Avenue, Area 3-D**
**San Francisco, CA.  94102**

> **Re:  Supplemental Advice Letter No. 1-A of Switched**
> **Services Communications, L.L.C. (U-5620-C)**

Dear Ms. Ramirez:

Switched Services Communications, L.L.C. ("SSC")
hereby transmits for filing an original and five copies of the
following supplemental changes to its California tariff schedule
for InterLATA and IntraLATA Telecommunications Services pursuant
to Decision No. 96-05-025, attached hereto:

| New Cal. P.U.C. Sheet No. | Cancelling Cal. P.U.C. Sheet No. |
|---|---|
| Original Title Sheet | Original Title Sheet |
| Original Sheet No. 1-T | Original Sheet No. 1-T |
| Original Sheet No. 2-T | Original Sheet No. 2-T |
| Original Sheet No. 3-T | Original Sheet No. 3-T |
| Original Sheet No. 4-T | Original Sheet No. 4-T |
| Original Sheet No. 5-T | Original Sheet No. 5-T |
| Original Sheet No. 6-T | Original Sheet No. 6-T |
| Original Sheet No. 7-T | Original Sheet No. 7-T |
| Original Sheet No. 8-T | Original Sheet No. 8-T |
| Original Sheet No. 9-T | Original Sheet No. 9-T |
| Original Sheet No. 10-T | Original Sheet No. 10-T |
| Original Sheet No. 11-T | Original Sheet No. 11-T |
| Original Sheet No. 12-T | Original Sheet No. 12-T |
| Original Sheet No. 13-T | Original Sheet No. 13-T |
| Original Sheet No. 14-T | Original Sheet No. 14-T |
| Original Sheet No. 15-T | Original Sheet No. 15-T |
| Original Sheet No. 16-T | Original Sheet No. 16-T |

Exhibit-1 18

# AMERICAN ARBITRATION ASSOCIATION

## COMMERCIAL ARBITRATION TRIBUNAL

In the Matter of the Arbitration between

Re: 71 181 00048 97
    IXC Long Distance, Inc.
    vs.
    Building Futures In Communication, Inc . and  A. Muhammad Mahdi

ADMINISTRATOR:  Molly Bargenquest

### AWARD OF ARBITRATORS

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into by the parties, and dated April 19, 1996, and August 13, 1996, and having been duly sworn and having duly heard the proofs and allegations of the parties hereby, AWARD, as follows:

Building Futures In Communication, Inc. ("BFIC") shall pay to IXC Long Distance, Inc. ("IXC") the sum of Five Million One Hundred Forty Seven Thousand Seven Hundred Ninety Eight Dollars and Sixty Four Cents ($5,147,798.64) for its claim itemized as follows:

| | | |
|---|---|---|
| $4,842,835.37 | Claim | |
| 147,798.64 | Attorney's fees and expenses (including $1,025.00 NSF check) | |
| 157,164.63 | Prejudgment interest | |
| $5,147,798.64 | Total | |

All claims against A. Muhammad Mahdi, individually, are hereby denied.

The counterclaims of BFIC are hereby denied.

The administrative fees and expenses of the American Arbitration Association ("the Association") totaling $23,931.75 shall be borne by BFIC.  Therefore, BFIC shall pay to IXC the sum of $7,700.00 representing that portion of IXC's share of administrative fees and expenses previously paid to the Association.

Exhibit 10
Exhibit 12

**SWITCHED SERVICES COMMUNICATIONS,**
**PROJECTED**
**STATEMENT OF OPERATIONS**
**YEAR ENDED DECEMBER 31, 1995**
**(in thousands)**

|  | STATE TOTAL |
|---|---|
| Revenue | $3,096 |
| Operating expenses: |  |
| Operating and administration | $110 |
| Access costs | $2,709 |
| Transmission leases | $383 |
| Depreciation and amortization | $54 |
| Total operating expenses | 3,256 |
|  | (160) |
| Interest expense | $25 |
| Net income (loss) | ($185) |

Exhibit 2

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of _California_

County of _San Diego_

On _3/18/96_ before me, _Jennifer Edrozo, Notary Public_
                Date                              Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _Mohammed Hussam Usman_
                                        Name(s) of Signer(s)

☐ personally known to me – OR – ☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Notary Seal: JENNIFER EDROZO, COMM. #1037931, NOTARY PUBLIC CALIFORNIA, SAN DIEGO COUNTY, My Comm. Expires SEPTEMBER 6, 1998]

_____
Signature of Notary Public

———————————— OPTIONAL ————————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _Lockbox Instruction._

Document Date: _3/18/96._                          Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _Mohammed Hussain Usman_

☐ Individual
☑ Corporate Officer
   Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-In-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

Signer Is Representing:
_BEIC, INC._

Signer's Name: _____

☐ Individual
☐ Corporate Officer
   Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-In-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

Signer Is Representing:
_____

© 1994 National Notary Association • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184          Prod. No. 5907          Reorder: Call Toll-Free 1-800-876-6827

*Exhibit 3*

## Escrow Agreement

This Escrow Agreement (the "Agreement") is entered into this _15th_ of _March_
_96_ (the "Effective Date"), between WorldCom, Inc. a Georgia Corporation, DBA LDDS
WorldCom with its principal ...

---

...IFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of _California_
County of _San Diego_

On _2/19/96_ before me, _Sally B. Doyle_
    CATE                         NAME, TITLE OF OFFICER - E G , "JANE DOE, NOTARY PUBLIC"

personally appeared _Mohammed H. Usman_
                         NAME(S) OF SIGNER(S)

☐ personally known to me · **OR** · ☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are
subscribed to the within instrument and ac-
knowledged to me that he/she/they executed
the same in his/her/their authorized
capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s),
or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Sally B. Doyle_
SIGNATURE OF NOTARY

SALLY B. DOYLE
COMM.#1022475
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
MY COMMISSION EXPIRES
MAY 20, 1998

**OPTIONAL SECTION**
**CAPACITY CLAIMED BY SIGN...**
Though statute does not require the ...
fill in the data below, doing so m.y cr...
invaluable to persons relying on t... ...

☐ INDIVIDUAL
☒ CORPORATE OFFICER(S)
                    TITLE(S)
☐ PARTNER(S)   ☐ LIMITED
               ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
_BFIC Inc_

---

**OPTIONAL SECTION**

THIS CERTIFICATE MUST BE ATTACHED TO
THE DOCUMENT DESCRIBED AT RIGHT:

Though the data requested here is not required by law,
it could prevent fraudulent reattachment of this form

TITLE OR TYPE OF DOCUMENT _Lockbox Instructions_

NUMBER OF PAGES _____ DATE OF DOCUMENT _3-18-96_

SIGNER(S) OTHER THAN NAMED ABOVE

### Page 1

(1) BEFORE THE AMERICAN ARBITRATION ASSOCIATION
IXC LONG DISTANCE, INC.
VS.                         CASE NO. 71 171 00048 97
BUILDING FUTURES IN
(5) COMMUNICATION. INC.
(8)                         * * * * *
(9)                DEPOSITION OF DAVID E. HILLIN
(11)           On the 27th day of January, A.D.,
(11) 1998, between the hours of 2:00 P.M. and 3:30 P.M. in
(12) the offices of IXC COMMUNICATIONS, 1122 South Capital
(14) of Texas Highway, Austin, Texas, before me, SHERRI
(15) SANTANA FISHER, a Certified Shorthand Reporter in and
(16) for Travis County, Texas, appeared DAVID E. HILLIN,
(17) who, being by me first duly sworn, gave his oral
(18) deposition, having been called as a witness by the
(19) Respondent in said cause, pursuant to agreement of
(20) counsel for the respective parties as attached
(21) hereto.

### Page 2

(1)              APPEARANCES
For the Claimant:    THOMAS GEORGE
(3)                  Attorney at Law
                     2310 Westgate Building
(4)                  1122 Colorado
                     Austin, Texas 78701
For the Respondent:  THOMPSON COBURN
(6)                  By: THOMAS J. GREEN
                     One Mercantile Center
(7)                  Suite 3500
                     St. Louis, Missouri 63101
Also Present:        Connie Thomas
(13)                 * * * * *

### Page 3

(1)         TABLE OF CONTENTS
(2)                                    Page
(3)  Direct Examination by Mr. Green      4

### Page 4

(1) DAVID E. HILLIN, (2) the witness
hereinbefore named, being first duly
(3) cautioned and sworn to testify the
truth, the whole (4) truth and nothing
but the truth, testified as (5) follows:
(6) DIRECT EXAMINATION (7)
QUESTIONS BY MR. GREEN:
(8) Q. Could you please state your
name for the (9) record?
(10) A. David E. Hillin, H-i-l-l-i-n.
(11) Q. And what is your Social Security
number?
(12) A. 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.
(13) MR. GEORGE: We usually object
to (14) these questions in Texas, but
I'm not at this time.
(15) MR. GREEN: Standard –
(16) MR. GEORGE: Standard Social
(17) Security objection, yeah. (18)
QUESTIONS BY MR. GREEN:
(19) Q. What is your position with IXC?
(20) A. I'm director of account
management.
(21) Q. Director of account
management with which (22) company?
(23) A. Well, I don't know that I
really know per se. (24) I just look
at it I work for IXC and –
(25) Q. So you're not sure if technically
you're

### Page 5

(1) working for IXC Long Distance,
Inc., or IXC (2) Communications, Inc.?
(3) A. That's correct.
(4) Q. How long have you held this
position?
(5) A. I started with IXC July 1st,
1997.
(6) Q. And when you started, what was
your first (7) position?
(8) A. The same, director of
account management.
(9) Q. So you've been the director of

### Page 6 (middle column, top)

account (10) management
continuously since July 1 of '97 until
the (11) present?
(12) A. That's correct.
(13) Q. And that's your current job title.
(14) A. Yes.
(15) Q. What are your responsibilities as
the director (16) of account
management?
(17) A. I manage a group of
approximately 20 (18) individuals
that manage IXC's reseller accounts
on an (19) almost day-to-day basis.
After sales has completed (20) the
contract, the account management
function of IXC (21) then takes over
that department to work with the
(22) accounts to get them
operational and then help them (23)
with their questions issues,
problems resolutions on (24) an
ongoing basis.
(25) Q. Prior to July 1 of 1997 did you
work with any

### Page 6

(1) company affiliated with IXC?
(2) A. No.
(3) Q. What did you do prior to that?
(4) A. From April 11th, 1997,
through June 30th, '97, (5) I was
looking for employment. Prior to
that, I worked (6) for a company by
the ███████████████████████
Communications, ████████████ which
was ████████████████████████
which ██████████████████
(9) ████████████████
(10) Q. What did you do at DCA?
(11) A. I was director of client
services and (12) operations.
(13) Q. What did that exactly mean?
(14) A. That position at DCA
managed the process of, I (15)
would say, receiving CDR's from
long distance (16) carriers,
accumulating those CDR's within
our (17) company, working with our
list of clients to process (18) billing
on a periodic basis, weekly,
monthly, and (19) subsequently
creating a paper bill for invoice for
(20) our customers' customers or
handing those call (21) records off
to another company to do LEC
billing.
(22) Q. ███████████████████████

(24) A. LDDS WorldCom. Up until
March 31st, 1997. It (25) was
subsequently sold to Platinum
Equity Holdings out

### Page 7

(1) of Los Angeles, a venture capital
firm.
(2) Q. What was the name of that
company?

### Page 7 (right column)

(3) A. Platinum Equity Holdings,
Los Angeles.
(4) Q. And that's venture capitalists?
(5) A. Yes.
(6) Q. So you were responsible for
overseeing (7) incoming CDR's and
then rating them?
(8) A. Yes, rating, processing, and
subsequently (9) either creating a
paper bill or submitting it to (10)
another company to do LEC billing.
(11) Q. And when you say "to do LEC
billing," that's (12) billing that's done
by the –
(13) A. The local exchange carriers
for long distance (14) companies.
(15) Q. How long did you do that at
DCA?
(16) A. I was at DCA from May 1st,
1996, through April (17) 11th, 1997.
(18) Q. During that time period, May of
'96 through (19) April of '97, while you
were at DCA, you didn't (20) have – did
you have any involvement with
formatting (21) CDR's that pertained to
Building Futures in (22)
Communications, Inc.?
(23) A. Yes.
(24) Q. You did.
(25) A. My department had
responsibilities in that

### Page 8

(1) area. I did not personally handle
the account, but (2) people under
my direction did work with BFIC.
(3) Q. When was the first time that
DCA received a (4) BFIC CDR?
(5) A. To the best of my
recollection, we started (6) working
with BFIC in the late summer, early
fall time (7) frame. As to the time
when we actually received our (8)
first call records for BFIC, I cannot
state that. I (9) just do not know. I
do not recall.
(10) Q. When you say late summer,
early fall, you're (11) referring to the
late summer or early fall of 19 –
(12) A. 1996.
(13) Q. 1996.
(14) A. Yes.
(15) Q. Did you have any personal
negotiations with (16) anyone at
Building Futures in Communications,
Inc.?
(17) A. I didn't have negotiation –
well, I did (18) participate in some
conference calls with individuals
(19) from BFIC. In terms of direct
negotiations, I don't (20) recall any,
although I was involved in some
legal (21) issues internally with DCA
and BFIC.
(22) Q. What kind of legal issues?
(23) A. There was a situation
wherein the folks in my (24)

01-27-1998  03:04PM  FROM                              TO     10298131455527038    P.02

*You Du Remember*
*This document*                                                              *Exhibit ↑*

### NO. 71 181 00048 97

| | | |
|---|---|---|
| IXC LONG DISTANCE, INC., | § | BEFORE THE |
| Plaintiff/Applicant | § | |
| | § | |
| vs. | § | AMERICAN ARBITRATION |
| | § | |
| BUILDING FUTURES IN | § | |
| COMMUNICATION, INC. | § | |
| Defendant/Respondent | § | ASSOCIATION |

### NOTICE OF INTENT TO TAKE ORAL DEPOSITION AND SUBPOENA DUCES TECUM OF ABID MAHDI AND BUILDING FUTURES IN COMMUNICATION, INC.

TO:  ABID MAHDI, individually and as representative of Building Futures In Communication, Inc., by and through their attorney of record, Thomas J. Green, Esq., Thompson Coburn, One Mercantile Center, St. Louis, Missouri 63101-1693.

Please take notice that, pursuant to the Rules of the American Arbitration Association (AAA) and the Texas Rules of Civil Procedure, IXC Long Distance, Inc., Plaintiff/Applicant herein, will take the deposition of Abid Mahdi, individually and as representative of Building Futures In Communication, Inc. (BFIC), at 3:00 p.m. on February 3, 1998, upon oral examination before a certified court reporter, at the offices of Oden, Greene, Murray & Thompson, L.L.P., 1200 Third Avenue, Suite 1630, San Diego, California 92101.

Pursuant to Rule 201, Texas Rules of Civil Procedure, the Deponents are commanded to produce and permit inspection, sampling, testing, photographing, and/or copying of the items or things described in Exhibit A, which is attached hereto and incorporated herein as if the entire Exhibit were set forth verbatim herein.

EXHIBIT
3

Exhibit - 4

## EXHIBIT A
Notice of Intent To Take Oral Deposition
and Subpoena Duces Tecum of Abid Mahdi and
Building Futures In Communication, Inc.

This subpoena extends to all "documents" and any other tangible things which constitute or contain matters relevant to the subject matter of this subpoena.   Rule 166b(2)(b).

This subpoena extends to materials in either your possession, custody or control, or in your constructive possession; constructive possession exists as long as you have a superior right to compel the production from a third party (including an agency, authority or representative) even though you do not have actual physical possession.  Rule 166b (2)(b).  A party may not evade subpoena requests by answering that he does not know or does not have the information requested when, by resorting to reasonable means available to him, he can ascertain the facts inquired about.

### Terms

"Document" means all writing (including drafts and copies bearing notations not found in the original) and recordings, including, but not limited to:  papers, books, accounts, drawings, drafts, charts, criteria or codes, memoranda, receipts, reports, photographs, electronic or videotape recordings, and any other data compilations from which information can be obtained and translated, if necessary, in a reasonably usable form, however produced or reproduced now or at any time in your possession, custody or control.  The document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person or public or private entity having actual physical possession thereof.  If a document required to be identified by this subpoena was, but is no longer, in your possession or subject to your control, state what disposition was made of it and the date or dates, or approximate date or dates, on which such disposition was made and state whether it is:

4.   Any and all letters or correspondence whatsoever between any attorney for Building Futures In Communication, Inc. and any expert used for consultation whose work product has been reviewed, either in whole or in part, by an expert who may be called as a witness and any follow-up letters from the attorney to any expert so retained.

5.   All documents, notes, models, reports, and tangible things evidencing, relating, or pertaining to opinions and/or mental impressions of any expert who you expect to be called to testify or any expert used for consultation whose mental processes or work product forms the basis, in whole or in part, of the work product, mental impressions and/or opinions of any expert who may be called as a witness by you.

6.   Any and all expert reports and material which evidence, relate, or pertain to any legal or fact issue arising out of, relating, or pertaining to, the incidents and transactions made the basis of this suit.

7.   To the extent that such are not produced in response to any other production request herein, any and all codes, criteria, guidelines, rules, regulations, standards, professional association guidelines and standards, or other published materials, documents and tangible things evidencing, relating, or pertaining to any facts within the knowledge of any expert employed by you which relate to, or form the basis of, the mental impressions and opinions of any expert who may be called as a witness in this suit.

8.   Any and all documents indicating payment of IXC Long Distance, Inc. invoices to Building Futures In Communication, Inc. from any source.

9.   Any and all documents and invoices indicating details of any disputed charges to Building Futures In Communication, Inc. and any adjustments or offsets made to any IXC Long Distance, Inc. invoices.

Further, pursuant to Rule 201, Texas Rules of Civil Procedure, service of this Notice to Deponent's attorney shall suffice and have the same effect as a subpoena served on the Deponent identified hereinabove.

Other than the witness, parties, counsel, employees of counsel, and the officer taking the deposition all of whom may attend, the following person(s) will attend the deposition: None.

Respectfully submitted,

THOMAS GEORGE, P.C.

By: _Thomas George_

Thomas George
Bar Card No. 07806900
2310 Westgate Building
1122 Colorado Street
Austin, Texas 78701-2184
(512) 477-9651

ATTORNEYS FOR PLAINTIFF,
IXC LONG DISTANCE, INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Notice of Intent to Take Oral Deposition and Subpoena Duces Tecum of Abid Mahdi and Building Futures In Communication, Inc. was served by Certified Mail, Return Receipt Requested to attorney for Defendant, Thomas J. Green, Esq., Thompson Coburn, One Mercantile Center, St. Louis, Missouri 63101-1693, on this 27th day of January, 1998.

_Debra Royall_

Debra Royall

IXC\Building\dep2

NOTICE OF INTENT TO TAKE ORAL
DEPOSITION AND SUBPOENA DUCES TECUM  - p. 2

SEP. -18'96(WED) 15:05   DCA INC.                TEL:4059519444                P. 021

UL. -13'96(THU) 08:15   DCA INC.                TEL:405-360-0625               P. 002   18

*Exhibit S*

THANK YOU FOR USING BFIC FOR YOUR LONG DISTANCE SERVICE.

## HOW TO PAY YOUR BILL
Please mail your payment in the enclosed return envelope.

Please be sure to write your account number on your check and to enclose the remittance section of the bill. Do not staple or otherwise affix the remittance section to your check and please be sure that the address on the remittance section shows clearly through the window on the return envelope.

If you do not have the return envelope, please use a standard envelope and mail your check and remittance section to:

USBI
9311 SAN PEDRO
STE 400
SAN ANTONIO, TX  78216

BFIC, Inc.
P.O. Box 3300
Tulsa, OK  74192

Please use this address for payment only. The correct correspondence address appears below.

## WHEN TO PAY YOUR BILL
Your payment is due when you receive your bill. If we do not receive payment for the total billed amount by the next "STATEMENT DATE" your account will become past due. The next "STATEMENT DATE" will be at least 21 days from the "STATEMENT DATE" printed on this bill.

## LATE PAYMENTS
Should your account become past due, a late penalty charge of 1.5% per month will be assessed on your account, based on your total unpaid usage balance.

## RETURNED CHECKS
A $15 charge will be assessed to your account for any check returned unpaid by your bank.

## QUESTIONS ABOUT YOUR BILL
If you have questions about your bill, please contact your BFIC customer service representative at 1-800-711-1334. Representatives are available to serve you throughout the business day, coast-to-coast.

## CUSTOMER SERVICE
Your BFIC customer service representative is available to answer questions or resolve issues that arise out of any aspect of your service. If we may be of assistance to you in any way, please call us at 1-800-711-1334 between 6:00 a.m. and 5:00 p.m. PST.

If you would like to write us, please address all correspondence, including change-of-address information, to:

BFIC, Inc.
Customer Service Department
7467 Draper Ave.
La Jolla, CA  92037

## BILL INFORMATION
The codes for the rate period column of your bill are described below:

Rate Period
D   Day
E   Evening
N   Night/Weekend

BFIC 0-02

Complete
7-25-96
AP

X  Read-Me      ___ Staci
X  Colleen      ___ Mark
X  Cindy        ✓ Anne
___ Amy          ___ Mike N.
___ Susan        ___ Kathy
___ Cassie       ___ Jacquie
___ Jenette
___ Judith

Faxed to DCA 7/18/96  0-04

# MEMO

| | |
|---|---|
| **To:** | Patty Meznarich |
| **From:** | Adib K. Mahdi |
| **Subject:** | Remittance address for BFIC INC. |
| **Date:** | July 19, 1996 |
| | 210-525-0511 |

Patty,

The remittance address I am showing on the contract is:
U.S. Billing, 9311 San Pedro, San Antonio, TX. Ste 400

I need to know if there is a dept. number or account number that needs to be printed along with this address.

Please contact me Monday morning.

*15 mm End of*

JUL-17-96 WED 09:02 AM BFIC, INC.                    619 5517738                    P.02

17

JUL. -12' 96 (FRI) 10:43   DCA INC.                    TEL:405-360-0615                    P. 001

THANK YOU FOR USING **BFIC** FOR YOUR LONG DISTANCE SERVICE          EXHIBIT 6

## HOW TO PAY YOUR BILL
Please mail your payment in the enclosed return envelope.

Please be sure to write your account number on your check and to enclose the remittance section of the bill. Do not staple or otherwise affix the remittance section to your check, and please be sure that the address on the remittance section shows clearly through the window on the return envelope.

If you do not have the return envelope, please use a standard envelope and mail your check and remittance section to:

BFIC Inc.
Remittance Address
City, ST Zip (+4?)

*BFIC, Inc.*
*P.O. Box 2300*
*Tulsa, OK 74192*

Please use this address for payments only. The correct correspondence address appears below.

## WHEN TO PAY YOUR BILL
Your payment is due when you receive your bill. If we do not receive payment for the total billed amount by the next "STATEMENT DATE," your account will become past due. The next "STATEMENT DATE" will be at least 21 days from the "STATEMENT DATE" printed on this bill.

## LATE PAYMENTS
Should your account become past due, a late penalty charge of 1.5% per month will be assessed to your account, based on your total unpaid usage balance.

## RETURNED CHECKS
A $15 charge will be assessed to your account for any check returned unpaid by your bank.

## QUESTIONS ABOUT YOUR BILL
If you have questions about your bill, please contact your **BFIC** customer service representative at 1-800-711-1334. Representatives are available to serve you throughout the business day, coast-to-coast.

## CUSTOMER SERVICE
Your **BFIC** customer service representative is available to answer questions or resolve issues that arise out of any aspect of your service. If we may be of assistance to you in any way, please call us at 1-800-711-1334 between 8:00 a.m. and 5:00 p.m. PST.

If you would like to write us, please address all correspondence, including change-of-address information, to:

BFIC Inc.
Customer Service Department
7467 Draper Ave.
La Jolla, CA 92037

## BILL INFORMATION
The codes for the rate period column of your bill are described below:

Rate Period
D  Day
E  Evening
N  Night/Weekend

*BANK OF OKLAHOMA, N.A.,*
*BANK OF OKLAHOMA Tower*
*Tulsa, OK   74172*

*(ESCROW)*

*Faxed to DCA 7/17/96*

## OPERATIONS MORNING REPORT

Date: December 17, 1996     Time: 7:27 a.m.

| | | | | Orders Presented | 1S | &S | CC | DC | Rejects | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| AllNet | 12/17 | 12/17 | AAA | 13 | 3 | 10 | | | | 13 |
| ATL | 12/17 | 12/17 | ACCESSPT | 10 | 10 | | | | | 10 |
| LinkUSA | 12/17 | 12/17 | ACTS | 6 | 4 | 2 | | | | 6 |
| WilTel | 12/17 | 12/17 | AMERNTWK | 4 | | | 4 | | | 4 |
| Bell Atlantic | 12/17 | 12/17 | ANNOX | 2 | | 1 | | | 1 | 2 |
| United/Sprint | 12/17 | 12/17 | APOLLO | 9 | | 1 | 8 | | | 9 |
| USWest | 12/17 | 12/17 | BFIC | 48242 | 29957 | 46 | 16196 | | 38 | 46247 |
| NYNEX | 12/17 | 12/17 | BUEHNER | 8 | 8 | | | | | 8 |
| GTE | 12/17 | 12/17 | CENTURIO | 2 | 1 | | 1 | | | 2 |
| SWBT | 12/17 | 12/17 | CENTURY | 46 | 44 | | 1 | | 35 | 80 |
| Bell South | 12/17 | 12/17 | CTC | 23 | 21 | 1 | | | 1 | 23 |
| Ameritech | 12/17 | 12/17 | CWEALTH | 5 | 5 | | | | | 5 |
| PacBell | 12/17 | 12/17 | DISCOMM | 26 | 14 | 3 | 9 | | | 26 |
| | | | DIVERSIF | 5 | 5 | | | | | 5 |
| TOTAL Completed Orders: 1324 | | | EXCEL | 8164 | 8131 | | | | 33 | 8164 |
| TOTAL Rejected Orders: 812 | | | FAXJET | 1 | 1 | | | | | 1 |
| | | | FREEDOM | 2 | 1 | | 1 | | | 2 |
| | | | GE | 2 | 1 | 1 | | | | 2 |
| | | | GENEWS | 48 | 36 | 8 | | | 4 | 48 |
| | | | GLOBAL | 3 | | 2 | 1 | | | 3 |
| | | | HARRIS | 9 | | 3 | 6 | | | 9 |
| | | | HCC | 1 | 1 | | | | | 1 |
| | | | INSI | 10 | 10 | | | | | 10 |
| | | | IXCED | 5 | | 5 | | | | 5 |
| | | | LIFESAVR | 118 | 106 | 11 | | | 1 | 118 |
| | | | LOTELCO | 2 | 1 | | 1 | | | 2 |
| | | | METRACOM | 34 | 26 | 8 | | | | 34 |
| | | | NATT | 38 | 38 | | | | | 38 |
| | | | NTWKAMER | 3 | 1 | | 2 | | | 3 |
| | | | PIONEER | 61 | 29 | 17 | 15 | | | 61 |
| | | | PNG | 14 | | | 14 | | | 14 |
| Date: 12/17 Time: | | | QUADRACM | 2 | 2 | | | | | 2 |
| Comments: See attached | | | TCA | 8 | 3 | 1 | 4 | | | 8 |
| status sheet. | | | TELSEL | 4 | 1 | 3 | | | | 4 |
| | | | TELSWTCH | 3 | 3 | | | | | 3 |
| | | | TWC | 37 | 35 | 2 | | | | 38 |
| Date: 12/16 Time: 10:52 a.m. | | | UNIDEX | 40 | 21 | 18 | | | 1 | 40 |
| Comments: | | | USADV | 85 | 69 | 1 | 16 | | | 85 |
| | | | USSOUTH | 10 | 10 | | | | | 10 |
| | | | USV | 20 | 18 | 2 | | | | 20 |
| Date: 12/16 Time: 10:30 a.m. | | | UTT | 67 | 35 | 7 | 25 | | | 67 |
| Comments: | | | TOTAL | 55192 | 38862 | 153 | 16304 | 0 | 114 | 55233 |

EXCEL - Unable to determine Switch for De-Com
    Record will have IXC_TC=H in IXCSW_1S.
TWC - IXC switch unknown cannot apply Change/Disconnect.
USADV - IXC switch unknown cannot apply change/disconnect.

Date: 12/16 Time: 10:58 a.m.
Comments:

Date: 12/16 Time: 9:21 a.m.
Comments:

Date: 12/17 Time: 6:14 a.m.
Comments:

Date: 12/17 Time: 8:00 a.m.
Comments: 11/03, 11/12, 11/26
and 12/03 will run later this morning

Date: 12/17 Time: 8:55 a.m.
Comments: Running

Date: 12/15 Time: 4:04 a.m.
Comments:

Date: 12/17 Time: 8:50 a.m.
Comments:

DISCO

BFIC was disconnected and contract Terminated
12/13/97



APPROVED AS TO FORM
LEGAL DEPT.



TELECOMMUNICATIONS SERVICE AGREEMENT

This Agreement is made as of ___April 19___, 1996, between IXC Long Distance, Inc. ("Supplier"), and Building Futures In Communications, a California corporation ("Customer").

1.      Scope.  Supplier is authorized: (i) to use its best efforts (considering the needs of its other customers) to start provisioning of telecommunications services (such services, together with the use of the IXC Online Software, are referred to as the "Services") to Customer on the Service Commencement Date, April 15, 1996; and (ii) to act as Customer's agent in placing orders with other carriers in order to provide telecommunications services, if requested.  Usage charges ("Usage Charges") hereunder shall be based on: (i) the rates for Services set forth in Exhibit A-1 through A-6, as applicable; and (ii) actual usage of Supplier's network from establishment of a connection between the calling telephone and the called telephone to termination, as determined by Supplier.

2.      Customer Responsibilities.
        A.      Customer shall use its best efforts to solicit and market the Services in accordance herewith and with applicable law.  Customer shall at all times conduct its efforts in a commercially reasonable and ethical manner.  Customer shall pay all its expenses in connection with its business and its performance hereunder.  Customer shall provide its own billing and customer service to its customers ("End-Users").  Customer shall obtain a letter of agency ("LOA") from each End-User in compliance with applicable Federal Communications Commission ("FCC") and state regulations, however, Customer must obtain a signed LOA from each End-User utilizing 800 service.  Customer shall retain the signed LOA's and promptly make originals available upon request of Supplier, any local exchange carrier ("LEC") or any regulatory agency.  Customer shall be responsible for LEC Primary Interexchange Carrier change charges ("PIC Charges") that may be imposed on Supplier as a result of End-Users moving onto or off of the Supplier's network.  In the event of a disputed transfer to the Supplier's network, including, but not limited to those resulting from Customer's inability or refusal to provide original End-User LOA's when requested, Customer shall pay Supplier such PIC Charges, and any other expenses or damages suffered by Supplier relating to any such transfer.  To the extent Customer makes any statements or representations to third parties (including End-Users) with regard to Supplier, the Services, or the terms here, such statements or representations shall be true and not misleading.  When applicable, Customer will be responsible for notifying each End-User, in writing (or by any other means approved by the FCC that: (i) a transfer charge will be reflected on such End-User's LEC bill for effecting a change in their primary interexchange carrier, (ii) the entity name under which such End-User's interstate, intrastate and/or operator services will be billed (if different from Customer), and (iii) the "primary" telephone number(s) to be used for maintenance and questions

DEFENDANT'S
EXHIBIT

BFIC 0057

concerning such End-User's long distance service and/or billing. Customer agrees to send Supplier a copy of the documentation Customer uses to satisfy the above requirements promptly upon request. Supplier may change the foregoing requirements at any time in order to conform with applicable FCC and state regulations. Notwithstanding the foregoing, however, Customer shall be solely responsible for ensuring that the transfer of End-Users to the Supplier's network conforms with applicable FCC and state regulations, including, without limitation, the regulations established by the FCC with respect to verification of orders for long distance service generated by telemarketing.

     B.    Prior to the Service Commencement Date and by the end of each quarter thereafter, Customer shall provide Supplier with forecasts covering a good faith estimate of the monthly traffic volume and distribution for the ordered Services for the next three calendar months. The forecasts are to be in the format attached hereto as Exhibit B.

3.    Excluded ANIs. Supplier has the right to reject any automatic number identifier ("ANI") supplied by Customer for any of the following reasons: (i) Supplier is not authorized to provide or does not provide long distance services in the particular jurisdiction in which the ANI is located; (ii) a particular ANI submitted by Customer is not in proper form; (iii) Customer is not certified to provide long distance services in the jurisdiction in which the ANI is located; (iv) Customer is in default of this Agreement; (v) Customer fails to cooperate with Supplier in implementing reasonable verification processes determined by Supplier to be necessary or appropriate in the conduct of business; or (vi) any other circumstance reasonably determined by Supplier which could adversely affect Supplier's performance under this Agreement or Supplier's general ability to transfer its other customers or other End-Users to the Supplier's network, including without limitation, Supplier's ability to electronically effect PIC change with the LEC's. However, whether or not Supplier is not electronically connected to the LEC's, Supplier shall issue PIC orders on behalf of Customer. In the event Supplier rejects an ANI, Supplier will notify Customer within forty-eight (48) hours of its decision specifically describing the rejected ANI and the reason(s) for rejecting that ANI. Further, any ANI requested by Customer for Service may be deactivated by Supplier after five-days' written notice to Customer if no Service billings relevant thereto have been generated in any prior period of three consecutive calendar months. Supplier will be under no obligation to accept ANIs within the three-month period preceding the scheduled expiration of the term hereof.



4.   Records. Customer will maintain documents and records ("Records") supporting Customer's re-sale of Service, including, but not limited to, appropriate and valid LOAs from End-Users for a period of not less than twelve (12) months or such other longer period as may be required by applicable law, rule or regulation. Customer shall indemnify Supplier for any costs, charges or expenses incurred by Supplier arising from disputed PIC selections involving Service to be provided to Customer for which Customer cannot produce an appropriate LOA relevant to the ANI and PIC Charge in question, or when Supplier is not reasonably satisfied that the validity of a disputed LOA has been resolved.

BFIC 005799

5.   Fraudulent Calls.  Customer shall indemnify and hold Supplier harmless from all costs, expenses, claims or actions arising from fraudulent calls of any nature which may comprise a portion of the Service to the extent that the party claiming the call(s) in question to be fraudulent is (or had been at the time of the call) an End-User of the Service through Customer or an End-User of the Service through Customer's distribution channels.  Customer shall not be excused from paying Supplier for Service provided to Customer or any portion thereof on the basis that fraudulent calls comprised a corresponding portion of the Service.  In the event Supplier discovers fraudulent calls being made (or reasonably believes fraudulent calls are being made), nothing contained herein shall prohibit Supplier from taking immediate action (without notice to Customer) that is reasonably necessary to prevent such fraudulent calls from taking place, including without limitation, denying Service to particular ANI's or terminating Service to or from specific locations.

6.   Authorized Use of Supplier Name.  Without Supplier's prior written consent, Customer shall not: (i) refer to itself as an authorized representative of Supplier in promotional, advertising or other materials; or (ii) use Supplier's logos, trade marks, service marks, or any variations thereof in any of its promotional, advertising or other materials or in any activity using or displaying Supplier's name or the Services to be provided by Supplier.  Customer agrees to change or correct, at Customer's expense, any such material or activity which Supplier, in its sole judgment, determines to be inaccurate, misleading or otherwise objectionable.  Customer is explicitly authorized to only use the following statements in its sales literature: (i) "Customer utilizes the Supplier's network"; (ii) "Customer utilizes Supplier's facilities; (iii) "Supplier provides only the network facilities"; and (iv) "Supplier is our network services provider".

7.   Term.  This Agreement is effective as of the date hereof and shall remain in force and effect until October 31, 1999, unless earlier terminated pursuant to its terms.  This Agreement shall be automatically extended at the expiration of the initial and any subsequent term for an additional term of one year unless: (i) earlier terminated; or (ii) written notice is given by any party at least ninety (90) days before such expiration that such party does not consent to such extension.



8.   Charges, Payment and Security Interest.
     A.   All Usage Charges shall be due and payable by Customer to Supplier within 30 days of the date of invoice, without demand or set off by Customer; provided, however, that to the extent Customer disputes a portion of an invoice because it has received what it considers in good faith to be materially incorrect CDR's (as such term is defined in Section 9), the due date for such disputed portion shall be delayed for up to thirty (30) days, but only so long as Customer cooperates in good faith to resolve such dispute.  Usage Charges are billed and payable following the period in which actual usage has been incurred.  All Usage Charges contained in this Agreement are calculated according to the rates set forth in Exhibit A attached hereto.  If any invoice is not paid when due: (i) a late charge shall accrue equal to 1-1/2% (or the maximum legal rate, if less) of the unpaid balance per month; (ii) Supplier may suspend or terminate the Service; or (iii) Supplier may require additional deposits or a lock-box arrangement acceptable to Supplier.

BFIC 005800

B.    Customer shall use its best efforts to purchase Services hereunder in at least the following amount (the "Commitment") $250,000.00 per month commencing August 1, 1996 and ending October 31, 1996. Customer shall have a "take or pay" commitment of $500,000.00 per month, commencing November 1, 1996 and ending October 31, 1999; that is, Customer has the obligation to pay for Service hereunder (at the same time as payment is or would be due for Service for such month) in such amount for each month during such periods, whether or not such Service is used.

C.    Prior to service activation, but in no event later than thirty (30) days after the end of each fiscal quarter, Customer shall provide Supplier with a consolidated balance sheet of Customer as of the end of such quarter and consolidated statements of income and retained earnings for such quarter and the fiscal year to date through such quarter, all in reasonable detail and certified by Customer's chief financial officer as having been prepared in accordance with generally accepted accounting principles, consistently applied.

D.    Concurrently herewith, Customer has deposited with Supplier the sum of $50,000 (the "Security Deposit"), which amount is equal to the estimated Usage Charges and other amounts due and payable by Customer to Supplier hereunder during any given two-month period, as security for the full and faithful performance of Customer of the terms, conditions and covenants of this Agreement. If at any time during the term of the Agreement, Customer defaults in the payment of any Usage Charges, or any other amounts payable by Customer to Supplier hereunder, then Supplier may appropriate and apply any portion of the Security Deposit reasonably necessary to remedy any such default. If during the term of the Agreement, Supplier so applies all or any portion of the Security Deposit, then Customer shall restore the amount of the Security Deposit so applied by Supplier on or before the next due payment of Usage Charges under this Agreement. If, however, invoices for Services during any month provided by Supplier exceed one half of the Security Deposit, at the request of Supplier, Customer shall within five (5) days (i) provide an additional cash deposit; or (ii) other form of security satisfactory to Supplier which in either case, shall be in an amount equal to the amount by which the invoice for such month exceeds one-half of the amount of the Security Deposit held by Supplier. In addition, if at any time during the term of this Agreement there is a material and adverse change in Customer's financial condition or business prospects, which shall be determined by Supplier in its sole and absolute discretion, then Supplier may demand that Customer increase the amount of the Security Deposit: provided, however, that in no event shall the amount of the Security Deposit ever exceed two months' estimated Usage Charges and other amounts payable by Customer to Supplier hereunder.

E.    Additionally, Customer shall direct all of Customer's End-Users to deposit any money owed by such End-User to Customer directly into a lockbox account at Texas Commerce Bank (the "Bank") owned by the Supplier, and authorize the Supplier to make automatic clearing house fund transfers from such lockbox account to the account of Supplier and Customer according to the terms and conditions of a lockbox agreement in form and substance reasonably satisfactory to Supplier. The Bank shall provide both Customer and Supplier with all records and statements with respect to the lockbox account each month. Supplier shall be entitled to receive from the lockbox account eighty percent (80%) of the amount in the lockbox paid twice weekly

BFIC011144

B.    Customer shall use its best efforts to purchase Services hereunder in at least the following amount (the "Commitment") $250,000.00 per month commencing August 1, 1996 and ending October 31, 1996. Customer shall have a "take or pay" commitment of $500,000.00 per month, commencing November 1, 1996 and ending October 31, 1999; that is, Customer has the obligation to pay for Service hereunder (at the same time as payment is or would be due for Service for such month) in such amount for each month during such periods, whether or not such Service is used.

C.    Prior to service activation, but in no event later than thirty (30) days after the end of each fiscal quarter, Customer shall provide Supplier with a consolidated balance sheet of Customer as of the end of such quarter and consolidated statements of income and retained earnings for such quarter and the fiscal year to date through such quarter, all in reasonable detail and certified by Customer's chief financial officer as having been prepared in accordance with generally accepted accounting principles, consistently applied.

D.    Concurrently herewith, Customer has deposited with Supplier the sum of $50,000 (the "Security Deposit"), which amount is equal to the estimated Usage Charges and other amounts due and payable by Customer to Supplier hereunder during any given two-month period. as security for the full and faithful performance of Customer of the terms, conditions and covenants of this Agreement. If at any time during the term of the Agreement, Customer defaults in the payment of any Usage Charges, or any other amounts payable by Customer to Supplier hereunder, then Supplier may appropriate and apply any portion of the Security Deposit reasonably necessary to remedy any such default. If during the term of the Agreement, Supplier so applies all or any portion of the Security Deposit, then Customer shall restore the amount of the Security Deposit so applied by Supplier on or before the next due payment of Usage Charges under this Agreement. If, however, invoices for Services during any month provided by Supplier exceed one half of the Security Deposit, at the request of Supplier, Customer shall within five (5) days (i) provide an additional cash deposit; or (ii) other form of security satisfactory to Supplier which in either case, shall be in an amount equal to the amount by which the invoice for such month exceeds one-half of the amount of the Security Deposit held by Supplier. In addition, if at any time during the term of this Agreement there is a material and adverse change in Customer's financial condition or business prospects, which shall be determined by Supplier in its sole and absolute discretion, then Supplier may demand that Customer increase the amount of the Security Deposit: provided, however, that in no event shall the amount of the Security Deposit ever exceed two months' estimated Usage Charges and other amounts payable by Customer to Supplier hereunder.

E.    Additionally, Customer shall direct all of Customer's End-Users to deposit any money owed by such End-User to Customer directly into a lockbox account at Texas Commerce Bank (the "Bank") owned by the Supplier, and authorize the Supplier to make automatic clearing house fund transfers from such lockbox account to the account of Supplier and Customer according to the terms and conditions of a lockbox agreement in form and substance reasonably satisfactory to Supplier. The Bank shall provide both Customer and Supplier with all records and statements with respect to the lockbox account each month. Supplier shall be entitled to receive from the lockbox account eighty percent (80%) of the amount in the lockbox paid twice weekly

BFIC011144

Exhibit
96

B.    Customer shall use its best efforts to purchase Services hereunder in at least the following amount (the "Commitment") $250,000.00 per month commencing August 1, 1996 and ending October 31, 1996. Customer shall have a "take or pay" commitment of $500,000.00 per month, commencing November 1, 1996 and ending October 31, 1999; that is, Customer has the obligation to pay for Service hereunder (at the same time as payment is or would be due for Service for such month) in such amount for each month during such periods, whether or not such Service is used.

C.    Prior to service activation, but in no event later than thirty (30) days after the end of each fiscal quarter, Customer shall provide Supplier with a consolidated balance sheet of Customer as of the end of such quarter and consolidated statements of income and retained earnings for such quarter and the fiscal year to date through such quarter, all in reasonable detail and certified by Customer's chief financial officer as having been prepared in accordance with generally accepted accounting principles, consistently applied.

WASVED

D.    ~~Concurrently herewith, Customer has deposited with Supplier the sum of $50,000~~ (the "Security Deposit"), which amount is equal to the estimated Usage Charges and other amounts due and payable by Customer to Supplier hereunder during any given two-month period, as security for the full and faithful performance of Customer of the terms, conditions and covenants of this Agreement. If at any time during the term of the Agreement, Customer defaults in the payment of any Usage Charges, or any other amounts payable by Customer to Supplier hereunder, then Supplier may appropriate and apply any portion of the Security Deposit reasonably necessary to remedy any such default. If during the term of the Agreement, Supplier so applies all or any portion of the Security Deposit, then Customer shall restore the amount of the Security Deposit so applied by Supplier on or before the next due payment of Usage Charges under this Agreement. If, however, invoices for Services during any month provided by Supplier exceed one half of the Security Deposit, at the request of Supplier, Customer shall within five (5) days (i) provide an additional cash deposit; or (ii) other form of security satisfactory to Supplier which in either case, shall be in an amount equal to the amount by which the invoice for such month exceeds one-half of the amount of the Security Deposit held by Supplier. In addition, if at any time during the term of this Agreement there is a material and adverse change in Customer's financial condition or business prospects, which shall be determined by Supplier in its sole and absolute discretion, then Supplier may demand that Customer increase the amount of the Security Deposit: provided, however, that in no event shall the amount of the Security Deposit ever exceed two months' estimated Usage Charges and other amounts payable by Customer to Supplier hereunder.

E.    Additionally, Customer shall direct all of Customer's End-Users to deposit any money owed by such End-User to Customer directly into a lockbox account at Texas Commerce Bank (the "Bank") owned by the Supplier, and authorize the Supplier to make automatic clearing house fund transfers from such lockbox account to the account of Supplier and Customer according to the terms and conditions of a lockbox agreement in form and substance reasonably satisfactory to Supplier. The Bank shall provide both Customer and Supplier with all records and statements with respect to the lockbox account each month. Supplier shall be entitled to receive from the lockbox account eighty percent (80%) of the amount in the lockbox paid twice weekly

IXCLD 004264

# TEXAS COMMERCE BANK
### NATIONAL ASSOCIATION

## THIRD PARTY LOCKBOX PROCESSING AGREEMENT

**WHEREAS** Building Futures in Communications _____ ("Third Party") is a (X) corporation duly authorized under the laws of the State of ___ CA ____ , ( ) an association; ( ) a joint venture; ( ) a partnership ( ) a sole proprietorship ( ) other _____ (description); with principal offices in ___ La Jolla _____ (City); _____ (County); ___ CA ____ (State); 92037 ____ (Zip Code).

**WHEREAS** Third Party has entered into a financing arrangement(s) or disbursement agreement(s) with IXC Long Distance, Inc. _____ ("Lockbox Customer");

**WHEREAS** Third Party desires that Texas Commerce Bank National Association, a national banking association with offices in Austin, Travis County, Texas ("Bank") accommodate Third Party's request to assist Third Party by crediting certain account(s) of Lockbox Customer with checks or other evidences of payments made payable to Third Party either singularly or jointly with Lockbox Customer or for credit to Third Party singularly or jointly with Lockbox Customer;

**AND, WHEREAS** Bank is agreeable provided that Third Party agrees to indemnify it for taking steps to accommodate such desire;

**THEREFORE,** for good and valuable consideration the receipt and sufficiency of which is hereby expressly acknowledged, the undersigned parties hereby agree as follows:

(1)  For the purpose of expediting payment by Third Party to Lockbox Customer, Third Party shall request and instruct its customers and/or debtors to forward and remit checks payable to Third Party either singularly or jointly with Lockbox Customer to _____ ("P.O. Box Number(s)).

(2)  It is Third Party's understanding that Bank provides Lockbox Customer with a lockbox processing service identified with Box and that Bank performs for Lockbox Customer those services described in the attached Lockbox Processing Agreement and Instructions for Lockbox Processing which Third Party understands may change from time to time by mutual agreement between Bank and Lockbox Customer and hereby agrees that any such changes shall neither impair nor affect Third Party's obligations hereunder.

(3)  Third Party hereby gives Bank by and through its employees or agents full power and authority to endorse on behalf of Third Party any checks or other evidences of payment made payable to Third Party singularly or jointly with Lockbox Customer, no matter how Third Party is identified as the payee, which are sent to P.O. Box(es) _____ with the following endorsement:

> "FOR DEPOSIT ONLY
> CREDIT ACCOUNT OF
> WITHIN NAMED PAYEE
> PAY ANY BANK, P.E.G.
> ALL RIGHTS RESERVED
> WITHOUT PREJUDICE
> TEXAS COMMERCE SERVICES"

and thereafter to deposit such checks or other evidences of payment to the account or accounts which may be established in connection with the lockbox processing provided by Bank to Lockbox Customer pursuant to the Agreement and/or Instructions for Lockbox Processing by and between Bank and Lockbox Customer or to make any other endorsement of any kind, including a lack of endorsement, to effect a deposit to be made to the account or accounts which may be established in connection with the Lockbox Processing Agreement and Instructions for Lockbox Processing provided by Bank to Lockbox Customer. Third Party expressly authorizes Bank to endorse any checks described above with the endorsement "To the Credit of the Within Named Payee" or similar endorsement with the Payee expressly intended by Third Party to be Lockbox Customer. Third Party acknowledges that once the funds are deposited to the referenced account(s), Lockbox Customer may have exclusive control of the disposition of such funds.

(4)  Checks or other evidences of payment made payable to Third Party singularly or jointly with Lockbox Customer or other credits for Third Party and/or a Lockbox Customer and sent to Box, will be credited to the account or accounts of Lockbox Customer with Bank and handled pursuant to the previously described Lockbox Processing Agreement and Instructions for Lockbox Processing and/or other agreements between Bank and Lockbox Customer.

(5)  It is agreed that Bank shall not be liable for any loss in the event any checks or other evidences of payment or credits are inadvertently processed or endorsed contrary to this Agreement or contrary to the previously described Lockbox Processing Agreement and Instructions for Lockbox Processing. In the event Bank fails to endorse a check or other evidence of payment payable to the order of Third Party or Third Party and Lockbox Customer and sent to Box, Third Party shall ratify immediately any subsequent endorsement by Bank after Bank learns of the error or omission. In addition, Third Party expressly authorizes Bank to deposit any checks or other evidences of payment payable to Third Party without Third Party's endorsement to the account(s) referenced in the Instructions for Lockbox Processing given by Lockbox Customer to Bank.

(6)  This Agreement shall be in full force and effect and shall not terminate until notice in writing is received by Bank. Thereafter, Bank shall have a reasonable time to inform its employees that Third Party no longer authorizes Bank to endorse checks made payable to Third Party singularly or jointly with Lockbox Customer and sent to Box or to make deposits of such checks to the account(s) described herein; however, Bank shall





continue to have authority to endorse any check or other evidences of payment dated, presented, paid, received, or accepted on or before the date upon which Bank receives notice of termination and to deposit such checks or other evidences of payments and any credits for Third Party either singularly or jointly to the account(s) referenced hereto, and Third Party shall ratify and affirm any acts taken under said authority. Bank may terminate this Agreement at any time or in any manner Bank deems appropriate.

(7) Bank shall have no duty to inquire into the nature of the reimbursements of any of the funds represented by the items sent to the Lockbox herein referenced as Box, Austin, Texas.

(8) Third Party agrees to hold Bank harmless and indemnify Bank for any and all losses, suits, judgments, claims, liabilities, costs, and expenses, including attorneys' fees incurred by Bank arising out of or in connection with this Agreement.

(9) This Agreement shall be governed and construed in accordance with the laws of the state of Texas. Venue for any and all purposes shall be in Travis County, Texas

(10) ~~If this Agreement is with Texas Commerce Bank Dallas then Third Party hereby expressly and irrevocably consents to the jurisdiction and venue~~

(11) The undersigned officer of Third Party represents that he/she has the requisite and necessary authority to execute this Agreement on behalf of Third Party and that all necessary action has been taken with respect to authorizing this Agreement and that this Agreement upon execution shall be a binding obligation of Third Party.

THIS AGREEMENT entered into and executed this **7TH** day of **MAY**, 19**96**

> Third Party: Building Futures in Communications
> By: MOHAMMED H. USMAN
> Title: SECRETARY / C.F.O.
> Signature: *(signature)*
> Address: 7467 Draper Ave.
> La Jolla, CA  92037

Third Party Seal

> ACKNOWLEDGED this _____ day of _____, 19____.
> Lockbox Customer: IXC Long Distance, Inc.
> By: _____
> Title: _____
> Signature: _____
> Address: 98 San Jacinto Plaza, Ste. 700
> Austin, Texas  78701

ACCEPTED this _____ day of _____, 19____.

TEXAS COMMERCE BANK

By: _____
Title: _____
Signature: _____

DAL3RD/8/89

# TEXAS COMMERCE BANKS

## RESOLUTIONS AUTHORIZING THIRD PARTY LOCKBOX PROCESSING AGREEMENT

IT IS HEREBY CERTIFIED, that the Board of Directors of Building Futures in Communications ("Third Party"), a corporation duly organized under the laws of the state of ___CA___ at a meeting held on the 7TH day of __MAY__, 1996, which was duly and regularly called, noticed and held, in which there was present a quorum thereof, the following resolutions were unanimously adopted, to wit:

RESOLVED, that Third Party has entered into a financing arrangement and/or disbursement agreement with __IXC Long Distance, Inc.__ ("Lockbox Customer"), a ( X ) corporation organized under the law of the state of __Delaware__; ( ) an association; ( ) a joint venture; ( ) a partnership; ( ) a sole proprietorship (X) other __CORPORATION__ (Description) with principal offices in __Austin__ (City), __Travis__ (County), __Texas__ (State), __78701__ (Zip); pursuant to which Third Party has requested its customers and/or other debtors to forward checks or other evidences of payment payable to Third Party or to Third Party and Lockbox Customer to a lockbox belonging to Lockbox Customer beginning _____, 19___ for credit to Lockbox Customer's accounts with Texas Commerce Bank-_____ ("Bank").

RESOLVED, that the following persons:

| NAME | TITLE |
|------|-------|
| Ralph Swett | President and CEO |
| John Willingham | Senior Vice President and CFO |
| Lynn McNeill | Vice President and Controller |

are authorized for and on behalf of this Third Party to execute an agreement or agreements acceptable to Bank in order to effect a credit of any checks or other evidences payable to Third Party singularly or jointly or other credits for Third Party singularly or jointly to an account(s) of Lockbox Customer at Bank which then may be disbursed out of the referenced accounts pursuant to the instructions of Lockbox Customer.

FURTHER RESOLVED, that the attached sample Third Party Lockbox Processing Agreement is hereby expressly approved and authorized to be executed by any of the above named officers for and in the name of Third Party and as its corporate act and deed, or any other agreement deemed to be acceptable by any one of the above named persons. Execution by any one of the above named persons of such other agreement shall be conclusive evidence that such person deemed such other agreement to be acceptable.

IT IS FURTHER RESOLVED, that the secretary or recording officer be and hereby is authorized and directed to certify to said Bank the foregoing resolutions and that the provisions thereof are in conformity with the charter, bylaws, or articles of association of Third Party and the foregoing resolutions and the authority thereby conferred shall remain in full force and effect until Third Party notifies said Bank to the contrary in writing and said Bank may conclusively presume that such resolutions are in effect and that the persons identified from time to time as officers of Third Party by certificates of the secretary or recording officer have been duly elected or appointed and continue to hold such offices.

IT IS FURTHER CERTIFIED, that the foregoing resolutions have never been modified or amended and are now in full force and effect and that the above named officers of Third Party have been duly elected or appointed to hold office and are presently holding offices and are empowered to act for and on behalf of Third Party in any business with said Bank within the authority described in the foregoing resolutions.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of this corporation this __SEVENTH__ day of __MAY__, 1996

_____
Secretary of Third Party.

**Third Party Seal**



# TEXAS COMMERCE BANKS

## AMENDMENT TO LOCKBOX PROCESSING AGREEMENT

This agreement relates to and amends that certain Lockbox Processing Agreement and the affiliated Instructions (collectively, the "Lockbox Processing Agreement") dated as of _____, between ___IXC Long Distance, Inc._____ (Lockbox Customer") and Texas Commerce Bank National Association ("Bank").

Notwithstanding any provision to the contrary contained in the referenced Lockbox Processing Agreement, Lockbox Customer hereby instructs Bank that all Items bearing any restrictive notations or endorsements, are to be processed and deposited under the Lockbox Processing Agreement, notwithstanding the presence, content or terms of any such restrictive notations or endorsements. Bank acknowledges the foregoing instructions of Lockbox Customer and agrees to comply with same.

Except as modified by this agreement, the terms and conditions of the Lockbox Processing Agreement shall remain in full force and effect.

Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Lockbox Processing Agreement.

This agreement is entered into and effective as of this _____ day of _____, 19___, at Austin, Travis County, Texas.

Customer
Name:        ___IXC Long Distance, Inc._____

By:          _____

Signature:   _____

Title:       _____


Texas Commerce Bank

By:          _____

Signature:   _____

Title:       _____

Exhibit 9A

# San Diego County Sheriff's Department

Post Office Box 429000 • San Diego, California 92142-9000

William B. Kolender, Sheriff

John M. Drown, Undersheriff

September 7, 1999

RE: Richard Lee Higgins
BKG 89-176018A
459 PC; 528.3 PC 9-17-89

TO WHOM IT MAY CONCERN:

The San Diego County Sheriff's Department has automated its Criminal History files and has established a purge criteria similar to that of the State of California. For this reason, your inquiry to this department for a records check has produced a " NO RECORD FOUND " response even though you were able to supply us with our own file number.

We are, therefore, unable to answer your request for information on this case.

Sincerely,

WILLIAM B. KOLENDER, Sheriff

RUBY J. NEAGLES
Records Manager

WBK:RJN/

► **Current Charges**
Texas 911 Equalization Surcharge ....................................... .01
Texas Poison Control Surcharge ....................................... .01
Itemized Calls (See Items 1 thru 85) ....................................... 89.32

► **U.S. Billing Inc. Current Charges (before taxes)** ........................... 89.34
Federal Tax ....................................... 2.68
State and Local Taxes ....................................... 5.63

| Item | Date | Time | Place Called | | Area | Number | Rate* | Min | Amount |
|------|------|------|--------------|---|------|--------|-------|-----|--------|
| | | | **Calls from 512-339-0823** | | | | | | |
| | | | ► **Billed on Behalf of: Qwest Comms Inc** | | | | | | |
| 1 | 04/24 | 07.59PM | HOUSTON | TX | 713 | 973-2054 | E | 6.9 | .93 |
| 2 | 04/24 | 09.03PM | CHICAGO | IL | 773 | 279-1479 | E | 1.0 | .20 |
| 3 | 04/24 | 09.52PM | CHICAGO | IL | 773 | 279-1479 | E | 1.0 | .20 |
| 4 | 04/24 | 11.40PM | CHICAGO | IL | 773 | 279-1479 | N | 1.0 | .20 |
| 5 | 04/25 | 11.32AM | CHICAGO | IL | 773 | 279-1479 | D | 14.5 | 1.94 |
| 6 | 04/25 | 05.30PM | DE KALB | IL | 815 | 756-9544 | E | 1.0 | .20 |
| 7 | 04/25 | 05.31PM | CHICAGO | IL | 773 | 279-1479 | E | 1.0 | .20 |
| 8 | 04/25 | 05.31PM | CHICAGO | IL | 773 | 743-6971 | E | 5.9 | .81 |
| 9 | 04/25 | 06.26PM | CHICAGO | IL | 773 | 279-1479 | E | 4.8 | .58 |
| 10 | 04/26 | 12.53AM | CHICAGO | IL | 773 | 279-1479 | N | 1.0 | .20 |
| 11 | 04/26 | 01.50PM | CHICAGO | IL | 773 | 279-1479 | N | 14.8 | 1.53 |
| 12 | 04/27 | 11.50AM | CHICAGO | IL | 773 | 262-2328 | N | 1.0 | .20 |
| 13 | 04/27 | 12.16PM | CHICAGO | IL | 773 | 279-1479 | N | 1.0 | .20 |
| 14 | 04/27 | 02.40PM | CHICAGO | IL | 773 | 279-1479 | N | 1.4 | .24 |
| 15 | 04/27 | 04.57PM | CHICAGO | IL | 773 | 279-1479 | N | 1.0 | .20 |
| 16 | 04/27 | 05.02PM | CHICAGO | IL | 773 | 743-5971 | E | 2.8 | .38 |
| 17 | 04/27 | 05.06PM | CHICAGO | IL | 773 | 279-1479 | E | 1.0 | .20 |
| 18 | 04/28 | 07.30PM | CHICAGO | IL | 773 | 743-1595 | E | 14.4 | .54 |
| 19 | 04/28 | 09.55PM | CHICAGO | IL | 773 | 743-5971 | E | 2.6 | .36 |
| 20 | 04/29 | 05.27PM | KANSAS CITY | MO | 816 | 960-1633 | D | 9.9 | 1.29 |
| 21 | 04/29 | 04.56PM | KANSAS CITY | MO | 816 | 960-1633 | D | 6.0 | .82 |
| 22 | 04/29 | 08.46PM | CHICAGO | IL | 773 | 743-1595 | E | 1.0 | .20 |
| 23 | 04/29 | 09.22PM | KANSAS CITY | MO | 816 | 960-1633 | E | 1.0 | .20 |
| 24 | 04/29 | 10.40PM | KANSAS CITY | MO | 816 | 960-1633 | E | 2.6 | .35 |
| 25 | 04/30 | 4.02PM | SAN JOSE W | CA | 408 | 235-4360 | D | 1.0 | .22 |
| 26 | 04/30 | 5.18PM | SAN JOSE W | CA | 408 | 235-4360 | E | 1.0 | .20 |
| 27 | 04/30 | | SAN JOSE W | CA | 408 | 235-4360 | E | 1.0 | .20 |
| | | | SAN JOSE W | CA | 408 | 235-4360 | E | 1.7 | .27 |
| | | | GREENRIVER | UT | 801 | 564-3436 | E | 1.0 | .20 |
| | | | GREENRIVER | UT | 801 | 564-3436 | E | 12.5 | 1.50 |
| | | | GREENRIVER | UT | 801 | 564-3436 | E | 1.0 | .20 |
| | | 11.55PM | | TX | 241 | 501-5500 | D | 1.2 | .30 |
| 33 | 05/01 | 08.15 | ANAHEIM | CA | 714 | 778-3065 | E | 14.3 | 1.53 |
| 34 | 05/01 | | KANSAS CITY | MO | 816 | 960-1633 | E | 1.0 | .20 |
| | 05/01 | | CHICAGO | IL | 773 | 743-1595 | E | 5.7 | .42 |
| 36 | 05/03 | AM | ANAHEIM | CA | 714 | 778-3065 | N | 1.0 | .20 |
| 37 | 05/03 | 12.25PM | ANAHEIM | CA | 714 | 778-3065 | N | 12.7 | 1.37 |
| 38 | 05/03 | 05.37PM | ANAHEIM | CA | 714 | 778-3065 | N | 4.0 | .50 |
| 39 | 05/04 | 2.47PM | DE KALB | IL | 815 | 756-9544 | N | 22.8 | 2.32 |
| 40 | 05/04 | 07.33PM | ANAHEIM | CA | 714 | 778-3065 | E | 12.8 | 1.38 |
| 41 | 05/04 | 09.03PM | LA JOLLA | CA | 619 | 558-1818 | E | 13.5 | 1.33 |

CRED. T $10.71
ACCT

CREDIT
SENT
7-14-97
$10.71



American Arbitration Association
*Dispute Resolution Services Worldwide*

Molly Bargenquest
Director of Administration
*Dallas Service Center*

October 23, 1998

1750 Two Galleria Tower, 13455 Noel Road, Dallas, TX 75240-6636
telephone: 972 702 8222, facsimile: 972 490 9008
http://www.adr.org

**VIA TELECOPY**

Thomas W. George, Esq.
Thomas George & Associates
1122 Colorado
2310 Westgate Building
Austin, TX 78701

Dr. A. Mahdi
Building Futures In Communication, Inc.
707 Broadway, 5th Floor
San Diego, CA 92101

Re: 71 181 00048 97
    IXC Long Distance, Inc.
    vs.
    Building Futures In Communication, Inc.
    - Austin, Texas

Gentlemen:

Please be advised the panel has issued the following unanimous ruling:

The hearings have been previously reopened to consider additional evidence submitted by Respondent and Counter-claimant Building Futures in Communication, Inc. ("BFIC") the panel has admitted and considered the following exhibits:

1, 2, 3, 4, 5, 6, 7, 8, 8a, 8b, 9, 9a, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 62, 63, 64, 70, 71, 72, 73, 74, 75, 76, 77, 77a, 77b, 77c, 81, JJJJJJJ, BBB as well as unnumbered materials submitted to the panel by BFIC, via the Association.

The hearings are declared closed by the arbitrators as of this date. Therefore, the arbitrators shall have thirty days, or until November 23, 1998, to render their Award.

Sincerely,

Tracey L Hegeman
Supervisor of Commercial Case Management
(888) 774-6905

**TLH**



*"Building Futures in Communication"*


Ms. Molly Bargenquest
Case Manager
American Arbitration Association
13255 Noel Road
Dallas, Texas 75240-6636


Dear Molly:


 For Clarification based on Panel Chairman Attorney Duke letter dated 11/5/98 stating all exhibits was submitted prior to 10/22/98 and received by the Panel which included:

These 56 exhibit numbers and exhibits were not included in Mrs. Hegeman exhibit list submitted to the Panel according to her letter dated 10/23/98.

1a, 5a, 5b, 5c, 8c, 12a, 12b, 12c.12d.12e, 12f, 12g, 12h, 12I, 12j, 12k, 12l, 12m, 12n, 12o, 12p, 17a, 17b, 17c, 23a, 24a, 26a, 26b, 26c, 26d, 26e, 26f, 26h, 27a, 27b, 27c, 52,54,55,55a, 56,57,58,59,60,61,65,66,67, 68a, 68b, 68c, 68d, 68e, 68g, 69.

The following exhibit numbers on Mrs. Hegeman exhibit list B even though they are the same exhibit numbers in BFIC exhibit list A they are not the same exhibits...
Please find below the exhibit numbers with matching exhibits:

Exhibit –4 the notice of subpoena of Adib Mahdi  2/3/98
Exhibit –6 fax dated 9/18/96 remittance bill lockbox payment Tulsa address.
Exhibit –22  IXC's intercepted fax to BFIC exboard members dated 9/25/98
Exhibit-23 nation program
Exhibit-26 lec return codes and RSO files in Milestone database
Exhibit-27 orders_1s database xx59
Exhibit –28 lec return status code Definitions
Exhibit –34  BFIC Muslim database
Exhibit-38 IXC discovery document 238,000 call records in Dec.
Exhibit-39 fax dated 10/15/96 IXC during billing on behalf BFIC
Exhibit –40 letter from BFIC to Doug Odem
Exhibit –42 resignation of exboard members
Exhibit- 44 Thompson Coburn explaining contradiction

Exhibit-46 PricewaterhouseCoopers data analysis
Exhibit-47 Bfic receiving own CIC
Exhbit-53 Bfic/DCA/Wiltel/USBI agreement
Exhibit-60 **Bfic/IXC phones bills from Dec. 1 thru 31 proving customers were not disconnected.**

In addition to the Exhibits in the notebook binder there was the Addendum to Clarification of Damages (16pages) to addendum Outside Consultant Report (3 pages) and Bio (48 pages) that the Panel requested during the Hearing.

Sincerely

Dr. A. Mahdi

In re: Arbitration of
IXC Long Distance, Inc.
vs.
Building Futures in Communication, Inc.
Award No. ...
Page 2 of 3

Postponement fees shall be borne by the party requesting same.

The compensation and expenses of the arbitrator totaling $32,380.17 shall be borne by BFiC. Therefore, BFiC shall pay to IXC the sum of $17,580.17 representing that portion of IXC's share of compensation and expenses of the arbitrators previously advanced to the Association.

The above sums are to be paid on or before 30 days from the final date of this Award.

BFiC shall pay to IXC post judgment interest on the above sums at the rate of 10% simple interest per annum commencing 30 days from the final date of this Award until paid in full.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

SIGNED _____          DATED: _____
        Russell Bailey, Arbitrator

SIGNED _____          DATED: 11-14-99
        Mark Alan Culbert, Arbitrator

SIGNED _____          DATED: _____
        Russell's Head Arbitrator

**American Arbitration Association**

*Dispute Resolution Services Worldwide*

13455 Noel Road, Suite 1750
Dallas, TX 75240

| STMT DATE | AMOUNT |
|---|---|
| 6/24/97 | 16,750.0 |
| CASE | |
| 71- 181-00048-97 02 CCC | |

Payment Due Upon Rec

## INVOICE / STATEMENT

Douglas A Oden
Oden, Greene, Murray & Thompson, LLP
Civic Center Plaza
1200 Third Avenue, Suite 1630
San Diego CA 92101

Representing A. Muhammad Mahdi, Building

Re: IXC Long Distance, Inc.

Please Detach and Return with Payment to the Above Address

Please Indicate Case No. on Check

----------------------------------------------------------------

IE   Douglas A Oden
Oden, Greene, Murray & Thompson, LLP
Civic Center Plaza
1200 Third Avenue, Suite 1630
San Diego CA 92101

Representing A. Muhammad Mahdi, Building

Re: IXC Long Distance, Inc.

| STMT. DATE | CASE # | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE |
|---|---|---|---|---|---|
| 6/24/97 | 71- 181-00048-97 02 CCC | .00 | .00 | 16,750.00 | 16,750.00 |

| DATE | REF # | DESCRIPTION | AMOUNT | CREDITS | BALANC |
|---|---|---|---|---|---|
| 6/19/97 | 7112234 | Administrative Fee for Hearing | 1,250.00 | | |
| 6/19/97 | 7112234 | Arbitrator's Compensation | 14,100.00 | | 15,350.00 |
| 6/19/97 | 7112235 | Rental Fee for AAA Hearing Room | 500.00 | | |
| 6/19/97 | 7112235 | Expenses to be Reimbursed to Arbitrator | 700.00 | | 1,200.00 |
| 6/19/97 | 7112236 | Miscellaneous Expenses | 200.00 | | 200.00 |

Remarks:   For any inquiry please call:  972-702-8222
This Statement only reflects payments posted up to 06/24/97.

| TOTAL BALANCE DUE | 16,750.00 |
|---|---|

Please Indicate Case No. on

| INVOICE SUMMARY: | | NET BILLED | NET PAID | NET DUE |
|---|---|---|---|---|
| | INITIAL/COUNTER-CLAIM FEES | | | |
| | HEARING/POSTPONEMENT/ROOM/PROCESSING FEES | 1,750.00 | | 1,750.00 |
| | REALLOCATION AT CASE END FEES | | | |
| | NEUTRAL COMPENSATION/EXPENSES | 15,000.00 | | 15,000.00 |

EIN: 13-042974

# American Arbitration Association
*spute Resolution Services Worldwide*

13455 Noel Road, Suite 1750
Dallas, TX 75240

## INVOICE / STATEMENT

| STMT DATE | AMOUNT DUE |
|---|---|
| 6/04/98 | 9,650.00 |

**CASE**
71- 181-00048-97 02 TLH

**Payment Due Upon Receipt**

Dean L Franklin
Thompson Coburn
One Mercantile Center, Suite 3400
St. Louis MO 63101

Representing Building Futures In Communication, Inc.
Re: IXC Long Distance, Inc.

Please Detach and Return with Payment to the Above Address          Please Indicate Case No. on Check

---



# American Arbitration Association
*spute Resolution Services Worldwide*

13455 Noel Road, Suite 1750
Dallas, TX 75240

Dean L Franklin
Thompson Coburn
One Mercantile Center, Suite 3400
St. Louis MO 63101

Representing Building Futures In Communication, Inc.
Re: IXC Long Distance, Inc.

| DATE | CASE # | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE DUE |
|---|---|---|---|---|---|
| 6/04/98 | 71- 181-00048-97 02 TLH | 9,650.00 | .00 | .00 | 9,650.00 |

| DATE | REF. # | DESCRIPTION | AMOUNT | CREDITS | BALANCE |
|---|---|---|---|---|---|
| 2/05/98 | 7118672 | Postponement of 05 hrng(s) from 02/09/98 | 250.00 | | 250.00 |
| 2/23/98 | 7120124 | Arbitrator's Compensation | 9,400.00 | | 9,400.00 |

emarks:  For any inquiry please call: 972-702-8222
         This Statement only reflects payments posted up to 06/04/98.

**TOTAL BALANCE DUE** 9,650.00

Please Indicate Case No. on Che

| INVOICE SUMMARY: | | NET BILLED | NET PAID | NET DUE |
|---|---|---|---|---|
| | INITIAL/COUNTER-CLAIM FEES | | | |
| | HEARING/POSTPONEMENT/ROOM/PROCESSING FEES | 250.00 | | 250.00 |

# BFIC INC.
## Find Report
### All Transactions

| Type | Date | Num | Name | Clr | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 7/1/297 | 4120 | AMERICAN ARBITRATION ASSO… | x | Legal | -5,000.00 | -5,000.00 |
| Check | 7/1/297 | 4120 | AMERICAN ARBITRATION ASSO… |  | Union Bank | 5,000.00 | 0.00 |
| Check | 7/2/497 | 3632 | AMERICAN ARBITRATION ASSO… |  | Legal | -4,000.00 | -4,000.00 |
| Check | 7/2/497 | 3632 | AMERICAN ARBITRATION ASSO… |  | Union Bank | 4,000.00 | 0.00 |
| Check | 8/6/97 | 3994 | AMERICAN ARBITRATION ASSO… | x | Legal | 0.00 | 0.00 |
| Check | 8/6/97 | 3994 | AMERICAN ARBITRATION ASSO… | x | Union Bank | 0.00 | 0.00 |
| Check | 8/11/97 | 3996 | AMERICAN ARBITRATION ASSO… | x | Legal | 0.00 | 0.00 |
| Check | 8/11/97 | 3996 | AMERICAN ARBITRATION ASSO… |  | Union Bank | 0.00 | 0.00 |
| Check | 8/11/97 | 3996 | AMERICAN ARBITRATION ASSO… |  | Legal | -2,500.00 | -2,500.00 |
| Check | 8/11/97 | 3996 | AMERICAN ARBITRATION ASSO… |  | Union Bank | 2,500.00 | 0.00 |
| Check | 10/14/97 | 4277 | AMERICAN ARBITRATION ASSO… |  | Legal | -8,000.00 | -8,000.00 |
| Check | 10/14/97 | 4277 | AMERICAN ARBITRATION ASSO… | x | Union Bank | 8,000.00 | 0.00 |
| Check | 11/20/97 | 4530 | AMERICAN ARBITRATION ASSO… |  | Legal | 0.00 | 0.00 |
| Check | 11/20/97 | 4530 | AMERICAN ARBITRATION ASSO… | x | Union Bank | 0.00 | 0.00 |
| Check | 11/20/97 | 4501 | AMERICAN ARBITRATION ASSO… |  | Legal | -10,000.00 | -10,000.00 |
| Check | 11/20/97 | 4501 | AMERICAN ARBITRATION ASSO… |  | Union Bank | 10,000.00 | 0.00 |
| Total |  |  |  |  |  | 0.00 | 0.00 |

*(handwritten annotations)*
Check # 3372 dated 7-11-97 for $5,000 showing on the AAA invoice but not appearing on this exhibit

Check # 3648 dated ... $2,500 does not appear on AAA exhibit

23,500

707 Broadway , 5th Floor San Diego ,Ca 92101

**BFIC**

# Fax

| To: | American Arbitration Association | From: | Dr. Mahdi |
|---|---|---|---|
| **Fax:** | 9724909008 | **Pages:** | 4 |
| **Phone:** | 9727446905 | **Date:** | 08/20/98 |
| **Re:** | Invoice and collusion | **CC:** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

---

● **Dear Mrs. Hedgeman:**

In response to your letter dated 8/13/96, we will be forwarding three addition copies documents to be given to the respective parties.

In addition, we are in a disagreement with the invoice statements.   I pray that reason prevail in  this dispute. Mrs. Hedgeman, in our telephone conversation, you stated that the association total charges to BFIC were approximately $28,500 dollars with a balance due of $9,650.   At that point ,I asked you was BFIC paying for IXC arbitration fees because our records was showing over $38,000 dollars in payments. You stated that BFIC had not paid IXC fees and the association had only received approximately $19,000 dollars from BFIC. You reference only two invoices dated 6/19/97 and 3/23/98. I told you that I know for a fact BFIC has paid more than the one invoice of $17,000 dollars. On 8/11/98 we sent  to your office a check detail report on five of the nine checks paid to the association totaling $29,500 dollars. We are waiting on bank to produce a copy of the remaining cancel checks.  Please find attach  to fax  letter  to your  office  dated  6/8/98  and  8/11/98 validating   my understanding.

Moreover, in my letter to you dated 6/8/98 Thompson Corburn stated they got  a call from your office stating  my letter was complaining about the arbitration bill. That was not the case. That letter was explaining to the panel that BFIC had paid over $38,000 to the association, and we did not have any more money to give. Mrs. Hedgeman at that  point you should have enlighten me on the fact of the association only receiving

August 20, 1998

one invoice payment of $19,000 dollars. Mrs. Hedgeman this issue was resurrected when I discovered an old invoice requesting both parties(BFIC and IXC)to pay $16,750.00 dollars per party. In our telephone conversation, you verified the receipt of 16,750.00 with an additional $2000 or $2500 leaving the balance invoice of $9000.

It was clear... no question in my mind, the association was requesting $9000 base on not receiving no more than $19000. Now without any apology, your quote " we only receive $19,000" has change to $32,000 dollars, and you still state that BFIC owes $9000. Now you conditional BFIC requiring payment of the $9000 invoice or documents will not be sent to the panel.

From two simple invoices to this. That is, we have gone from $16,750.00 paid invoice to additional $25,150. This is wrong, absolutely wrong! GOD,THE MOST FORGIVING, forgives us for what we done in the past. Mrs. Hedgemen, we would like for you to reconsider/ or postpone your decision until after the he the panel has made a decision on the case pending.

Please give the correspondences and documents to the respective parties.

Respectfully yours,

Dr. A. Madhi

 **American Arbitration Association**

*spute Resolution Services Worldwide*

| STMT. DATE | AMOUNT DUE |
|---|---|
| 8/13/98 | 9,650.00 |
| CASE # | |
| 71- 181-00048-97 02 TLH -R | |

Two Galleria Tower, 13455 Noel Road, Suite 1750
Dallas, TX  75240

## INVOICE / STATEMENT

Payment Due Upon Receipt

A. Mahdi
Building Futures In Communication, Inc.          Representing Building Futures In Communication, Inc.
707 Broadway, 5th Floor                          Re: IXC Long Distance, Inc.
San Diego CA 92101

Please Detach and Return with Payment to the Above Address          Please Indicate Case No. on Check

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 **American Arbitration Association**

*Dispute Resolution Services Worldwide*

Two Galleria Tower, 13455 Noel Road, Suite 1750
Dallas, TX  75240

A. Mahdi
Building Futures In Communication, Inc.          Representing Building Futures In Communication, Inc.
707 Broadway, 5th Floor                          Re: IXC Long Distance, Inc.
San Diego CA 92101

| T DATE | CASE # | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE DUE |
|---|---|---|---|---|---|
| 8/13/98 | 71- 181-00048-97 02 TLH -R | .00 | 32,250.00- | 41,900.00 | 9,650.00 |

| DATE | -REF # | DESCRIPTION | AMOUNT | CREDITS | BALANCE |
|---|---|---|---|---|---|
| 6/19/97 | 7112234 | Administrative Fee for Hearing | 1,250.00 | | |
| 6/19/97 | 7112234 | Arbitrator's Compensation | 14,100.00 | | |
| 7/18/97 | 4120 | Payment recvd from: BFI | | 1,250.00- | |
| 7/18/97 | 4120 | Payment recvd from: BFI | | 2,350.00- | |
| 7/28/97 | 3632 | Payment recvd from: BFI COMMUNICATION | | 4,000.00- | |
| 10/17/97 | 4277 | Payment recvd from: BFI Communication | | 7,750.00- | |
| 6/19/97 | 7112235 | Rental Fee for AAA Hearing Room | 500.00 | | |
| 6/19/97 | 7112235 | Expenses to be Reimbursed to Arbitrator | 700.00 | | |
| 7/18/97 | 4120 | Payment recvd from: BFI | | 500.00- | |
| 7/18/97 | 4120 | Payment recvd from: BFI | | 700.00- | |
| 6/19/97 | 7112236 | Miscellaneous Expenses | 200.00 | | |
| 7/18/97 | 4120 | Payment recvd from: BFI | | 200.00- | |
| 6/27/97 | 7112447 | Administrative Fee for Counter Claim | 5,000.00 | | |
| 7/01/97 | 2372 | Payment recvd from: ODEN & GREENE | | 5,000.00- | |

Remarks:

TOTAL
BALANCE
DUE

Please Indicate Case No. on Chec



# American Arbitration Association

*Dispute Resolution Services Worldwide*

Two Galleria Tower, 13455 Noel Road, Suite 1750
Dallas, TX 75240

| STMT DATE | AMOUNT DUE |
|---|---|
| 8/13/98 | 9,450.00 |

| CASE # |
|---|
| 71- 181-00048-97 02 TLH -R |

Payment Due Upon Receipt

## INVOICE / STATEMENT

A. Mahdi
Building Futures In Communication, Inc.
707 Broadway, 5th Floor
San Diego CA 92101

Representing Building Futures In Communication, Inc.
Re: IXC Long Distance, Inc.

Please Detach and Return with Payment to the Above Address

Please Indicate Case No. on Check

------------------------------------------------------------------------------



# American Arbitration Association

*Dispute Resolution Services Worldwide*

Two Galleria Tower, 13455 Noel Road, Suite 1750
Dallas, TX 75240

NAME

A. Mahdi
Building Futures In Communication, Inc.
707 Broadway, 5th Floor
San Diego CA 92101

Representing Building Futures In Communication, Inc.
Re: IXC Long Distance, Inc.

| STMT DATE | CASE # | PREVIOUS BALANCE | CURRENT CREDITS | NEW CHARGES | TOTAL BALANCE DUE |
|---|---|---|---|---|---|
| 8/13/98 | 71- 181-00048-97 02 TLH -R | .00 | 32,250.00- | 41,900.00 | 9,650.00 |

| DATE | REF. # | DESCRIPTION | AMOUNT | CREDITS | BALANCE |
|---|---|---|---|---|---|
| 10/02/97 | 7115111 | Postponement of 05 hrng(s) from 10/13/97 | 250.00 | | |
| 10/17/97 | 4277 | Payment recvd from: BFI Communication | | 250.00- | |
| 10/13/97 | 7115355 | Fee for Increased Counter Claim | 10,000.00 | | |
| 11/21/97 | 4501 | Payment recvd from: BFI COMMUNICATION | | 10,000.00- | |
| 12/01/97 | 7116785 | Postponement of 05 hrng(s) from 12/08/97 | 250.00 | | |
| 2/17/98 | 335108 | Payment recvd from: THOMPSON COBURN | | 250.00- | |
| 2/05/98 | 7118672 | Postponement of 05 hrng(s) from 02/09/98 | 250.00 | | 250.00 |
| 3/23/98 | 7120124 | Arbitrator's Compensation | 9,400.00 | | 9,400.00 |

Remarks:
*For any inquiry please call: 888-774-6905*
*This is a full statement showing all financial activity on this case.*

| TOTAL BALANCE DUE | 9,650.00 |
|---|---|

Please Indicate Case No. on Check

| INVOICE SUMMARY: | | NET BILLED | NET PAID | NET DUE |
|---|---|---|---|---|
| | INITIAL/COUNTER-CLAIM FEES | 15,000.00 | 15,000.00 | |
| | HEARING/POSTPONEMENT/ROOM/PROCESSING FEES | 2,500.00 | 2,250.00 | 250.00 |
| | REALLOCATION AT CASE END FEES | | | |
| | NEUTRAL COMPENSATION/EXPENSES | 24,400.00 | 15,000.00 | 9,400.00 |

EIN: 13-04297



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Molly Bargenquest
Director of Administration
*Dallas Service Center*

1750 Two Galleria Tower, 13455 Noel Road, Dallas, TX 75240-6636
telephone: 972 702 8222, facsimile: 972 490 9008
http://www.adr.org

August 13, 1998

Dr. A. Mahdi
BFIC , Inc.
707 Broadway 5th Floor
San Diego, CA 92101


RE: 71 181 00048 97
    IXC Long Distance, Inc.
    Vs
    Building Futures In Communication, Inc.
    - Austin, Texas

Dear Dr. Mahdi:

Enclosed is a statement which reflects a balance due of $9,400.00.  Upon receipt of the balance due the panel will review the additional correspondence.

Sincerely,

Tracey L. Hegeman
Supervisor of Commercial Case Management
972 774 6905


TLH
Encl.

# AMERICAN ARBITRATION ASSOCIATION

1750 Two Galleria Tower - 13455 Noel Road
Dallas, Texas  75240-6620
(972) 702-8222 - FAX (972) 490-9008

DATE:  June 19, 1997      ADMINISTRATOR:  Chad C. Corbett

Thomas W. George, Esq.
Thomas George & Associates
1122 Colorado, 311 Westgate Bldg.
Austin, TX  78701

Douglas A. Oden, Esq.
Oden, Greene, Murray & Thompson, LLP
Civic Center Plaza
1200 Third Avenue, Suite 1630
San Diego, CA  92101

Re: 71 181 00048 97
   IXC Long Distance, Inc.
   vs.
   A. Muhammad Mahdi, Building
   Futures In Communication, Inc.
   - Austin, Texas

## INVOICE

| DESCRIPTION | AMOUNT |
| --- | --- |
| Arbitrator Compensation plus study time | 14,100.00 |
| Arbitrator Expenses | 700.00 |
| Hearing Scheduling Fee | 1,250.00 |
| AAA Hearing Room Rental Fee | 500.00 |
| Miscellaneous Expenses | 200.00 |
| TOTAL PER PARTY | $16,750.00 |

Please remit your payment to the Dallas Office no later than July 30,
1997.  Mark case number prominently on all checks to ensure prompt credit.

# IXC Communications, Inc.



**Fast FAX**

To: Greg Wilson
Company  BFIC
At. 1619-693-6428

From: Dan Shenkman
Company: IXC Communications, Inc.
Voice: 512-433-3528

Date  30-07-97
Time  3.52PM
Pages Including Cover  2



**MEMO**

Notes  Please forward the attached to the appropriate technical staff.

Thank you



RECEIVED
JUL 3 0 1997



**Fast FAX**



# BROADCAST FLASH

**Date:**   *July 30, 1997*
**From:**   *IXC - Marketing Dept.*
**Subject:**   *NEW BBS Access Number*

---

IXC will be disconnecting the old <u>BBS access number</u> on Friday, August 1st.  Any customers who have been using the old BBS number need to change their number to the new BBS access number.

➡   **800-888-0156**   *Old* BBS dial-up

➡   **888-949-2638**   *New* BBS dial-up

➡   **If you are dialing in to our RAS at 800-480-5909, that number will remain operational.**

Please look at your dial-up number in your communication software and if it is using the *old* BBS access number, you will need to change it to the *new* BBS access number.

• There will be no conversion of data.  It is the simple task of changing a phone number in your communication software.

• This will not affect your passwords.

• This change is for BBS access only.

If you have any questions contact

Dan Shenkman
Wholesale Support
800-750-0156



13

Account Number
C000001001-0000

c000c0265     0 700     0.32

**CALVIN AITCH**
7491 GLOAMING AVE.
SAN DIEGO, CA 92114

TELL US HOW WE ARE DOING!

We need your input so that we can continue to be the most responsive
Customer Oriented Long Distance company in the nation.  Please tell
how we can improve our service.

Please send your suggestions, comments, or concerns to Customer
Service at 7060 MiraMar Road, Suite 100, San Diego, CA 92121.

Thank You for allowing us to provide your long distance service.

Please include your account number on your check

Return this section with your payment.
Please DO NOT staple.

Account:  CALVIN AITCH
Number:   0000001001-0000
Date:     08/01/96

┌─────────────────────────────────────────────────────────┐
│    **Payment of $102.78 due on or before 08/23/96**        │
│                                                           │
│         **Amount Enclosed :** _____          │
└─────────────────────────────────────────────────────────┘

Remit to: USBI, INC.
          9311 SAN PEDRO, ST. 400
          SAN ANTONIO, TX  78216            000000000001000000102000000001

*13*

AUG.-13'96(TUE) 15:48   DGA INC.                    TEL:405-360-0625                    P. 005

# B F I C
## INCORPORATE

### Telecommunication Management Report
*"Building Futures in Communication"*

For Information Regarding This Invoice or
For Customer Service, Please Call  (800) 711-1335

Customer Name :  CALVIN AITCH
Customer Number : 0000001001-0000

Page:        3
Billing Date:      08/01/96
Payment Due Date: 08/23/96

---

### ORIGINATING NUMBER SUMMARY - 1+

| Number | Name | Calls | Total Duration | Amount |
|--------|------|-------|----------------|--------|
| (619) 263-3371 | Calvin Aitch | 85 | 626.5 | 99.28 |
| | Subtotal: | 85 | 626.5 | 93.26 |

---

### AREA CODE SUMMARY - 1+

| Area Code | State | Calls | Total Duration | Amount |
|-----------|-------|-------|----------------|--------|
| 334 | ALABAMA | 3 | 30.7 | 4.52 |
| 213 | CALIFORNIA | 2 | 2.6 | 0.30 |
| 310 | CALIFORNIA | 4 | 3.9 | 1.32 |
| 510 | CALIFORNIA | 2 | 4.7 | 0.76 |
| 714 | CALIFORNIA | 1 | 1.5 | 0.17 |
| 909 | CALIFORNIA | 5 | 72.9 | 8.46 |
| 404 | GEORGIA | 2 | 15.0 | 2.40 |
| 770 | GEORGIA | 3 | 5.2 | 3.34 |
| 815 | ILLINOIS | 1 | 3.3 | 0.70 |
| 507 | MINNESOTA | 1 | 11.5 | 1.54 |
| 314 | MISSOURI | 3 | 28.2 | 4.51 |
| 406 | MONTANA | 4 | 66.6 | 11.39 |
| 702 | NEVADA | 1 | 1.5 | 0.24 |
| 704 | NORTH CAROLINA | 5 | 11.6 | 2.07 |
| 215 | PENNSYLVANIA | 18 | 111.5 | 17.84 |
| 610 | PENNSYLVANIA | 2 | 11.2 | 1.75 |
| 717 | PENNSYLVANIA | 1 | 3.7 | 0.67 |
| 757 | VIRGINIA | 2 | 1.1 | 0.19 |
| 804 | VIRGINIA | 21 | 228.6 | 37.23 |
| | Subtotal: | 64 | 623.2 | 97.74 |

---

### INTERNATIONAL SUMMARY - 1+

| Country Code | Country | Calls | Total Duration | Amount |
|--------------|---------|-------|----------------|--------|
| 49 | GERMANY | 1 | 3.3 | 1.54 |
| | Subtotal: | 1 | 3.3 | 1.54 |

---

### FREQUENTLY CALLED CITY SUMMARY - 1+ - 20 or More Calls

| City | State/Country | Calls | Total Duration | Amount |
|------|---------------|-------|----------------|--------|
| NORFOLK | VA | 20 | 221.3 | 35.92 |

*Exhibit-13A*

```
Close databases
Set Defa to c:\foxwin\ixc

use "c:\foxwin\ixc\dbf\ixccust.dbf"
MTARGET=GETFILE("DBF", "TARGET FILE")
COPY STRUCTURE TO &mTARGET

mSOURCE=getfile("dbf", "DCA CUSTOMER FILE")

Select 0
Use &mSOURCE alias dca

select 0
use &mTARGET alias ixc

select dca
Do While .NOT. EOF()

select ixc
Append blank

Replace servtype           with    "1S"
Replace ordtype            with    "A"
Replace resellerid    with    "BFIC"
Replace btn                with    dca.phone
Replace wtn                with    dca.phone
Replace accttype           with    "R"
replace acctname      with    Substr(AllTrim(dca.frst_name),1,Len(AllTrim(dca.frst_name)
)-2)+"  "+dca.last_name
replace loadate            with    "19960901"
replace picreq             with    "Y"
replace idddblock          with    "N"
replace block809           with    "N"
replace rsllagent          with    "001"
replace rsllrep       with    "999"
replace userdate           with    Str(Year(Date()),4)+PadL(Month(Date()),2,"0")+PadL
(Day(Date()),2,"0")

SELECT dca
Skip

Enddo

Close Databases
```

Exhibit 13



**IXC LONG DISTANCE, INC.**

98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4039
(512) 433-3500                                    FAX (512) 433-2401

April 4,1 996

Mr. Muhammad Mahdi
Building Futures in Communication, Inc.
7467 Draper Ave.
La Jolla. CA  92037

Dear Mr. Mahdi:

Pending final negotiation and execution of our contract, credit terms have been approved for Building
Futures in Communication, Inc.

Based on the information provided on your credit application and the results of our credit investigation, we
will require a Lockbox Agreement and security deposit in the amount of $50,000.00 payable before the
final counter execution of the service agreement.  Please make check payable to IXC Long Distance, Inc.
and forward to the above address.

We look forward to providing the service and support necessary for all your telecommunications needs.

Sincerely,

Doug Farrar
Credit Manager

DF:pw

cc:     Jeff Bender
        Charli Connelly
        Ken Hilden
        Lynn McNeill



Exhibit 14A
Exhibit 14A

**IXC LONG DISTANCE, INC.**
98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4039
(512) 433-3500                    FAX (512) 433-2401

May 3, 1996

Dr. A. Muhammad Mahdi                    <u>VIA FEDERAL EXPRESS</u>
Chairman
BFIC, Inc.
7467 Draper Avenue
La Jolla, CA 92037

Dear Dr. Mahdi:

I apologize for the misunderstanding IXC has had regarding our pending agreement. I think that it is just a matter of working out the details. At any rate it is not feasible for IXC to process the orders you sent on a manual basis. It will be faster to set up BFIC on the OnLine system and download the files; however, that cannot be done until the final agreement is fully executed, including the Tri Party Agreement.

For that reason I am overnighting the orders back to you for alternate processing. I would like to handle this business, but your time requirements do not make it possible. I hope that we can consummate our agreement and process all future orders for BFIC.

Sincerely,

Ken Hilden
Vice President, Sales

cc:     John Fleming
        Jeff Bender
        John Willingham
        Doug Farrar

KH:eh

*Exhibit 15*

Setup

| Field | Width | Rules | Assignment | |
|---|---|---|---|---|
| ACCT NUMBER | 5 | Assigned by IXC Technical Support | R520 | |
| CUSTOMER NAME | 40 | Full Name of Customer | Building Futures In Communications | |
| ACCT MANAGER | 40 | Name of Account Manager assigned to this customer | Tom Browning | |
| SALES REP | 40 | IXC Sales Representative | Jeff Bender | |
| MASTER ID | 8 | IXC Assigned | Building Futures | |
| RESELLER | 8 | IXC Assigned | BUILDING | |
| MSI | 1 | Master-Sub Indicator, M=Master, S=Sub-account, I=Independent | M | |
| CIC | 4 | CIC code of customer, if not using IXC's CIC | n/a | |
| CHANGE CIC | 1 | Y=Yes, allows IXC to change CIC from customer setup CIC; N=No, only use the CIC code with which the customer was setup | Y | |
| OFFNET CIC | 1 | Y=Yes, allows IXC to select the CIC code of one of our off-net carriers (IXC decision of which one to use based on our routing rules); N=No, only use IXC on-net CIC | Y | |
| ACNA | 3 | ACNA for dedicated orders, if not using IXC | n/a | |
| PROD ID | 5 | IXC Assigned | P5495 | |
| RATE PLAN ID | 5 | IXC Assigned | R5495 | |
| ISOC PLAN ID | 5 | IXC Assigned | F05BL | |
| ANI RET | 4 | Days that ANI's will be kept active before they are deleted for no usage | n/a | |
| CC 800 | 10 | Calling Card 800 Number | 800-840-3229 | |
| ADDRESS 1 | 30 | Street address of customer location | 7060 Miramar Rd. | |
| ADDRESS 2 | 30 | Street address of customer location | Ste 100 | |
| CITY | 25 | City of customer location | San Diego | |
| STATE | 2 | State of customer location | CA | |
| ZIPCODE | 9 | Zip code of customer location | | 92121 |
| MAIN PHONE | 10 | Main phone number of customer | 619-693-6400 | |
| PRIMARY NAME | 40 | Customer primary contact name | Dr. Mahdi | |
| PRIMARY PHONE | 10 | Primary contact phone number | 619-693-6400 | |
| BILLING CO | 40 | Billing company name | DCA | |
| ADDRESS 1 | 30 | Street address of billing company | 300 N. Meridian | |
| ADDRESS 2 | 30 | Street address of billing company | Ste 115S | |
| CITY | 25 | City of billing company | Oklahoma City | |
| STATE | 2 | State of billing company | Oklahoma City | |
| ZIPCODE | 9 | Zip code of billing company | | 73107 |
| BILLING CONTACT | 40 | Billing company contact name | Jerry Cook | |
| BILLING PHONE | 10 | Billing company contact phone number | 405-951-9333 | |
| CDROM ADD | 1 | B=CDROM sent to billing company address; C=CDROM sent to customer location | C | |
| CDROM CONTACT | 40 | CDROM will be sent to the attention of this individual | Dr. Mahdi | |
| EMAIL NAME 1 | 40 | Name of customer email user 1 | | |
| EMAIL NAME 2 | 40 | Name of customer email user 2 | | |
| EMAIL NAME 3 | 40 | Name of customer email user 3 | | |
| EMAIL NAME 4 | 40 | Name of customer email user 4 | | |
| EMAIL NAME 5 | 40 | Name of customer email user 5 | | |
| TS CONTACT | 40 | Customer technical support contact name | Greg Wilson | |
| TS PHONE | 10 | Technical support contact phone number | 619-693-6400 | |
| MIS EXEC | 40 | MIS contact name for systems related contacts | Greg Wilson | |
| MIS TITLE | 10 | Proper title of MIS contact | | |
| MIS PHONE | 10 | MIS phone number for systems related contacts | 619-693-6400 | |
| MIS EXT | 4 | MIS phone extension number for systems related contacts | | |
| MIS FAX | 10 | Fax number of the MIS group. | 619-693-6428 | |

IXCLD 000638

Setup

| Field | Length | Description | Value |
|---|---|---|---|
| MIS MODEM PRIMARY | 10 | Number that will dial into IXC Systems, this will be included in the 800 screening list for security purposes. | 619-693-6426 |
| MIS MODEM SECONDARY | 10 | Number that will dial into IXC Systems, this will be included in the 800 screening list for security purposes. | |
| CSR EXEC | 40 | Customer Service Rep contact name | Martha Taylor |
| CSR TITLE | 10 | Proper title of Customer Service Rep | |
| CSR PHONE | 10 | Customer Service Rep phone number | 619-693-6400 |
| CSR EXT | 4 | Customer Service Rep phone extension number | |
| CSR FAX | 10 | Fax Number of the Customer Service Rep | 619-693-6400 |
| CSR MODEM | 10 | Number that will dial into IXC Systems, this will be included in the 800 screening list for security purposes | 619-693-6426 |
| CSR HOURS | | Include normal operating hours of Cust. Service. | 8-5PST  M-F |
| AFTER HOURS PHONE | 10 | For example, on-call pager number, after hours Customer Service number, etc. | 619-693-6400 |
| AFTER HOURS CONTACT NAME | 40 | (If applicable) | |
| OPS EXEC | 40 | Operations contact name for performance related contacts, eg. code kill, etc. | Greg Wilson |
| OPS TITLE | 10 | Proper title of Operations contact | |
| OPS PHONE | 10 | Operations phone number for systems related contacts. | 619-693-6400 |
| OPS EXT | 4 | Operations phone extension number for systems related contacts | |
| USER DATE | 10 | Customer translation of Reseller Specific field | |
| USER 1 | 10 | Customer translation of Reseller Specific field | |
| USER 2 | 10 | Customer translation of Reseller Specific field | |
| USER 3 | 10 | Customer translation of Reseller Specific field | |
| USER 4 | 10 | Customer translation of Reseller Specific field | |
| BATCH ID | 10 | Batch file login ID assigned by IXC Technical Support | |
| BATCH PSWRD | 10 | Batch file login Password by IXC Technical Support | |
| IOL ID | 10 | IOL login ID assigned by IXC Technical Support | |
| IOL PSWRD | 10 | IOL login Password assigned by IXC Technical Support | |

IXCLD 000639

Exhibit
17A

BANK OF OKLAHOMA, N.A.
TRANSACTIONS FROM 10/01/96 TO 07/30/97 - ALL PORTFOLIO 02/04/98 16:34
WILKES/EPIC/DCA/EPIC ESCROW          PRIN. CASH      INCOME CASH

| Date | Description | Prin. Cash | Income Cash |
|---|---|---|---|
| 09/30 | BALANCE CARRIED FORWARD | 0.00 | 0.00 |
| 10/25 | CASH RECEIPT<br>RECEIVED FROM<br>BILLING INFORMATION CONCEPTS VIA WIRE TRANSFER | 59,681.49 | |
| 10/25 | CASH DISBURSEMENT<br>PAID TO   LDDS WORLDCOM<br>DISTRIBUTION PER AGREEMENT<br>PER SECTION 5, 80% OF COLLECTED FUNDS | 55,745.19- | |
| 10/25 | CASH DISBURSEMENT<br>PAID TO   EPI COMMUNICATIONS, INC.<br>DISTRIBUTION PER AGREEMENT<br>PER SECTION 5, BAL OF COLLECTED FUNDS | 13,936.30- | |
| 11/26 | CASH RECEIPT<br>RECEIVED FROM<br>PAID FROM ACCOUNT # 80836<br>EIC VIA WIRE TRANSFER | 9,190.07 | |
| 11/26 | CASH DISBURSEMENT<br>PAID TO   EPI COMMUNICATIONS, INC.<br>DISTRIBUTION PER AGREEMENT<br>PER SECTION 5, BALANCE OF COLLECTED FUNDS | 1,838.01- | |
| 11/26 | CASH DISBURSEMENT<br>PAID TO   LDDS WORLDCOM<br>DISTRIBUTION PER AGREEMENT<br>PER SECTION 5, 80% OF COLLECTED FUNDS | 7,352.06- | |
| 12/09 | CASH RECEIPT<br>RECEIVED FROM<br>EIC VIA WIRE TRANSFER | 433.41 | |
| 12/10 | CASH DISBURSEMENT<br>PAID TO   LDDS WORLDCOM<br>DISTRIBUTION PER AGREEMENT<br>PER SECTION 5, 80% OF COLLECTED FUNDS | 346.73- | |
| 12/10 | CASH DISBURSEMENT<br>PAID TO   EPI COMMUNICATIONS, INC.<br>DISTRIBUTION PER AGREEMENT<br>PER SECTION 5, BAL OF COLLECTED FUNDS | 86.68- | |
| 12/11 | CASH RECEIPT<br>RECEIVED FROM<br>EIC BY WIRE TRANSFER | 4,234.83 | |
| 12/13 | CASH DISBURSEMENT<br>PAID TO   BANK OF OKLAHOMA, ESCROW AGENT<br>FUNDS DEPOSITED IN ESCOR ON 12/11/96 | 4,234.83- | |
| 03/14 | AGENT FEE COLLECTED<br>ESCROW FEE FOR 5/20/96 - 10/11/96 | 620.00- | |

Case 3:00-cv-01518-IEG-LSP   Document 1    Filed 07/28/00   Page 218 of 330

ANK OF CLAHOMA, N.A.                              ADMIN     PG    2

TRANSACTIONS FROM 10/01/96 TO 07/30/97 - ALL PORTFOLIO 02/04/98 16:14

3998    WILTEL/BFIC/DCV/EFOX ESCROW         PRIN. CASH    INCOME CASH


        TOTAL CHARGES: $620.00
        COLLECTED BY DIRECT CHARGE


/18 CASH RECEIPT                            620.00
    RECEIPT OF ESCROW FEES
    ESCROW AGENT FEE FOR 5/28/96 - 10/31/96
    ------------------------------------    -------------------

30 ENDING BALANCE - PRINCIPAL PORTFOLIO     0.00

30 ENDING BALANCE - INCOME PORTFOLIO                     0.00

30 ENDING BALANCE - INVESTED INCOME PORTFOLIO            0.00



To:        WilTel
           Robert Brejcha

From:      BFIC, Inc.
           Mohammed Usman

Re:        WilMAX Agreement - TSA#BFIC-960517

## BOARD OF DIRECTORS
### Resolution

**"RESOLVED,** that the Board of Directors of BFIC, Inc.(Building Futures in Communication, Inc.),
having duly convened on this 20th day of May, 1996, and a quorum being present, have reviewed and
approved for acceptance that Telecommunications Services Agreement made by and between
WorldCom Network Services, Inc., d/b/a WilTel and BFIC, dated May 17, 1996 and identified as
TSA# BFIC-960517 and further authorize the subscription thereto by its Chairman, Dr. A.
Muhammad Mahdi."

## CERTIFICATION OF SECRETARY

I, certify that:

1.   I am the Secretary of BFIC, Inc., a California Corporation

2.   The foregoing Resolution of the Board of Directors of the Corporation constitute a
     duly adopted Resolution of the Corporation approved by the Board of Directors of
     the Corporation on the 20th day of May, 1996.

Dated: _May 20th 1996_

_____
Mohammed Usman,   Secretary



LDDS
**W RLD COM**

*Voice Data Video*

Tulsa, OK 74072
918-590-5621

*Exhibit*
*17C*

*17C*

VIA FACSIMILE: 619-693-6428                         December 13 , 1996

Dr. Muhammad Mahdi
BFIC
7060 Miramar Road, Suite 100
San Diego, CA 92121

Dr. Mahdi:

In response to your letter of December 11, 1996, please let me comment by saying that the funds that have cleared the escrow arrangement were not sufficient to rectify the unpaid balances on your accounts. The escrow arrangement has only cleared $ 7,698.79 from November 1 to date. Your accounts invoiced $ 107,927.64 on October 1 and $39,204.71 on November 1, of which you can see is not satisfied. You may want to find out why the escrow agreement has only funded to WorldCom $7,968.79 since November 1, 1996.

We regret the actions stated in our December 9, 1996 letter have become necessary, but as the letter stated, you have until December 19, 1996 to pay all outstanding balances in full.

Please feel free to contact me with any questions that you may have regarding this issue.

Sincerely,

Kirk Bartgis
Credit Operations

**EXHIBIT I**

# WilTel.

Customer Number: 21001 00651-0000
Customer Name: BUILDING FUTURES IN COMMUNICATION

## SUMMARY OF BALANCE DUE

Activity Through: 08/31/96
Invoice Date: 08/31/96
Invoice Number: 960000104284
Page: 1

Total Usage Charges — $80,972.60
Total Other Charges — $20.05
TOTAL CURRENT CHARGES — $80,992.65

| Invoice Number | Date | Previous Balance | Current Transactions | Description | Outstanding Balance |
|---|---|---|---|---|---|
| 9606000798631 | 06/01/96 | $3.99 | ($3.99) | Invoice PAYMENT - ck# 960830 | $0.00 |
| TOTAL | | $3.99 | ($3.99) | | $0.00 |
| 9607000856110 | 07/01/96 | $7,801.55 | ($7,801.55) | Invoice PAYMENT - ck# 960830 | $0.00 |
| TOTAL | | $7,801.55 | ($7,801.55) | | $0.00 |
| 9608000959047 | 08/01/96 | $10,051.93 | ($1,058.68) | Invoice VOLUME DISC. - ADJ. | $8,993.25 |
| TOTAL | | $10,051.93 | ($1,058.68) | | $8,993.25 |
| GRAND TOTAL | | $17,857.47 | ($8,864.22) | | $8,993.25 |
| AMOUNT DUE | | | | | $89,985.90 |

If you have any questions about your invoice or service, please call Customer Service at 800-864-8040. Thank you for using WilTel.

# WILTEL.

Customer Number: 21001086511-0000
Customer Name: BUILDING FUTURES IN COMMUNICATION

## SUMMARY OF BALANCE DUE

Activity Through: 09/30/96
Invoice Date: 10/01/96
Invoice Number: 9609001042987
Page: 1

| Invoice Number | Date | Previous Balance | Current Transactions | Description | Outstanding Balance |
|---|---|---|---|---|---|
| 9608000959047 | 08/01/96 | $8,993.25 | ( $8,993.19) | Invoice |  |
| | | | | PAYMENT - ck# 960930 | |
| TOTAL | | $8,993.25 | ( $8,993.19) | | $0.06 |
| 9609001042384 | 09/01/96 | $80,992.65 | ( $30,233.56) | Invoice |  |
| | | | ( $5,786.62) | PAYMENT - ck# 960930 | |
| | | | | VOLUME DISC. - ADJ. | |
| TOTAL | | $80,992.65 | ( $36,020.18) | | $44,972.47 |
| GRAND TOTAL | | $89,985.90 | ( $45,013.37) | | $44,972.53 |
| AMOUNT DUE | | | | | $150,282.05 |

Total Usage Charges $105,309.52

TOTAL CURRENT CHARGES $105,309.52

If you have any questions about your invoice or service,
please call Customer Service at 800-864-4040
Thank you for using WilTel.

# WilTEL.

Customer Number: 210010851-0000
Customer Name: BUILDING FUTURES IN COMMUNICATION

## SUMMARY OF BALANCE DUE

Activity Through: 10/31/96
Invoice Date: 11/01/96
Invoice Number: 9611001087325
Page: 1

| Invoice Number | Date | Previous Balance | Current Transactions | Description | Outstanding Balance |
|---|---|---|---|---|---|
| Total Usage Charges | | | | | $36,200.06 |
| TOTAL CURRENT CHARGES | | | | | $36,200.06 |
| 9608000959047 | 08/01/96 | $0.06 | | Invoice | $0.06 |
| TOTAL | | $0.06 | | | $0.06 |
| 9609001042384 | 09/01/96 | $44,972.47 | $44,972.47 ( | Invoice PAYMENT - ck# 961031 | $0.00 |
| TOTAL | | $44,972.47 | $44,972.47 ( | Invoice PAYMENT - ck# 961031 | $0.00 |
| 9610001069987 | 10/01/96 | $105,309.52 | $8,154.60) $7,314.02) ( | Invoice PAYMENT - ck# 961031 VOLUME DISC. - ADJ. | $89,840.90 |
| TOTAL | | $105,309.52 | $15,468.62) ( | | $89,840.90 |
| GRAND TOTAL | | $150,282.05 | $60,441.09) ( | | $89,840.96 |
| AMOUNT DUE | | | | | $126,041.02 |

If you have any questions about your invoice or service,
please call Customer Service at 800-864-4040.
Thank you for using WilTel.

Recycled Paper

1   MARK A. SAXON, ESQ., BAR NO. 062642
    SAXON, BARRY, GARDNER & KINCANNON
2   A Professional Corporation
    4275 Executive Square, Suite 530
3   La Jolla, California  92037-1477
    (619) 546-7200
4
    Attorneys for plaintiff, WORLDCOM
5   NETWORK SERVICES, dba WILTEL,
    a Delaware corporation
6

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN DIEGO

10                                        **00710837**

11  WORLDCOM NETWORK SERVICES, INC.,   ) Case No:
    dba WILTEL, a Delaware             )
12  corporation,                       ) COMPLAINT FOR BREACH OF CONTRACT,
                                       ) ACCOUNT STATED, OPEN BOOK ACCOUNT,
13                      Plaintiff,      ) QUANTUM MERUIT, DEFAULT UNDER
                                       ) SECURITY AGREEMENT, AND JUDICIAL
14  -vs-                               ) FORECLOSURE
                                       )
15  BUILDING FUTURES IN                )
    COMMUNICATIONS, INC., a.k.a.       )
16  BFIC, INC.; A. MOHAMMAD MAHDI, an  )
    individual; and DOES 1 through     )
17  100, inclusive,                    )
                                       )
18                      Defendants.    )
    _____)
19

20          Plaintiff WORLDCOM NETWORK SERVICES, INC., fka WILTEL, INC.,

21  alleges as follows:

22                       PRELIMINARY ALLEGATIONS

23          1.   Plaintiff WORLDCOM NETWORK SERVICES, INC., dba WILTEL,

24  is, and at all times mentioned herein was, a corporation organized

25  and existing under the laws of the State of Delaware and is

26  authorized to do business in California.

27          2.   Plaintiff is informed and believes and upon such

28  information and belief alleges that defendant BUILDING FUTURES IN

                                1

1   COMMUNICATIONS, INC., also known as BFIC, INC. (hereinafter referred

2   to as "BFIC"), is, and at all times herein mentioned was, a

3   partnership or unincorporated association, with its principal place

4   of business in the City of San Diego, County of San Diego, State of

5   California.  Plaintiff is further informed and believes and upon such

6   information and belief alleges that defendants A. MOHAMMED MAHDI and

7   DOES 1 through 100, inclusive, are, and at all times herein mentioned

8   were, members of said partnership or unincorporated association, and

9   are, and at all times herein mentioned were, residents of San Diego

10  County, California.

11          3.   Plaintiff is ignorant of the true names and capacities of

12  the defendants sued herein as DOES 1 through 100, inclusive, and,

13  therefore, sues these defendants by fictitious names.  Plaintiff is

14  informed and believes and thereon alleges that at all times mentioned

15  in this Complaint, these defendants, and each of them, either had

16  and/or have some form of ownership interest in BFIC or were the

17  agents and/or employees of their co-defendants, and that each of the

18  defendants designated herein by a fictitious name is responsible in

19  some manner for the indebtedness hereinafter referred to.  Plaintiff

20  will seek leave of court to amend this Complaint to allege their true

21  names and capacities when ascertained.

22                        **FIRST CAUSE OF ACTION**

23                     (BREACH OF CONTRACT AGAINST

24                          ALL DEFENDANTS)

25          4.   Plaintiff realleges and incorporates herein by reference

26  paragraphs 1 through 3 as though fully set forth herein.

27          5.   On or about May 17, 1996, defendants and each of them

28  entered into a Telecommunications Services Agreement ("the

                                      2

17-m

1  Telecommunications Agreement") with plaintiff for the purpose of

2  having plaintiff provide to defendants switched telecommunications

3  services.  A true and correct copy of the Telecommunications

4  Agreement is attached hereto as Exhibit "A" and incorporated herein

5  by reference.

6        6.   In connection with the Telecommunications Agreement, on

7  May 17, 1996, plaintiff and defendants executed three other documents

8  which were incorporated into the Telecommunications Agreement,

9  including the following:

10            a.   Program Enrollment Terms, a true and correct copy of

11  which is attached hereto as Exhibit "B" and incorporated herein by

12  this reference;

13            b.   Service Schedule, a true and correct copy of which

14  is attached hereto as Exhibit "C" and incorporated herein by

15  reference;

16            c.   Pricing Exhibit, a true and correct copy of which is

17  attached hereto as Exhibit "D" and incorporated herein by reference.

18        7.   In conjunction with the Telecommunications Agreement, on

19  May 17, 1996, plaintiff and defendants entered into a Security

20  Agreement, a true and correct copy of which is attached hereto as

21  Exhibit "E" and incorporated herein by reference (the "Security

22  Agreement").

23        8.   Plaintiff has performed each and every obligation and all

24  conditions required to be performed on its part under the terms of

25  the agreements referred to herein.

26        9.   Defendants are in breach of the Telecommunications

27  Agreement by failing to pay all invoices submitted to them by

28  plaintiff.  Although numerous demands have been made, there remains

3

1  outstanding under the terms of the Telecommunications Agreement a

2  balance due of $167,470.43, plus interest thereon at the rate of one

3  and one-half percent (1½%) per month from the date(s) each portion

4  thereof was incurred.

5       10.  The Security Agreement provides that, in the event

6  plaintiff retains the services of an attorney to enforce the

7  provisions of the Telecommunications Agreement, the Security

8  Agreement, or any obligations of defendants to plaintiff, defendants

9  agree to pay reasonable attorneys' fees and costs, expenses and

10  disbursements.

11

12                    **SECOND CAUSE OF ACTION**

13              (ACCOUNT STATED AGAINST ALL DEFENDANTS)

14       11.  Plaintiff realleges and incorporates herein by reference

15  paragraphs 1 through 3 as though fully set forth herein.

16       12.  Within two (2) years last past at San Diego, California,

17  an account was stated in writing by and between plaintiff and

18  defendants, and each of them, wherein it was agreed that defendants,

19  and each of them, were indebted to plaintiff in the sum of

20  $167,470.43.  Defendants agreed to pay this sum.

21       13.  Although plaintiff has demanded the agreed balance from

22  defendants, neither all nor any part of the agreed balance has been

23  paid.  There is now due, owing and unpaid from defendants to

24  plaintiff the sum of $167,470.43, plus interest at the rate of ten

25  percent (10%) per annum from the date(s) each portion thereof was

26  incurred.  Pursuant to Civil Code §1717.5, Plaintiff is entitled to

27  recovery of attorneys' fees.

28

4

1                                 **THIRD CAUSE OF ACTION**

2                  (OPEN BOOK ACCOUNT AGAINST ALL DEFENDANTS)

3       14.  Plaintiff realleges and incorporates herein by reference

4 paragraphs 1 through 3 as though fully set forth herein.

5       15.  Within two (2) years last past at San Diego, California,

6 defendants, and each of them, became indebted to plaintiff on an open

7 book account for money due in the sum of $167,470.43 for switched

8 telecommunications services pursuant to the Agreement for which

9 defendants agreed and promised to pay.

10       16.  Although plaintiff has demanded payment, there is now

11 due, owing and unpaid the sum of $167,470.43, plus interest at the

12 rate of ten percent (10%) per annum from the date(s) each portion

13 thereof was incurred.  Pursuant to Civil Code §1717.5, plaintiff is

14 entitled to recovery of attorneys' fees.

15

16                             **FOURTH CAUSE OF ACTION**

17              **(QUANTUM MERUIT AGAINST ALL DEFENDANTS)**

18       17.  Plaintiff realleges and incorporates herein by reference

19 paragraphs 1 through 3 as though fully set forth herein.

20       18.  Between in or about May, 1996, and in or about April,

21 1997, plaintiff provided switched telecommunication services at the

22 request of defendants, and each of them.  Defendants agreed and

23 promised to pay plaintiff the reasonable value of these services.

24       19.  The reasonable value of these services for the months of

25 October, 1995 through April, 1997, was and is the sum of $167,470.43.

26       20.  Although demand has been made, plaintiff has failed to

27 make payment.  There is now due, owing and unpaid to plaintiff the

28

1  sum of $167,470.43, plus interest at the rate of ten percent (10%)

2  per annum from the date(s) each portion thereof was incurred.

### FIFTH CAUSE OF ACTION

#### (DEFAULT UNDER SECURITY AGREEMENT AND JUDICIAL FORECLOSURE AGAINST ALL DEFENDANTS)

6       21.   Plaintiff realleges and incorporates herein by reference

7  paragraphs 1 through 10 as though fully set forth herein.

8       22.   On or about July 15, 1996, a Financing Statement was

9  filed in connection with perfection of the security interest under

10  the Security Agreement in the Office of the Secretary of State of the

11  State of California, a true and correct copy of which is attached

12  hereto as Exhibit "F" and incorporated herein by reference.

13       23.   According to the provisions of the Security Agreement

14  (Exhibit "E"), defendants granted to plaintiff a security interest in

15  certain collateral described therein in order to secure performance

16  and payment by defendants to plaintiff of all obligations incurred by

17  defendants pursuant to the Telecommunications Agreement (Exhibit

18  "A"), to which plaintiff would be entitled to resort in fulfillment

19  of all obligations of defendants, as well as expenses reasonably

20  incurred by plaintiff in any disposition thereof, should defendants

21  default in any way under the Telecommunications Agreement.

22       24.   Defendants have remained to the present time in

23  possession of the collateral subject to plaintiff's security

24  interest.  As a result of defendants' default and breach under the

25  Telecommunications Agreement, plaintiff is entitled to enforce this

26  security interest by judicial foreclosure of all of defendants'

27  rights in the secured property identified in the Security Agreement

28

6

17-M

(Exhibit "E") through public sale thereof by the proper judicial officer.

**WHEREFORE**, Plaintiff prays for judgment herein as follows:

1.   For damages on the First Cause of Action in the amount of $167,470.43, plus interest at the rate of one and one-half percent (1½%) per month from the date(s) each portion thereof was incurred;

2.   For damages on the Second, Third and Fourth Causes of Action, in the amount of $167,470.43, plus interest at the legal rate from the date(s) each portion thereof was incurred;

3.   For an order directing public sale of the secured property described in the Security Agreement (Exhibit "E") to foreclose all of defendants' rights therein on the Fifth Cause of Action, and to apply the proceeds in the following order:

a.   To the cost of taking, keeping, and selling such property;

b.   To the costs of suit and attorneys' fees herein, as may be awarded by the Court;

c.   To the satisfaction of damages and interest thereon under the Telecommunications Agreement;

d.   To the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed; and

e.   To defendants as to any surplus thereafter.

4.   For costs of suit incurred herein, including attorneys' fees; and

17-M

1        5.   For such other and further relief as the Court deems just

2  and proper.

3

4  DATED:  May 21, 1997           SAXON, BARRY, GARDNER & KINCANNON,
                                   A Professional Corporation

5

6                               By: _____

7                                MARK A. SAXON, ESQ.
                                Attorneys for Plaintiff

8                                WORLDCOM NETWORK SERVICES,
                                INC., dba WILTEL, a Delaware

9                                corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  h:\mas\worldcom\bfic.cpl

28



**IXC COMMUNICATIONS, INC.**
98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4039
(512) 433-3500      (800) 984-9253      FAX (512) 433-3555



**BFIC**
Attention: Greg Wilson
From: Tom Browning
August 30, 1996
Fax: 619-693-6428
cc: Jeff Bender

   I have reviewed the two files you have sent to IXC. The first file was the change order uploaded on 8/28/96 for approximately 7000 orders with a PIC status of yes. Most of these have been completed with the LEC and show a complete status. Approximately 180 orders were rejected for a variety of reasons. We will review these together next week. The second file for approximately 3000 orders that was sent on 8/29/96 now have a pending status. These orders should move to either complete or reject early next week.
   I believe you are doing a good job of uploading your orders and everything should go smoothly from this point forward.

Sincerely,
Tom Browning



**IXC** IXC LONG DISTANCE, INC.
98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4038
(512) 433-3500                              FAX (512) 433-3555

## - Memorandum -

**Date:**      Friday, September 06, 1996

**To:**        Dr. A. Muhammad Mahdi
**CC:**        Vincent Albanese

**From:**      Jeff Bender

**Subject:**   Revenue and Order Update

Attached please find the minutes/revenue report for September 1 - September 5. According to this report, BFIC has over $6,000 in usage for the first (5) days of the month.

IXC OnLine shows 11,793 Accepted ANI's, 1,132 Pending, and 1,757 Rejected ANI's. The concern here, is that some of the accepted orders show a "No PIC" status and some show "PIC." All orders sent to us should be for a "Yes" PIC in the batch file. Please confirm this is the case will these and all subsequent files.

I am planning to be at your location on Tuesday, September 10 to discuss your account and ensure your satisfaction as we move forward.

I will continue to update you on BFIC's activity through this report each week.

CORPORATE OFFICES:
IXC COMMUNICATIONS, INC
5000 PLAZA ON THE LAKE
SUITE 200
AUSTIN, TEXAS 78746-1050

(512) 328-1112, FAX (512) 328-4717



DEFENDANT'S
EXHIBIT

BFIC 009049

OCT 04 '96 15:25 FR :        .:AL :CAT:ONS    714 548 0928 TO    1969038428        P.01.01



**IXC LONG DISTANCE, INC**
98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4039
(512) 433-3500                          FAX (512) 433-3555

Friday, October 04, 1996

Dr A. Muhammad Mahdi
BFIC Building Futures in Communications
. 650 Miramar Rd.
Suite 100
San Diego, CA  92012

Dear Dr. Mahdi:

After extensive discussions with Maxine in Customer Care, Tom Browning and the MIS, it has come to our attention that BFIC has not sent a batch file of significant size since September 15.  Below you will find the date each batch file was received for processing, and the estimated number of orders:

| | |
|---|---|
| October 4 | Received at 11:30 CST, order size unknown until 10/5 |
| October 1 | (21) orders |
| September 19 | (17) orders |
| September 18 | (109) orders |
| September 17 | (15) orders |
| September 15 | (2,229) orders |
| September 11 | (8,829) orders |

Has BFIC sent more ANI's according to your records?  Please verify with your order processing department.  IXC will not be held to a timeline for ANI processing that does not correlate with actual orders waiting to be processed in the upload directory.

In addition, IXC provides the CDR Distribution report for your convenience only.  If you question the figures provided in the report, or its delivery, IXC has provided BFIC with the tools to query accounts.  IXC OnLine will detail all BFIC orders, and Greg knows how to convert this information to FoxPro for verification of minutes and usage.

I have yet to receive any documentation on the SSC billing issue.  This informa. on is critical in tracking activity related to your account.

Sincerely,

Jeff Bender
IXC COMMUNICATIONS

CORPORATE OFFICES:
IXC COMMUNICATIONS, INC.
5000 PLAZA ON THE LAKE
SUITE 200
AUSTIN, TEXAS 78746-1030

(512) 328-1112, FAX (512) 328-4717

EXHIBIT
26

10-17-97
EXHIBIT NO. 26-M

Exhibit 19C

BFIC           Query3                                    9/25/96

| STATUS | COUNT |
|---|---|
| C | 21590 |
| P | 1060 |
| R | 7988 |

IXCLD 004312

Exhibit-18C

BFIC - 15   Service   Query3

9/25/96

| Status | Count |
|--------|-------|
| C | 3841 |
| P | 1318 |
| R | 3861 |

Discovery

Page 1
DEFENDANT'S
EXHIBIT
VVVVVV

IXCLD 004311

*E. Exhibit 121*



## IXC LONG DISTANCE, INC.
98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4039
(512) 433-3300                                    FAX (512) 433-3555

# BFIC
## ORDER STATUS BY ANI
## AS OF SEPTEMBER 12, 1996

Completed and Billing:        987

Pending (including LEC):      5,839

|       |                        |
|-------|------------------------|
| 3,875 | Less than (5) days old |
| 857   | (5) days to (10) days  |
| 1,079 | (11) days to (20) days |
| 28    | (21) days to (30) days |
| 0     | (31) days to (90) days |

DePICs*            83

*These are previous customers that have switched away from BFIC to date.

*Depics Are customers That have Switch Back
to Their previous carrier for varies Reason
only 83 customers have Left The Network
Exhibit-18 10,000 customer And Exhibit on-6 12,000
customers have been Left Out This Report*

CORPORATE OFFICES:
IXC COMMUNICATIONS, INC.
5000 PLAZA ON THE LAKE
SUITE 200
AUSTIN, TEXAS 78746-1050

(512) 328-1112, FAX (512) 328-4717

BFIC009960

# Payment History

| Date | Activity Description | Charges | Payments & Adjustments | Balance |
|---|---|---|---|---|
| 10/03/96 | Debit Invoice # - 000016 | 492.49 | | 492.49 |
| 11/05/96 | Debit Invoice # - 000035 | 14,484.68 | | 14,977.17 |
| 11/27/96 | Payment Check # - 001714 - Thank You | | 14,484.68 | 492.49 |
| 11/27/96 | Payment Check # - 001715 - Thank You | | 492.49 | 0.00 |
| 12/10/96 | Debit Invoice # - 000053 | 27,362.88 | | 27,362.88 |
| 01/09/97 | Debit Invoice # - 000077 | 63,905.49 | | 91,268.37 |
| 01/24/97 | Payment Check # - 002255 - Thank You | | 27,362.88 | 63,905.49 |
| 02/07/97 | Debit Invoice # - 000101 | 149,292.12 | | 213,197.61 |
| 03/04/97 | Payment Check # - 002682 - Thank You | | 63,905.49 | 149,292.12 |
| 03/12/97 | Debit Invoice # - 000150 | 96,418.43 | | 245,710.55 |
| 03/14/97 | Payment Check # - 002761 - Thank You | | 40,000.00 | 205,710.55 |
| 04/10/97 | Debit Invoice # - 000160 | 74,588.11 | | 280,298.66 |
| 05/06/97 | Debit Invoice # - 000214 | 75,498.73 | | 355,797.39 |
| | Total : | $502,042.93 | $145,245.54 | $355,797.39 |

12/09/96  MON 14:31 FAX                    IXC COMMUNICATIONS ˜                        ☑00:

*Exhibit-19A*

 5000 PLAZA ON THE LAKE, SUITE 200, AUSTIN, TEXAS 78746-1050
(512) 328-1112                              FAX (512) 328-9171

December 9, 1996

Via Fax: 619-693-6428

Building Futures in Communications, Inc.
7060 Miramar Rd.  Suite 100
San Diego, CA. 92121

Dear Dr. Mahdi:

Pursuant to the terms of the Telecommunications Service Agreement dated April 19, 1996, between IXC Long Distance and Building Futures in Communications, Inc., Section 12 titled: Suspension of Service: Termination of Agreement, IXC gives notification of Payment Default as stipulated by the above referenced Contract Provision.

IXC must receive payment in full of $256,393.67 within 5 days from the date of this notice, or IXC may utilize whatever remedies that may be necessary as stated in the Service Agreement including but not limited to withholding of CDR, interruption of service, or termination of service.

Sincerely,

D. Farrar

Doug Farrar
Credit Manager

cc:  John Fleming
     John Willingham
     Lynn McNeill
     Jeff Bender

RECEIVED
DEC 1996
BY:

BFIC 007055

*Exhibit 20*

 **BANK OF OKLAHOMA** N.A.

Bank of Oklahoma Tower
P O Box 2300
Tulsa, Oklahoma 74192

Alan R. Aaron, CCM
Vice President & Manager,
Sales and Consulting
Phone 918 588-6177

September 23, 1996

Dr. A. Mohammad Mahdi
BFIC, Inc.
7060 Miramar Road, Suite 100
San Diego, CA 92121

Dear Dr. Mahdi:

We are pleased to learn of your plans to utilize Bank of Oklahoma's lockbox services. Accordingly, enclosed is the requisite paperwork for opening account 208310590 in the name of BFIC, Inc.

The account will be the depository account for remittances received at the following address:

> BFIC, Inc.
> Department 1195
> Tulsa, OK 74182

Finally, enclosed is a Lockbox Proposal and sample Lockbox Letter of Instructions; please prepare a similar Letter of Instructions outlining the procedures we should follow in processing BFIC remittances. The proposal includes a Price Schedule which details the applicable charges for the lockbox processing.

I understand that the lockbox and escrow services must be in place in relatively short order. Accordingly, Worldcom's Credit Department asked that the enclosed paperwork be completed and returned to me no later than Friday, September 27, 1996.

We look forward to assisting you and BFIC with your banking needs. If you have any questions or if we may be of further assistance in the meantime, please don't hesitate to call.

Sincerely,

Alan R. Aaron
Treasury Services

ARA/bhs

Enclosures

cc:   Kirk Bartgis
      Worldcom
      One Williams Center
      Mail Drop F18
      Tulsa, OK 74172

SUBPOENA PROCSSING DEPARTMENT    DECLARATION OF CUSTODIAN OF RECORDS

RE: SUBPOENA DUCES TECUM ISSUED 9/9/99 AND COURT ORDER OF 9/27/99
CASE NUMBER SCD143555
DATED SERVED 9/17/99 AND COURT ORDER DURING HEARING OF 9/27/99



F I L E D
KENNETH E. MARTONE
Clerk of the Superior Court

SEP 3 0 1999

TRUDY S. MARSHALL
By: _____ Deputy

Honorable John L. Davidson
Judge of the Superior Court
Department 22
220 West Broadway
San Diego, CA 92101

I Rae Nishimura, declare:

I am employed by Bank of America ("the Bank") at the Subpoena Processing Department and am a duly authorized custodian of records. I certify the authenticity of the records produced with this declaration. These records were prepared by the personnel of the Bank in the ordinary course of business at or near the time of the act, condition or event to which the records pertain.

I am responding to the subpoena served on the Custodian of Records of the Bank on September 17, 1999 relating to Abuwi Mahdi and to the Court Order of September 27, 1999.

Items necessary for compliance may have been limited as indicated in the box(es) indicated below.

[ x ]  The records enclosed are true copies of only part of the records in the custodian's possession described in the legal order indicated above.

[ x ]  The Bank is unable to locate the following records described in the above referenced legal order:
       Account under the name of ...BFI Communication, Inc.
       Account under the name of ...BFI Communication, Inc AKA BFIC Inc.

[ x ]  Account number 0173-05559 requested in the Subpoena Duces Tecum dated 9/9/99 was incorrect. At the Court Hearing the correct account number of 01703-05559 was received. The account is under of the name of Copy Cove of La Jolla as identified during the Court Hearing. According to Bank records Abuwi Mahdi was not an owner of the business nor an authorized signer on the account from 1994 to present.

Pursuant to the court's direction an estimated volume of the activity of the account is
       From 1/1/94 to 12/29/95          approximately 2,035 checks
       From 1/31/96 to 8/31/99          approximately 3,825 checks

Production of these checks will commence upon further order of the court.

Copies of the signature card for account 01704-13181 and account 01703-05559 are attached to this declaration.

I am familiar with the mode of preparation of the enclosed records. They were prepared as follows:
Signature Cards: the customer whose name appears on the signature card submitted the form to the Bank to open deposit account(s). The customer provided information which was relied upon by the Bank. The customer signed the form. The signature card was stored at and retrieved from the branch or office at which the account(s) are maintained.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 30th day of September 1999 in the City of Los Angeles, in the State of California.

Rae Nishimura
Operations Manager

MISC-4641  9-82

## FACSIMILE TRANSMITTAL SHEET

| TO: ATTN: TRUDY MARSHALL, CLERK TO | FROM: |
|---|---|
| Honorable John L. Davidson | Rae Nishimura |
| Judge of the Superior Court | Operations Manager |

| COMPANY: | DATE: |
|---|---|
| Department 22 | 09/30/99 |
| 220 West Broadway | |
| San Diego, CA 92101 | |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| (619)531-4017 | 2 |

| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
|---|---|

| RE: | YOUR REFERENCE NUMBER: |
|---|---|
| Declaration of Custodian of Records | |

Copy of my DECLARATION OF CUSTODIAN OF RECORDS per phone conversation 9/29/99.
Original declaration with copies of signature cards sent via overnight mail today.

1  BY DEFENDANT MAHDI:

2       Q    SO YOU ARE STATING TO THE COURT, IN THE PRESENCE

3  OF PAT BROMLEY ON THE CORPORATE DOCUMENTS, WE WENT BEFORE HIM

4  AND OPENED UP A CORPORATE BANK ACCOUNT; IS THAT CORRECT?

5       A    THE NAME WAS CHANGED TO B.F.I.C.

6       Q    SO THE NAME WAS CHANGED TO B.F.I.C.

7  COMMUNICATIONS?

8       A    YEAH, BECAUSE WE HAD INCORPORATED THE COMPANY.

9       Q    SO THE NAME WAS CHANGED WITH A CORPORATE SEAL,

10  CORPORATE DOCUMENTATION.  WE OPENED UP A CORPORATE BANK

11  ACCOUNT?

12       A    RIGHT.

13       Q    AT THAT POINT WAS A PERSONAL ACCOUNT ABUWI MAHDI

14  REMOVED?

15       A    I DON'T KNOW ABOUT THAT.  YOU WILL HAVE TO ASK

16  THE BANK.

17       Q    WERE YOU RESPONSIBLE FOR THAT?

18       A    I DIDN'T ASK THEM TO MAKE IT OR CHANGE IT FROM

19  BUSINESS TO --

20       THE COURT:  I THINK THE POINT FROM MR. USMAN IS

21  WELL-TAKEN.  YOU WILL NEED TO ASK THE BANK THAT QUESTION.

22  BY DEFENDANT MAHDI:

23       Q    MR. USMAN, SO YOU ARE STATING TO THE COURT NOW

24  THAT WHEN WE OPENED UP THIS CORPORATE BANK ACCOUNT, DID THE

25  CORPORATE BANK ACCOUNT KEEP THE SAME ACCOUNT NUMBER?

26       A    YES.

27       Q    SO THIS WAS B.F.I.C. CORPORATE BANK ACCOUNT?

28       A    RIGHT.

*Exhibit 'E'*

(MARKED FOR ID:  DEFENSE 'E' - DOCUMENTS RE TEXAS BANK OF COMMERCE, FIVE PAGES)

THE COURT:  FIRST, WITH RESPECT TO DEFENSE EXHIBIT 'D', MR. USMAN, WOULD YOU LOOK AT THAT DOCUMENT AGAIN AND TELL ME WHAT THAT IS.

THE WITNESS:  YEAH.  THIS IS -- THIS WAS IN FRONT OF THE NOTARY PUBLIC.  MY NAME IS THERE.  AND, AGAIN, MY NAME HAS BEEN WRITTEN BY SOMEBODY ELSE OVER HERE (INDICATING).  THERE'S NO SIGNATURE OF MINE ON THIS.

THE COURT:  DO YOU RECOGNIZE THOSE DOCUMENTS?  DO YOU RECOGNIZE THE DOCUMENTS?

THE WITNESS:  YEAH, I RECOGNIZE THESE DOCUMENTS.

THE COURT:  ALL RIGHT.  GO AHEAD, MR. MAHDI.

BY DEFENDANT MAHDI:

Q.    THOSE ARE THREE BANK -- LOCK BOX BANK ACCOUNTS THAT WAS OPENED UP IN B.F.I.C. COMMUNICATIONS' NAME; IS THAT CORRECT?

A.    YES.

Q.    OKAY.  THOSE LOCK BOX BANK ACCOUNTS THAT YOU OPENED UP, WHERE ARE THE BANK STATEMENTS TO THOSE DOCUMENTS?

A.    I HAVE NO IDEA.  YOU HAVE ALL THE PAPERWORK.

Q.    SO YOU'RE TELLING THE COURT THAT THE BANK STATEMENTS FROM THOSE PARTICULAR BANK ACCOUNTS --

A.    YEAH.

Q.    -- THAT I HAVE IN MY POSSESSION, THAT -- IS THAT CORRECT?

A.    YOU WERE THE CONTACT PERSON.

Q.    IS THAT CORRECT?

THE COURT:  MR. MAHDI, DON'T --

THE WITNESS:  I THINK THIS DOCUMENT WAS SIGNED IN THE
PRESENCE OF THE NOTARY REPUBLIC AND YOU AND I BOTH WENT TOGETHER
TO THIS GET THIS SIGNED.

BY DEFENDANT MAHDI:

        Q.    WHY ARE --

        THE COURT:  LET'S DO THIS, BECAUSE THE RECORD IS UNCLEAR,
MR. MAHDI.

        DEFENDANT MAHDI:  NO, THE RECORD IS CLEAR.

        THE COURT:  I WANT TO MARK THAT LAST DOCUMENT AS DEFENSE
EXHIBIT 'D' FOR IDENTIFICATION.  THE ONE YOU'RE REFERRING TO,
WE'LL MARK THAT.

        THE WITNESS:  YOU AND I BOTH WENT TOGETHER TO GET THIS
SIGNED BECAUSE --

        DEFENDANT MAHDI:  OKAY.

        THE COURT:  THAT'S A LOCK BOX AGREEMENT.  THAT'S MARKED
DEFENSE EXHIBIT 'D'.


                (MARKED FOR ID:  DEFENSE 'D' - LOCK BOX AGREEMENT)


        THE COURT:  DO YOU WANT TO GO AHEAD AND IDENTIFY THE
OTHER TWO DOCUMENTS YOU HAVE BEFORE YOU, SIR?

        DEFENDANT MAHDI:  THAT'S JUST ONE DOCUMENT.  THAT'S A
THIRD PARTY --

        THE COURT:  MR. USMAN, WHAT'S THE TOP DOCUMENT THAT YOU
HAVE THERE FROM THE COMMERCE BANK?  WHAT IS THAT?

        THE WITNESS:  BANK OF COMMERCE.  AND HE WAS --

        THE COURT:  ALL RIGHT.  WE'LL MARK THAT AS DEFENSE
EXHIBIT 'E', ALL THOSE DOCUMENTS.



**BANK OF OKLAHOMA** N.A.

Bank of Oklahoma Tower
P. O. Box 2300
Tulsa, Oklahoma 74192

January 11, 1999

BFIC, Inc.
Attn: Adib K. Mahdi
7060 Miramar Road, Suite 100
San Diego, CA 82121

Re:    WorldCom Network Services, Inc dba Wiltel / BFIC, Inc. / Digital
       Communications of America / Zero Plus dialing, Inc. Escrow Agreement

Dear Mr. Mahdi:

The above referenced account was closed on December 7, 1998.

Thank you for giving us the privilege of serving BFIC, Inc. It has been a pleasure doing
business with you.

Please do not hesitate to call if we can be of any further assistance to you.

Sincerely,

Cyndi Wilkinson
Vice President
Corporate Trust Department

CW/sg

*I have no knowledge of this Bank Account. Exhibit-BB is escrow Agreement that plaint sign. Exhibit 17A is Bank statement showing the account close Feb 97. US31 Billing Data showing $1,425, collected Billing. $21,970 per month un accountable. This Account may have received this funding.*

**BANK OF OKLAHOMA** N.A.

Bank of Oklahoma Tower
P.O. Box 2300
Tulsa, Oklahoma 74192

---

JAN 12 99

$ 0.33
U.S. POSTAGE

---

BFIC, Inc.
Attn: Adib K. Mahdi
7060 Miramar Road, Suite 100
San Diego, C

RE10060
NOTIFICATION
7060 MIRAMAR RD TH
SAN DIEGO CA 92101-5311

REDIRE0040 1378 15 01/15/99
SENDER OF NEW ADDRESS

3212X2347  02

BOK-6077

 **BANK OF OKLAHOMA** N.A.

Bank of Oklahoma Tower
P. O. Box 2300
Tulsa, Oklahoma 74192

September 27, 1999

San Diego Superior Court
Attention: Trudy Marshall
220 West Broadway, Dept. 22
San Diego, CA 92101

Re: Dr. A. Mohammad Mahdi regarding account in the name of BFIC, Inc.

Dear Ms. Marshall:

Bank of Oklahoma has no records to indicate that an account was ever opened in the name of BFIC. Inc.

If you need additional information, please do not hesitate to contact me.

Yours truly,

Andrea Martin
Administrative Assistant

cc: Dr. Mohammad Mahdi
cc: Alan R. Aaron, SVP





**Billing Concepts ®**

| DATE: | August 27, 1998 |
|---|---|
| TO: | DR. MAHDI |
| COMPANY: | B.F.I.C. |
| PHONE: | 619-744-1900 |
| FAX: | 619-744-1900 |
| FROM: | Patti Meznarich |
| COMPANY: | Billing Concepts |
| PHONE: | 210-949-7130 |
| FAX: | 210-692-1489 |
| TOTAL PAGES: | 22 |
| (including cover) | 23 |

**MESSAGE**: *Dr. Mahdi, following is when you shipped your first records on Library Codes JX, MD and MS:*

*JX – August 14, 1996 – ZP681470/BF0001*
*MD – October 11, 1996 – ZP6A1119/BF1096*
*MS – December 14, 1996 – ZP6B1405/BFICMS*

*I do not have information available on what an average long distance bill in America is.*

*I am sending the call detail from our customer service calldb on the bill samples you faxed me. The backup shows that these records were, in fact, billed under your library codes. The five numbers I have x'd do not show any billing by you in our system.*

*I have attempted to fax this information without success so I have chosen to send via mail.*

*pm*

Cvhibit 25

# DR. A. MUHAMMAD MAHDI
## Chairman/Founder, BFI Communications, Inc. (BFIC)

APR 23 1997



Dr. Mahdi has marketed one of the most successful long distance Affinity Group Programs in the history of the Telecommunications Industry. This revolutionary program generated $1 Million in monthly billings the first 10 days; over 20 different national and international charities benefited financially from these efforts. Dr. Mahdi has been recognized by leaders nationally and internationally for his extensive and humanitarian works and accomplishments in the Middle East and Africa. His business environment consists of U.S. and foreign manufacturers/service companies in the development of business for effective technology transfer of developing nations.

On February 1, 1997, Dr. Mahdi was selected by the City of San Diego to be honored by The Museum of San Diego History. He was selected for his dedication and commitment to social and economic development in the City of San Diego, the Nation, and throughout the world. This exhibit is now in the City of San Diego Archives on permanent display at the Museum of San Diego History, Balboa Park.

For over 13 years as Business Manager for Muhammad Ali and Special Consultant to the Muhammad Ali Foundation, he initiated, received and developed contact with heads of state, government and religious leaders nationally and internationally, and the Who's Who of the business world in over 150 cities worldwide. As spokesman for Mr. Muhammad Ali and the Muhammad Ali Foundation with the print media, radio and television, Dr. Mahdi has been recognized by the United States Government as a "Foreign Affairs Expert."

Upon recommendation from President Ronald Reagan, under the direction of then Vice-President George Bush, Dr. Mahdi led a delegation to Beirut, Lebanon to successfully negotiate saving the lives of the seven American hostages. Dr. Mahdi was again asked by the US Government to participate in the TWA Hostage crisis, also in Beirut, in which he sucessfully negotiated with the Israeli Government for the release of over 200 detainees in Israel. Dr. Mahdi organized an American Business delegation in the Middle East to present a $5 Billion Goodwill Investment Package after the Gulf War with American Express and other US companies. This delegation had the endorsement of Senator Bob Dole, Senator Orrin Hatch, Senator Alan Simpson and other US Congressmen.

Dr. Mahdi was involved in the cease-fire negotiations between leaders of the Sudan and the Rebel leaders in the south. This cease-fire allowed World Vision (one of the largest relief organizations in the World), and other Relief organizations, to deliver 20 tons of food and supplies to 8 million starving Sudanese. Dr. Mahdi volunteered on behalf of the US Government to lead a delegation to Iraq. There, he met with President Saddam Hussein and negotiated the release of 45 Americans being held hostage in Iraq prior to the Gulf War.

Upon request from the Ministry of Telecommunications of Sudan, Dr. Mahdi raised investment moneys to develop the telecommunications infrastructure of Sudan, as well as the Horn of Africa. He was able to bridge communication between business, religion and government – both nationally and internationally. His extensive contacts and experience in bilateral negotiations are solid assets for the executive oversight an direction of BFIC and the Muslim Communication Network.

BFIC 009071

# BFIC FOUNDERS BACKGROUND



Goodwill investment delegation to Middle-East (L-R) Senator Simpson, Senator Orrin Hatch, Muhammad Ali, Senator Dole, Jabir Muhammad, & Dr. Muhammad Mahdi.



Cease fire negotiation and delivery of 20 tons of food to 8 million starving Sudanese. (Government officials & Dr. Muhammad Mahdi)



Israel Representative, Muhammad Ali, Jabir Muhammad, & Dr. Muhammad Mahdi. Delegation arriving Jerusalem seeking the release of 700 Muslims being held at Atlit prison.

صلى في بئر العبد وعقد مؤتمراً صحافياً
محمد علي: انتظر اتصالاً
من خاطفي الاميركيين الأربعة





Muhammad Ali autographs a copy of "Prayer and Al-Islam," an Islamic prayer book, for Gov. Harry Hughes.



Negotiation on behalf of the TWA hostage crisis in Beirut (L-R) Dr. Muhammad Mahdi, Muhammad Ali, PLO Representative, & Jabir Muhammad









Exhibit 26

DEPARTMENT OF JUSTICE
BUREAU OF IDENTIFICATION
P.O. BOX 13417, SACRAMENTO

FBI# 42 862 H
SN# 429 98 5264
OL# AR72204 ARK.
OL# N-570346

**The following CII record, NUMBER**   4 128 480

**IS FOR OFFICIAL USE ONLY**

13 S 5 R 010 15
1 9 R 001 14

NEGRO 6-3 135 ARK. 4-15-1950

HIGGINS, RICHARD LEE

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| | | | | |
| *9-6-69 | PD LITTLE ROCK,ARK. 18172 | RICHARD HIGGINS | CARRYING WPN. | $10.50. |
| *9-13-69 | PD LITTLE ROCK,ARK. 18172 | RICHARD LEE HIGGINS | SHPLFT. | *$53.50 AND 30 DS. SUSP. |
| *12-9-69 | SO LITTLE ROCK,ARK. 20169 | RICHARD LEE HIGGINS | PSP | |
| *12-9-69 | PB LITTLE ROCK,ARK. 18172 | RICHARD LEE HIGGINS | PSP | |
| *1-22-70 | PD LITTLE ROCK,ARK. 19337 | RICHARD LEE HIGGINS | ROBB | PASSED INDEFINITE. |
| *-15-70 | SO SAN DIEGO 436 384 | RICHARD LEE HIGGINS | UNAUTH. COMMUNICATION W/PRISONER | |
| 5-13-76 | ST.DEPT.REAL ESTATE, SACRAMENTO 556326 | RICHARD LEE HIGGINS | APP.LIC. | |

**ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.**

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
BUREAU OF IDENTIFICATION
P. O. BOX 13417, SACRAMENTO

SN# 430 90 9343
FBI# 340 828 G
SN# 420 90 9543
SN# 430 90 9345

SN# 430 90 9342
SN# 560 76 3493
IS FOR OFFICIAL USE ON
SN# 560 76 3494

SN# 430 29 9346

The following CII record, NUMBER    3 780 042

(1)  13  M  1  U  III  6
(7)      S  1  U  III  10    M  N  BLK  BRO  5-10  140  TX  7-3-1950

DANIELS:  JACK LEE

69T

ALIAS:  ALVIN LEE HIGGINS;  MICHAEL C. JOHNSON;  ALLEN CARTER;  ROBERT CARTER;
RICHARD LEE HIGGINS;  ELROY JAMES BRADFORD;  EVERETT CHARLES WOFFORD; JAMES CALVIN HIGGINS;
ELROY BRADFORD;  ALLEN HICKS;

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| *1-7-68 | PD LITTLE ROCK,AR 17736 | ALVIN LEE HIGGINS | 1)BURG 2)GL | 3 YRS BURG,3 YRS GL RUN CC W/SO |
| *1-7-68 | SO LITTLE ROCK,AR 19501 | ALVIN LEE HIGGINS | 1)BURG 2)GL | 3 YRS BURG,3 YRS GL RUN CC |
| *3-27-68 | PD LITTLE ROCK,AR 17886 | ALVIN LEE HIGGINS | 1)BURG 2)GL | BOTH CTS $10.50,EA, PD |
| 4-26-69 | PD SAN DIEGO 318257 | JACK LEE DANIELS | 1)AUTO THEFT 2)TAMP W/VEH 3)CAR PROWL 4)PT | 4-27-69,CTS.1&2,REL ASCERT EVID INSUFF; 12-15-69,484 PC,"S" DISM,INSUFF EVID |
| 5-10-69 | PD SAN DIEGO 318257 | JACK LEE DANIELS | VISIT GAMB | |
| 11-15-69 | SO SAN DIEGO 411763 | JACK LEE DANIELS | PT (ARR.BY USM) | |
| 3-30-70 | USM SAN DIEGO 10509 | ALVIN LEE HIGGINS | 50 USC 462 FAIL REPRT F/INDUC US ARM FORCES | |
| 9-70 | PD SAN DIEGO 318257 | JACK LEE DANIELS | 1)TRANS DANG DRG 2)POSS DANG DRG | 7-21-70,#CR21257; 11912 H&S,NOT CHG SUP CRT;11910 H&S, "J" PG,2 YRS PROB; 7-14-71,PROB REVKD; 6-26-76,PROB REINST & TERM |

CONT. PAGE 2

ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
## BUREAU OF IDENTIFICATION
P.O. BOX 13417, SACRAMENTO

**The following CII record, NUMBER**     3 780 042                    **IS FOR OFFICIAL USE ONL**

## PAGE 2

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| *12-23-70 | PD TEXARKANA,AR 19690 | ALVIN LEE HIGGINS | 1)BURG 2)GL | PROB REVKD;TOT CO |
| *1-15-71 | PD BRINKLEY,AR | ALVIN LEE HIGGINS | 1)BURG 2)PL | GLTY FN.$150. & $25.50 C |
| *1-27-71 | SPEN GRADY, AR 61818 | ALVIN LEE HIGGINS | 1)BURG 2)GL | TERM: 3 YRS 1-28-73,DISCH EXP |
| *2-7-74 | PD LITTLE ROCK,AR 17736/370-977 | ALVIN LEE HIGGINS | 1)ARM ROBB 2)ASLT TO KILL | |
| 1-26-76 | SO SAN DIEGO 791173 | MICHAEL C. JOHNSON | 488 PC  PT (ARR.BY PD SAN DIEGO) | 2-20-76,#M198960,JD 37480;CONV 416 PC, PG,IMP SENT SUSP,2 DS JL,CTS 2 DS,3 YR PROB |
| 9-22-76 | SO SAN DIEGO 836024 | ALLEN CARTER | 496.1 PC RSP (ARR.BY PD EL CAJON) | 10-3-76;REL.849.5 PC,DET ONLY |
| 11-29-76 | PD LOS ANGELES 1510885/4156481 | ROBERT CARTER | 11350 H&S POSS CONT SUB FEL | |

CONT. PAGE 3

**ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.**

26

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
BUREAU OF IDENTIFICATION
P. O. BOX 13417, SACRAMENTO

The following CII record, NUMBER       3 780 042       IS FOR OFFICIAL USE ONLY

PAGE 3

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| 12-15-76 | SO SAN DIEGO 852 626 | ROBERT CARTER | 1)10851 VC UNLAW TAKE VEH 2)211 PC ROBB 3)459 PC BURG 4)496.1 PC RSP 5)653K PC POSS SWITCH- BLADE 6)12025 PC CCW W/O LIC 7)12031A PC CARRY LOAD GUN | 8-3-77,#E36644,JD #37460,10851 VC, 459,484/488, 664/484/488 PC,"A" DISM,FURTH JUST. CONV.653K PC,PG, 180 DS.JL,1 DA SUSP |
| 7-2-77 | CO.PROBATION DEPT SAN DIEGO  CR-41088 | JACK LEE DANIELS | 496.1 PC RSP | 8-26-77,2 YRS PROB, YR CUST,RESTN. 8-25-79,EXP. |
| 7-3-77 | SO SAN DIEGO 894 118 | ALVIN LEE HIGGINS | 211 PC ROBB (ARR.BY PD SAN DIEGO) | |
| 7-6-77 | SO SAN DIEGO 1894118 | ALVIN LEE HIGGINS | 484F.2 PC FORG CRED CARD | 7-29-77,#F50833 JD#37480,484F(2) PC 484F(2) PC,(AM'D),FE "A",DISM,FURTH JUST IN VIEW OF PLEA TO 496.1 PC FEL 8-26-77,#CR 41088 JD#37100,496.1 PC, 24 MOS FORM PROB. 365 DS.JL,CTS.520S RESTN.$277.13 |

CONTINUED PAGE 4

ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

## BUREAU OF CRIMINAL IDENTIFICATION
P.O. BOX 13417, SACRAMENTO

The following CII record, NUMBER          3 780 042          IS FOR OFFICIAL USE ONLY

PAGE 4

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| 4-6-78 | SO SAN DIEGO 2911569 | ALVIN LEE HIGGINS | 1551.1PC,FUG (AR) | 4-17-78,#F54713,JD#374 FUG.EXTRADITION,DEFT. PICKED UP BY DEMAND. STATE,NO FURTH ACTION. |
| 5-3-86 | SO SAN DIEGO 86-135649A | ALVIN LEE HIGGINS | 459PC,BURG 2ND DEG. (ARR BY PD NATIONAL CITY) | 5-6-86,#S11261;JD#37485 459PC,MISD,DISM,GLTY OTH CHG/CASE; 484-488PC,MISD PG,24MOS PROB;5DS JL |
| 5-7-86 | SO SAN DIEGO 86 135649 B | ALVIN LEE HIGGINS | 1551.1PC,FUG., (AR) | 5-22-86,#F96592;JD#37480 DISM, DEFT EXTRADITED |
| 11-16-87 | SO SAN DIEGO 87 206941A | RICHARD LEE HIGGINS | 11550 H&S(UND INFL CONT SUB) (ARR BY PD SAN DIEGO) | |
| 12-24-87 | SO SAN DIEGO 87220538A | ELROY JAMES BRADFORD | 1)488 PC,PT 2)11550(A)H&S UND INFLU CONT SUB (ARR BY PD SAN DIEGO) | 5-23-93,#M545525,JD# 37480,484/488PC,MISD, DISM 7-5-93,#M547633,JD# 37480,11550H&S,MISD, DISM |
| | | CONTINUED PAGE 5 | | |

ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
# BUREAU OF CRIMINAL IDENTIFICATION
P.O. BOX 13417, SACRAMENTO

The following CII record, NUMBER      3 780 042      **IS FOR OFFICIAL USE ONLY**

PAGE 5

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| 1-22-88 | SO SAN DIEGO 88-107852A | ELROY JAMES BRADFORD | 459 PC,BURG 1ST DEG (ARR BY PD NATIONAL CITY) | |
| 2-10-88 | SO SAN DIEGO 88-114792A | ALVIN LEE HIGGINS | 666PC,P.T. W/FR. (ARR BY PD SAN DIEGO) | 10-24-88,#F109720,JD# 57430,666/484PC,DISM. GLTY OTH CHARGE. |
| 3-20-88 | SO SAN DIEGO 88-129088A | EVERETT CHARLES WOFFORD | 459PC,BURG 2ND DEG (ARR BY PD SAN DIEGO) | 3-21-88, 459 PC, RELSD 849B(1) PC DEEMED NOT ARR; DET ONLY; ADMISS EVID INSUFF |
| 5-10-88 | SO SAN DIEGO 88-145819A | JAMES CALVIN HIGGINS | 1)459PC,BURG 2)487.1PC,GT/PROP 3)529.3PC,FLSE PERSONATE 4)485PC,APPROPRIATE LOST PROP (ARR BY PD LA MESA) | |

CONTINUED PAGE 6

ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

# BUREAU OF CRIMINAL IDENTIFICATION

P.O. BOX 903417, SACRAMENTO  94203-4170

The following CII record, NUMBER                3 780 042                                    IS FOR OFFICIAL USE ONLY

PAGE 6

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| 6-15-88 | SO SAN DIEGO 88-155954A | ELROY BRADFORD | 1.459PC,BURG 2ND DEG 2.602(L)PC, TRESPASS 3.148.9PC,FALSE ID OFFICER. | 11-16-89,#C84296,JD37448 459PC,602(L)PC & 148.9PC DISM.GLTY OTH CHG/CASE |
| 6-17-88 | SO SAN DIEGO 88-155954B | ELROY BRADFORD | #C80582 488PC,P.T. | |
| 8-1-88 | SO SAN DIEGO 88-168956A | ALLEN HICKS | 1) 10851 VC UNLAW TAKE VEH 2) 12025(A) PC CCW VEH W/O LIC 3) 12031(A) PC CARRY LOAD GUN (ARR BY PD SAN DIEGO) | 8-10-88,#F115133,JD37488 496.1PC,12031(A)PC & 12025(A)PC DISM.GLTY OTH CHG/CASE; 10851(A)VC,FEL PG,CERT SUP CRT; 9-14-88,#CR97378,JD37100 36MOS PROB,RESTN. 11-3-89,PROB REVKD,2YRS ST PRIS |
| 10-12-88 | SO SAN DIEGO 88 188690A | JAMES CALVIN HIGGINS | 459 PC BURG 2ND DEG (ARR BY PD SAN DIEGO) | 10-24-88,#F116672,JD 37480 459PC FEL PG,CERT SUP CRT;11-18-88, #CR99301,JD37100 60MOS PROB,270DS JL;RESTN.FN CC W/#CR97378 |
| | | CONTINUED PAGE 7 | | |

ENTRIES INDICATED BY ASTERISK (*) ARE NOT VERIFIED BY FINGERPRINTS IN CII FILES.

26

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE

# BUREAU OF CRIMINAL IDENTIFICATION
P.O. BOX 903417, SACRAMENTO  94203-4170

The following CII record, NUMBER      3 780 042      IS FOR OFFICIAL USE ONLY

PAGE 7

| ARRESTED OR RECEIVED | DEPARTMENT AND NUMBER | NAME | CHARGE | DISPOSITION |
|---|---|---|---|---|
| 10-19-88 | SO SAN DIEGO 89-188690B | JAMES CALVIN HIGGINS | WRT#F109720 1520(B)/666 PC, 2CNTS. | REFER TO 2-10-88 ENTRY |
| 9-17-89 | SO SAN DIEGO 89-176018A | RICHARD LEE HIGGINS | 1. 459 PC BURG, 2ND; 2. 528,3 PC FLSE PERSONATE (ARR BY PD CHULA VISTA) | 9-29-89,529.3PC DA/CA REJ;LACK OF CORP 12-19-89, #CR107878,JD371 487.1PC,FEL,148.9(A)PC, DISM.GLTY OTH CHRG/CASE; 459PC,FEL,PG,2 YR TT ST PRIS'' |
| 9-22-89 | SO SAN DIEGO 89-177272A | ALVIN HIGGINS | 1)459.1PC,BURG. 2ND.,2CNTS 2)10851 VC, UNLAW TAKE VEH (ARR BY PD SAN DIEGO | 11-3-89, #CR107778,JD371 459PC,FEL PG,2YRS TT ST PRIS,FN & RESTN CC W/ #CR99301,#CR97378 & #SF42289 |
| 12-27-89 | CALIF DEPT CORR E 39372 | RICHARD HIGGINS | CS#CR97378(A) CT.1(A)VEH THEFT 10851(A)VC CS#CR99301(B) CT.1(B)BURG 2ND 459 PC 2ND CS#CR107778(C) CT.1(C)BURG 2ND 459 PC 2ND CS#CR107878(D) CT.1(D)BURG 2ND 459 PC 2ND | FROM: SAN DIEGO CO TERM: 3 YRS,CC 1-22-91, PAROLED TO SAN DIEGO CO |

# US LONG DISTANCE INC

DATE: 07/08/97
TIME: 15:14

U.S. LONG DISTANCE
AGENT COMMISSION CALCULATION REPORT

PAGE: 375

PAY PERIOD ENDING: 07/25/97

AGENT: BFIO31   CCI, (CALIFORNIA)

| ACCT NUMB | SITE NUMB | ACCOUNT NAME | COMM PLAN | EST USAGE | DATE OPENED | DATE CLOSED | 1ST MONTH | 2ND MONTH | 3RD MONTH | 4TH MONTH | 5TH MONTH | 6TH MONTH | OVER 6 MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B7060-1 | 18 | BFIC/CCI/CALIFORNIA | R1 | 10000 | 10/02/95 | / / | .00 | .00 | .00 | .00 | .00 | .00 | .92 |
| TOTAL PLAN R1 BILLINGS | 1 ACCOUNTS | | | | | | .00 | .00 | .00 | .00 | .00 | .00 | .92 |
| TOTAL BILLINGS | 1 ACCOUNTS | | | | | | .00 | .00 | .00 | .00 | .00 | .00 | .92 |

AGENT: CCI, (CALIFORNIA)

COMMISSION TOTALS

| COMM PLAN | NUMBR ACCTS | TOTAL BILLED | STEP RATE PERCENTAGE | MONTHLY COMMISSION |
|---|---|---|---|---|
| R1 | 1 | .92 | .1000 | .09 |
| | | | | .09 |

**Robin Moses**

*Exhibit 30*

| | |
|---|---|
| **From:** | Robin Moses |
| **Sent:** | Friday, August 16, 1996 1:29 PM |
| **To:** | Jeff Bender |
| **Cc:** | Gina Russo; Tom Browning |
| **Subject:** | USV/BFIC - Your Phone Call |

Jeff -

I sent Gina Russo, Account Manager for USV, and Tom Browning, Account Manager for BFIC, the details on the test orders for their customers this morning via e-mail. (Those messages are attached with this message.)  I have not heard back from either Gina or Tom regarding the test files, although Greg has called me directly regarding the status of the test file.  He also left a voice mail message this morning regarding issues with DCA, which I forwarded to Tom.

Test Orders - BFIC        USV - Test Orders        USV - Test Orders

IXCLD 004490



LAW OFFICES OF

## JOSEPH P. ROSATI

1030 FIRST AVENUE
SAN DIEGO. CALIFORNIA 92101

TELEPHONE (619) 696-9400
FACSIMILE (619) 696-9466

June 11, 1998

Exhibit
36

**Via Fax and US Mail:  (619) 702-0809**

Douglas Oden. Esq.
Oden. Greene. Murray & Thompson. LLP
1200 Third Avenue. Suite 1630
San Diego. CA 92101

     RE:   <u>Wiltel v. BFIC. Inc.</u>

Dear Mr. Oden:

     This letter will confirm our conversation in which you confirmed that your firm is representing a new telecommunications company called "MPI" involving former board members from BFIC. BFIC is outraged that you, as its former attorney having full knowledge of BFIC's concern about theft of customer lists and monies by former board members would withdraw from representing BFIC and then represent those former board members to help it set up a telecommunications company to further aid and abet its use of those stolen customer list. Such conduct by you and the former board members would constitute a breach of fiduciary duty and conflict of interest. BFIC has already been substantially damaged by this conduct today which may be terminal to the company. The possibility of litigation by BFIC against those former board members and agents was a real possibility while you were representing them and remains viable at this time. Your duty of unfounded loyalty to your client does not end simply because you withdrew from representing that client.

                            Sincerely,

                            JOSEPH P. ROSATI
                            Attorney At Law

JPR/ys
cc:   Dr. Mahdi
ODEN.2



IXC COMMUNICATIONS, INC.
98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701-4039
(512) 433-3500    (800) 984-9253    FAX (512) 433-3555

Thursday, November 14, 1996

#364

Dr. A. Muhammad Mahdi
BFIC Building Futures in Communications
7060 Miramar Rd.
Suite 100
San Diego, CA  92012

Dear Dr. Mahdi:

As a follow up to our conference call with Tom Browning at IXC today, BFIC has the following activity confirmed as of this date:

| | |
|---|---|
| Active 1+ ANI's: | 9,491 |
| Active Calling Cards: | 247 |
| Pending 1+ ANI: | 109 |
| Pending Cards: | 36 |

Tom and I are working diligently to bring you the most accurate and timely information possible.  We will continue to track the order activity on a daily basis, and contact you with pertinent information concerning your account.

As discussed, we are investigating the CDR accuracy, due to some switch reporting issues that have been identified today.  Tom will be in contact with you next week, as I will be at the Telecommunications Resellers Association (TRA) trade show through Thursday, November 21.

Regards,

Jeff Bender
IXC COMMUNICATIONS



DEFENDANT'S
EXHIBIT
6666666

BFIC 009033

BFIC BILLING RECORDS
January 1997
December 96 Usage

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| BFIC | 951S00E010D0 | 4550199612120 | STAMFORD | CTUS | 9202035763634 | PORTCT | 920 | 2035763634 | 2033244712 | |
| BFIC | 951S012010D0 | 5000199612120 | NEWBURGH | NYUS | 1339144251654 | VLYNYU | 132 | 9144251654 | 9145659258 | |
| BFIC | 951S112010D0 | 2640199612120 | MORRISVL | PAUS | 2286098962528 | CEVLNJ | 222 | 6098962528 | 2152959131 | |
| BFIC | 951S01E010D0 | 8050199612120 | FLOURTOWN | PAUS | 2287177833770 | BURGPA | 226 | 7177833770 | 2152331652 | |
| BFIC | 951S112010D0 | 0560199612120 | READING | PAUS | 2287063222688 | US | 438 | 7063222688 | 6103762935 | |
| BFIC | 951S11E010D0 | 1440199612120 | WOODBRIDGE | NJUS | 2242122232510 | YORK | 132 | 2122232510 | 9087505910 | |
| BFIC | 951S282012D1 | 7360199612120 | PHILA | PAUS | 7 | IIII91 | 4087 | | 2153864350 | |
| BFIC | 951S11E010D0 | 0560199612120 | CAMBRIDGE | MAUS | 1284045860558 | A GAUS | 438 | 4045860558 | 6174970959 | |
| BFIC | 951S112010D0 | 0560199612120 | READING | PAUS | 2287066602075 | US | 438 | 7066602075 | 6103762935 | |
| BFIC | 951S282012D1 | 0840199612120 | PHILA | PAUS | 2289173164484 | IIII91 | 484 | | 2153864350 | |
| BFIC | 951S11E010D0 | 6720199612120 | VIENNA | VAUS | 2368472597761 | HTSILUS | 358 | 8472597761 | 7037150507 | |
| BFIC | 951S11EO10D1 | 0000199612120 | FLOURTOWN | PAUS | 2283015551212 | ASST | 238 | 3015551212 | 2152331652 | |
| BFIC | 951S112010D0 | 4400199612120 | HUNTINGTON | WVUS | 2546144460198 | LISOHU | 324 | 6144460198 | 3045230805 | |
| BFIC | 951S112010D0 | 7920199612120 | FEASTERVL | PAUS | 2287189799213 | IS NYUS | 132 | 7189799213 | 2153657097 | |
| BFIC | 951S11E010D0 | 2880199612120 | FLOURTOWN | PAUS | 2284104619400 | TCYMDU | 238 | 4104619400 | 2152331652 | |
| BFIC | 951S112010D0 | 5280199612120 | READING | PAUS | 2287063222688 | US | 438 | 7063222688 | 6103762935 | |
| BFIC | 951S11E010D0 | 3440199612120 | N | PAUS | 2289084236802 | OUSENJ | 224 | 9084236802 | 2152300545 | |
| BFIC | 951S112010D0 | 0880199612120 | BELLPORT | NYUS | 1325104386810 | NWRKC | 722 | 5104386810 | 5162868438 | |
| BFIC | 951S112010D0 | 8800199612120 | FEASTERVL | PAUS | 2283102316008 | LES | 730 | 3102316008 | 2153557097 | |
| BFIC | 951S11E010D0 | 6960199612120 | NEW CITY | NYUS | 1329085666499 | AN | 224 | 9085666499 | 9146386133 | |
| BFIC | 951S112010D0 | 1440199612120 | FEASTERVL | PAUS | 2286097840569 | SPGNJU | 222 | 6097840569 | 2153557097 | |
| BFIC | 951S112010D0 | 4400199612120 | PHILA | PAUS | 2286093442866 | CYNJUS | 220 | 6093442866 | 2153862038 | |
| BFIC | 951S112010D0 | 2640199612120 | PHILA | PAUS | 2289049142148 | CITYFLU | 450 | 9049142148 | 2153821650 | |
| BFIC | 951S11E010D0 | 1440199612120 | ROCKVILLE | MDUS | 2362126877878 | YORK | 132 | 2126877878 | 3012996540 | |
| BFIC | 951S01E010D0 | 3700199612120 | FLOURTOWN | PAUS | 2287177238241 | ORO | 232 | 7177238241 | 2152331652 | |
| BFIC | 951S11E010D0 | 9040199612120 | NEW CITY | NYUS | 1329082910878 | HLDSNJ | 224 | 9082910878 | 9146386133 | |
| BFIC | 951S11E010D0 | 2640199612120 | ALEXANDRIA | VAUS | 2366144973359 | URNEOH | 324 | 6144973359 | 7033171913 | |
| BFIC | 951S11E010D0 | 0880199612120 | ALEXANDRIA | VAUS | 2366144973359 | URNEOH | 324 | 6144973359 | 7033171913 | |
| BFIC | 951S11EO10D1 | 0000199612120 | NEW CITY | NYUS | 1325085551212 | ASST | 128 | 5085551212 | 9146386133 | |
| BFIC | 951S11E010D0 | 3520199612120 | HUNTINGTON | WVUS | 2546143772042 | N OHU | 324 | 6143772042 | 3046977036 | |
| BFIC | 951S11E010D0 | 1680199612120 | NEW CITY | NYUS | 1325089779700 | Y MAU | 128 | 5089779700 | 9146386133 | |
| BFIC | 951S11E010D0 | 2640199612120 | NEW CITY | NYUS | 1329085309744 | BANK | 224 | 9085309744 | 9146386133 | |
| BFIC | 951S112010D0 | 2640199612120 | HOPEWELL | VAUS | 2489105997137 | O NCU | 424 | 9105997137 | 8044581709 | |
| BFIC | 951S112010D0 | 1760199612120 | MARTINSVL | VAUS | 2449194837224 | M NCU | 426 | 9194837224 | 5406324836 | |
| BFIC | 951S112010D0 | 0880199612120 | MARTINSVL | VAUS | 2449192691605 | N NCU | 426 | 9192691605 | 5406324836 | |
| BFIC | 951S112010D0 | 2320199612120 | AMBLER | PAUS | 2283013459595 | N MDU | 236 | 3013459595 | 2156430600 | |
| BFIC | 951S012010D0 | 5700199612121 | PITTSBURGH | PAUS | 2342158783341 | PAUS | 228 | 2158783341 | 4122422027 | |
| BFIC | 951S112010D0 | 5280199612121 | BALTIMORE | MDUS | 2384152482062 | FRAN | 722 | 4152482062 | 4106465232 | |
| BFIC | 951S112010D0 | 4400199612121 | BALTIMORE | MDUS | 2384152482006 | FRAN | 722 | 4152482006 | 4106465232 | |
| BFIC | 951S11E010D0 | 2160199612121 | NEW CITY | NYUS | 1329083676463 | OD | 224 | 9083676463 | 9146386133 | |
| BFIC | 951S112010D0 | 4400199612121 | BALTIMORE | MDUS | 2384152482062 | FRAN | 722 | 4152482062 | 4106465232 | |
| BFIC | 951S112010D0 | 1760199612121 | BALTIMORE | MDUS | 2384152482062 | FRAN | 722 | 4152482062 | 4106465232 | |
| BFIC | 951S112010D0 | 1440199612121 | CHATHAM | NJUS | 2246196435272 | JOLLA | 732 | 6196435272 | 2016350177 | |
| BFIC | 951S112010D0 | 3680199612121 | PHILA | PAUS | 2286096272805 | SPGNJU | 222 | 6096272805 | 2154233001 | |
| BFIC | 951S112010D0 | 9680199612121 | CHATHAM | NJUS | 2246196435292 | JOLLA | 732 | 6196435292 | 2016350177 | |
| BFIC | 951S112010D0 | 1760199612121 | BALTIMORE | MDUS | 2385122641825 | CREEK | 558 | 5122641825 | 4106465232 | |

IXCLD 002264

Exhibit 40A

Account Name: BUILDING FUTURES IN COMMUNICATIONS
Reseller ID : R320
Reseller Summary

Invoice Date: January 05, 1997
For Period: December 01, 1996 to December 31, 1996

| | Day | | | Non-Day | | | Total | | |
|---|---|---|---|---|---|---|---|---|---|
| | Calls | Minutes | Charges | Calls | Minutes | Charges | Calls | Minutes | Charges |
| **Switched Service:** | | | | | | | | | |
| Outbound | | | | | | | | | |
| Interstate | 15,192 | 81,421.80 | $7,162.51 | 13,711 | 120,173.45 | $10,569.53 | 28,903 | 201,595.25 | $17,732.05 |
| Intrastate | 15,618 | 61,819.30 | $4,731.34 | 11,862 | 72,491.90 | $5,502.20 | 27,480 | 134,311.20 | $10,233.54 |
| International | 3,545 | 28,045.40 | $14,875.53 | 4,223 | 36,167.55 | $21,142.08 | 7,768 | 64,212.95 | $36,017.61 |
| Total Switched Outbound | 34,355 | 171,286.50 | $26,769.38 | 29,796 | 228,832.90 | $37,213.82 | 64,151 | 400,119.40 | $63,983.20 |
| Inbound | | | | | | | | | |
| Interstate | 21 | 62.85 | $5.28 | 8 | 1.75 | $0.16 | 29 | 64.60 | $5.44 |
| Intrastate | 33 | 169.30 | $17.38 | 10 | 112.60 | $13.97 | 43 | 281.90 | $31.36 |
| International | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Total Switched Inbound | 54 | 232.15 | $22.66 | 18 | 114.35 | $14.13 | 72 | 346.50 | $36.79 |
| Total Switched Service | 34,409 | 171,518.65 | $26,792.04 | 29,814 | 228,947.25 | $37,227.95 | 64,223 | 400,465.90 | $64,019.99 |
| **Dedicated Service:** | | | | | | | | | |
| Outbound | | | | | | | | | |
| Interstate | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Intrastate | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| International | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Total Ded. Outbound | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Inbound | | | | | | | | | |
| Interstate | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Intrastate | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| International | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Total Ded. Inbound | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Total Dedicated Service | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Calling Card: | | | | | | | | | |
| Usage | 175 | 767.10 | $181.56 | 112 | 717.20 | $294.45 | 287 | 1,484.30 | $476.01 |
| Enhanced | 6 | 5.80 | $3.60 | 0 | 0.00 | $0.00 | 6 | 5.80 | $3.60 |
| Total Calling Card | 181 | 772.90 | $185.16 | 112 | 717.20 | $294.45 | 293 | 1,490.10 | $479.61 |
| Debit Card | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 | 0 | 0.00 | $0.00 |
| Directory Assistance | | | | | | | | | $447.60 |
| Other Charges | | | | | | | | | $996.27 |
| Total Reseller ID R320 | 34,590 | 172,291.55 | $26,977.21 | 29,926 | 229,664.45 | $37,522.40 | 65,242 | 402,515.50 | $65,943.47 |

Revenue 65,532.20

IXCLD 000064

Exhibit 41

# Doug Farrar

| | |
|---|---|
| **From:** | Jeff Bender |
| **Sent:** | Monday, October 21, 1996 2:45PM |
| **To:** | Linda Nelson |
| **Cc:** | Doug Farrar |
| **Subject:** | BFIC |

According to a conversation I had with Doug today, the Tri-Party agreement included in Amendment No. 2 that Dr. Mahdi signed in Austin, was never counter-executed. The change from "all" to "70%," regarding receivables from ZPDI, was not acceptable to Finance.

So ZPDI, although instructed by BFIC to send the 70% to IXC, can not do so since it was never sent. BFIC has instructed ZPDI to wire the money to the existing Lockbox.

Today is the first I have heard this issue.

BFIC sees it as a tremendous disadvantage to have "all" proceeds go through IXC. They believe 70% is acceptable, and will increase that to 80%, if that will satisfy IXC. The international traffic associated with this account, and relative margins, also make this percentage critical to both companies.

We will discuss the details tomorrow........

BFIC 008418

```
*** TX CONFIRMATION REPORT ***          AS OF   MAY 13 '96 09:27   PAGE.01
                                             IXC LONG DISTANCE
```

| | DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | CMD# | STATUS |
|---|---|---|---|---|---|---|---|---|
| 04 | 05/13 | 09:27 | 93287902 | EC—S | 00'19" | 001 | 003 | OK |

# I N T E R

# MEMO

# O F F I C E

**To:** Ken Hilden
**From:** Doug Farrar (DF)
**Subject:** Tri-Party Agreements
**Date:** May 13, 1996

cc: Lynn McNeill; Cheryl Jasek; Jeff Bender

**************UPDATE****************

RE: Building Futures in Communications

The above referenced prospect has exercised his option to enter
Into a Lockbox Agreement. Prospect has signed the
Agreement and it has been sent to TCB.


*TPC Documention*

*Referencing UnAuthorized Lock Box*
*Bank Accounts*

IXCLD 004256

*Exhibit 45*

01/24/97

**Long Distance**
**Customer Balance Detail**
**All Transactions**

| Type | Date | Num | Account | Amount | Balance |
|------|------|-----|---------|--------|---------|
| BFIC | | | | | |
| Invoice | 9/5/96 | 9609... | Accounts Receivable | 3,309.16 | 3,309.16 |
| Invoice | 10/5/96 | 9610... | Accounts Receivable | 141,738.64 | 145,047.80 |
| Payment | 10/29/96 | 1397 | Accounts Receivable | -3,309.16 | 141,738.64 |
| Invoice | 11/5/96 | 9601... | Accounts Receivable | 144,861.75 | 286,600.39 |
| Invoice | 12/5/96 | 9601... | Accounts Receivable | 124,635.98 | 411,236.37 |
| Invoice | 1/5/97 | 9700... | Accounts Receivable | 65,943.47 | 477,179.84 |
| Total BFIC | | | | 477,179.84 | 477,179.84 |
| TOTAL | | | | 477,179.84 | 477,179.84 |



PRICEWATERHOUSE COOPERS 🄫

PricewaterhouseCoopers LLP
402 West Broadway  Suite 1400
San Diego  CA 92101-3504
Telephone  (619) 525 2300
Facsimile  (619) 525 2490

October 9, 1998

Dr. Abuwi Muhammad Mahdi
Building Futures in Communications
701 Broadway, STE 501
San Diego, CA 92101

Dr. Mahdi:

Per your request, we analyzed a select group of files to verify various attributes of the data contained in those files. This letter will describe our analysis and address our findings. Please note that we have provided an illustrative depiction of standard database layout (Exhibit 1) for improved clarity of our findings.

### Summary of Files Reviewed

|    | File Name      | Source            | Size       |
|----|----------------|-------------------|------------|
| 1) | ORDER_1S.dbf   | IXC Communications | 45,996 KB  |
| 2) | MILESTON.dbf   | IXC Communications | 23,150 KB  |
| 3) | ORDER_CC.dbf   | IXC Communications | 14,242 KB  |
| 4) | BFIC.txt       | IXC Communications | 7,280 KB   |

### Findings

1) PricewaterhouseCoopers verified the following attributes of ORDER_1S.dbf:

   a) Data field IXC_BATCH entry "0000131245" has 7,014 records of which 6,931 have status "C" in the data field IXC_STATUS, and each of the 7,014 records have "8/28/96" recorded in the data fields ORDER_DATE and USER_DATE;

   b) The data field IXC_BATCH entry "0000131705" has 3,124 records of which 1,724 were status "C" in the data field IXC_STATUS, and all have "8/29/96" recorded in the data field ORDER_DATE and "8/26/98" in the data field USER_DATE;

   c) ORDER_1S.dbf contains 35,452 records in the month of December 1996. 35,023 records have values with dates occurring after 12/13/96. There are 1,467 records with dates between "1/2/97" and "1/25/97";

1

d) ORDER_1S.dbf contains 103,115 records of which 88,219 have "0948" recorded in the data field CIC. The composition by LOA_DATE values are delineated as follows:

   1) 16 records in June & July 1996

   2) 39,273 records in August 1996

   3) 2,611 records in September 1996

   4) 19,133 records in October 1996

   5) 13,993 records in November 1996

   6) 13,193 records have no entries within the data field LOA_DATE;

e) The entries within the data fields IXC_ORDER and IXC_BATCH ascend for the period from August through December 1996 with minor exceptions in August and September; and

f) There are 45 records that have IXC_BATCH number of "0000000000."


2) PricewaterhouseCoopers verified the following attributes of Mileston.dbf:

   a) The MILESTON.dbf database has 217,413 records with 115,244 unique[1] data field IXC_ORDER entries. PricewaterhouseCoopers notes that combined ORDER_1S.dbf and ORDER_CC.dbf contain 114,538 unique[1] data field IXC_ORDER entries in common with the MILESTON.dbf database (82,299 records from ORDER_1S.dbf and 32,839 records from ORDER_CC.dbf);

   b) The data field INT_FILENO entry "0000131245" has 7,014 records of which 6,931 have "C" recorded in the data field IXC_STATUS. The data field INT_FILENO entry "0000131705" has 1,321 records of which 3,023 have "C" recorded in the data field IXC_STATUS. Note that the data field INT_FILENO contains the same type, e.g., numeric & 10 digits, of data as the data field IXC_BATCH in the ORDER_1S.dbf database (See finding 1a above);

   c) The data field IXC_ORDER entry "04581853" has "C" recorded in the data field IXC_STATUS on 12/16/98 and "P" in the data field IXC_STATUS on 12/17/96. These two entries, both "04581853" also have different data field INT_FILENO entries of "0000170910" and "0000171036" respectively;

   d) The data field INT_FILENO entry "0000170910" has 29,962 records of which 26,632 have "C" and 3,630 have "R" recorded in the data field IXC_STATUS. The entries range from "8:54PM to 9:41PM" in the data field TIME_COMPL;

   e) INT_FILENO "0000171036" has 26,249 records and all have "P" recorded in the data field IXC_STATUS, "12/17/96" in the data field DATE_INIT, and entries that range from "4:58AM to 5:31AM" in the data field TIME_INIT. These records contain no entries in the data field COMP_DATE; and

   f) 106,098 records with the entry "December 1996" in the data field DATE_INIT of which 74,453 have "C", 29,905 have "P", and 3,740 have "R" recorded in the data field IXC_STATUS.

3) PricewaterhouseCoopers verified the following attributes of ORDER_CC.dbf:

   a) The ORDER_CC.dbf database contains 32,841 records with 15,982 unique[1] values in the data field BTN and 16,212 unique[1] values in the data field CARD_NUM.

4) PricewaterhouseCoopers verified the following attributes of BFIC.txt:

---

[1] Unique is defined in database programming as all non-repeating values within a given data field.

a) This BFIC.txt file contains 40,955 records of which 27,389 have "MS", 8,520 have "MD", and 5,046 have "JX" entries recorded in the data field Long Distance Carrier. The following is a summation of the numeric values in these records:

1) The data field "MD" amounts to 894,015 for Intrastate and 71,848 for Interstate for a combined total of 965,863; and

2) The data field "JX" amounts to 390,138 for Intrastate and 69,758 for Interstate for a combined total of 459,896.

Note: Based upon your representation we have assumed that this data field represents dollar amounts of billings on Long Distance Carrier codes. Per your request, we have attempted to agree these dollar amounts to the documents you provided.

"MD" – Total per BFIC.txt = 965,863

Total per your documentation = 377,348

Difference = 588,515

"JX" – Total per BFIC.txt = 459,896,

Total per your documentation = 233,455

Difference = 226,441

This analysis is solely to assist you in the arbitration with IXC Communications (Case No. 71-181-0048-97, Austin, Texas). Our work should not be used for any other purpose. We relied on certain information and made certain assumptions, and to the extent this information is not accurate or has changed, our results would likely be different. The scope of our analysis described herein does not constitute an attest service as that term is defined by the American Institute of Certified Public Accountants. Accordingly, we are unable to, and do not express an opinion on any data included in this letter.

Thank you for the opportunity to consult with you, and should you have any questions about these findings please do not hesitate to call.

Sincerely,

Stephen Q. Jones
Director Financial Advisory Services



*Exhibit ~~4~~*
47

Exhibit G

## Tri-Party Agreement

This Tri-Party Agreement is entered into this the _3o_ day of _October_, 1996 by and among IXC Long Distance, Inc., a Delaware corporation referred to as "Supplier", **Building Futures in Communications**, a California corporation referred to as "Customer", and ~~Zero Plus Dialing, Inc.~~, a Delaware corporation ("~~ZPDI~~").

*lling nformation* *ncepts, Inc.*
*ba U.S. Billing (USBI)*

## WITNESSETH:

WHEREAS, Concurrently with the execution of this Agreement, Supplier and Customer have entered into Amendment No. 2 to Telecommunications Service Agreement which amends the Telecommunications Service Agreement dated as of April 19, 1996, as amended by Amendment No. 1 to Telecommunications Service Agreement dated as of August 13, 1996, pursuant to the terms of which Supplier provides to Customer telecommunications services;

WHEREAS, On or prior to the execution of this Agreement, Customer and ~~ZPDI~~ USBI have entered into a Billing and Collection Services Agreement (the "Billing Agreement") wherein USBI ~~ZPDI~~ will provide billing and collection services for use by Customer in connection with its provision of long distance services to end users; and

WHEREAS, Customer desires to have ~~ZPDI~~ USBI pay Supplier directly for the services provided by Supplier to Customer from the proceeds collected by ~~ZPDI~~ on behalf of Customer pursuant to the Billing Agreement. USBI

NOW THEREFORE, for consideration for the following terms and conditions and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, parties agree as follows:

1. USBI ~~ZPDI~~ is hereby authorized and directed to pay, and USBI ~~ZPDI~~ agrees to pay, all proceeds ~~ZPDI~~ collects on behalf of Customer with respect to Library Code _MD_ services pursuant to the Billing Agreement with Customer directly to Supplier. Such funds shall be paid as follows:

MAILING ADDRESS:

IXC Long Distance, Inc.
Accounts Receivable
5000 Plaza on the Lake, Suite 200
Austin, Texas 78746

2. Customer authorizes ~~ZPDI~~ USBI to advance 70% of the amount owed to Supplier in connection with Customer's CDR's within seven days from the date Customer mails its CDR's to ~~ZPDI~~. USBI

3.      It is understood and agreed by the parties hereto that Supplier will not be liable to Customer for any uncollectible or unbillable revenues as set forth in the Billing Agreement by and between Customer and ~~ZPDI~~. USBI

4.      This Tri-Party Agreement shall be binding upon and inure to the benefit of Supplier, Customer and ~~ZPDI~~ and their respective successors and assigns.
USBI

5.      This Tri-Party Agreement shall be not amended, changed, modified, terminated or discharged in whole or in part, except by an instrument in writing duly executed by Supplier, Customer and ~~ZPDI~~ and their respective successors or assigns.
USBI

6.      If any provision of this Agreement is held to be illegal and severed, then: (a) a provision similar in terms to such severed provisions as may be possible and be legal, valid and enforceable shall be automatically added as part of the Tri-Party agreement, and (b) the remaining provisions of this Tri-Party Agreement shall continue in full force and effect.

WITNESSETH, the _30_ day of ___October___, 1996

**IXC LONG DISTANCE, INC.**

BY: _____
NAME: _John R. Fleming_
TITLE: _EVP ~ C.O.O._

Approved as to form
Legal dept.

**BUILDING FUTURES IN COMMUNICATIONS  (B.F.I.C.)**

BY: _Dr. Muhamed Mila_
NAME: _A. Muhammed Mild_
TITLE: _Chairman_

Billing Information Concepts
~~ZERO PLUS DIALING, INC.~~ dba U.S. Billing
BY: _____
NAME: _Alan W. Bautzman_
TITLE: _President + CEO_

# SSC

## SWITCHED SERVICES COMMUNICATIONS, L.I

98 SAN JACINTO BLVD., SUITE 700, AUSTIN, TEXAS 78701

*Mr. Mahdi*
*Sent the wrong*
*LOA.*

November 20, 1996

Babar Khan
421 Philadelphia Ave.
Westmont, IL 60559

Federal Communications Commission
Common Carrier Bureau
Enforcement Division
Consumer Protection Branch
Stop Code 1600A2
Washington, D.C. 20554

　　　Re:　Letter dated October 27, 1996 / Utility Account ID: 630-323-0933

Dear Sir or Madam:

　　　First I would like to apologize for any inconvenience that this situation has caused you. Switched Services Communications, L.L.C. (SSC), is a wholeseller of long distance services, and was not directly involved in the reported transaction. The complainant's long distance service was changed pursuant to a request by Building Futures in Communications (BFIC), a reseller of SSC's services. Requests for credit for long distance charges and any switching fees incurred as a result of unauthorized conversions must be addressed by BFIC at 619-693-6400.

　　　The long distance carrier chosen by any consumer is identified on the system of the local exchange companies by its carrier identification or "CIC" code. Resellers, like BFIC do not have their own CIC code, but rather use the CIC code of their underlying carrier, such as SSC. Consequently, when a customer disputes a switch in long distance service, only the underlying carrier is visible to the local exchange company and the consumer.

　　　Switched Services Communications, L.L.C. contractually obligates each reseller to obtain, retain and furnish a letter of agency from each consumer or end user that it submits orders for. The FCC and Public Utility Commissions around the country have established regulatory policies to deal with such matters, and SSC is in compliance with such policies.

Khan
November 20, 1996
Page 2

    If you require any further assistance in this matter, please do not hesitate to contact me at
800-984-9253 ext. 3582.

                                            Very truly yours,

                                            Jacquelyn Caldwell
                                            Regulatory Analyst

cc:    Dr. Muhammad Mahdi
       7060 Miramar Road
       Suite 100
       San Diego, California 92121

       Tom Browning - Account Manager

IXCLD 000356

APR 07 '98 10:13 FR   MPSON COBURN 6   314 552 7000 TO _   4383211705724 P.06/08

# THOMPSON COBURN

*Attorneys at Law*

Exhibit
50

One Mercantile Center
St. Louis, Missouri 63101-1693
314-552-6000
FAX 314-552-7000

April 6, 1998

Fernando Bermudez
314-552-6453
FAX 314-552-7453
EMAIL fbermudez@
thompsoncoburn.com

**VIA FACSIMILE**

Dr. Muhammad Mahdi
Chairman, BFIC
BFIC
7060 Miramar Road
Suite 100
San Diego, CA 92121

Re.   BFIC v. IXC; course of action

Dear Dr. Mahdi:

Thank you for your faxes of March 25, March 27, and April 1. During this final month, we intend to do the following:

1. Subpoena the bank records from Texas Commerce Bank and Guaranty Federal Bank. Texas Commerce Bank is the bank where the "lock-box" arrangement was to have taken effect. Guaranty Federal Bank is the bank where the funds from the tri-party agreement were to have been deposited. Although I have asked you many times for any information regarding these two banks (deposit and debit records, statements, etc.), I have not yet seen the information. Nevertheless, we will subpoena those records.

2. Conduct a supplementary deposition at USBI as outlined in my previous letter.

3. Depose Jeff Bender. We have spoken with Jeff Bender's attorney in Santa Monica. Bender has agreed to be deposed if we and Mr. George agree not to subpoena him to the arbitration. We think that this is a fair arrangement because the law is unclear regarding our authority to depose him. I spoke with Mr. George on March 5 to see whether he would consent to the arrangement. He promised to speak with his client to get their approval. If we do not have Mr. George's consent by this Wednesday, we will file papers to try to force his appearance at a deposition.

4. Depose Jim Stickney and Greg Wilson. Please provide us with the most recent addresses you have for these two individuals.


*Exhibit 50*

April 6, 1998
Page 2

5. Depose IXC's expert witness. As of today, they have not specified who they will call as an expert.

6. Finalize arrangements with an outside computer consultant who can testify about the telephone data at the arbitration. We are reviewing their contract and will forward it to you as soon as we negotiate its terms.

7. Reach a decision regarding whether to hire Stanford Levin as a telecommunications expert to testify at the arbitration.

8. Subpoena telephone records from the "baby bells." The only way to find the relevant data from the baby bells is to submit a list (by telephone numbers) of end-users who we contend are BFIC customers. Because the computer records gleaned from your office were in disarray, our computer expert has not yet been able to compile this list.

We think that these steps will ensure an accurate accounting of the "stolen customers" and will allow us to represent you to the best of our abilities at the arbitration. We will, of course, listen to other requests that you may have but we cannot respond to directives such as "Greg Wilson, Vincent Aloanese, Martha Taylor, Tim Fasse, Frank Semmo, Jim Stickney, Adib Mahdi and my board members need to be deposed. Right along with IXC executives, they were not working on behalf of themselves and IXC. All records from DCA need to be subpoenaed in Oklahoma City. Home Federal savings Bank in San Diego also needs to be subpoenaed."

We have received a fair number of documents from IXC and you are entitled to look at them. Tim Howard will send you a copy this week. IXC is required to produce copies of your CDRs, a list of customers that BFIC sent to IXC for processing, and status reports on those customers. Thomas George promised computer disks containing this information to Tom Greene. If we do not have them, along with other discovery that we requested, by this week, we will seek production and sanctions against IXC. To do this, however, BFIC's production must be complete. That is why I am concerned about your statement that "I'm not giving Mr. George one more document ... I'm not going to give you anymore [sic] documents for them ...." You should not have any documents that we do not have. We cannot provide you the best representation possible without having all of your documents. Furthermore, you do not control the production of documents to IXC, we do. I hope that your statements were nothing more than "blowing off steam." If so, we share in the frustration of IXC's slow production. If, in fact, you have documents that you are withholding, we need them now.

Finally, we are happy that the Muslim judicial group found that IXC breached its contract with you and that it also found that IXC stole some of your customers. We recognize that this is a big victory for you and we congratulate you. This group's findings, however, do not affect the Texas arbitration. Our job is to represent you at the arbitration. Therefore, we will not raise the

Exhibit 52

April 6, 1998
Page 3

group's findings to the arbitration panel. We do not mean to minimize the value of this victory for you. It, however, has no effect on the Texas arbitration.

Very truly yours,

Thompson Coburn

By _____

Fernando Bermudez

# THOMPSON COBURN

Exhibit
51

Attorneys at Law

One Mercantile Center
St. Louis, Missouri 63101-2008
314-552-6000
FAX 314-552-7000

July 28, 1998

Charles R. Saulsberry
314-552-6105
FAX 314-552-7105

**VIA FEDERAL EXPRESS**

Dr. Muhammad Mahdi
Chairman, BFIC
BFIC
707 Broadway, 5th Floor
San Diego, CA 92101

Re:   IXC Long Distance, Inc. v. Building Futures In Communication
      No. 71 181 00048 97

Dear Dr. Mahdi:

This letter responds to your recent letters to Mr. Musgrave. He asked me to respond to some of the issues raised in your letter and to advise you to direct all correspondence to me.

Before we agreed to represent BFIC in this arbitration matter, you were informed that Thompson Coburn would not represent BFIC in any dispute involving Wiltel. Wiltel is a client of the firm and ethical considerations preclude us from representing BFIC in a dispute with Wiltel. We therefore refrained from investigating Wiltel's relationship with BFIC. It is our understanding that you hired other counsel to represent BFIC in its dispute with Wiltel.

DCA was the billing agent for BFIC during its relationship with Wiltel. You, however, thought that IXC may have been billing your end-users through DCA. You showed us a one-page computer printout that you claimed listed DCA as a billing agent for BFIC during BFIC's relationship with IXC. We asked you to show us actual telephone bills that showed DCA as a billing agent for IXC. You indicated that you had "hundreds" of these phone bills yet you did not deliver any to us.

In the same vein, you indicated that IXC billed customers directly and that you had telephone bills to substantiate this claim. When we asked you for the bills, you left a voice-mail message indicating that you did not have them.

You also expressed concern about IXC's response to our discovery requests. Tom Green conducted several days worth of depositions at IXC. He elicited many incriminating remarks concerning the deferment. All of these statements were introduced at the hearing and in our brief which benefited BFIC greatly. We also demanded and received thousands of documents that

977058



July 28, 1998
Page 2

include IXC orders, response files (from the LECs), and CDRs. One signpost of good discovery is if the opposing side does not surprise you with documents or testimony at a hearing. In this case, we were prepared for all of the testimony and were not surprised by any exhibits or arguments.

You also indicated concern about our initial decision not to submit all of your biographical information to the arbitration panel. We do not think that your photographs with David Hasselhoff, Kenny Rogers and other celebrities would impress the arbitration panel. In fact, biographical information distracts from the central issues in the arbitration. The issue is not whether you and BFIC have acted altruistically. The issue is whether IXC has breached its contract with BFIC. Introducing biographical data is a delicate topic. Mr. George looked foolish because he challenged your honorary degree from Elizabeth City State College. We would have looked foolish and your case would have been prejudiced if we would have submitted the newspaper article concerning your $1.6 million pledge to the University because, as of very recently, you have honored less than $2,000 towards your pledge.

You also indicated that certain exhibits were not submitted to the arbitration panel at the hearing. Our firm spent many weeks identifying the exhibits that would help BFIC. We introduced all of those exhibits at the arbitration hearing or in the post-hearing briefs. We also allowed you to identify independently exhibits that you thought were relevant. We introduced all of the exhibits that you identified. Therefore, the arbitration panel has all of the exhibits that you thought were relevant at the hearing.

You also indicated that you were not satisfied with the settlement offer that this firm negotiated. This firm has no input into what an opponent will offer to settle a case. For this reason, we prepare for a case on the assumption that it will go to trial. We also attempt to settle cases informally. A settlement agreement benefits the client because it removes the uncertainty of a trial and reduces the cost. We therefore presented BFIC the option of settling the dispute through the best offer provided by IXC. BFIC had the right to reject the settlement but our firm would have been derelict in its duties to BFIC if it did not present BFIC with the offer presented by IXC.

Your letter suggests that BFIC may have claims against entities other that IXC. BFIC engaged this firm to represent it in its dispute with IXC only. Therefore, this firm has not analyzed the viability of any lawsuit against other entities. Please consult another attorney immediately regarding other lawsuits that you think BFIC has against other entities. Statutes of limitations restrict when causes of action can be brought therefore time is of the essence. We restate that we cannot pursue a case against Wiltel.

In your conclusion you state that you no longer want this firm to represent BFIC. Despite your letter, you have continued to call me and have assured me that you wish the firm to continue



July 28, 1998
Page 3


to represent BFIC in the IXC matter. While I regret that BFIC's relationship with this firm has
deteriorated. I accept your wishes. We will wind-down any work that is pending on the IXC
matter and, as your letter indicated, will not accept future engagements. This process should
include provisions for BFIC to pay all of its outstanding attorney's fees and costs. I will write
you a separate letter furnishing a summary of your outstanding bills.

Very truly yours,

Thompson Coburn

By

  Charles R. Saulsberry


cc: John R. Musgrave

5/A

CUSTOMER

1/31/99

Exhibit 5A

5/A

Page 1

| CUST_NUM | ACCOUNT | ADDR1 | CITY | STAT | ZIP1 | PHONE | DATE_INST | LDC |
|---|---|---|---|---|---|---|---|---|
| 0000000153 | LARRY W. HARVELL | 2843 C STREET | SAN DIEGO | CA | 92102 | 6192329702 | 7/27/96 | N/A |
| 0000000185 | JOHN HILL | 624 21ST STREET | SAN DIEGO | CA | 92102 | 6192330523 | 8/8/96 | N/A |
| 0000000143 | MARIA D. COVARRUBIAS | 2849 E ST # 6 | SAN DIEGO | CA | 92102 | 6192340630 | 7/24/96 | N/A |
| 0000000119 | NOLAN GEORGE | 2267 OCEAN VIEW BL | SAN DIEGO | CA | 92113 | 6192341459 | 7/23/96 | N/A |
| 0000000185 | KATHRYNE ROBINSON | 3040 "J" STREET | SAN DIEGO | CA | 92102 | 6192392876 | 8/8/96 | N/A |
| 0000000199 | GLENETTE HUFF-EYES PLUS | 605 "C" ST. | SAN DIEGO | CA | 92101 | 6192393937 | 8/9/96 | N/A |
| 0000000157 | GLENETTE HUFF-EYES PLUS | 605 C STREET | SAN DIEGO | CA | 92101 | 6192393937 | 7/28/96 | N/A |
| 0000000148 | MICHAEL A. CALLEGRI | 4915 ORLECK PL. | SAN DIEGO | CA | 92124 | 6192449250 | 7/26/96 | N/A |
| 0000000204 | MONWAR HUSSIN | 14959 SENECA RD. #1 | VICTORVILLE | CA | 92392 | 6192457362 | 8/12/96 | MCI |
| 0000000197 | KAMAR SALAHI | 25312 WELLS CT. | STEVENSON | CA | 91381 | 6192596617 | 8/9/96 | N/A |
| 0000000198 | ALEXANDER HURTADO | 2325 MYRTLE AVE. | SAN DIEGO | CA | 92104 | 6192601350 | 8/9/96 | N/A |
| 0000000189 | ALEXANDER HURTADO | 2325 MYRTLE AVE. | SAN DIEGO | CA | 92104 | 6192601350 | 8/8/96 | PAC |
| 0000000186 | ANTHONY & ANNETTE SAULISBERR | 3745 VILLA TERRACE | SAN DIEGO | CA | 92104 | 6192606559 | 8/8/96 | N/A |
| 0000000105 | LORENZO CARTER | 2616 BALBOA VISTA D | SAN DIEGO | CA | 92105 | 6192620178 | 7/19/96 | N/A |
| 0000000136 | DESSIE L. RUSSELL | 7051 BENSON AVE. | SAN DIEGO | CA | 92195 | 6192620283 | 7/24/96 | N/A |
| 0000000113 | SHANTEE BELCHER | 533 S. 65TH ST. | SAN DIEGO | CA | 92114 | 6192620824 | 7/22/96 | N/A |
| 0000000133 | SHANTEE BELCHER | 533 S. 65TH STREET | SAN DIEGO | CA | 92114 | 6192620824 | 7/23/96 | N/A |
| 0000000152 | SHANTEE BELCHER | 539 65TH STREET | SAN DIEGO | CA | 92114 | 6192620842 | 7/27/96 | N/A |
| 0000000119 | WILLIAM GATES | 4270 LOGAN AVE. | SAN DIEGO | CA | 92113 | 6192621079 | 7/23/96 | N/A |
| 0000000116 | BRIAN J. MEECE | 4511 HOME AVE. #9 | SAN DIEGO | CA | 92105 | 6192621333 | 7/22/96 | N/A |
| 0000000138 | EARLIE WILLIAMS | 3996 HEMLOCK ST. | SAN DIEGO | CA | 92113 | 6192621488 | 7/24/96 | N/A |
| 0000000136 | JAMES H. ROBINSON | 7359 GRIBBLE ST. | SAN DIEGO | CA | 92114 | 6192621524 | 7/24/96 | N/A |
| 0000000155 | EVA THOMPSON | 7134 TUTHER WAY | SAN DIEGO | CA | 92114 | 6192621659 | 7/28/96 | N/A |
| 0000000010 | CHERYL HACKETT | 824 CROSSPOINT CT. | SAN DIEGO | CA | 92114 | 6192622220 | 7/21/96 | N/A |
| 0000000155 | MARVELLA M. SIMMONS | 5625 IMPERIAL AVE # | SAN DIEGO | CA | 92114 | 6192622241 | 7/28/96 | N/A |

5 3

## ESCROW AGREEMENT

This Escrow Agreement (the "Agreement") is entered into as of the ____ day of May, 1996 (the "Effective Date"), between WORLDCOM NETWORK SERVICES, INC., dba WILTEL, a Delaware corporation with its principal business offices at One Williams Center, Tulsa, Oklahoma 74172 ("WILTEL"), BFIC, INC., a California corporation with its principal business offices at 7467 Draper Ave., La Jolla, CA 92037 ("CUSTOMER"), DIGITAL COMMUNICATIONS OF AMERICA, INC., an Oklahoma corporation with its principal business offices at 300 N. Meridian, Suite 115 South, Oklahoma City 73107 ("BILLING AGENT"), ZERO PLUS DIALING, INC., dba U.S. BILLING, a Deleware corporation with its principal offices at 9311 San Pedro, Suite 300, San Antonio, TX 78216, ("COLLECTION AGENT") and BANK OF OKLAHOMA, N.A., a national banking association with its principal offices in Bank of Oklahoma Tower, Tulsa, Oklahoma 74172 ("ESCROW AGENT").

## R E C I T A L S:

A.   CUSTOMER is a switchless reseller who provides long distance telephone services directly to its customers or end users (collectively referred to as "End Users").

B.   CUSTOMER and WILTEL entered into a Telecommunications Services Agreement dated as of _____ June 1 _____, 1996 (the "WilTel Agreement") which provides that WILTEL will provide CUSTOMER with certain switched telecommunications services.

C.   CUSTOMER entered into an agreement with the BILLING AGENT (the "Billing Agreement") which provides that the BILLING AGENT will perform certain billing services for CUSTOMER, including without limitation, the rating and formatting of Customer's call detail records and the transmittal of such information directly to the COLLECTION AGENT.

D.   CUSTOMER entered into a One Plus Billing and Collection Services Agreement with the COLLECTION AGENT (the "Collection Agreement") which provides that the COLLECTION AGENT will perform certain processing services for the billing and collection of CUSTOMER's message telephone services through the COLLECTION AGENT's billing and collection agreements with certain local exchange companies (the "LECs").

E.   As a condition to WILTEL providing services under the WilTel Agreement, WILTEL has required CUSTOMER to execute an Escrow Agreement that will provide, among other things, that the COLLECTION AGENT will transmit directly to the ESCROW AGENT any monies received on behalf of CUSTOMER.

CONFIDENTIAL

NOW, THEREFORE, in consideration of the above recitals the parties agree as follows:

1.  **Defined Terms**.  Capitalized terms not defined herein will have the meaning ascribed to them in the WilTel Agreement, the Billing Agreement or the Collection Agreement, as applicable.

2.  **Term**.  This Agreement shall commence as of the Effective Date and shall remain in full force and effect until (i) terminated in writing by CUSTOMER and WILTEL, at which time ESCROW AGENT shall distribute any monies held by it as directed in writing by WILTEL and CUSTOMER, or (ii) terminated by the ESCROW AGENT as provided in Paragraph 13 below.

3.  **Establishment of Escrow Fund**.  There is hereby created an escrow fund (the "Escrow Fund") which shall be held and administered by the ESCROW AGENT pursuant to the terms of this Agreement.

4.  **Billing Tapes/Invoices**.

(A)  WILTEL shall send BILLING AGENT a computer readable record containing certain billing data (the "Billing Media") either on a daily or a weekly basis showing certain calls made by CUSTOMER's End Users served by the WilTel network.  BILLING AGENT agrees to rate and format the Billing Media in Bellcore Electronic Message Interface format (the "EMI Billing Record") and then transmit the EMI Billing Record to the COLLECTION AGENT within forty-eight (48) hours after receipt thereof.

(B)  Within ten (10) business days of receipt of the EMI Billing Record, the COLLECTION AGENT agrees to submit the EMI Billing Record to the appropriate LECs for the direct billing and collection of revenue from the End Users.

(C)  Without WILTEL's prior written consent, CUSTOMER may not enter into a Billing Agreement or Collection Agreement with another third party or perform the rating and formatting and collection functions internally.  If WILTEL consents to such arrangement, such third party must agree to the terms and conditions contained in this Agreement.

(D)  Upon WILTEL's request, BILLING AGENT shall supply WILTEL with billing summar(ies) showing the total amount billed all End Users by BILLING AGENT and CUSTOMER consents to the release of said information to WILTEL.

CONFIDENTIAL

5.    Transfers to the Escrow Fund.    *next*

(A)   COLLECTION AGENT agrees to remit by wire or ACH transfer
every Tuesday (unless said Tuesday is a holiday on which banks
are closed, then on the ~~preceding~~ business day) all revenues
collected or advances made pursuant to the Collection
Agreement, less its billing fees, LEC fees, LEC rejects, LEC
unbillables, post billing adjustments, bad debt holdbacks and
bad debt true ups (the "Collected Funds") directly to the
ESCROW AGENT to be held as part of the Escrow Account.  In the
event COLLECTION AGENT or any other third party agrees to
purchase, under the terms and conditions of the Collection
Agreement, CUSTOMER's right, title and interest in the End
Users' accounts receivable, and finance such receivables
directly or through a third party, COLLECTION AGENT agrees (or
if applicable, COLLECTION AGENT and CUSTOMER agree to direct
said third party) to send any monies due CUSTOMER, less
billing fees, LEC fees, LEC rejects, LEC unbillables, post
billing adjustments, bad debt holdbacks and bad debt true ups
(the "Factored Funds") directly to the ESCROW AGENT to be held
as part of the Escrow Account.

(B)   COLLECTION AGENT agrees not to remit (or authorize any
third party to remit) Collected Funds or Factored Funds to any
~~party~~ other than ECROW AGENT unless authorized in writing by
WILTEL and ~~CUSTOMER~~.

(C)   ESCROW  AGENT's  wire  transfer  instructions  are  as
follows:   Bank  of  Oklahoma,  N.A.,  Tulsa,  Oklahoma,  ABA
#103900036, Account #600024642, Reference _____,
~~Attention:  Corporate Trust~~.

(D)   Direct Funds, Collected Funds and Factored Funds are
collectively referred to herein as "Funds".

(E)   CUSTOMER will bear the sole cost of any Funds due the
COLLECTION AGENT due to a LEC Chargeback; the COLLECTION AGENT
will not hold WILTEL responsible for any LEC Chargebacks, or
any other repayment of Funds due the COLLECTION AGENT.

6.    Disbursements by the ESCROW AGENT.

(A)   Within one (1) business day of receipt of Funds into the
Escrow Account and (or on the next business day if ESCROW
AGENT is closed on said day), the ESCROW AGENT, after
deducting from the Escrow Account an amount sufficient to
satisfy its costs and expenses as provided in Paragraph 11

CONFIDENTIAL

below, shall transfer (without further notice to or consent from CUSTOMER) all Funds in the Escrow Account into separate operating accounts designated in writing by each party as follows:

    (i)       80.0% of the Funds to WILTEL;

    (ii)      the remainder of the Funds to CUSTOMER.

(B)  In the event there are insufficient Funds to (i) satisfy the costs and expenses of the ESCROW AGENT, or (ii) cover any overdraft that may exist in the account, the ESCROW AGENT will not be required to distribute any Funds until its costs and expenses have been paid in full and any overdrafts have been satisfied.  In the event (i) the ESCROW AGENT has not received payment for its costs and expenses within thirty (30) days after the due date, or (ii) any overdrafts have not been satisfied within thirty (30) days, the ESCROW AGENT may pursue any legal remedies it may have in equity or at law in order to satisfy such claims.  Pursuant to Paragraph 10 below, WILTEL and CUSTOMER agree to be jointly and severally liable for the payment of said costs and expenses (including reasonable attorney's fees).

(C)  In the event there are insufficient Funds to satisfy WilTel's latest invoice within forty-five (45) days from the date of such invoice, WILTEL will notify CUSTOMER and CUSTOMER agrees to wire transfer directly to WILTEL any deficiency amount within twenty-four (24) hours following such notice.

    (D)  At the end of ninety (90) days following the date of this Agreement and at the end of each ninety (90) day period thereafter, the parties agree to negotiate in good faith concerning the percentage of Funds that are to be distributed and the return of any payments received by WILTEL in excess of its current WilTel Invoice.  In the event said parties agree to amend the percentages of Funds that will be distributed, WILTEL and CUSTOMER will notify the ESCROW AGENT, in writing, of said amended percentages; the ESCROW AGENT will not change the percentages of distribution until it has received said written notice signed by WILTEL and CUSTOMER.

    7.   <u>Continuing Obligation</u>.   Nothing contained herein, including without limitation the failure of the BILLING AGENT and/or the COLLECTION AGENT to properly perform its obligations hereunder, shall relieve CUSTOMER of any obligation it has under the terms of the WilTel Agreement or this Agreement, and CUSTOMER

**CONFIDENTIAL**

parties fail to appoint a substitute Escrow Agent within thirty (30) days after the parties have received the Resignation Notice, ESCROW AGENT may, in its sole discretion and its sole option, institute a bill of interpleader. At such time, the ESCROW AGENT will have no further duties or obligations under this Agreement.

13. <u>Representations by the Parties</u>. The parties each represent and warrant that (i) it is a corporation validly existing and in good standing under the laws of the jurisdiction of its incorporation and it has adequate corporate power to enter into and perform this Agreement, (ii) the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action and is not in conflict with its charter or bylaws, (iii) this Agreement constitutes a legal, valid and binding obligation enforceable against it in accordance with its terms, and (iv) there are no actions, suits or proceedings pending or, to its knowledge, threatened against or affecting it in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on its ability to perform its obligations under this Agreement.

14. <u>Relationship of Parties</u>. This Agreement shall not constitute any of the parties as agent or principal of any other party.

15. <u>Entire Agreement</u>. This Agreement (and any documents referenced specifically herein) evidences the entire agreement between the parties in connection with the Funds, and no other agreements shall be considered or adopted or binding, in whole or in part, by or upon any of the parties. This Agreement may only be amended in writing signed by all of the parties.

16. <u>Captions</u>. Paragraph headings and captions have been inserted for convenience only and do not in any way limit the provisions set out in the various paragraphs hereof.

17. <u>Choice of Law</u>. This Agreement shall be construed under the laws of the State of Oklahoma without regard to choice of law principles.

18. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same Agreement.

19. <u>Assignment</u>. This Agreement may not be assigned or transferred without the prior written consent of the other parties.

CONFIDENTIAL

53

This Agreement shall inure to the benefit of each of the parties, their successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

BFIC, INC.

     ("CUSTOMER")

By: _____
       (Signature)

_____
       (Print Name)

_____
       (Title)

WORLDCOM NETWORK SERVICES, INC. dba WILTEL

     ("WILTEL")

By: _____
       (Signature)

David F Meeks
       (Print Name)

Treasurer
       (Title)

DIGITAL COMMUNICATIONS OF AMERICA, INC.

     ("BILLING AGENT")

By: _____
       (Signature)

DAVID K. PARRACK
       (Print Name)

MGR. ACCTS & ADMIN
       (Title)

ZERO PLUS DIALING, INC. dba U.S. Billing

     ("COLLECTION AGENT")

By: _____
       (Signature)

Alan W. Salteman
       (Print Name)

President + COO
       (Title)

BANK OF OKLAHOMA, N.A.

     ("ESCROW AGENT")

By: _____
       (Signature)

Helen Wilson
       (Print Name)

Vice President
       (Title)

CONFIDENTIAL

## IXC CDR SUMMARY RE JRT

| CDR Filennmme | File Date | Call Duration | Rated Cost | Number of BTNs |
|---|---|---|---|---|
| C1960906.11I | 09/08/96 | 6383.10 | 2073.60 | 296 |
| C1960906.12I | 09/08/96 | 14712.20 | 6031.27 | 763 |
| C1960906.13I | 09/08/96 | 23628.05 | 8300.99 | 1238 |
| C1960907.14I | 09/08/96 | 32126.50 | 10740.63 | 1704 |
| C1960907.16I | 09/08/96 | 40642.90 | 13898.01 | 2164 |
| C1960908.16I | 09/08/96 | 60806.96 | 18243.66 | 2686 |
| C1960909.17I | 09/12/96 | 66648.70 | 23689.61 | 3266 |
| C1960910.18I | 09/12/96 | 73971.90 | 26101.27 | 3733 |
| C1960911.19I | 09/12/96 | 73973.30 | 26101.41 | 3734 |
| C1960911.20I | 09/12/96 | 74067.66 | 26111.41 | 3740 |
| C1960911.21I | 09/12/96 | 74649.76 | 26160.77 | 3747 |
| C1960911.22I | 09/12/96 | 81967.80 | 28258.80 | 4221 |



| File Total | | Call Duration Total | Rated Cost Total | BTN Total |
|---|---|---|---|---|
| 12 | | 612200.75 | 215721.24 | 31280 |

OCT-14-97 TUE 02:1    M BFIC,INC.                    1969364280+

702-00A

Volume in drive F has no label.
Volume Serial Number is A4C4-EF32

Directory of F:\BFIC\IXC\RSO

| 09/17/96 | 03:46p | 1,707,002 | 96090101.RSO — 5,690 |
| 09/17/96 | 03:47p | 714,002 | 96090201.RSO — 2,380 |
| 09/17/96 | 03:48p | 687,602 | 96090401.RSO — 2292 |
| 09/17/96 | 03:48p | 690,602 | 96090402.RSO — 2302 |
| 09/17/96 | 03:49p | 342,901 | 96090601.rso — 1143 |
| 09/17/96 | 03:50p | 342,001 | 96090602.rso — 1140 |
| 09/17/96 | 03:51p | 647,101 | 96090801.rso — 2157 |
| 09/17/96 | 03:52p | 641,701 | 96090802.rso — 2139 |
| 09/17/96 | 03:55p | 1,075,201 | 96091001.rso — 3575 |
| 09/17/96 | 04:01p | 3,309,601 | 96091101.rso — 11023 |
| 09/17/96 | 04:04p | 1,773,601 | 96091102.rso — 5903 |
| 09/17/96 | 04:09p | 2,660,817 | 96091301.rso — 8952 |
| 09/17/96 | 04:14p | 2,114,401 | 96091401.rso — 7039 |
| 09/17/96 | 04:16p | 1,341,601 | 96091501.rso — 4463 |
| 09/17/96 | 04:18p | 653,101 | 96091701.rso — 2168 |
| 09/23/96 | 01:16p | 594,901 | 96092101.rso — 1974 |
| 09/23/96 | 01:17p | 393,901 | 96092102.rso — 1304 |
| 09/23/96 | 01:18p | 380,701 | 96092201.rso — 1260 |
| 09/30/96 | 10:19a | 368,701 | 96092401.rso — 1220 |
| 09/30/96 | 10:20a | 352,801 | 96092501.rso — 1167 |
| 09/30/96 | 10:20a | 338,701 | 96092601.rso — 1120 |
| 09/30/96 | 10:21a | 308,401 | 96092701.rso — 1019 |
| 09/30/96 | 10:22a | 279,301 | 96092801.rso — 922 |
| 09/30/96 | 10:22a | 220,501 | 96092802.rso — 726 |
| 09/30/96 | 10:23a | 180,001 | 96093001.rso — 591 |

                25 File(s)    22,119,145 bytes
                              793,721,856 bytes free

IXC
.RSO
RESPONSE Fi

73,569

Verified By Consultants Reports

EXHIBIT
56
Bender    5-1-98

**Richard G. Whalley & Associates**
**Forensic Laboratory**

2404 Broadway San Diego CA 92102 (619) 232-6543

October 4, 1999

Abuwi M. Mahdi

Re:     *Abuwi Mahdi*
        *990174*

EXAMINATION REQUESTED:

Examine the knife injuries of Linda Mahdi and the photographs of the injuries to
Linda Mahdi.

EVIDENCE RECEIVED:

1.  Black filleting knife, Manufacture Keene, stainless steel, approximately
    14 inches overall length.

2.  Color Polaroid photographs of Linda Mahdi's hand injuries.

3.  Medical Report pertaining to Linda Mahdi's hand injuries.

EXAMINATION AND RESULTS:

Examination of the filleting knife indicates that it has a stainless steel blade honed to
a sharp edge.  After viewing the photographs of Linda Mahdi's injuries and reading
the medical reports pertaining to those injuries, it is this examiner's opinion that the
wounds are consistent with the defensive action of grabbing the knife blade.  It is
this examiner's opinion that the knife blade was not being thrust when this
occurred, because the slicing action of the blade would have been more extensive
and deeper.

Richard G. Whalley
Forensic Scientist
Diplomate-American Board of Criminalistics
Certification No. 502

Criminalistics · Personal Injury Dynamics · Product Liability · Arson Analysis · Questioned Documents

From: Amy At Shababi
Phone: (217) 366-5739

Atten: Robin @ BFIC
Fax #: (619) 693-6428
RE: Billing Problem



CARRIER IXC
RECEIVED
MAR 3 1 1997
BY: _____

Here is a copy of my phone bill. As you will see most of the calls were incomplete, yet they show up on my bill. Also, there seems to be an additional charge of $0.18 per minute to all international calls. Why?!

We have taken the liberty of enlarging the bill to make it easier for you to read.

I called the 1(700)555-4141. number as per your request and got the following message (if it is any help).

[ thank you for selecting [IXC] for your long distance carrier ]

please get back to me as soon as possible with the out come.

18

Thank you

65
18
83



*Robin*

# PORTANT INFORMATION

s portion of your bill is provided as a service to the company
ntified above.   There is no connection between Ameritech and this
pany.

# JRRENT CHARGES

**ng Distance**

| No. | Date | Time | Place Called | Number | Code | Min | Amount |
|-----|------|------|--------------|--------|------|-----|--------|
|     | 1-06 | 532P | IRAQ | 9641776046 | R | 1 | 1.17 |
| 2 | 1-09 | 1032P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 3 | 1-09 | 1033P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 4 | 1-09 | 1033P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 5 | 1-09 | 1034P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 6 | 1-09 | 1034P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 7 | 1-09 | 1034P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 8 | 1-09 | 1035P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 9 | 1-09 | 1036P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 10 | 1-09 | 1036P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 11 | 1-09 | 1037P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 12 | 1-09 | 1037P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 13 | 1-09 | 1037P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 14 | 1-09 | 1038P | IRAQ | 9641776909 | Y | 2 | 2.10 |
| 15 | 1-09 | 1041P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 16 | 1-09 | 1053P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 17 | 1-09 | 1053P | IRAQ | 9641776909 | Y | 2 | 2.10 |
| 18 | 1-09 | 1055P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 19 | 1-09 | 1055P | IRAQ | 9641776909 | Y | 1 | 1.17 |
|    | 1-09 | 1056P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 21 | 1-09 | 1056P | IRAQ | 9641776909 | Y | 1 | 1.17 |
| 22 | 1-09 | 1056P | IRAQ | 9641776909 | Y | 1 | 1.1 |
| 23 | 1-09 | 1057P | IRAQ | 9641776909 | Y | 2 | 2.10 |
| 24 | 1-09 | 1058P | IRAQ | 9641776909 | Y | 1 | 1.1 |
| 25 | 1-09 | 1059P | IRAQ | 9641776909 |  | 1 | 1.1 |



| Account Number | Statement Date | | Page 14 |
| --- | --- | --- | --- |
| 619 656-1563 140 S 5164 | Mar 10, 1997 | | |
| Questions about your bill? | 1-888-478-8724 | | |



## Calls

- Billed on Behalf of BFIC
- Domestic (continued)

| | Date | Time | Place and Number Called | | | Type | Rate | Minutes | Amount |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1. | Feb27 | 9:41pm | RESEDA | CA | 818 705-8577 | Direct | Nght+ | 91.2 | 13.22 |
| | | | | | | | | | 183.72 |
| **Total Calls** | | | | | | | | | **$186.64** |

ORDER_1S

| RESELLER | BTN | PROD_ID | LOA_DATE | CIC | ORDER_DATE | ACCT_NAME | IXC_STATUS |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BFIC | 6196561563 | P5495 | 19960601 | 0948 | 19960812 | MUSLIM COMM. NETWORK | R |
| BFIC | 6196561563 | P5495 | 19960601 | 0948 | 19961216 | MUSLIM COMM. NETWORK | C |

ORDER_1S

| USER_DATE | IXC_BATCH | IXC_ORDER | PROC_DATE | CXRTYPE | SRV_ORDER |
| --- | --- | --- | --- | --- | --- |
| 19960812 | 0000126199 | 02751779 | 19960813 | LEC | 02751779 |
| 19960812 | 0000170910 | 04581857 | 19961216 | IXC | 02751779 |

usbidata

| btn | libcode | intrastate | 1nterstate | Field6 | intrastate cost | interstate cost | credit |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 6196561563 | JX | 966 | 1029 | 2 | 142511 | 104094 | 600 |

MILESTON

| XC_ORDER | IXC_STATUS | DATE_INIT | TIME_INIT | DATE_COMPL | TIME_COMPL | ADD_EFFDT | INT_FILENO | RSP_FILE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 2751779 | C | 19960813 | 01:58:11 | 19960813 | 01:58:11 | | 0000126199 | |
| 2751779 | R | 19960813 | 03:46:31 | 19960819 | 23:03:41 | | 0000126258 | 0000128256 |

1Z/ 6851 BC24 2A 9605512989 555 921212347    C002    RTEN

# DETAILED CHARGES

Page    6

ACIS

For questions regarding U.S. Billing Inc.
charges, call toll free 1 888 472-8724.

773 463-1702 063 9

MAR 19, 1997

# IMPORTANT INFORMATION

This portion of your bill is provided as a service to the company
identified above.  There is no connection between Ameritech and this
company.

# CURRENT CHARGES

**Miscellaneous Charges and Credits**
This section of the bill reflects charges and/or
credits applied to your account.
No. Date  Description
**BFIC**
  For Services on 773 463-1702
  1 01-01  MO SERV FEE .................................     3.00
  Total for 773 463-1702 ...........................     3.00
Total for BFIC .....................................     3.00

**Total Miscellaneous Charges and Credits** .................     3.00

**Long Distance**

| No. | Date | Time | Place Called | | Number | Code | Min | Amount |
|-----|------|------|--------------|---|--------|------|-----|--------|
| IXC LONG DISTANCE | | | | | | | | |
| 1 | 12-18 | 1201P | CREVECOEUR | MO | 314 469-7878 | D | .4 | .25 |
| 2 | 12-19 | 1015A | LOMBARD | IL | 630 495-3821 | D | 17.4 | 2.92 |
| 3 | 12-19 | 1001P | MINNEAPOLS | MN | 612 525-1812 | N | 13 | 1.72 |
| 4 | 12-21 | 1013A | CREVECOEUR | MO | 314 469-7878 | D | 2 | .51 |
| 5 | 12-21 | 422P | WHEATON | IL | 630 260-9551 | D | 3 | .52 |
| 6 | 12-21 | 745P | CREVECOEUR | MO | 314 469-7878 | N | 1 | .13 |
| 7 | 12-22 | 1207P | IRVINE | CA | 714 551-2697 | D | .9 | .25 |
| 8 | 12-22 | 1224P | CREVECOEUR | MO | 314 469-7878 | D | 6.4 | 1.79 |
| 9 | 12-22 | 112P | NORTHRIDGE | CA | 818 700-2966 | D | .4 | .25 |
| 10 | 12-22 | 116P | MANCHESTER | MO | 314 256-7979 | D | 1.3 | .51 |
| 11 | 12-22 | 533P | CHESTERFLD | MO | 314 537-1235 | N | 8.3 | 1.19 |
| 12 | 12-22 | 543P | MANCHESTER | MO | 314 256-7979 | N | 3 | .53 |
| 13 | 12-22 | 801P | CREVECOEUR | MO | 314 576-0035 | N | .7 | .13 |

V470 (1096)    **FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE**

# DETAILED CHARGES

Page   7

ACIS

For questions regarding U.S. Billing Inc.
charges, call toll free 1 888 472-8724.

773 463-1702 063 9

MAR 19, 1997

**Long Distance - continued**

| No. | Date | Time | Place Called | | Number | Code | Min | Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | 12-22 | 803P | NEWMILFORD | CT | 860 355-4324 | N | 1.4 | .26 |
| 2 | 12-22 | 805P | LOMBARD | IL | 630 495-3821 | N | 19.7 | 2.10 |
| 3 | 12-23 | 1016A | CREVECOEUR | MO | 314 469-7878 | D | 9.1 | 2.57 |
| 4 | 12-23 | 1027A | LOMBARD | IL | 630 495-3821 | D | 12.5 | 2.11 |
| 5 | 12-28 | 958A | LOMBARD | IL | 630 495-3821 | D | 11.6 | 1.95 |
| 6 | 12-29 | 1246P | LOMBARD | IL | 630 495-3821 | D | 1.1 | .33 |
| 7 | 12-29 | 217P | LOMBARD | IL | 630 495-3821 | D | 1.1 | .33 |
| 8 | 12-29 | 308P | LOMBARD | IL | 630 495-3821 | D | .3 | .17 |
| 9 | 12-30 | 1117A | LOMBARD | IL | 630 495-3821 | D | 35.9 | 5.84 |
| 10 | 12-30 | 901P | LOMBARD | IL | 630 495-3821 | N | 3.7 | .42 |
| 11 | 1-01 | 1136A | LOMBARD | IL | 630 495-3821 | D | 1.3 | .33 |
| 12 | 1-03 | 1037A | BLUEISLAND | IL | 708 385-0026 | D | .5 | .17 |
| 13 | 1-05 | 1002P | LOMBARD | IL | 630 495-3821 | N | 15 | 1.57 |
| 14 | 1-08 | 452P | ARLIGTNHTS | IL | 847 632-9852 | D | 6.7 | 1.20 |
| 15 | 1-09 | 1057A | LOMBARD | IL | 630 495-3821 | D | 26.2 | 4.38 |
| 16 | 1-09 | 337P | ARLIGTNHTS | IL | 847 632-9852 | D | .2 | .18 |
| 17 | 1-09 | 338P | ARLIGTNHTS | IL | 847 632-9852 | D | 1 | .18 |
| 18 | 1-11 | 402P | LOMBARD | IL | 630 495-3821 | D | 9.2 | 1.62 |
| 19 | 1-13 | 1046A | ARLIGTNHTS | IL | 847 632-9852 | D | 12.5 | 2.23 |
| 20 | 1-15 | 334P | ARLIGTNHTS | IL | 847 632-1694 | D | .2 | .18 |
| 21 | 1-15 | 529P | ARLIGTNHTS | IL | 847 632-9852 | N | 6.2 | .74 |
| 22 | 1-16 | 937A | LOMBARD | IL | 630 495-3821 | D | 9.1 | 1.62 |
| 23 | 1-18 | 133P | LOMBARD | IL | 630 495-3821 | D | 1.9 | .33 |
| 24 | 1-21 | 430P | LOMBARD | IL | 630 495-3821 | D | 8.9 | 1.46 |
| 25 | 1-21 | 450P | LOMBARD | IL | 630 495-3821 | DM | 21.5 | 3.57 |
| 26 | 1-22 | 731P | LOMBARD | IL | 630 495-3821 | N | 2.6 | .31 |
| 27 | 1-22 | 804P | WHEELING | IL | 847 808-1340 | N | .6 | .11 |
| 28 | 1-23 | 1011A | HOMEWOOD | IL | 708 799-7400 | D | 1.3 | .33 |
| 29 | 1-23 | 1018A | LOMBARD | IL | 630 495-3821 | D | 22.6 | 3.73 |
| 30 | 1-24 | 653P | LOMBARD | IL | 630 495-3821 | N | 17.4 | 1.89 |
| 31 | 1-28 | 604P | LOMBARD | IL | 630 495-3821 | N | 9.1 | 1.05 |
| 32 | 1-29 | 504P | ARLIGTNHTS | IL | 847 632-9852 | N | 22.7 | 2.42 |
| 33 | 1-29 | 730P | ARLIGTNHTS | IL | 847 632-9852 | N | 1.8 | .21 |
| 34 | 1-29 | 732P | ARLIGTNHTS | IL | 847 618-1000 | N | 13.7 | 1.47 |
| 35 | 1-30 | 410P | HIGHLANDPK | IL | 847 433-1144 | D | 2.1 | .49 |
| 36 | 1-30 | 854P | HIGHLANDPK | IL | 847 433-1144 | N | 1.3 | .21 |
| 37 | 1-31 | 1006A | LOMBARD | IL | 630 495-3821 | D | 4.5 | .81 |
| 38 | 2-03 | 957A | LOMBARD | IL | 630 495-3821 | D | .7 | .17 |

V470 (1096)   **FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE**

# DETAILED CHARGES

ACIS

For questions regarding U.S. Billing Inc.
charges, call toll free 1 888 472-8724.

773 463-1702 063 9

MAR 19, 1997

**Long Distance - continued**

| No. | Date | Time | Place Called | | Number | Code | Min | Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | 2-03 | 415P | LOMBARD | IL | 630 495-3821 | D | 1.2 | .33 |
| 2 | 2-04 | 539P | ARLIGTNHTS | IL | 847 632-9852 | N | 10.9 | 1.16 |
| 3 | 2-05 | 422P | LOMBARD | IL | 630 495-3821 | D | 24.6 | 4.05 |
| 4 | 2-05 | 742P | ROSELLE | IL | 847 490-0859 | N | 13.8 | 1.47 |
| 5 | 2-06 | 1105A | LOMBARD | IL | 630 495-3821 | D | 23.6 | 3.89 |
| 6 | 2-07 | 1004A | LOMBARD | IL | 630 495-3821 | D | 37.6 | 6.16 |
| 7 | 2-08 | 1029A | LOMBARD | IL | 630 495-3821 | D | 2.6 | .49 |
| 8 | 2-11 | 138P | LOMBARD | IL | 630 495-3821 | D | 26.8 | 4.38 |
| | | | Total IXC LONG DISTANCE Charges ...................... | | | | | 81.67 |

**BFIC**

| No. | Date | Time | Place Called | | Number | Code | Min | Amount |
|---|---|---|---|---|---|---|---|---|
| 9 | 12-05 | 1005A | ARLIGTNHTS | IL | 847 632-9852 | D | 12.9 | 1.81 |
| 10 | 12-08 | 601P | LOMBARD | IL | 630 495-3821 | N | 17.9 | 2.51 |
| 11 | 12-10 | 1039A | LOMBARD | IL | 630 495-3821 | D | 4.2 | .59 |
| 12 | 1-02 | 821P | HARVESTER | MO | 314 939-9493 | N | 1.4 | .26 |
| 13 | 1-02 | 823P | ST LOUIS | MO | 314 631-8894 | N | .6 | .11 |
| 14 | 1-03 | 830P | DEKALB | IL | 815 758-3930 | N | 4.4 | .62 |
| 15 | 1-03 | 853P | CAMBRIDGE | MA | 617 576-7195 | N | .6 | .11 |
| 16 | 1-03 | 958P | SAN MATEO | CA | 415 343-0825 | N | 21.1 | 3.90 |
| 17 | 1-04 | 1229P | CAMBRIDGE | MA | 617 576-7195 | N | 9.7 | 1.79 |
| 18 | 1-04 | 542P | CAMBRIDGE | MA | 617 576-7195 | N | .8 | .15 |
| 19 | 1-04 | 545P | CREVECOEUR | MO | 314 469-7878 | N | 6.6 | 1.22 |
| 20 | 1-04 | 606P | CREVECOEUR | MO | 314 469-7878 | N | 1.4 | .26 |
| 21 | 1-05 | 1026P | MANCHESTER | MO | 314 256-7979 | N | 11.8 | 2.18 |
| 22 | 1-06 | 1228P | CREVECOEUR | MO | 314 469-7878 | D | .7 | .13 |
| 23 | 1-07 | 1000A | ST LOUIS | MO | 314 862-9225 | D | .5 | .09 |
| 24 | 1-08 | 928A | CLIFFSIDE | NJ | 201 941-9395 | D | 9.5 | 1.76 |
| 25 | 1-08 | 516P | MANCHESTER | MO | 314 227-5514 | D | 4.3 | .80 |
| 26 | 1-10 | 437P | IRVINE | CA | 714 551-2697 | DM | 25.8 | 4.77 |
| 27 | 1-10 | 609P | NORTHRIDGE | CA | 818 700-2966 | D | .5 | .09 |
| 28 | 1-10 | 853P | CREVECOEUR | MO | 314 469-7878 | N | .5 | .09 |
| 29 | 1-10 | 855P | CAMBRIDGE | MA | 617 576-7195 | N | .6 | .11 |
| 30 | 1-10 | 933P | NORTHRIDGE | CA | 818 700-2966 | N | .5 | .09 |
| 31 | 1-11 | 454P | CREVECOEUR | MO | 314 469-7878 | NM | 10.9 | 2.02 |
| 32 | 1-11 | 508P | CREVECOEUR | MO | 314 469-7878 | N | .7 | .13 |
| 33 | 1-11 | 818P | NORTHRIDGE | CA | 818 700-2966 | N | 9.1 | 1.68 |
| 34 | 1-12 | 1023A | MEHLVILLE | MO | 314 845-0064 | N | 25.3 | 4.68 |
| 35 | 1-12 | 250P | ST LOUIS | MO | 314 862-9225 | N | .7 | .13 |

V470 (1096)    **FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE**



# DETAILED CHARGES

Page   9

ACIS

For questions regarding U.S. Billing Inc.
charges, call toll free 1 888 472-8724.

773 463-1702 063 9

MAR 19, 1997

**Long Distance - continued**

| No. | Date | Time | Place Called | | Number | Code | Min | Amount |
|-----|------|------|--------------|--|--------|------|-----|--------|
| 1 | 1-13 | 1109P | NORTHRIDGE | CA | 818 700-2966 | N | .5 | .09 |
| 2 | 1-15 | 731P | CREVECOEUR | MO | 314 469-7878 | N | 1.4 | .26 |
| 3 | 1-15 | 1123P | NORTHRIDGE | CA | 818 700-2966 | N | 25.1 | 4.64 |
| 4 | 1-15 | 1154P | NORTHRIDGE | CA | 818 700-2966 | N | 1.1 | .20 |
| 5 | 1-17 | 922A | MEHLVILLE | MO | 314 487-2577 | D | 1.7 | .31 |
| 6 | 1-17 | 1239P | CREVECOEUR | MO | 314 469-7878 | D | .5 | .09 |
| 7 | 1-17 | 1240P | ST LOUIS | MO | 314 645-0829 | D | .5 | .09 |
| 8 | 1-17 | 1241P | WEBSTRGRVS | MO | 314 919-3081 | D | .8 | .15 |
| 9 | 1-17 | 1242P | ST LOUIS | MO | 314 342-5190 | D | .7 | .13 |
| 10 | 1-17 | 1243P | ST LOUIS | MO | 314 644-0464 | D | .5 | .09 |
| 11 | 1-17 | 1244P | ST LOUIS | MO | 314 879-8898 | D | .5 | .09 |
| 12 | 1-17 | 1245P | ST LOUIS | MO | 314 879-8898 | D | .5 | .09 |
| 13 | 1-17 | 1246P | CREVECOEUR | MO | 314 469-7878 | D | .5 | .09 |
| 14 | 1-17 | 1246P | WEBSTRGRVS | MO | 314 919-3081 | D | 1.8 | .33 |
| 15 | 1-20 | 503P | CREVECOEUR | MO | 314 469-7878 | D | .9 | .17 |
| 16 | 1-20 | 838P | NORTHRIDGE | CA | 818 700-2966 | N | .7 | .13 |
| 17 | 1-21 | 517P | NORTHRIDGE | CA | 818 700-2966 | D | 43.4 | 8.03 |
| 18 | 1-21 | 610P | FORISTELL | MO | 314 463-7878 | D | .5 | .09 |
| 19 | 1-21 | 610P | CREVECOEUR | MO | 314 469-7878 | D | .7 | .13 |
| 20 | 1-25 | 530P | ALLENTOWN | PA | 610 439-0334 | N | .7 | .13 |
| 21 | 1-25 | 532P | CAMBRIDGE | MA | 617 576-7195 | N | 2.6 | .48 |
| 22 | 1-26 | 253P | CREVECOEUR | MO | 314 469-7878 | N | 1.2 | .22 |
| 23 | 1-26 | 304P | CAMBRIDGE | MA | 617 576-7195 | N | 18 | 3.33 |
| 24 | 1-26 | 328P | ST LOUIS | MO | 314 862-9225 | N | .6 | .11 |
| 25 | 1-26 | 657P | NORTHRIDGE | CA | 818 700-2966 | N | 9 | 1.67 |
| 26 | 1-26 | 913P | CREVECOEUR | MO | 314 469-7878 | N | 9.4 | 1.74 |
| 27 | 1-26 | 934P | NORTHRIDGE | CA | 818 700-2966 | N | 8.6 | 1.59 |
| 28 | 1-26 | 947P | NORTHRIDGE | CA | 818 700-2966 | N | 8.7 | 1.61 |
| 29 | 1-30 | 1140A | HUNTITNBCH | CA | 714 841-9975 | D | .8 | .15 |
| 30 | 1-31 | 854A | ST LOUIS | MO | 314 862-9225 | D | 1.4 | .26 |
| 31 | 2-01 | 207P | NORTHRIDGE | CA | 818 700-2966 | N | 33.8 | 6.25 |
| 32 | 2-02 | 1029A | CREVECOEUR | MO | 314 469-7878 | N | 13.6 | 2.52 |
| 33 | 2-02 | 1054A | CAMBRIDGE | MA | 617 576-7195 | N | 10 | 1.85 |
| 34 | 2-02 | 1234P | CAMBRIDGE | MA | 617 576-7195 | N | 10.9 | 2.02 |
| 35 | 2-03 | 733A | DIR ASSIST | NY | 212 555-1212 | | 1.5 | 1.28 |
| 36 | 2-03 | 735A | NEW YORK | NY | 212 219-1222 | D | .5 | .09 |
| 37 | 2-03 | 855A | NEW YORK | NY | 212 219-1222 | D | 3.4 | .63 |
| 38 | 2-03 | 1024A | NEW YORK | NY | 212 219-1222 | D | .8 | .15 |

V470 (1096)   **FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE**

## DETAILED CHARGES

Page   10

ACIS

For questions regarding U.S. Billing Inc.
charges, call toll free 1 888 472-8724.

773 463-1702 063 9

MAR 19, 1997

**Long Distance - continued**

| No. | Date | Time | Place Called | | Number | Code | Min | Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | 2-03 | 424P | NEW YORK | NY | 212 219-1222 | D | 1.6 | .30 |
| 2 | 2-03 | 843P | ST LOUIS | MO | 314 862-9225 | N | .6 | .11 |
| 3 | 2-04 | 125P | NEW YORK | NY | 212 219-1222 | D | .5 | .09 |
| 4 | 2-04 | 125P | NEW YORK | NY | 212 219-1222 | D | .7 | .13 |
| 5 | 2-04 | 212P | HOUSTON | TX | 713 285-5910 | D | 4.3 | .80 |
| 6 | 2-04 | 218P | HOUSTON | TX | 713 285-5910 | D | .5 | .09 |
| 7 | 2-04 | 224P | HOUSTON | TX | 713 285-5910 | D | 1.2 | .22 |
| 8 | 2-04 | 559P | CHESTERFLD | MO | 314 537-1235 | D | 5.4 | 1.00 |
| 9 | 2-04 | 613P | CLIFFSIDE | NJ | 201 941-9394 | D | .5 | .09 |
| 10 | 2-04 | 613P | CLIFFSIDE | NJ | 201 941-0395 | D | .5 | .09 |
| 11 | 2-04 | 614P | CLIFFSIDE | NJ | 201 941-9395 | D | 27.9 | 5.16 |
| 12 | 2-05 | 1135A | BETHESDA | MD | 301 657-1990 | D | 1 | .19 |
| 13 | 2-06 | 919P | CREVECOEUR | MO | 314 469-7878 | N | 4 | .74 |
| 14 | 2-06 | 924P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 15 | 2-06 | 924P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 16 | 2-06 | 925P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 17 | 2-06 | 926P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 18 | 2-06 | 938P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 19 | 2-06 | 938P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 20 | 2-06 | 939P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 21 | 2-06 | 947P | CREVECOEUR | MO | 314 878-6393 | N | .5 | .09 |
| 22 | 2-06 | 948P | CREVECOEUR | MO | 314 878-6393 | N | 1.7 | .31 |
| 23 | 2-09 | 547P | CHESTERFLD | MO | 314 537-1235 | N | .5 | .09 |
| 24 | 2-09 | 547P | CHESTERFLD | MO | 314 537-1235 | N | 6 | 1.11 |
| 25 | 2-12 | 531P | VANCOUVER | BC | 604 685-9975 | D | 2.2 | .66 |
| 26 | 2-15 | 304P | CAMBRIDGE | MA | 617 576-7195 | N | .5 | .09 |
| 27 | 2-15 | 514P | CAMBRIDGE | MA | 617 576-7195 | N | .5 | .09 |
| 28 | 2-17 | 813P | NORTHRIDGE | CA | 818 700-2966 | N | 14.4 | 2.66 |
| 29 | 2-17 | 926P | CREVECOEUR | MO | 314 469-7878 | N | 12.5 | 2.31 |
| 30 | 2-19 | 625P | CREVECOEUR | MO | 314 469-7878 | D | 7.9 | 1.46 |
| 31 | 2-20 | 903A | ST LOUIS | MO | 314 862-9225 | D | .6 | .11 |
| 32 | 2-20 | 729P | CREVECOEUR | MO | 314 469-7878 | N | 3 | .56 |
| 33 | 2-24 | 455P | CREVECOEUR | MO | 314 469-7878 | D | 4.1 | .76 |
| 34 | 2-25 | 1006A | ST LOUIS | MO | 314 862-9225 | D | .5 | .09 |
| 35 | 2-25 | 838P | CREVECOEUR | MO | 314 469-7878 | N | 2.5 | .46 |
| 36 | 2-26 | 949A | ST LOUIS | MO | 314 862-9225 | D | .8 | .15 |

V470 (1096)   **FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE**



Page    2

ACIS

To contact your Ameritech Service Rep. call 1 800 244-4444
Monday through Saturday, 7:00 AM - 7:00 PM.
Nationwide, call 1 800 451-2761
To request bill balance, payment arrangements, or duplicate
bill copy, call our Automated Billing Service on 1 800 873-5501.

773 463-1702 063 9

MAR 19, 1997

## SUMMARY OF CURRENT CHARGES - continued

```
U.S. BILLING INC.
For Detailed Charges - See Page 6
Miscellaneous Charges and Credits .......................        3.00
Long Distance ..........................................      175.82
Local and State Additional Charges .....................         .08
Taxes (Fed    5.36  )(III    8.94  )(Cty    8.79  ) .....       23.09
U.S. BILLING INC. CURRENT CHARGES ......................      201.99
```

```
TOTAL CURRENT CHARGES                                        235.91
```

V470 (1096)    FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE

*Ameritech*

## DETAILED CHARGES

Page    3

ACIS

To contact your Ameritech Service Rep. call **1 800 244-4444**
Monday through Saturday, 7:00 AM - 7:00 PM.
Nationwide, call **1 800 451-2761**
To request bill balance, payment arrangements, or duplicate
bill copy, call our Automated Billing Service on **1 800 873-5501**.

773 463-1702 063 9

MAR 19, 1997.

## IMPORTANT INFORMATION

Rate Change for National Directory Assistance
Getting long distance numbers outside your area code no longer means
making two calls--one to get the area code and another to get the
number. Now, one simple call to 411 or 555-1212 does it all for local
or national numbers. Plus, with the introduction of so many new area
codes around the country, Ameritech National Directory Assistance makes
finding numbers for family, friends and businesses easier than ever.
Beginning April 1, 1997, the cost to call 411 or 555-1212 for long
distance numbers outside the 312, 630, 708, 773 and 847 area codes will
increase from 90 cents to 95 cents per call. The cost for calling 411
or 555-1212 for Local Directory Assistance will remain the same.
Note: Ameritech National Directory Assistance is available only when
calling from area codes 312, 630, 708, 773 and 847.


More calls are received on Monday than any other day. In order to
serve you better, please call our Service Centers between Tuesday and
Saturday. Thank you for helping us serve you better.


Ameritech's 3-Way Calling Available in Chicago on a "Pay-per-use" Basis
Beginning May 10, Ameritech 3-Way Calling - the service that lets you
talk to two people at once - will be available on your line for just 75
cents per use. It's simple to use:
* Call a friend. Once you are both on the line . . .
* Quickly press the receiver button (or flash button on select
  telephones). A stuttered dial tone will indicate that 3-Way
  Calling is activated.
* Then call a second friend. When they answer, press
  the receiver button again to connect everyone.
Just three steps, "click, dial, click" and you are all connected. If
you would like to subscribe for unlimited monthly use or if you have
questions about how to use 3-Way Calling on a "pay-per-use" basis, call
the number listed at the top of your bill. Normal local and
long-distance charges apply. Not available in all areas.


V470 (1096)    **FOR CALLING CODES PLEASE SEE THE BACK OF THE FIRST PAGE**

DEFENDANT MAHDI:  I'M GOING TO GIVE YOU THE REPORT THAT
SHE SAID THAT --

THE COURT:  MR. MAHDI, LET'S DO THIS.

DEFENDANT MAHDI:  JUST LET YOU LOOK AT THAT REPORT.  THEN
YOU CAN SEE FOR YOURSELF THAT SHE'S LYING TO YOU.  SHE'S LYING.
AND AIN'T APOLOGIZING FOR IT.  SHE HAS NO SHAME.

THE COURT:  WHAT REPORT ARE YOU REFERRING TO?

ALL RIGHT.  ARE YOU TALKING ABOUT THE WITNESS
INTERVIEW WITH ROBERTO SANDOVAL?

DEFENDANT MAHDI:  YES.  IT SAYS A MONTH AFTER I WAS
SUPPOSEDLY ARRESTED, A MONTH LATER THE INCIDENT TOOK PLACE, AND
MY WIFE HAD A BANDAGE ON HER HAND, MEANING THAT SHE HAD
BEEN -- THAT'S FROM THE SO-CALLED KNIFE WOUND, WHEN SHE GRABBED
THE KNIFE AND CUT HER HAND.  SHE HAD THIS BANDAGE ON HER HAND.
AND SHE'S TRYING TO STOP MY SON FROM GOING AFTER ME BECAUSE
SHE'S MORE CONCERNED NOT ABOUT HER SON HURTING SOMEBODY BUT
SOMEBODY HURTING HER SON.  AND MY SON IS SUPPOSED TO BE COMING
AFTER ME AND I'M IN JAIL.

MY SON DON'T NEED TO COME AFTER ME BECAUSE I AIN'T
NEVER ABUSED MY WIFE.  NOT -- AND NOW SHE'S SAYING THAT THAT'S
THE SAME EVENT.  THAT'S THE SAME EVENT, AT THE TIME THAT THE
POLICE CAME OUT AND ARRESTED ME.  AND THE MAN CLEARLY SAYS THAT
THE POLICE CAME OUT AFTER MY SON AND THE INDIVIDUAL WAS GONE
FROM MY WIFE'S HOME.  BUT SHE TOLD YOU THAT WAS THE SAME REPORT.

MS. URRUTIA:  YOUR HONOR, THAT IS THE -- THAT REPORT, AS
I SAID LAST WEEK, REPRESENTS THE INCIDENT IN JANUARY.  THAT IS
WHAT THE NEIGHBOR WAS REFERRING TO, BECAUSE HE WAS THE ONE THAT
CALLED 911.

POLICE.  HE HEARD THE DOOR OPEN AT APARTMENT 247 PRIOR TO THE

POLICE ARRIVING.  NORBERTO PEEKED OUT THE WINDOW AND SAW THE

WOMAN AND SAW THE OLDER WOMAN'S HANDS WERE BANDAGED.  HE SAW THE

OLDEST SON GET INTO THE CAR AND LEAVE.  HE DOES NOT RECALL THE

EXACT WORDS, BUT HE COULD UNDERSTAND THAT THE WOMAN DID NOT WANT

HER SON TO LEAVE.  SHE SAID SOMETHING TO THE EFFECT THAT SHE

WASN'T AFRAID OF HER SON HURTING ANYONE, SHE WAS AFRAID OF

SOMEONE ELSE HURTING HIM.

        A BANDAGE ON HER HAND.  I TURNED MYSELF IN ON THE

DAY OF THE SCENE OF THE CRIME.  I'VE BEEN IN JAIL FOR SIX

MONTHS.  THIS TOOK PLACE SOMETIME IN MAY, THIS EVENT THAT YOUR

PRIVATE INVESTIGATOR WENT OUT AND INTERVIEWED.

        THE COURT:  AGAIN, DON'T TALK TO MISS URRUTIA.  SPEAK TO

THE COURT.

        DEFENDANT MAHDI:  AGAIN, THAT THE PRIVATE INVESTIGATOR

CAME OUT AND INTERVIEWED, AND THE POLICE CAME OUT TO THE HOUSE.

THEY SAID WHEN THE POLICE GOT THERE, THEY HAD ALREADY LEFT.  SO

THERE'S A POLICE REPORT RIGHT THERE, RIGHT THERE, ABOUT SOMEBODY

BEATING ON MY WIFE AND THEN MY SON TRYING TO DEFEND HER, GOING

AFTER THIS INDIVIDUAL, AND SHE'S CONCERNED THAT THE INDIVIDUAL

NOW IS GOING TO HURT MY SON.

        AND THE BANDAGE ON HER HAND IS PROOF.  THE ONLY

TIME -- SHE STATED IN THE COURTROOM IN THE 405 HEARING THAT THE

ONLY TIME SHE'S HAD A BANDAGE ON HER HAND IS THE TIME WHEN SHE

SAYS, SUPPOSEDLY, I CHARGED AT HER WITH THE KNIFE.

        MS. URRUTIA:  YOUR HONOR, WE HAVE A REPORT FROM THE

NEIGHBORS OF THE DEFENDANT AND HIS WIFE.  THE STATEMENT THAT WAS

TAKEN FROM THEM RELATES TO THE SOUTH BAY CASE, THE OPEN

MISDEMEANOR CASE.  THAT IS WHAT -- WE HAVE A 911 CALL THAT WE'VE
ALREADY PROVIDED TO DEFENSE ON THAT THAT WAS MADE BY NORBERTO
SANDOVAL, AND THE INCIDENT THAT THEY'RE REFERRING TO IS THAT
INCIDENT.  IT HAS NOTHING TO DO WITH ANYTHING THAT HAS OCCURRED
SINCE THE DEFENDANT HAS BEEN IN CUSTODY.  THAT WAS -- THAT WAS
RELATED TO THAT SPECIFIC INCIDENT.

       WHAT I ASKED THE INVESTIGATOR TO DO, BECAUSE
I -- THEY WERE NOT INTERVIEWED BY THE POLICE.  THEY WERE -- I
FOUND THEM THROUGH THE 911 CALL.  LISTENING TO THE 911 CALL,
REALIZED THEY WERE NEIGHBORS OF THE DEFENDANT AND HIS WIFE.  I
THEN ASKED MY INVESTIGATOR TO GO OUT AND INTERVIEW THEM ABOUT
WHAT THEY HAD HEARD THAT EVENING AND ANYTHING ELSE THEY MIGHT
HAVE KNOWN OF PRIOR TO THAT, YOU KNOW, AS FAR AS WHAT -- WHAT
THEY HAD SEEN OR HEARD, BEING NEIGHBORS OF THE COUPLE, AND THIS
IS WHAT WAS REPORTED.  THIS HAS NOTHING TO DO WITH ANYTHING THAT
HAS OCCURRED SINCE THE DEFENDANT HAS BEEN IN CUSTODY.  THIS WAS
SOMETHING -- THIS RELATES TO THAT SPECIFIC INCIDENT.

     DEFENDANT MAHDI:  OKAY, YOUR HONOR.

     THE COURT:  MR. MAHDI?

     DEFENDANT MAHDI:  IF YOU READ THE REPORT --

     THE COURT:  BEFORE WE GO FORWARD --

     DEFENDANT MAHDI:  -- IT SHOWS THAT THERE'S TWO
INCIDENCES.

       PLEASE.

     THE COURT:  BEFORE WE GO FURTHER, I'VE JUST REVIEWED THE
REPORT -- I'M GOING TO GIVE YOU A CHANCE.

     . I'VE JUST HAD AN OPPORTUNITY TO REVIEW THE REPORT.
I'LL GIVE YOU FURTHER TIME.  THE ONLY REASON I'M -- I WANT TO

08/18/1998  17:04   31426_010          LRS ST. LOUIS—              PAGE  03

# Levi, Ray & Shoup, Inc.

Exhibit 75

**LRS**

INFORMATION TECHNOLOGY SOLUTIONS

BFI COMMUNICATIONS
MOHAMMED MAHDI
707 BROADWAY
6TH FLOOR
SAN DIEGO, CA  90101

**INVOICE**

PAGE  OF  1

| Remit To: Levi, Ray & Shoup, Inc. | FEIN 37-1073724    IDHR 25226-50-0 |
|---|---|
| 2401 West Monroe | TERMS  NET  10 DAYS, 1.5% PER MONTH THEREAFTER |
| Springfield, IL  62704-1433 | |
| ATTN: Accounts Receivable | If you have invoice questions call: |
| | RODNEY FADEN   (217) 793-3800 |

| ACCOUNT NO. | INVOICE NO. | INVOICE DATE | DUE DATE | P.O. NUMBER | | | |
|---|---|---|---|---|---|---|---|
| 4167 | 000013006 | 04/14/1998 | 04/24/1998 | | | | |
| DESCRIPTION | | | | QTY | UNIT PRICE | TAXABLE | AMOUNT |
| CONSULTING ADVANCE | | | | 1 | 10,000.000 | N | 10,000.00 |

| | | |
|---|---|---|
| RETAINER TO PERFORM CONSULTING SERVICES INCLUDING THE STAGING OF DATA, DATA ANALYSIS AND AD-HOC REPORTING | SALES TOTAL | 10,000.00 |
| | SALES TAX | |
| | AMOUNT DUE | 10,000.00 |

**U.S. FUNDS**

2401 West Monroe Street
Springfield, Illinois 62704
217.793.3800

Please include your account and invoice
numbers with your remittance.

08/18/1998  17:04   3142650_9                      LRS ST. LOUIS —                      PAGE  84

# Levi, Ray & Shoup, Inc.

**LRS**

INFORMATION TECHNOLOGY SOLUTIONS

**INVOICE**

BFI COMMUNICATIONS
MOHAMMAD MOAFI
707 BROADWAY
5TH FLOOR
SAN DIEGO, CA  92101

PAGE  1 OF  1

| Remit To: Levi, Ray & Shoup, Inc. | FEIN  37-1073724      IFMR  25226-00-0 |
|---|---|
| 2401 West Monroe | TERMS   NET  30 DAYS. 1.5% PER MONTH THEREAFTER |
| Springfield, IL   62704-1435 | |
| ATTN: Accounts Receivable | If you have invoice questions call: |
| | RODNEY FICKAS    (314) 567-8430 |

| ACCOUNT NO. | INVOICE NO. | INVOICE DATE | DUE DATE | P.O. NUMBER | | | |
|---|---|---|---|---|---|---|---|
| 4167 | 000012906 | 04/03/1998 | 05/03/1998 | 4167-1 | | | |
| DESCRIPTION | | | | QTY | UNIT PRICE | TAXABLE | AMOUNT |
| THOMPSON COBURN - DATA ANALYSIS - R. FICKAS | | | | 16.00 | 90.000 | N | 1,440.00 |

SERVICES FROM 03/01/1998 THROUGH 03/31/1998

| | |
|---|---|
| SALES TOTAL | 1,440.00 |
| SALES TAX | |
| CREDIT | .00 |
| CREDIT REMAINING | .00 |

**U.S. FUNDS**

Please include your account and invoice
numbers with your remittance.

2401 West Monroe Street
Springfield, Illinois 62704
(217) 793-3800

# Levi, Ray & Shoup, Inc.

**LRS**

INFORMATION TECHNOLOGY SOLUTIONS

BPI COMMUNICATIONS
MUHAMMAD MAHDI
707 BROADWAY
5TH FLOOR
SAN DIEGO, CA  92101

## INVOICE

PAGE   1 OF  1

| Remit To: Levi, Ray & Shoup, Inc. | FEIN  37-1073724       IDHR  15228-00-0 |
|---|---|
| 2401 West Monroe | TERMS   NET   30 DAYS, 1.5% PER MONTH THEREAFTER |
| Springfield, IL   62704-1459 | |
| ATTN: Accounts Receivable | If you have invoice questions call: |
| | RODNEY FICKAS   (314) 505-0055 |

| ACCOUNT NO. | INVOICE NO. | INVOICE DATE | DUE DATE | P.O. NUMBER | | | |
|---|---|---|---|---|---|---|---|
| 4167 | 9900113307 | 05/05/1998 | 06/04/1998 | 4167-1 | | | |
| DESCRIPTION | | | | QTY | UNIT PRICE | TAXABLE | AMOUNT |
| THOMPSON COBURN - DATA ANALYSIS - R. FICKAS | | | | 54.50 | 90.000 | N | 4,905.00 |
| THOMPSON COBURN - DATA ANALYSIS - G. ROSS | | | | 15.00 | 30.000 | N | 1,350.00 |
| EXPENSES | | | | 1 | 773.550 | N | 773.55 |

| | | |
|---|---|---|
| | INVOICE TOTAL | 7,028.55 |
| | NET  TAX | |
| | CREDIT | -7,028.55 |
| SERVICES FROM 04/01/1998 THROUGH 04/30/1998 | CREDIT REMAINING | 0.00 |
| | | IN USD |

## U.S. FUNDS

2401 West Monroe Street
Springfield, IL 62704

(217) 793-3800
Fax (217) 793-0286

Please include your account and invoice
numbers with your remittance.

08/18/1998  17:04    3142858812              LRS ST. LOUIS                    PAGE  06



# Levi, Ray & Shoup, Inc.

**• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •**

## INFORMATION TECHNOLOGY SOLUTIONS

BFI COMMUNICATIONS
MUHAMMAD WAHDI
707 BROADWAY
5TH FLOOR
SAN DIEGO, CA  92101

# INVOICE

PAGE   1 OF  1

| Remit To: Levi, Ray & Shoup, Inc. | FEIN  37-1073724       IDHR  25226-00-0 |
|---|---|
| 2401 West Monroe | TERMS   NET   30 DAYS, 1.5% PER MONTH THEREAFTER |
| Springfield, IL   62704-1459 | |
| ATTN: Accounts Receivable | If you have invoice questions call: |
| | RODNEY FICKAS    (314)805-0052 |

| ACCOUNT NO. | INVOICE NO. | INVOICE DATE | DUE DATE | P.O. NUMBER | | | |
|---|---|---|---|---|---|---|---|
| 4167 | 000013662 | 06/03/1998 | 07/03/1998 | 4167-1 | | | |
| **DESCRIPTION** | | | | **QTY** | **UNIT PRICE** | **TAXABLE** | **AMOUNT** |
| THOMPSON COBURN - DATA ANALYSIS - R. FICKAS | | | | 23.50 | 90.000 | N | 2,115.00 |

| | | SALES TOTAL | 2,115.00 |
|---|---|---|---|
| | | SALES TAX | |
| | | CREDIT | |
| SERVICES FROM 05/01/1998 THROUGH 05/31/1998 | | AMOUNT DUE | 583.55 |

## U.S. FUNDS

**• • • • • • • • • • • •**
2401 West Monroe Street
Springfield, Illinois 62704
217 792 3000

Please include your account and invoice
numbers with your remittance.

Exhibit #76 p. 8

1181

76

**BFI COMMUNICATION, INC.**
7467 DRAPER AVENUE   619-551-7700
LA JOLLA, CA  92037

16-49/1220

DATE _9/10/96_

PAY TO THE ORDER OF _Curly, Lennon, Peters + Crocker P.C._   $ _1,000.00_

_One Thousand Dollars_   +061623138 09-24-96 07   DOLLARS

**Union Bank**
La Jolla Office
7808 Girard Avenue
La Jolla, CA  92037
619-230-3800

FOR _Federal Regulatory Matters (on Account)_

_Vincent _____

6092-1   10183   "00�612181"  1:122000496:60500000905"

_Cashing checks with one signature_

---

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA  92121
619-551-7700   619-693-6400   FAX 619-693-6428

2336

16-49/1220

DATE _1/27/97_

PAY TO THE ORDER OF _Dr Abumi Mahdi_   $ _2,000.00_

_Two Thousand Dollars_   DOLLARS

**UNION BANK OF CALIFORNIA**
La Jolla
7807 Girard Avenue, La Jolla, CA  92037
619 230 3800

FOR _(1049)_

_Vincent _____

"002336"  1:122000496:60500000905"

_Check # 2336 cash without any Endorsement on The Back of check, over_

---

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA  92121
(619) 551-7700   (619) 693-6400
FAX (619) 693-6428

UNION BANK OF CALIFORNIA
7807 GIRARD AVE.
LA JOLLA, CA  92037
16-49/1220

4290

PAY TO THE ORDER OF _Silver Gate_   $ _5,000.00_

_Five Thousand dollars_   DOLLARS

MEMO:

_Joe Demoura_

"004290"  1:122000496:  60500000905"   "0000500000"

SECURITY FEATURES   MICRO PRINT TOP & BOTTOM BORDERS · COLORED PATTERN · ARTIFICIAL WATERMARK ON REVERSE SIDE · MISSING FEATURE INDICATES A COPY

_Tim considine cash check at union Bank with only one_
_Signature and no date on The check. Talib Mahdi gave_
_This check to Tom Considine_

2982

Exhibit 76

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700  619-693-6400  FAX 619-693-6428

DATE 4/4/97

16-49/1220

PAY TO THE ORDER OF  Toyota Motor Credit Corporation          $ 402 35/xx

Four Hundred & Two Dollars —                                35/xx DOLLARS

UNION BANK OF CALIFORNIA
La Jolla
7807 Grand Avenue, La Jolla, CA 92037
619 230 3800

FOR  033 0029633

Ahm Mahdi
Vincent Alliance

⑈002982⑈ ⑆122000496⑈ 6050000905⑈

---

1650

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700  619-693-6400  FAX 619-693-6428

DATE 11/20/96

16-49/1220

PAY TO THE ORDER OF  Blanchard, Krasner & French          $ 500 00/xx

Five Hundred Dollars —                                00/xx DOLLARS

UNION BANK OF CALIFORNIA
La Jolla
7807 Grand Avenue, La Jolla, CA 92037
619 230 3800

FOR On Account
$2,463.24

Ahm Mahdi
Vincent Alliance

⑈001650⑈ ⑆122000496⑈ 6050000905⑈

---

1975

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700  619-693-6400  FAX 619-693-6428

DATE 12/19/96

16-49/1220

PAY TO THE ORDER OF  D.C.A.          $ 2,500 00/xx

Two Thousand & Five Hundred Dollars —                00/xx DOLLARS

UNION BANK OF CALIFORNIA
La Jolla
7807 Grand Avenue, La Jolla, CA 92037
619 230 3800

FOR BAL- 2477.24

Ahm Mahdi
Vincent Alliance

⑈001975⑈ ⑆122000496⑈ 6050000905⑈

⑈001975⑈ ⑆122000496⑈ 6050000905⑈          0000250000

Exhibit 76

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700   619-693-6400   FAX 619-693-6428

1997

16-49/1220

DATE 12/20/96

PAY TO THE ORDER OF _Cash_                                          $ 2,000 00

_Two Thousand Dollars +_                                      DOLLARS

**UNION BANK OF CALIFORNIA**
La Jolla
7807 Girard Avenue, La Jolla, CA 92037
619 230 3800

FOR _Wire Transfer_

_JABIR MOHAMMED_

⑈001997⑈ ⑉122000496⑈ 6050000905⑈

---

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700   619-693-6400   FAX 619-693-6428

2700

000001 2373 11

1245204 3

16-49/1220

DATE 2/28/97

PAY TO THE ORDER OF _Pacific Bell_                                    $ 3,740 96

_Three Thousand + Seven Hundred + Forty Dollars +    96/__ DOLLARS

**UNION BANK OF CALIFORNIA**
La Jolla
7807 Girard Avenue, La Jolla, CA 92037
619 230 3800

FOR _Bal 3pac_

⑈002700⑈ ⑉122000496⑈ 6050000905⑈

_Exhibit 96_

Exhibit-76



```
Posted   : 10/31/1997
Bank     : 0000
R/T      : 122000496
Account  : 6050000905
Check    : 4290
Amount   : 5000.00
DIN      : 30623065
```

# DISTRICT ATTORNEY

### COUNTY OF SAN DIEGO
### BUREAU OF INVESTIGATION
### FAMILY PROTECTION DIVISION

CASE NUMBER:  PC5438

DATE  7-6-99                                   INVESTIGATOR:  DEBBIE CONKIN

DEFENDANT:  ABUWI MUHAMMED MAHDI

---

WITNESS INTERVIEW:     SANDOVAL, NORBERTO
And
SANDOVAL, ROSA

On 7-3-99 at approximately 1730 hrs, I interviewed Norberto and Rosa Sandoval by
telephone.  I first spoke with Rosa, who could not remember a lot of details, but provided
the following.

Rosa and Norberto were living at 3180 Bonito Rd # 147, when the Mahdi family moved
upstairs to apartment #247.  On an unknown date after the Mahdies moved in, Rosa
recalls hearing a lot of noise from apartment #147.  She also heard a male and female
arguing and screaming.  She could not understand what the argument was about, but did
hear the female's voice yelling, "don't ht me; don't hit me."  She also remembers hearing
the windows rattle after something hit the upstairs floor.

Norberto called the police and the man was arrested.  Rosa believes it was a couple of
weeks later when she again heard arguing coming from apartment #247.  The police were
called but Rosa does not know what happened.  She thinks the sons were arguing with
their mother.

Rosa could not provide anything further.  I then spoke with Norberto who related the
following.

The Sandovals lived on Bonito Rd from February 1998 through May 1999.  Norberto
does not recall the exact date when the Mahdies moved in, but believes it was in the fall
after the Sandovals moved in.

Norberto did not know who exactly lived in apartment # 247.  He thinks it was a woman,
her daughter, a teenage son and an older male who Norberto believed was the woman's
older son.  Once in a while, Norberto saw an older man who he believed was the older
woman's husband.

Norberto would notice when the older man was at the apartment because he always parked in the handicap space. At some point the apartment manager or maintenance man must have said something to the man because he started parking on the street when he visited.

Norberto recalled usually seeing the man at night. He would stop by for a while and then leave. On one particular morning, around 0730 hrs, the man was at the apartment. This is the first time Norberto recalls hearing a disturbance from apartment # 247.

Norberto was getting ready for work and had the television on so he could listen to the news. He and Rosa started hearing screaming and arguing coming from #247. They turned the television down and could hear the woman yelling, "don't hit me; don't hit me." Norberto could hear the man screaming but could not understand what he was saying.

Norberto continued to get ready and eventually left for work. Rosa told him that she later saw the man and teenage boy leave the apartment.

The next time the Sandovals heard a disturbance from apartment #247 was during the early morning hours on a Saturday. Norberto and Rosa went to bed Friday night and sometime after midnight, Norberto heard the windows rattle like they do during an earthquake.

Norberto sat up in bed, half asleep. He realized it wasn't an earthquake which caused the windows to rattle. There was fighting and screaming coming from apartment # 247. The noise traveled from room to room and Norberto could hear the woman crying, "don't hit me."

There was an obvious struggle going on upstairs and Norberto was afraid something terrible would happen. At this point, Norberto decided to call the police. The police arrived and took the man away.

On the Thursday morning of the same week, Norberto recalls the police running upstairs with their guns pointed as he started to leave his apartment for work. He heard them say something about having a search warrant. Norberto went back into his apartment.

Rosa was still home when Norberto was able to leave and go to work. She didn't leave until around 0830 hrs. She later told Norberto that she saw the daughter sitting in a police car when she left. The police were searching the daughter's car.

Interview: Sandoval, Norberto & Rosa                    Page # 3

Afterwards, it was quiet for about one month. It was a Sunday night when Norberto heard another disturbance from #247. He does not know what time it occurred, but it was quiet when he and Rosa went to bed. Norberto was awakened by people arguing. Norberto believed he heard the voices of more than two people arguing. The sounds also traveled from room to room.

Being concerned that there would be another assault, Norberto called the police. He heard the door open at # 247 prior to the police arriving. Norberto peeked out the window and saw the older woman's hands were bandaged. He saw one of the sons get into a car and leave.

Norberto does not recall the exact words which were exchanged, but he could understand that the woman did not want her son to leave. She said something to the effect that she wasn't afraid of the son hurting anyone, she was afraid of someone else doing something to him.

The police arrived after the son left. They stayed for a while and then left. After they were gone the son came home. It was quiet after that date. Norberto and Rosa later moved from the apartment complex.

Neither Norberto, nor Rosa could provide anything further. The interview was concluded at approximately 1845 hrs.

Debbie Conkin
Criminal Investigator





# MAHDI & ASSOCIATES

Mohamed Al Taiba Group Establishment
Mohamed Al Taiba                                                    March 9, 1994

Al Salaam Alaikum Wa Rahmatullahi Wa Barakatuhu

My dear brother,

I pray to Allah(SWT) that you and your family are in the best of health and success.

I thank Allah that I was able to make Iftar with you this blessed Month of Ramadhan. I pray that Allah accept the Fast of the Muslims.

I'm writing you on behalf of the Muslim schools in San Diego, California, which teach about 300 Muslim students daily. These students are being taught Arabic, Quranic Studies and the Sunnah of Muhammad(SAW) as well as required State of California curriculum. I would like to ask a special request for you to consider giving money as Sadaka to further Islamic Education in San Diego and North America in the name of your company and yourself.

If you are able to make a contribution we would all be very thankful to Allah that a Muslim thousands of miles away has an interest in developing Islamic Education for new Muslims and we all would pray to Allah that he continue to bless you in all your efforts.

If this is possible my brother you can make a bank transfer from your bank to the Islamic School's bank in San Diego.

| | |
|---|---|
| Bank: | Union Bank<br>1101 Market Street<br>San Diego, California 92101 |
| Name of Account: | Sister Clara Muhammad School |
| Account Number: | 0120008927 |
| Routing Number: | 122000496 |

Your Brother in Islam,

Muhammad Mahdi

3435 Camino del Rio South, Suite 116                    Telephone (619) 282-0094
San Diego, California 92108   USA                        Fax (619) 282-2213

Exhibit 74

Exhibit 74

---

SAN DIEGO, CA 92120

8-18-95  397

Pay to the
Order of  U. S. Post Office                     $132 60

One hundred thirty two                 60
100  Dollars

Bank of America
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037  (619) 452-8400

For  MCN Packg.                    Alwin Mahdi

⑆12200066⑆ ⑈0450⑈01704⑈13181⑈

---

Banking On America

16-66/1220

B.F.I. COMMUNICATION          449
4427 RAINIER AVE.
SAN DIEGO, CA  92120
                              8-18-95

Pay to the
Order of  M.A. Mahdi                      $400 00

FOUR HUNDRED                          00
100  Dollars

Bank of America          145349-0170-081895-021(204)
La Jolla Main Branch 0170    11-01704-13181
7660 Girard Avenue           90 A0287061        CP
La Jolla, CA 92037  (619) 452-8400

For                                    Ale Mahdy

⑆12200066⑆ ⑈0449⑈01704⑈13181⑈

---

Banking On America

16-66/1220

B.F.I. COMMUNICATION          448
4427 RAINIER AVE.
SAN DIEGO, CA  92120
                              8-17-95

Pay to the
Order of  Consumer Connection Int'l        $5000 00

FIVE THOUSAND                          00
100  Dollars

Bank of America
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037  (619) 452-8400

For  Deposit                           Alwin Mahdi

⑆12200066⑆ ⑈0448⑈01704⑈13181⑈

---

Banking On America

16-66/1220

B.F.I. COMMUNICATION          447
4427 RAINIER AVE.
SAN DIEGO, CA  92120
                              8-16-95

Pay to the
Order of  Gwen Wolfe                       $26 74

Twenty six                            74
100  Dollars

Bank of America
La Jolla Main Branch 0170
7660 Girard Avenue
La Jolla, CA 92037  (619) 452-8400

For  Toner Cartridge                   Alwin Mahdi

⑆12200066⑆ ⑈0447⑈01704⑈13181⑈

3372

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700   619-693-6400   FAX 619-693-6428

16-49/1220

DATE 6/17/97

PAY TO THE ORDER OF MUHAMMAD USMAN                    $ 1,000.00

ONE THOUSAND DOLLARS ONLY                    DOLLARS

**UNION BANK OF CALIFORNIA**
LA JOLLA
7807 Girard Avenue, La Jolla CA 92037
619 230 3800

FOR Interest payment on loan Equity

⑈003372⑈ ⑆122004961⑆ 60500000905⑈

---

1447

**BFI COMMUNICATION, INC.**
7060 MIRAMAR RD., STE. 100
SAN DIEGO, CA 92121
619-551-7700   619-693-6400   FAX 619-693-6428

16-49/1220

DATE 10/30/96

PAY TO THE ORDER OF Muhammad Amin                    $ 6000 00/xx

Six Thousand Dollars +                    00/xx DOLLARS

**UNION BANK OF CALIFORNIA**
LA JOLLA
7807 Girard Avenue, La Jolla CA 92037
619 230 3800

FOR

⑈001447⑈ ⑆122004961⑆ 60500000905⑈

---



B.F.I. COMMUNICATION
4427 RAINER AVE
SAN DIEGO, CA 92120

230

5-18-95

Pay to the Order of Agin Mughtasid                    $600 00

Six Hundred                    00/100 Dollars

**Bank of America**

For You Mahdi

Exhibit 79





B. 6, 5
Exhibit 79

Case 3:00-cv-01518-IEG-LSP   Document 1   Filed 07/28/00   Page 322 of 330

For questions regarding Excel Telecommunications, Inc.
charges, call 1 800-875-9235.

616 363-0373 1500

SEP 10, 1996

## IMPORTANT INFORMATION

This portion of your bill is provided as a service to the company
identified above.  There is no connection between Ameritech and this
company.

## CURRENT CHARGES

### Long Distance

| No. | Date | Time | Place Called | | Number | Code | Min | | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 8-10 | 217P | LANS | MI | 517 483-2481 | N | 1 | 12 | .12 |
| 2 | 8-10 | 223P | LA | MI | 517 483-2481 | N | 1 | 12 | |
| 3 | 8-11 | 757A | L | MI | 517 483-2273 | N | 2 | 0.5 | |
| | Total itemized | | | | . . . . . . . . . . . . . . . . . . . . . . . . | | | | |

### lling Card Calls

| No. | Date | Time | Place Called | | Number | Code | Min | | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 8-05 | 748A | LANSING | MI | 517 393-1730 | DC | 3 | | .47 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 5 | 8-05 | 708P | DEERVALLEY AZ | 602 587-9239 | EC | 136 | 29 | | |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 6 | 8-5 | 924P | LA JOLLA | CA | 619 457-3374 | EC | 40 | 31 | .20 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 7 | 8-08 | 755A | JACKSON | MI | 517 788-4873 | DC | 18 | | 5.62 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 8 | 8-08 | 839A | GREEN BAY | WI | 414 432-4877 | DC | 4 | | 1.76 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 9 | 8-08 | 851A | JACKSON | MI | 517 788-4873 | DC | 3 | | .47 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 10 | 8-08 | 959A | MILWAUKEE | WI | 414 282-7483 | DC | 4 | | 1.76 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 11 | 8-09 | 835A | SOUTHFIELD MI | 810 355-2027 | DC | 2 | | 1.10 | |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 12 | 8-09 | 844A | THREERIVRS MI | 616 278-2015 | DC | 2 | | .15 | |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |
| 13 | 8-09 | 1033A | LANSING | MI | 517 482-0531 | DC | 2 | | .19 |
| | | | FROM | GRAND RPDS MI | 800 783-9235 | | | | |

# NICHOLAS S. OLIVA & ASSOCIATES
## CERTIFIED PUBLIC ACCOUNTANTS

January 27, 1998

JAN 2 8 1997

Dr. A. Muhammad Mahdi, President
BFIC
Personal & Confidential
7060 Miramar Rd., Suite 100
San Diego, CA  92121

RE:    **Withdrawal of Services**

Dear Dr. Mahdi,

This letter is to inform you that our firm hereby withdraws as your accountants effective immediately and is no longer providing any services.

We began assisting you in preparing your unaudited, unreviewed accounting records in October 1996 for the purpose of producing compiled financial statements.  At that time and on numerous other occasions we informed you that the BFIC records appeared to be incomplete and potentially inadequate and that the BFIC accounting and accounting-related employees appeared to be underqualified to perform those services.  We informed you that the internal controls in your operation which we observed appeared to be informal and that potential irregularities might occur as a result thereof.  You assured us that those aforementioned deficiencies would be corrected, however as of this date they do not appear to have been adequately addressed.

Because of the deficiencies in the internal record keeping process, we have been unable to obtain complete, understandable, reliable records.  We repeatedly informed you that your inattention to these matters could lead to financial difficulties.

We urge you to get new accountants and to obtain adequate internal support.  We will be glad to cooperate with the new accountants and will provide them copies of any records that we may have.

In addition, Nicholas S. Oliva has notified Bank of America by separate letter to remove his name and signatory authority from checking account number 0174-13181.  You will recall that Mr. Oliva was listed as a signer on the account at yours and Mr. Mohammed Usman's request as an accommodation to Mr. Usman.  At no time did Mr. Oliva sign on the account, conduct any business or transactions on the account, or receive any

Dr. A. Muhammed Mahdi
January 27, 1998
Page 2

communications from the bank.  The only information that we received concerning this account was from Mr. Usman such as copies of some of the monthly bank statements and copies of some of the cancelled checks for the first seven months of 1996.

We wish you the best in your continued business efforts and will cooperate any way we can.

Very truly yours,

NICHOLAS S. OLIVA
Certified Public Accountant

RONALD M. SAHMEL
Certified Public Accountant

NSO/RMS/mh

ON ALL OF THESE DOCUMENTS AND WITNESSES.  TO THE EXTENT THAT IT

BECOMES NECESSARY TO RESUBPOENA WITNESSES, I WILL ALLOW YOU THE

TIME TO DO THAT.  I'M GOING TO GRANT YOUR MOTION TO CONTINUE THE

TRIAL TO GET FURTHER PREPARED FOR THIS CASE.

        MS. URRUTIA:  YOUR HONOR, ALSO, I JUST WANT TO MAKE IT

CLEAR, TOO, THAT THE DEFENDANT DID WRITE TO OUR OFFICE

REGARDING -- AND WROTE A LETTER TO OUR ECONOMICS CRIME UNIT,

WHICH I'M NOT ASSOCIATED WITH AT ALL, IN MARCH OF THIS YEAR, AND

APPARENTLY THE DOCUMENTATION THAT HE SUBMITTED WAS REVIEWED BY

OUR OFFICE, AND HE WAS INFORMED THAT IT WAS THE BELIEF -- AND

THAT -- THAT DIVISION HAD NOTHING TO DO WITH THIS CASE

WHATSOEVER.  THAT IN THEIR OPINION, BASED ON THE INFORMATION

THAT HE SUBMITTED TO THEM, THAT IT WAS A CIVIL DISPUTE AND THAT

IT SHOULD BE HANDLED IN A CIVIL ARENA AND THAT THERE WASN'T ANY

BASIS FOR US TO FILE A CRIMINAL ACTION.

        SO I JUST WANTED TO MAKE SURE THAT THE COURT KNOWS

IT WAS REVIEWED BY OUR OFFICE AND IN AN INDEPENDENT -- YOU KNOW,

AN INDEPENDENT DIVISION, DOESN'T HAVE ANYTHING TO DO WITH THIS

DIVISION, AND THAT THEY --

        THE COURT:  WELL, AGAIN, TO A CERTAIN EXTENT, MR. MAHDI'S

STATE OF MIND IS IN ISSUE IN THIS CASE WITH RESPECT TO HIS

CONTACT WITH HIS WIFE ON MARCH 9TH, 1999.  AS I INDICATED, IF,

IN FACT, HE'S BEING CHARGED WITH ATTEMPTED MURDER WITH

PREMEDITATION AND DELIBERATION, TO THE EXTENT THAT MR. MAHDI CAN

SHOW IF -- AND RIGHT NOW I UNDERSTAND HIS POSITION IS THAT HE

DIDN'T DO IT -- OR I DON'T KNOW WHAT THAT POSITION IS.

        ASSUMING, FOR THE SAKE OF ARGUMENT ONLY, NOT FOR

THE TRUTH, FOR THE SAKE OF ARGUMENT ONLY, MR. MAHDI WERE TO SAY,

Exhibit 9.6
49

1    THE COURT: 'Q'. ALL RIGHT. 'Q'.

2                    (WHEREUPON, THE CHECKS
                     WERE MARKED DEFENDANT'S
3                    EXHIBIT Q FOR IDENTIFICATION.)

4    THE WITNESS: CHECK NUMBER 449 MADE OUT TO M.A. MAHDI,

5    $400, AND THIS WAS GIVEN TO YOU.

6    BY DEFENDANT MAHDI:

7        Q    DID YOU CASH THAT CHECK?

8        A    NO. WHY WOULD I? IT WAS IN YOUR NAME.

9        Q    THAT'S ALL, JUST "YES" OR "NO."

10   THE COURT: AGAIN, PLEASE DON'T ARGUE. IF HE IS BEING

11   NONRESPONSIVE TO YOUR QUESTIONS, THEN LET THE COURT HANDLE

12   THAT, OKAY. PLEASE DON'T. ANY FURTHER QUESTIONS, MR. MAHDI?

13   BY DEFENDANT MAHDI:

14       Q    CAN YOU TELL US WHO SIGNED THIS PARTICULAR

15   CHECK --

16   THE COURT: WE ARE GOING INTO RECESS UNTIL SEPTEMBER IN

17   ABOUT FIVE MINUTES, SO DO YOU HAVE ANY MORE QUESTIONS YOU WANT

18   TO ASK?

19   DEFENDANT MAHDI: AS SOON AS WE GET THROUGH THIS

20   WITNESS, YOU ARE SAYING YOU ARE GOING TO RECESS UNTIL

21   SEPTEMBER?

22   THE COURT: NO, UNTIL TOMORROW MORNING WITH RESPECT TO

23   MRS. MAHDI, BUT I WILL BE ISSUING RULINGS WITH RESPECT TO ALL

24   THESE ISSUES IN SEPTEMBER WHEN YOUR TRIAL DATE COMES FORWARD.

25   BY DEFENDANT MAHDI:

26       Q    I WOULD LIKE FOR YOU TO JUST LOOK AT THIS

27   DOCUMENT FIRST.

28   DEFENDANT MAHDI: HOLD ON. LET HIM LOOK AT IT FIRST

DO NOT ARGUE WITH HER OR ATTEMPT TO CLARIFY YOUR
QUESTIONS, OKAY?

DEFENDANT MAHDI:  I CAN'T CLARIFY THAT QUESTION?

MS. URRUTIA:  COULD HE RESTATE THE QUESTION?  BECAUSE I
THINK --

THE COURT:  I'M GOING TO ASK THAT HE DO SO RIGHT NOW.

DEFENDANT MAHDI:  OKAY.

THE COURT:  RESTATE THE QUESTION.

BY DEFENDANT MAHDI:

Q.    THIS IS A "YES" OR "NO" ANSWER -- QUESTION.

"YES" OR "NO," DID YOU, IN THE PRESENCE OF YOUR
CHILDREN, TELL YOUR HUSBAND THAT MOHAMMED USMAN HAD ASKED YOU TO
SIGN YOUR HUSBAND'S NAME ON SOME CORPORATE BANK B.F.I.C.
COMMUNICATION CHECKS FROM BANK OF AMERICA?

MS. URRUTIA:  I'M GOING TO OBJECT, YOUR HONOR, AS ASKING
FOR HEARSAY.

DEFENDANT MAHDI:  HEARSAY.

THE COURT:  MR. MAHDI, PLEASE.

DEFENDANT MAHDI:  OKAY.  I'M SORRY.

SHALL I REPHRASE THE QUESTION?

THE COURT:  YES.  I'M GOING TO SUSTAIN THE OBJECTION AS
TO THE FORM OF THE QUESTION.

GO AHEAD.  YOU NEED TO REPHRASE THE QUESTION.

BY DEFENDANT MAHDI:

Q.    DID MOHAMMED USMAN ASK YOU TO SIGN ABUWI MAHDI'S
NAME ON BANK OF AMERICA CORPORATE BANK ACCOUNT?



Q.    THANK YOU.

1          Q      'B' DOT 'F' DOT 'I' DOT COMMUNICATION, IS THAT

2    THE NAME OF THE CORPORATION?

3          A      LET ME SEE.  IT IS CALLED B.F.I. COMMUNICATIONS,

4    INCORPORATED.

5          Q      THE CHECK SAYS 'B' DOT 'F' DOT 'I' DOT

6    COMMUNICATIONS?

7          A      YES.

8          Q      SO THAT IS NOT THE CORPORATE NAME?

9          A      IT SAYS B.F.I. COMMUNICATIONS.  IT IS THE SAME

10   THING.

11         Q      NO, SIR.

12         THE COURT:  AGAIN, MR. MAHDI, YOU CAN'T TESTIFY.

13         DEFENDANT MAHDI:  I UNDERSTAND.

14         THE COURT:  AND YOU CAN'T MAKE STATEMENTS.  YOU CAN

15   ONLY ASK QUESTIONS.

16   BY DEFENDANT MAHDI:

17         Q      SO YOU ARE STATING NOW 'B' DOT 'F' DOT

18   COMMUNICATIONS --

19         A      WHY DON'T YOU JUST SAY "B.F.I.C."?  WHY WERE YOU

20   ADDING 'B' DOTS ALL THE TIME?  YOU NEVER CALL IT 'B' DOT 'F'

21   DOT 'I' DOT.  WHAT'S THIS?

22         THE COURT:  MR. USMAN, PLEASE DON'T ARGUE.

23         THE WITNESS:  I AM SORRY, SIR.

24         THE COURT:  THIS IS COURT.  PLEASE DON'T DO THAT.  I

25   HAVE BEEN TELLING YOU THAT, AND I WILL NOT DIRECT YOU AGAIN.

26   NEXT TIME -- YOU ARE UNDER A COURT ORDER NOT TO ARGUE WITH

27   MR. MAHDI.  THE NEXT TIME YOU DO, I WILL CONDUCT A CONTEMPT

28   HEARING.  DON'T DO IT.  GO AHEAD.

1   THE WITNESS:  I AM SORRY, SIR.

2   BY DEFENDANT MAHDI:

3       Q     SO 'B' DOT 'F' DOT 'I' DOT COMMUNICATIONS IS THE

4   CORPORATE NAME?  THAT'S WHAT YOU ARE STATING TO THE COURT?

5       A     YES.

6       Q     IS IT THE CORPORATE -- CORPORATE DOCUMENTS ARE

7   STATING 'B' DOT -- THE CORPORATE DOCUMENTS SAY B.F.I.C.

8   COMMUNICATIONS, INC., CORRECT?

9       A     YEP.

10      Q     AND WE HAVE A CHECKING ACCOUNT IN 'B' DOT 'F' DOT

11  COMMUNICATIONS.

12      A     I DON'T THINK SO.

13      THE COURT:  MR. MAHDI, THAT QUESTION IS NOT -- THAT'S

14  VAGUE.

15      DEFENDANT MAHDI:  UNDERSTANDABLE.

16      Q     MR. USMAN, I WILL SHOW YOU ONE MORE QUESTION.

17  THERE IS TWO SIGNATURES REQUIRED ON THIS ACCOUNT; IS THAT

18  CORRECT?

19      A     RIGHT.

20      DEFENDANT MAHDI:  THAT'S EXHIBIT -- WE WILL MARK THAT

21  AS THE EXHIBIT, THE NEXT EXHIBIT.  I LOST TRACK.  WHAT WAS

22  THAT?  'H'?

23      THE COURT:  'K', I THINK.

24      THE BAILIFF:  'M'.

                    (WHEREUPON, THE TRANSFER SLIP
                    WAS MARKED DEFENDANT'S
                    EXHIBIT M FOR IDENTIFICATION.)

25  BY DEFENDANT MAHDI:

        Q     COULD YOU EXPLAIN TO THE COURT THE DOCUMENT THAT

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**
A. Muhammad Mahdi

**DEFENDANTS**
BFIC ex Board members, Bailey.com, Bank of America, Bank of Oklahoma, Chase, Bank of Texas, UnionBank, FDIC, IRS, SSC

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)
San Diego County

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)
San Diego County

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Abuw Muhammad-in Yoo Heo
7111 Waite Mahdi #27
La Mesa, CA 91941

**ATTORNEYS (IF KNOWN)**

'00 CV 1518 H (LSP)

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 USC 1983, Rico Act 1962 (A) And (B) Violation 1961(1)(B), 1341, 1343, 18 USC 371, 8th Amendment And 14 Amendment 1503 And 1956

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒1 Original Proceeding  ☐2 Removal from State Court  ☐3 Remanded from Appellate Court  ☐4 Reinstated or Reopened  ☐5 Transferred from another district (specify)  ☐6 Multidistrict Litigation  ☐7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
**DEMAND $** 6 Billion dollars
Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE ____   Docket Number ____

DATE ____

SIGNATURE OF ATTORNEY OF RECORD
Abu Muhammad Mahdi